**LaMONICA HERBST & MANISCALCO, LLP**
*Counsel to Plaintiff Marianne T. O'Toole, Esq., as Trustee*
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Holly R. Holecek, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 7 |
| | |
| 78-80 ST. MARKS PLACE, LLC, | Case No.: 21-12139 (MG) |
| | |
| Debtor. | |

------------------------------------------------------------x

| | |
|---|---|
| MARIANNE T. O'TOOLE, ESQ., solely in her capacity as the Chapter 7 Trustee of the estate of 78-80 St. Marks Place, LLC, | |
| | |
| Plaintiff, | Adv. Pro. No.: 22-01152 (MG) |
| | |
| -against- | |
| | |
| LAWRENCE V. OTWAY, a/k/a LAWRENCE LORCAN OTWAY, a/k/a LORCAN OTWAY, EUGENIE OTWAY a/k/a EUGENIE GILMORE-OTWAY a/k/a EUGENIE GILMORE, SCHEIB'S PLACE, INC. D/B/A WILLIAM BARNACLE TAVERN, EXHIBITION OF THE AMERICAN GANGSTER, INC., THEATRE 80, LLC, and JOHN DOE CORPORATIONS "1" THROUGH "100", OTHER JOHN DOE ENTITIES "1" THROUGH "100", | |
| | |
| Defendants. | |

------------------------------------------------------------x

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS PURSUANT TO RULE 7056-1(b) OF THE LOCAL BANKRUPTCY RULES FOR THE <u>SOUTHERN DISTRICT OF NEW YORK</u>

Plaintiff Marianne T. O'Toole, Esq., solely in her capacity as Chapter 7 Trustee ("<u>Trustee</u>"

or "<u>Plaintiff</u>") of the estate of 78-80 St. Marks Place, LLC ("<u>Debtor</u>"), by and through her

undersigned counsel, hereby submits this statement pursuant to Rule 7056-1(b) of the Local Bankruptcy Rules for the Southern District of New York in connection with Plaintiff's motion ("Motion"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, as made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure, for summary judgment against defendants Lawrence V. Otway, a/k/a Lawrence Lorcan Otway, a/k/a Lorcan Otway ("Lorcan Otway"), Eugenie Otway a/k/a Eugenie Gilmore-Otway, a/k/a Eugenie Gilmore ("Eugenie Otway"), Scheib's Place, Inc. d/b/a William Barnacle Tavern ("Scheib's Place"), Exhibition Of The American Gangster, Inc. ("Museum"), Theatre 80, LLC ("Theatre 80") (each a "Defendant" and collectively "Defendants"), on the First Claim for Relief in the Complaint dated September 30, 2022 ("Complaint").

1.      By deed dated November 12, 2019 and recorded on November 22, 2019 ("Deed"), the Debtor acquired fee title to the real property known as and located at 78-80 St. Marks Place, New York, New York 10003 ("Property"). A true and accurate copy of the Deed is annexed as **Exhibit A**.

2.      On December 29, 2021 ("Filing Date"), a voluntary Chapter 11 petition was filed on behalf of the Debtor in the United States Bankruptcy Court for the Southern District of New York ("Court"). A true and accurate copy of the Debtor's voluntary Chapter 11 petition is annexed as **Exhibit B**.

3.      Defendant Lorcan Otway signed the Debtor's voluntary petition under penalty of perjury. See **Exhibit B**.

4.      As reflected in the Debtor's Schedule A/B that was filed with the Court, the Debtor was the fee owner of the Property as of the Filing Date. A true and accurate copy of the Debtor's Schedule A/B is annexed as **Exhibit C**.

5.       As reflected on the Debtor's Schedule G that was filed with the Court, the Debtor

did not list any executory contracts or unexpired leases with Defendants Lawrence Otway, Eugenie

Otway, the Museum or Theatre 80. A true and accurate copy of the Debtor's Schedule G is annexed

as **Exhibit D**.

6.       Prior to the Filing Date, creditor St. Mark's Mixed Use LLC, the Debtor and each

of the Defendants executed a Forbearance Agreement dated as of January 14, 2021 ("Forbearance

Agreement"). A true and accurate copy of the Forbearance Agreement is annexed as **Exhibit E**.

7.       The Forbearance Agreement reflects that, prior to the Filing Date, each of the

Defendants agreed that their 2019 leases relating to the Property expired and/or terminated on their

own terms. See **Exhibit E** at pp. 10-12, ¶8.6.

8.       The Forbearance Agreement reflects that, prior to the Filing Date, each of the

Defendants agreed that the oral sublease between Theatre 80 and Scheib's: (a) was void and of no

force and effect; and (b) forever terminated and of no effect whatsoever. See **Exhibit E** at pp. 10-

12, ¶8.6.

9.       The Forbearance Agreement reflects that, prior to the Filing Date, each of the

Defendants agreed that their 2020 leases relating to the Property were forever terminated. See

**Exhibit E** at pp. 10-12, ¶8.6.

10.       The Forbearance Agreement expressly provides that, among others, each of the

Defendants "have each derived direct and substantial benefits from this Forbearance Agreement."

See **Exhibit E** at p. 13, ¶8.12.

11.       The Forbearance Agreement expressly includes an acknowledgement and

agreement by each of the Defendants that, inter alia: (a) they executed the Forbearance Agreement

freely and voluntarily after having consulted with their independent legal counsel and after having

all of the terms explained to each of them by their independent legal counsel; and (b) they had a full and adequate opportunity to negotiate the terms contained in the Forbearance Agreement. See **Exhibit E** at p. 24, ¶18.19.

12.     The Forbearance Agreement expressly provides that it "may be used as evidence against any or all of the [Defendants] in any litigation now or hereafter existing . . . ." See **Exhibit E** at p. 25, ¶18.21.

13.     Prior to the Filing Date, on November 11, 2021, the Debtor and the Defendants, through counsel, commenced an action against creditor St. Mark's Mixed Use LLC in the Supreme Court of the State of New York, New York County ("State Court"), under Index No. 656446/2021 ("State Court Action"). A true and accurate copy of the complaint filed in the State Court Action is annexed as **Exhibit F**.

14.     The complaint filed in the State Court Action reflects that the Debtor and the Defendants were represented by counsel. See **Exhibit F** at p.11.

15.     Prior to the Filing Date, on November 29, 2021 the State Court "So-Ordered" a Stipulation of Settlement and Dismissal of Action signed by the Debtor, each of the Defendants, and creditor St. Mark's Mixed Use LLC fully resolving the State Court Action, which was entered by the State Court on November 29, 2021 ("Consent Order"). A true and accurate copy of the Consent Order is annexed as **Exhibit G**.

16.     The Consent Order reflects that, prior to the Filing Date, each of the Defendants agreed, inter alia, that: (a) "there are no defenses, offsets or counterclaims of any nature whatsoever to . . . the Existing Forbearance Agreement"; and (b) ". . . the Existing Forbearance Agreement [is] hereby affirmed in [its] entirety." See **Exhibit G** at pp. 8-9, ¶8.2.

17.    The Consent Order reflects that, prior to the Filing Date, each of the Defendants agreed that their 2019 leases relating to the Property terminated and were no longer in effect. See **Exhibit G** at pp. 10-12, ¶8.6.

18.    The Consent Order reflects that, prior to the Filing Date, Defendants Lorcan Otway and Eugenie Otway, the Museum, and Scheib's each agreed that their 2020 leases relating to the Property were wrongfully created and were terminated. See **Exhibit G** at pp. 10-12, ¶8.6.

19.    The Consent Order reflects that, prior to the Filing Date, Defendant Theatre 80 agreed that its 2020 sublease relating to the Property was wrongfully created and was terminated. See **Exhibit G** at pp. 10-12, ¶8.6.

20.    The Consent Order reflects that, prior to the Filing Date, each of Defendants agreed and acknowledged that, among other things, the 2020 sublease between Scheib's and Theatre 80 was wrongfully created and was terminated. See **Exhibit G** at pp. 10-12, ¶8.6.

21.    The Consent Order reflects that, prior to the Filing Date, each of the Defendants agreed that the oral sublease between Theatre 80 and Scheib's: (a) was void and of no force and effect; and (b) forever terminated and of no effect whatsoever. See **Exhibit G** at pp. 10-12, ¶8.6.

22.    The Consent Order expressly provides that, among others, Defendants "have each derived direct and substantial benefits from this Stipulation." See **Exhibit G** at p. 13, ¶8.12.

23.    The Consent Order reflects that, prior to the Filing Date, each of the Defendants agreed to vacate the Property by December 30, 2021. See **Exhibit G** at p. 14, ¶10.

24.    The Consent Order expressly includes an acknowledgement and agreement by each of the Defendants that, inter alia: (a) they executed the Consent Order freely and voluntarily after having consulted with their independent legal counsel and after having all of the terms explained

5

to each of them by their independent legal counsel; and (b) they had a full and adequate opportunity to negotiate the terms contained in the Consent Order. See **Exhibit G** at p. 23, ¶18.19.

25.    The Consent Order expressly provides that it "may be used as evidence against any or all of the [Defendants] in any litigation now or hereafter existing . . . ." See **Exhibit G** at p. 24, ¶18.21.

26.    By Order dated May 17, 2022, the Court directed the appointment of a Chapter 11 Trustee for the Debtor. See Case No.: 21-12139-mg, ECF No 58.

27.    By Order dated May 24, 2022, the Court approved the appointment of Marianne T. O'Toole, Esq. as Chapter 11 Trustee for the Debtor. See Case No.: 21-12139-mg, ECF No 61.

28.    By Order dated July 25, 2022, the Court converted the Debtor's case to a case under Chapter 7 of the Bankruptcy Code. A true and accurate copy of the Court's Order is annexed as **Exhibit H**.

29.    Marianne T. O'Toole, Esq. was appointed as Chapter 7 Trustee of the Debtor's estate. A true and accurate copy of the Appointment of Interim Trustee and Trustee and Designation of Required Bond is annexed as **Exhibit I**.

30.    On December 29, 2021, a voluntary Chapter 11 petition was filed on behalf of Defendant Lorcan Otway in the Court. A true and accurate copy of Defendant Lorcan Otway's voluntary Chapter 11 petition is annexed as **Exhibit J**.

31.    As reflected on the Defendant Lorcan Otway's Schedule G that was filed with the Court, Defendant Lorcan Otway did not list any executory contracts or unexpired leases with the Debtor. A true and accurate copy of the Defendant Lorcan Otway's Schedule G is annexed as **Exhibit K**.

32.     Pursuant to a Memorandum Opinion and Order dated September 30, 2022, the
Court granted Plaintiff's motion for relief from the automatic stay in Lorcan Otway's Chapter 11
case to permit the commencement of this adversary proceeding. A true and accurate copy of the
Court's Memorandum Opinion and Order is annexed as **Exhibit L**.

33.     On September 30, 2022, the Trustee commenced this adversary proceeding by
filing the Complaint. A true and accurate copy of the Complaint is annexed as **Exhibit M**.

34.     On October 28, 2022, Defendants filed an Answer and Counterclaims. <u>See</u> ECF
Nos. 10, 11.

35.     By letter dated November 11, 2022, the Trustee requested a pre-motion conference
and leave to file a motion for summary judgment with respect to the First Claim for Relief in the
Complaint. <u>See</u> ECF Nos. 12 (letter), 13 (related Affidavit of Service). At a pre-trial conference
conducted on November 15, 2022, the Court granted the Trustee's request.

36.     On November 16, 2022, Defendants filed an Amended Answer and Counterclaims.
A true and accurate copy of the Amended Answer and Counterclaims is annexed as **Exhibit N**.

Dated:  December 13, 2022
        Wantagh, New York                 **LaMONICA HERBST & MANISCALCO, LLP**
                                          *Counsel to Plaintiff Marianne T. O'Toole, Esq.,*
                                          *solely in her capacity as Chapter 7 Trustee of the*
                                          *estate of 78-80 St. Marks Place, LLC*

                              By:     *s/ Holly R. Holecek*
                                      Holly R. Holecek, Esq.
                                      A Partner of the Firm
                                      3305 Jerusalem Avenue, Suite 201
                                      Wantagh, New York 11793
                                      Telephone: (516) 826-6500

# **<u>EXHIBIT A</u>**

<table>
<tr><td>

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

</td><td>



2019112100942001001E68A3

</td></tr>
</table>

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 5 |
|---|---|---|

**Document ID: 2019112100942001**      Document Date: 11-12-2019      Preparation Date: 11-21-2019
Document Type:  DEED
Document Page Count: 3

| PRESENTER: | RETURN TO: |
|---|---|
| ABSTRACTS INCORPORATED<br>100 GARDEN CITY PLAZA STE. 201<br>GARDEN CITY, NY 11530 | ABSTRACTS INCORPORATED<br>100 GARDEN CITY PLAZA STE. 201<br>GARDEN CITY, NY 11530 |

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 449 | 28 | Entire Lot | 78 ST MARKS PLACE |

**Property Type:**  COMMERCIAL REAL ESTATE

## CROSS REFERENCE DATA

CRFN_____   _or_   DocumentID_____   _or_   _____ Year_____ Reel_____ Page_____   _or_   File Number_____

## PARTIES

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| LAWRENCE VICTOR OTWAY, AS TRUSTEE<br>80 ST. MARKS PLACE<br>NEW YORK, NY 10003 | 78-80 ST. MARKS PLACE, LLC<br>78-80 ST. MARKS PLACE<br>NEW YORK, NY 10003 |

☒  Additional  Parties Listed on Continuation  Page

## FEES AND TAXES

| **Mortgage :** | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $              250.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $                  0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $                  0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 52.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**

Recorded/Filed          11-22-2019 13:30
City Register File No.(CRFN):
                    **2019000383129**

*Annette M Hill*

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2019112100942001001C6A23

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 5 |
|---|---|

**Document ID: 2019112100942001**     Document Date: 11-12-2019     Preparation Date: 11-21-2019
Document Type: DEED

---

**PARTIES**

**GRANTOR/SELLER:**
LAST WILL AND TESTAMENT OF HOWARD OTWAY
80 ST. MARKS PLACE
NEW YORK, NY 10003

**GRANTOR/SELLER:**
LAWRENCE VICTOR OTWAY
80 ST. MARKS PLACE
NEW YORK, NY 10003

**GRANTOR/SELLER:**
FLORENCE OTWAY, DECEASED
80 ST. MARKS PLACE
NEW YORK, NY 10003

Standard N.Y.B.T.U. Form 8007                                                    Abstracts, Inc.
-Bargain and Sale Deed with Covenant against Grantor's Acts- Individual or Corporation    Title # 5204235

**CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT
SHOULD BE USED BY LAWYERS ONLY**

THIS INDENTURE, made the /2ᵗʰ day of November, Two Thousand Nineteen.
BETWEEN

**LAWRENCE VICTOR OTWAY,** residing at 80 St. Marks Place, New York, New York 10003, **as
Surviving Joint Tenant of Florence Otway, deceased, as to a 50% Interest, and LAWRENCE
VICTOR OTWAY,** residing at 80 St. Marks Place, New York, New York 10003, **as Surviving Trustee
under the Last Will and Testament of Howard Otway, as to a 50% Interest,** party of the first part, and

**78-80 ST. MARKS PLACE, LLC,** with an address at 80 St. Marks Place, New York, New York 10003,
party of the first part, and

**WITNESSETH,** that the party of the first part, in consideration of Ten Dollars and other valuable
consideration paid by the party of the second part, does hereby grant and release unto the party of the second
part, the heirs or successors and assigns of the party of the second part forever,

**SEE SCHEDULE "A" ATTACHED HERETO**

BEING and intended to be the same premises as conveyed to the Grantor herein by deed dated 01/19/2010
and recorded on 01/26/2010 in CRFN 201000027333 and by deed dated 03/20/1996 and recorded on
05/17/1996 in Reel 2324, Page 2115.

**SAID premises known as 80 St. Marks Place, New York, New York 10003
Block   449          Lot  28**

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and
roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances,
and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD
the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party
of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything
whereby the said premises have been encumbered in any way whatever, except as aforesaid.
AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of
the first part will receive the consideration for this conveyance and will hold the right to receive such
consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and
will apply the same first to the payment of the cost of the improvement before using any part of the total of
the same for any other purpose.
The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF,** the party of the first part has duly executed this deed the day and year first
above written.

In presence of:

_____
LAWRENCE VICTOR OTWAY

**STATE OF NEW YORK, COUNTY OF NEW YORK**    ss:

On the 12th day of November in the year 2019 before me the undersigned, personally appeared
**LAWRENCE OTWAY**
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s)
whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument,
the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

Joseph D. Monaco
Notary Public, State of New York
No. 02MO4962971
Qualified in Nassau County
Commission Expires February 26, 2022

## Bargain and Sale Deed

WITH COVENANT AGAINST GRANTOR'S ACTS

Title No.   S204235

| | |
|---|---|
| BLOCK | 449 |
| LOT | 28 |

**LAWRENCE VICTOR OTWAY,**
**as Surviving Joint Tenant of Florence Otway,**
**deceased, as to a 50% Interest, and**
**LAWRENCE VICTOR OTWAY, as Surviving**
**Trustee under the Last Will and Testament of**
**Howard Otway, as to a 50% Interest**

TO

**78-80 ST. MARKS PLACE, LLC**

RECORD AND RETURN BY MAIL TO:

Eric D. Cherches, P.C.
1031 Main Street
Port Jefferson, New York 11777

# ABSTRACTS, INCORPORATED™

Residential & Commercial Title Insurance since 1984

*as agent for*

## Stewart Title Insurance Company

### SCHEDULE A DESCRIPTION

**Title Number: S204235**
**Page: 1**

**AMENDED 8/27/2019:**

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, County of New York, City and State of New York, known and designated as Lot Nos. 109 and 110 on a certain map entitled, "Map showing a division of a part of the real estate late of Nicholas W. Stuyvesant, deceased, among his heirs, situate in the 11th Ward of the City of New York", made by Samuel Doughty, C.S. dated May 1834 and filed in the Office of the Register of the County of New York on April 24, 1835, as Map No. 81. (now 81-B) and being more particularly bounded and described according to said map as follows:

BEGINNING at a point on the southerly side of St. Marks Place, distant 50 feet westerly from the corner formed by the intersection of the southerly side of St. Marks Place with the westerly side of First Avenue;

RUNNING THENCE westerly along the southerly side of St. Marks Place, 50.00 feet;

THENCE southerly parallel with the westerly side of First Avenue, a distance of **97.50 feet, actual and tax map (89.60 feet deed);**

THENCE easterly and parallel with the southerly side of St. Marks Place, a distance of 50.00 feet;

THENCE northerly parallel with the westerly side of First Avenue, a distance of **97.50 feet, actual and tax map (89.60 feet deed)** to the point or place of BEGINNING.

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2019112100942001001SA622

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID: 2019112100942001**     Document Date: 11-12-2019     Preparation Date: 11-21-2019
Document Type: DEED

**ASSOCIATED TAX FORM ID:**     2019110800413

**SUPPORTING DOCUMENTS SUBMITTED:**

| | Page Count |
|---|---|
| RP - 5217 REAL PROPERTY TRANSFER REPORT | 4 |
| SMOKE DETECTOR AFFIDAVIT | 1 |

**REAL PROPERTY TRANSFER REPORT**
STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES

**RP - 5217NYC**

**FOR CITY USE ONLY**
C1. County Code
C2. Date Deed Recorded    Month / Day / Year
C3. Book
OR
C4. Page
C5. CRFN

**PROPERTY INFORMATION**

| 1. Property Location | 78 | ST MARKS PLACE | | MANHATTAN | | 10003 |
|---|---|---|---|---|---|---|
| | STREET NUMBER | STREET NAME | | BOROUGH | | ZIP CODE |

2. Buyer Name: 78-80 ST. MARKS PLACE, LLC
LAST NAME / COMPANY                    FIRST NAME
LAST NAME / COMPANY                    FIRST NAME

3. Tax Billing Address: Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)
LAST NAME / COMPANY        FIRST NAME
STREET NUMBER AND STREET NAME     CITY OR TOWN        STATE     ZIP CODE

4. Indicate the number of Assessment Roll parcels transferred on the deed    1    # of Parcels OR    Part of a Parcel
4A. Planning Board Approval - N/A for NYC
4B. Agricultural District Notice - N/A for NYC

Check the boxes below as they apply:
6. Ownership Type is Condominium ☐
7. New Construction on Vacant Land ☐

5. Deed Property Size:    FRONT FEET  X  DEPTH  OR  ACRES

8. Seller Name: LAWRENCE VICTOR OTWAY, AS TRUSTEE
LAST NAME / COMPANY                    FIRST NAME
LAST WILL AND TESTAMENT OF HOWARD OTWAY
LAST NAME / COMPANY                    FIRST NAME

9. Check the box below which most accurately describes the use of the property at the time of sale:

| A | ☐ One Family Residential | C | ☐ Residential Vacant Land | E | ✓ Commercial | G | ☐ Entertainment / Amusement | I | ☐ Industrial |
|---|---|---|---|---|---|---|---|---|---|
| B | ☐ 2 or 3 Family Residential | D | ☐ Non-Residential Vacant Land | F | ☐ Apartment | H | ☐ Community Service | J | ☐ Public Service |

**SALE INFORMATION**

10. Sale Contract Date    11 / 12 / 2019
Month / Day / Year

11. Date of Sale / Transfer    11 / 12 / 2019
Month / Day / Year

12. Full Sale Price $    0
( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.)  Please round to the nearest whole dollar amount.

13. Indicate the value of personal property included in the sale

14. Check one or more of these conditions as applicable to transfer:

| A | ☐ Sale Between Relatives or Former Relatives |
|---|---|
| B | ☐ Sale Between Related Companies or Partners in Business |
| C | ☐ One of the Buyers is also a Seller |
| D | ☐ Buyer or Seller is Government Agency or Lending Institution |
| E | ☐ Deed Type not Warranty or Bargain and Sale (Specify Below) |
| F | ☐ Sale of Fractional or Less than Fee Interest ( Specify Below ) |
| G | ☐ Significant Change in Property Between Taxable Status and Sale Dates |
| H | ☐ Sale of Business is Included in Sale Price |
| I | ☐ Other Unusual Factors Affecting Sale Price ( Specify Below ) |
| J | ✓ None |

**ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill**

15. Building Class    C, 7
16. Total Assessed Value (of all parcels in transfer)    1 1 8 8 0 0 0

17. Borough, Block and Lot / Roll Identifier(s)  ( If more than three, attach sheet with additional identifier(s) )

MANHATTAN 449 28

201911080041320101

| CERTIFICATION | I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any wilful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments. |

**BUYER**

BUYER SIGNATURE

DATE 11/12/19

**BUYER'S ATTORNEY**

LAST NAME Cherches    FIRST NAME Eric

78-80 ST. MARKS PLACE

STREET NUMBER    STREET NAME (AFTER SALE)    *Lawrence Victor Otway*

AREA CODE 631    TELEPHONE NUMBER 331-1900

**SELLER**

NEW YORK    STATE NY    ZIP CODE 10003

CITY OR TOWN

SELLER SIGNATURE

DATE 11/12/19

*Lawrence Victor Otway*

2019110800413201

Form RP-5217 NYC      ATTACHMENT

Grantee (Buyer)

LAST NAME / COMPANY      FIRST NAME
Grantor (Seller)
**OTWAY**      LAWRENCE VICTOR

LAST NAME / COMPANY      FIRST NAME
Grantee (Buyer)

LAST NAME / COMPANY      FIRST NAME
Grantor (Seller)
OTWAY, DECEASED      FLORENCE

LAST NAME / COMPANY      FIRST NAME
Grantee (Buyer)

LAST NAME / COMPANY      FIRST NAME
Grantor (Seller)

LAST NAME / COMPANY      FIRST NAME
Grantee (Buyer)

LAST NAME / COMPANY      FIRST NAME
Grantor (Seller)

LAST NAME / COMPANY      FIRST NAME
Grantee (Buyer)

LAST NAME / COMPANY      FIRST NAME
Grantor (Seller)

LAST NAME / COMPANY      FIRST NAME
Grantee (Buyer)

LAST NAME / COMPANY      FIRST NAME
Grantor (Seller)

LAST NAME / COMPANY      FIRST NAME
Grantee (Buyer)

LAST NAME / COMPANY      FIRST NAME
Grantor (Seller)

LAST NAME / COMPANY      FIRST NAME
Grantee (Buyer)

LAST NAME / COMPANY      FIRST NAME
Grantor (Seller)

LAST NAME / COMPANY      FIRST NAME

Form RP-5217 NYC

# CERTIFICATION

I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments.

| BUYERS | | SELLERS | |
|---|---|---|---|
| x _(signature)_ | Date 11/12/19 | x _(signature)_ | Date 11/12/19 |
| Buyer Signature | Date | Seller Signature | Date |
| _Lawrence Victor Otway_ | | | _Lawrence Victor Otway_ |
| Buyer Signature | Date | x _(signature)_ | Date |
| | | Seller Signature | Date |
| | | _Lawrence Victor Otway_ | |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |

2019110800413201

# AFFIDAVIT OF COMPLIANCE
## WITH SMOKE DETECTOR REQUIREMENT
## FOR ONE- AND TWO-FAMILY DWELLINGS

State of New York }
                    } SS.:
County of *NEW YORK*

The undersigned, being duly sworn, depose and say under penalty of perjury that they are the grantor and grantee of the real property or of the cooperative shares in a cooperative corporation owning real property located at

|  | 78 ST MARKS PLACE |  |  | , |  | , |
|---|---|---|---|---|---|---|

Street Address Unit/Apt.

|  | MANHATTAN | New York, | 449 | 28 | (the "Premises"); |
|---|---|---|---|---|---|
|  | Borough |  | Block | Lot |  |

That the Premises is a one or two family dwelling, or a cooperative apartment or condominium unit in a one- or two-family dwelling, and that installed in the Premises is an approved and operational smoke detecting device in compliance with the provisions of Article 6 of Subchapter 17 of Chapter 1 of Title 27 of the Administrative Code of the City of New York concerning smoke detecting devices;

That they make affidavit in compliance with New York City Administrative Code Section 11-2105 (g). (The signatures of at least one grantor and one grantee are required, and must be notarized).

| *Lawrence Victor OTWAY* | *Lawrence Victor OTWAY* |
|---|---|
| Name of Grantor (Type or Print) | Name of Grantee (Type or Print) |
| Signature of Grantor | Signature of Grantee |

Sworn to before me                          Sworn to before me
this *12th* day of *November* 20 *19*       this *12th* day of *November* 20 *19*

Joseph D. Monaco                            Joseph D. Monaco
Notary Public, State of New York            Notary Public, State of New York
No. 02MO4962971                             No. 02MO4962971
Qualified in Nassau County                  Qualified in Nassau County
Commission Expires February 26, 2022        Commission Expires February 26, 2022

These statements are made with the knowledge that a willfully false representation is unlawful and is punishable as a crime of perjury under Article 210 of the Penal Law.

**NEW YORK CITY REAL PROPERTY TRANSFER TAX RETURNS FILED ON OR AFTER FEBRUARY 6th, 1990, WITH RESPECT TO THE CONVEYANCE OF A ONE- OR TWO-FAMILY DWELLING, OR A COOPERATIVE APARTMENT OR A CONDOMINIUM UNIT IN A ONE- OR TWO-FAMILY DWELLING, WILL NOT BE ACCEPTED FOR FILING UNLESS ACCOMPANIED BY THIS AFFIDAVIT.**

2019110800413101

# **EXHIBIT B**

| Fill in this information to identify your case: |
|---|

United States Bankruptcy Court for the:

SOUTHERN DISTRICT OF NEW YORK

Case number *(if known)* _____   Chapter __**11**__

☐ Check if this an
   amended filing

## Official Form 201
# Voluntary Petition for Non-Individuals Filing for Bankruptcy

04/20

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | | |
|---|---|---|---|
| 1. | **Debtor's name** | **78-80 St. Marks Place, LLC** | |
| 2. | **All other names debtor used in the last 8 years** Include any assumed names, trade names and *doing business as* names | | |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | **84-3529683** | |

| | | | |
|---|---|---|---|
| 4. | **Debtor's address** | **Principal place of business** | **Mailing address, if different from principal place of business** |
| | | **80 St Marks Place**<br>**New York, NY 10013**<br>Number, Street, City, State & ZIP Code | P.O. Box, Number, Street, City, State & ZIP Code |
| | | **New York**<br>County | **Location of principal assets, if different from principal place of business** |
| | | | Number, Street, City, State & ZIP Code |

| | | |
|---|---|---|
| 5. | **Debtor's website** (URL) | |

| | | |
|---|---|---|
| 6. | **Type of debtor** | ■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP)) |
| | | ☐ Partnership (excluding LLP) |
| | | ☐ Other. Specify: _____ |

Debtor **78-80 St. Marks Place, LLC**
Name
Case number (*if known*)

---

**7.** **Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

■ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor.
See http://www.uscourts.gov/four-digit-national-association-naics-codes.

__5311__

---

**8.** **Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

■ Chapter 11. *Check **all** that apply:*

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

---

**9.** **Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**
If more than 2 cases, attach a separate list.

■ No.

☐ Yes.

| District | When | Case number |
|---|---|---|
| District | When | Case number |

---

Statement of Material Facts Pursuant to Rule 7056-1(b) of the

Debtor | 78-80 St. Marks Place, LLC
Name | Case number (if known)

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

☐ No
■ Yes.

List all cases. If more than 1, attach a separate list

Debtor | **Lwarence V Otway** | Relationship | **sole member**

District | **SDNY** | When | Case number, if known

**11. Why is the case filed in this district?**

*Check all that apply:*

■ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

■ No
☐ Yes.

Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other

**Where is the property?** _____

Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No
☐ Yes.

Insurance agency _____

Contact name _____

Phone _____

---

**Statistical and administrative information**

**13. Debtor's estimation of available funds**

*Check one:*

■ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ■ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

**15. Estimated Assets**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ■ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

| Debtor | **78-80 St. Marks Place, LLC** | Case number (*if known*) |
|---|---|---|
| | Name | |

**16.  Estimated liabilities**

☐ $0 - $50,000
☐ $50,001 - $100,000
☐ $100,001 - $500,000
☐ $500,001 - $1 million

■ $1,000,001 - $10 million
☐ $10,000,001 - $50  million
☐ $50,000,001 - $100 million
☐ $100,000,001 - $500 million

☐ $500,000,001 - $1 billion
☐ $1,000,000,001 - $10 billion
☐ $10,000,000,001 - $50 billion
☐ More than $50 billion

Debtor **78-80 St. Marks Place, LLC**     Case number (*if known*)
Name

---

| | **Request for Relief, Declaration, and Signatures** |

---

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature
of authorized
representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on     **December 29, 2021**
MM / DD / YYYY

**X** **/s/ Lawrence V. Otway**                    **Lawrence V. Otway**
Signature of authorized representative of debtor          Printed name

Title     **Sole Member**

---

**18. Signature of attorney**     **X** **/s/ Andrew R. Gottesman**          Date **December 29, 2021**
Signature of attorney for debtor                MM / DD / YYYY

**Andrew R. Gottesman**
Printed name

**Mintz & Gold LLP**
Firm name

**600 Third Avenue
25th Floor
New York, NY 10016**
Number, Street, City, State & ZIP Code

Contact phone     **(212) 696-4848**     Email address     **gottesman@mintzandgold.com**

**2960649 NY**
Bar number and State

**Fill in this information to identify the case:**

Debtor name        **78-80 St. Marks Place, LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF NEW YORK

Case number (if known)    _____

☐ Check if this is an
   amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. **Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.**

**Declaration and signature**

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ■ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ■ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ■ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ■ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ■ *Schedule H: Codebtors* (Official Form 206H)
- ■ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule*
- ■ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☐ Other document that requires a declaration    _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **December 29, 2021**         X **/s/ Lawrence V. Otway**
                                                Signature of individual signing on behalf of debtor

                                                **Lawrence V. Otway**
                                                Printed name

                                                **Sole Member**
                                                Position or relationship to debtor

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

# **EXHIBIT C**

**Fill in this information to identify the case:**

Debtor name    **78-80 St. Marks Place, LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF NEW YORK

Case number (if known) _____

☐ Check if this is an
   amended filing

## Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property    12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

**1. Does the debtor have any cash or cash equivalents?**

■ No.  Go to Part 2.
☐ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|

| Part 2: | Deposits and Prepayments |
|---|---|

**6. Does the debtor have any deposits or prepayments?**

☐ No.  Go to Part 3.
■ Yes Fill in the information below.

7.    **Deposits, including security deposits and utility deposits**
     Description, including name of holder of deposit

8.    **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**
     Description, including name of holder of prepayment

| 8.1. | escrow deposit for sidewalk remediation hgeld by title company | $12,000.00 |
|---|---|---|

9.    **Total of Part 2.**          **$12,000.00**
     Add lines 7 through 8. Copy the total to line 81.

| Part 3: | Accounts receivable |
|---|---|

**10. Does the debtor have any accounts receivable?**

■ No.  Go to Part 4.
☐ Yes Fill in the information below.

| Part 4: | Investments |
|---|---|

**13. Does the debtor own any investments?**

■ No.  Go to Part 5.
☐ Yes Fill in the information below.

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

Statement of Material Facts Pursuant to Rule 7056-1(b) of the

| Debtor | **78-80 St. Marks Place, LLC** | Case number *(If known)* | |
| | Name | | |

---

| Part 5: | Inventory, excluding agriculture assets |

**18. Does the debtor own any inventory (excluding agriculture assets)?**

- ■ No. Go to Part 6.
- ☐ Yes Fill in the information below.

---

| Part 6: | Farming and fishing-related assets (other than titled motor vehicles and land) |

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

- ■ No. Go to Part 7.
- ☐ Yes Fill in the information below.

---

| Part 7: | Office furniture, fixtures, and equipment; and collectibles |

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

- ■ No. Go to Part 8.
- ☐ Yes Fill in the information below.

---

| Part 8: | Machinery, equipment, and vehicles |

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

- ■ No. Go to Part 9.
- ☐ Yes Fill in the information below.

---

| Part 9: | Real property |

**54. Does the debtor own or lease any real property?**

- ☐ No. Go to Part 10.
- ■ Yes Fill in the information below.

**55.** **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1. **Residence: mixed use** | | $0.00 | | $15,000,000.00 |

**56.** **Total of Part 9.**
Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88.

| | $15,000,000.00 |

**57.** **Is a depreciation schedule available for any of the property listed in Part 9?**
- ■ No
- ☐ Yes

**58.** **Has any of the property listed in Part 9 been appraised by a professional within the last year?**
- ■ No
- ☐ Yes

---

Official Form 206A/B                 Schedule A/B Assets - Real and Personal Property                 page 2

| Debtor | **78-80 St. Marks Place, LLC** | Case number *(If known)* | |
|---|---|---|---|
| | Name | | |

---

Part 10:   **Intangibles and intellectual property**

**59. Does the debtor have any interests in intangibles or intellectual property?**

◼ No.  Go to Part 11.
☐ Yes Fill in the information below.

---

**Part 11:**   **All other assets**

**70. Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

☐ No.  Go to Part 12.
◼ Yes Fill in the information below.

| | | Current value of debtor's interest |
|---|---|---|
| 71. | **Notes receivable**<br>Description (include name of obligor) | |
| 72. | **Tax refunds and unused net operating losses (NOLs)**<br>Description (for example, federal, state, local) | |
| 73. | **Interests in insurance policies or annuities** | |
| | **property term policy** | **Unknown** |
| 74. | **Causes of action against third parties (whether or not a lawsuit has been filed)** | |
| | **rent owed by tenant** | **Unknown** |
| | Nature of claim   **breach of lease** | |
| | Amount requested   **$26,550.00** | |
| 75. | **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims** | |
| 76. | **Trusts, equitable or future interests in property** | |
| 77. | **Other property of any kind not already listed** *Examples:* Season tickets, country club membership | |
| 78. | **Total of Part 11.**<br>Add lines 71 through 77. Copy the total to line 90. | **$0.00** |

**79. Has any of the property listed in Part 11 been appraised by a professional within the last year?**
◼ No
☐ Yes

---

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                   Best Case Bankruptcy

| Debtor | **78-80 St. Marks Place, LLC** | Case number *(If known)* | |
|---|---|---|---|
| | Name | | |

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | | Current value of personal property | Current value of real property |
|---|---|---|---|
| 80. | **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $0.00 | |
| 81. | **Deposits and prepayments.** *Copy line 9, Part 2.* | $12,000.00 | |
| 82. | **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | |
| 83. | **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. | **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. | **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. | **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87. | **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88. | **Real property.** *Copy line 56, Part 9.*.....................................................................> | | $15,000,000.00 |
| 89. | **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. | **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. | **Total.** Add lines 80 through 90 for each column | $12,000.00 | + 91b.   $15,000,000.00 |
| 92. | **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $15,012,000.00 |

# **<u>EXHIBIT D</u>**

**Fill in this information to identify the case:**

Debtor name       **78-80 St. Marks Place, LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF NEW YORK

Case number (if known)

☐ Check if this is an
amended filing

## Official Form 206G

## Schedule G: Executory Contracts and Unexpired Leases                    12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1. **Does the debtor have any executory contracts or unexpired leases?**
   ☐ No. Check this box and file this form with the debtor's other schedules.  There is nothing else to report on this form.
   ■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal*  *Property*
   (Official Form 206A/B).

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| **2.1.** State what the contract or lease is for and the nature of the debtor's interest  **month to month residential tenant** | |
| State the term remaining | **Aya Ikeda**<br>**78 St Marl's Place**<br>**New York, NY 10003** |
| List the contract number of any government contract | |
| **2.2.** State what the contract or lease is for and the nature of the debtor's interest  **residential lease** | |
| State the term remaining  **8 months** | **Ori Kushnir & Savan Lahat**<br>**78 St Mark's Place**<br>**New York, NY 10013** |
| List the contract number of any government contract | |
| **2.3.** State what the contract or lease is for and the nature of the debtor's interest  **commercial lease for tavern** | |
| State the term remaining  **13 years** | **Scheib's Place Inc.**<br>**80 St, Mark's Place**<br>**New York, NY 10003** |
| List the contract number of any government contract | |

---

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

# **EXHIBIT E**

## FORBEARANCE AGREEMENT

This Forbearance Agreement (this "**Forbearance Agreement**") is entered into as of January 14, 2021, by and among (i) (a) 78-80 St. Marks Place, LLC, a New York limited liability company (the "**Borrower**"), and (b) Lawrence V. Otway, a/k/a Lawrence Lorcan Otway, a/k/a Lorcan Otway, individually, whose principal residence is located at 78-80 St. Marks Place, Apartment No.1 , New York, New York 10003 ("**Guarantor**"; and together with Borrower are collectively referred to herein as the "**Obligors**"), (ii) Eugenie Otway, individually, whose principal residence is located at 78-80 St. Marks Place, Apartment No. 1, New York, New York 10003 ("**EO**"), (iii) Scheib's Place, Inc., a New York corporation ("**SPI**"), (iv) Exhibition of the American Gangster, Inc., a New York corporation ("**AGI**"), (v) Theater 80 LLC, a New York limited liability company ("**Theater 80**"), and (vi) St. Mark's Mixed Use LLC (the "**Lender**"). Each of the Obligors, EO, SPI, AGI, Theater 80 and the Lender are sometimes referred to herein individually as a "**Party**", and the Obligors, EO, SPI, AGI, Theater 80 and the Lender are sometimes collectively referred to herein as the "**Parties**". Each of the Obligors, EO, SPI, AGI, and Theater 80 are sometimes referred to herein individually as an "**Obligor Related Party**", and the Obligors, EO, SPI, AGI, and Theater 80 are sometimes collectively referred to herein as the "**Obligor Related Parties**".

**WHEREAS**, Borrower is a New York limited liability company and is the fee owner of the premises known as 78-80 St. Marks Place, New York, New York 10003 (Block: 449, Lot: 28) (the "**Mortgaged Premises**");

**WHEREAS**, SPI is a New York corporation;

**WHEREAS**, AGI is a New York corporation;

**WHEREAS**, Theater 80 is a New York limited liability company;

**WHEREAS**, on or about November 12, 2019, the Borrower borrowed the principal sum of six million one hundred thousand and 00/100 dollars ($6,100,000.00) from 80 St. Marks Place Funding LLC ("**Funding LLC**"), which loan is evidenced by a Promissory Note, dated as of November 12, 2019 (the "**Note**"), which Note was duly executed by Borrower and delivered by Borrower to Funding LLC;

**WHEREAS**, in order to secure its obligations under the Note, the Borrower, as mortgagor, duly executed, acknowledged and delivered to Funding LLC, as mortgagee, a Mortgage and Security Agreement, dated as of November 12, 2019 (the "**Mortgage**"), which Mortgage encumbers the Mortgaged Premises. The Mortgage was duly recorded in the Office of City Register of the City of New York, New York County (the "**Register's Office**") on November 22, 2019 at CRFN 2019000383130. Any applicable recording tax was duly paid at the time the Mortgage was recorded. The Mortgage constitutes a valid first priority mortgage and lien on the Mortgaged Premises;

**WHEREAS**, in order to further secure its obligations under the Note and Mortgage, the Borrower duly executed, acknowledged and delivered to Funding LLC an Assignment of Leases and Rents, dated as of November 12, 2019 (the "**ALR**"), which ALR was duly recorded with the

Register's Office on December 4, 2019 under CRFN: 2019000395326;

**WHEREAS**, in order to induce Funding LLC to make the Loan to the Borrower, Guarantor duly executed and delivered to Funding LLC a certain Guaranty, dated as of November 12, 2019 (the "**Guaranty**"). Pursuant to the Guaranty, the Guarantor absolutely, unconditionally and irrevocably guaranteed to Funding LLC the payment to the Lender of all amounts and obligations under the Note, the Mortgage and other Loan Documents (as defined below) when same become when due and payable, and the due and prompt performance of all obligations, terms, agreements and covenants under all of the Loan Documents;

**WHEREAS**, the Guarantor is the sole member of the Borrower and the Guarantor owns 100% of the limited liability company membership interests in the Borrower, and in order to further secure, among other things, the Borrower's obligations under the Note and the other Loan Documents, the Guarantor pledged to Funding LLC, among other things, all of his right, title and interest in, to and under his membership interests in the Borrower and the other "Collateral", as that term is defined in that certain Pledge and Security Agreement dated as of November 12, 2019 (the "**Pledge Agreement**")(the "Collateral" as defined in the Pledge Agreement is referred to herein as the "**Pledged Collateral**");

**WHEREAS**, Funding LLC perfected its security interest against the Pledged Collateral by, among other things, taking possession of the certificate of membership interests (the "**Certificated Interest**") in the Borrower pledged under the Pledge Agreement and also by duly filing a UCC-1 financing statement (the "**UCC-1**"), which adequately described the Pledged Collateral, with the New York State Department of State on December 18, 2019, designated as File No. 201912180587574. The Certificated Interest and the UCC-1 constitute a valid and perfected first priority lien on the Pledged Collateral;

**WHEREAS**, on December 1, 2020, the Note was duly assigned by Funding LLC to the Lender pursuant to, among other things, an Allonge to Promissory Note, dated December 1, 2020 (the "**Allonge**");

**WHEREAS**, in addition, on December 1, 2020, Funding LLC assigned, among other things, the Mortgage to the Lender, as evidenced by an Assignment of Mortgage, dated as of December 1, 2020 (the "**Mortgage Assignment**"). The Mortgage Assignment was duly submitted for recording in the Register's Office;

**WHEREAS**, in addition, on December 1, 2020, Funding LLC assigned, among other things, the ALR to Plaintiff, as evidenced by an Assignment of Assignment of Leases and Rents, dated as of December 1, 2020 (the "**ALR Assignment**"). The ALR Assignment was duly submitted for recording in the Register's Office;

**WHEREAS**, in addition, Funding LLC assigned, among other things, the UCC-1 to Plaintiff, as evidenced by a UCC Financing Statement Amendment (the "**UCC-3**");

**WHEREAS**, in addition, pursuant to an Omnibus Assignment of Loan Documents dated as of December 1, 2020 (the "**Omnibus Assignment**"), the Note, the Mortgage, the Guaranty, the Pledge Agreement, the ALR, the Certificated Interest, the UCC-1 and all of the other Loan Documents were each duly assigned by Funding LLC to the Lender. The Note, the Mortgage,

573231-1

2

the ALR, the Guaranty, the Pledge Agreement, the Allonge, the Mortgage Assignment, the ALR Assignment, the Certificated Interest, the UCC-1, the UCC-3, the Omnibus Assignment and all other documents evidencing, securing, or guaranteeing the Loan and/or the assignment thereof to the Lender are collectively referred to herein as the "**Loan Documents**";

**WHEREAS**, pursuant to the Allonge, the Mortgage Assignment, the ALR Assignment, the UCC-3 and the Omnibus Assignment, the Lender is the current holder and owner of the Loan and all of the Loan Documents, and the Lender has standing to enforce the Note, the Pledge Agreement, and other Loan Documents;

**WHEREAS**, pursuant to the Note the Borrower is obligated to pay to the holder of the Note, among other things, installments of interest, and the balance of the principal, interest, and all other sums due under the Loan Documents on December 1, 2020 (the "**Maturity Date**");

**WHEREAS**, the Mortgage provides that the Borrower shall pay all of the indebtedness evidenced by the Note at the time and in the manner as provided for in the Note;

**WHEREAS**, the Borrower breached and defaulted on its obligations under the Note, the Mortgage and the other Loan Documents by, among other things, and without limitation, failing and omitting to pay in full all obligations under the Loan Documents on or before the Maturity Date (*i.e.*, December 1, 2020);

**WHEREAS**, the Borrower's failure to pay the entire indebtedness within five (5) days of when it became due, constitutes an "Event of Default" as defined in the Note and the Mortgage;

**WHEREAS**, the Lender duly sent to the Borrower and the Guarantor a letter dated December 7, 2020, which letter duly notified the Borrower and the Guarantor, among other things, (i) that on December 1, 2020, the Loan matured by its terms and the entirety of the indebtedness became immediately due and payable pursuant to the Note and the Mortgage, (ii) that the Borrower failed to pay the entire indebtedness within five (5) days of when it became due, constituting an Event of Default under both the Note and the Mortgage, and (iii) interest on the indebtedness began to accrue at the "Default Rate" as defined in the Note and Mortgage from and after December 2, 2020;

**WHEREAS**, as a result of, among other things, the Borrower's failure to pay all amounts due under the Loan Documents on the Maturity Date, the Loan is now immediately due and payable in full and the Lender is entitled to, among other things, (i) foreclose the Mortgage and the personalty located at the Mortgaged Premises, (ii) foreclose on all collateral granted by the Guarantor to the Lender under the Pledge Agreement, including, without limitation, all of the Guarantor's limited liability company membership interests in the Borrower, and (iii) exercise all of the Lender's rights and remedies under all of the Loan Documents;

**WHEREAS**, without limiting in any manner any other existing defaults, the Obligors are now in default under the Loan Documents based upon the Borrower's failure to pay to the Lender all amounts due under the Loan Documents on the Maturity Date (the "**Stated Default**");

3

**WHEREAS**, any and all notice provisions contained in all of the Loan Documents have been complied with by the Lender and any applicable grace periods, if any, pertaining to Obligors' defaults occurring prior to the date of this Forbearance Agreement have expired or have been forever waived by the Obligors;

**WHEREAS**, as of December 31, 2020, there is due and owing to the Lender under the Note, the Mortgage, the Guaranty, the Pledge Agreement, and the other Loan Documents the following amounts:

| Payoff | |
|---|---|
| Principal Balance | $6,100,000.00 |
| Interest | $122,000.00 |
| Protective Advances | $0.00 |
| Legal Fees (through 12/18/20) | $23,653.65 |
| **Total Due** | **$6,245,653.65** |

Total Due: $6,245,653.65[1] as of December 31, 2020;

**WHEREAS**, the Lender is currently entitled to exercise any and all of its rights and remedies under the Note, the Mortgage, the Guaranty, the Pledge Agreement, and each of the other Loan Documents; and

**WHEREAS**, each of the Obligors has requested that the Lender temporarily forbear from enforcing its rights under the Loan Documents based on the Stated Default, and the Lender is willing to do so, but only on the terms and conditions of this Forbearance Agreement.

**NOW, THEREFORE**, in consideration of the sum of $10.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

1.  Recitals Incorporated Herein. The Parties acknowledge, represent and agree that each of the facts set forth in the recitals above are true and correct in all respects and are incorporated herein as if fully set forth in the body of this Forbearance Agreement.

2.  Forbearance; Consent to Judgment of Foreclosure; Consent to Sale of the Mortgaged Premises; Consent to Sale of the Pledged Collateral.

    (a)  In consideration of the Obligor Related Parties' payment and performance of all of their other obligations under this Forbearance Agreement, and subject to (1) the continued validity of the representations and warranties of the Obligor Related Parties set forth in this

---

[1] Legal fees and protective advances are reflected herein only as of December 18, 2020. Additional legal fees and expenses and protective advances have accrued and continue to accrue after December_18, 2020 and such additional amounts are owed under the Loan Documents and shall be added to the Payoff Amount (as defined herein below).

4

Forbearance Agreement, and (2) the termination provisions set forth in Section 7 below, the Lender shall temporarily forbear from further enforcing any of its remedies under the Pledge Agreement during the period from the date hereof to and including April 15, 2021 (the "**Forbearance Date**"); notwithstanding the foregoing however, the foregoing provisions shall not apply to the Lender taking any of the actions described in Sections 2(b) through (p) below or otherwise set forth elsewhere in this Forbearance Agreement.

(b)     The Lender shall file a complaint against the Obligor Related Parties and such other persons and entities as the Lender may in its sole discretion determine seeking to enforce its rights against the Obligor Related Parties and any other persons or entities, including, without limitation, to foreclose on the Mortgaged Premises. The Obligor Related Parties hereby expressly consent to the immediate filing of the complaint in substantially the form attached hereto as Exhibit A (the "**Complaint**") in the Supreme Court of the State of New York for New York County (the "**State Court**") and the Obligor Related Parties consent to the relief set forth in the Complaint. The action in the State Court based on the Complaint is referred to herein as the "**Foreclosure Action**".

(c)     The Obligor Related Parties shall, simultaneously herewith, execute and deliver to the Lender a Consent Judgment of Foreclosure and Sale (the "**Judgment**"), in the form of Exhibit B hereto, pursuant to which, among other things, (i) the Obligor Related Parties shall admit all allegations in the Complaint, (ii) the Obligor Related Parties consent to all relief requested in the Complaint, and (iii) a judgment shall be granted in favor of the Lender fixing the amount of its judgment as set forth therein and the State Court shall direct the foreclosure sale of the Mortgaged Premises (a "**Foreclosure Sale**").

(d)     The Lender shall immediately take any and all acts and actions to prosecute the Foreclosure Action in any and all respects, including, without limitation, serving a summons and the Complaint on any and all defendants, filing and serving any motions or pleadings of any kind therein and seeking the entry of the Judgment. The Obligor Related Parties shall execute and deliver to counsel for the Lender a stipulation (the "**Stipulation**"), in the form of Exhibit C hereto, among other things, (i) acknowledging service of the summons and Complaint in the Foreclosure Action, a notice of pendency, and a notice of mandatory electronic filing, and (ii) containing the waivers and consents in connection with the Foreclosure Action set for the in this Forbearance Agreement (including, without limitation, those set forth in Section 2, 8, 10 and 15) of this Forbearance Agreement). The Obligor Related Parties shall execute and deliver the Stipulation to counsel for the Lender not later than three (3) days after counsel for the Lender sends a copy of the Stipulation to counsel for the Obligor Related Parties by email and requests that it be executed and delivered. Each of the Obligor Related Parties hereby represents to the Lender that its counsel is Scott Markowitz, Esq. at Tarter Krinsky & Drogin LLP, and his email address is smarkowitz@tarterkrinsky.com.

(e)     The Obligor Related Parties agree that the form of the Judgment may hereafter be modified or amended in the Lender's sole discretion to address any relief or matters of any kind effecting any persons or entities other than the Obligor Related Parties, including, without limitation, any tenants or persons or entities in possession or located in or on any part of the Mortgaged Premises, and the Obligor Related Parties shall, on the Lender's request to the Obligor Related Parties' counsel, immediately execute and deliver all such documents as the Lender may request in connection therewith.

5

(f)     Without limiting any of the foregoing, the Obligor Related Parties hereby expressly: (i) waive any and all defenses to the Foreclosure Action and the Complaint, with prejudice, including, without limitation, the defenses of improper service, lack of jurisdiction, lacking of standing, payment, waiver, estoppel, laches, unclean hands, unconscionability, the election of remedies defense, or any claim that the Obligors are not in default under the Loan Documents or that the Note fully matured and that all obligations became due and payable on December 1, 2020; (ii) admit all allegations in the Complaint; (iii) acknowledge and re-affirm the Obligors' due execution of each of the Loan Documents; (iv) agree that none of the Obligor Related Parties shall file any answer, counterclaim, motion, order to show cause or notice of appeal, and that none of the Obligor Related Parties shall contest or delay the Foreclosure Action or the Judgment in any way; (v) admit and acknowledge that, as of December 31, 2020 the Payoff Amount of $6,245,653.65 is due and owing to the Lender (and that additional attorneys' fees and expenses and protective advances have accrued after December 18, 2020 and continue to accrue, and such amounts shall be added to the Payoff Amount and the amount of the Judgment) and interest thereon at the rate of 24% per annum continues to accrue and shall be added to the Payoff Amount and the amount of the Judgment; (vi) waive the appointment of a referee in the Foreclosure Action to compute the sums due and owing to the Lender and hereby consent to the immediate entry of the Judgment, which incorporates the amounts due and owing to the Lender and agree that the Mortgaged Premises shall be sold in one parcel; and (vii) irrevocably and unconditionally agree that the Lender may present the Judgment to the Justice assigned in the Foreclosure Action for signature without any further notice to the Obligor Related Parties and that the Judgment may be presented to the Clerk of Court for entry at any time in the Lender's sole discretion. In addition, all of the foregoing waivers and consents shall also be included in the Stipulation.

(g)     The Obligors shall, within five (5) business days after the date of this Forbearance Agreement, execute and deliver a listing agreement with the firm of Lee & Associates Licensing & Administration Co., L. P., 845 Third Avenue, New York New York 10002 (the "**Broker**") in a form approved by the Lender (the "**Broker Listing Agreement**") pursuant to which the Obligors shall retain the Broker to market and sell the Mortgaged Premises (on the time frame set forth below), on an exclusive basis, and pay the Broker a commission of 3.5% upon the sale of the Mortgaged Premises. The Obligors shall be solely responsible for any broker's commissions with respect to the sale of the Mortgaged Premises.

(h)     If the Obligors have not paid the Payoff Amount in full to the Lender by 10:00 a.m. on April 15, 2021, then the Broker shall immediately begin to market, list and advertise the Mortgaged Premises for immediate sale.

(i)     The Obligors shall not enter into any lease, contract or other agreement for the sale, lease or use of the Mortgaged Premises, or any part thereof, without the Lender's express prior written consent, provided that such consent will not be unreasonably withheld if (i) the contract is for the sale of all of the Mortgaged Premises and contains a 10% non-refundable deposit to be held in escrow by Borrower's counsel pending a closing, (ii) the sale price of the Mortgaged Premises is more than 120% of the Payoff Amount on the date the contract is signed, (iii) the closing of the sale must be set for a date that is not later than 30 days after the date the contract is executed, time being of the essence as to the closing date, and (iv) the obligation of the buyer to close is not subject to any

6

contingencies whatsoever, including, without limitation, as to financing, zoning, development or any other matter of any kind.

        (j)     If the Obligors have not entered into a contract for the sale of Mortgaged Premises by May 15, 2021 in a form consented to by the Lender, then the asking price of the Mortgaged Premises shall be reduced to $11,000,000.

        (k)     If the Obligors have not entered into a contract for the sale of Mortgaged Premises by June 15, 2021 in a form consented to by the Lender, then the asking price of the Mortgaged Premises shall be reduced to $10,000,000.

        (l)     If the Obligors have not entered into a contract for the sale of Mortgaged Premises by July 15, 2021 in a form consented to by the Lender, then the asking price of the Mortgaged Premises shall be reduced to $8,500,000 or such lesser amount as the Lender may determine in its sole and absolute discretion.

        (m)     If and only if no Termination Event (as defined below) occurs, then the Lender will forbear, until and including August 15, 2021, from scheduling either (i) a foreclosure sale of the Mortgaged Premises or (ii) a foreclosure sale of the Pledged Collateral. On and after August 16, 2021 (or on any earlier date on which a Termination Event hereunder has occurred) the Lender may enforce all of its rights under the Loan Documents, including without limitation, taking any and all steps whatsoever to enforce the Judgment and schedule, advertise, and conclude a foreclosure sale of the Mortgaged Premises and/or a foreclosure sale of the Pledged Collateral, and may thereafter continue to enforce any and all of its rights under the Loan Documents, the Judgment, applicable law, equity and otherwise, including, without limitation, its rights to any deficiency judgment. If and only if the Payoff Amount is paid in full by the Obligors to the Lender on or before August 15, 2021, the Lender agrees that the Judgment shall be vacated (to the extent it has been signed and entered by the Court) and the Lender shall not enforce such Judgment.

        (n)     The Stipulation shall also contain a consent by the Obligor Related Parties to the immediate appointment of a receiver for the Mortgaged Premises and that the such receiver may be any person selected by the Lender.

        (o)     The Obligor Related Parties and their counsel shall use best efforts to timely and fully cooperate with the Lender in connection with all matters related to the sale of the Mortgaged Premises and/or the Pledged Collateral, including, without limitation, (i) providing information about the Mortgaged Premises, (ii) providing access, upon 24 hours prior notice, from time to time, to the Mortgaged Premises to the Broker, any other brokers, the Lender, any prospective purchaser of the Mortgaged Premises and all agents and representatives of all of the foregoing, and (iii) executing all documents and performing all acts requested by the Lender in connection with or related to the sale (including, without limitation, a Broker Listing Agreement, advertisement, a deed, a title affidavit, and transfer tax forms). The Obligor Related Parties hereby each grant the Lender an irrevocable power of attorney, coupled with an interest, to take any and all acts on behalf of each Obligor Related Party in connection with the sale of the Mortgaged Premises and/or the Pledged Collateral, including, without limitation, to execute and deliver any and all documents in connection with the sale of the Mortgaged Premises and/or the Pledged Collateral (including, without limitation, an advertisement of sale, a deed, a title

7

affidavit and transfer tax forms). Notwithstanding, the foregoing nothing herein shall require the Lender to take any act and the Lender shall have no obligation to do so. In addition, the Lender shall be fully exonerated and shall have no liability to any of the Obligor Related Parties or any other person or entity for any acts taken or not taken by the Lender in connection with the sale of the Mortgaged Premises and/or the Pledged Collateral.

3.     <u>Interest Rate; Financial Statements</u>. (a) <u>Interest Rate; Payoff Amount; Financial Statements</u>.

(a)     Interest shall continue to accrue at the default rate of 24% per annum provided in the Note from December 2, 2020 until the date that the Obligors have indefeasibly paid and satisfied all of their obligations (including, without limitation, principal, interest, default rate interest, late fees, service fees, legal fees and expenses, protective advances, and all other fees and charges) under each of the Loan Documents and this Forbearance Agreement (collectively, the "**Payoff Amount**").

(b)     The Obligors shall promptly deliver to the Lender any and all financial information that the Lender may reasonably request, including, without limitation, (i) a current rent roll for Mortgaged Premises; (ii) the operating agreement and other organizational documents of the Borrower; (iii) copies of all leases for the Mortgaged Premises; and (iv) proof of insurance of the Mortgaged Premises and Obligors.

4.     <u>Payments to the Lender By Wire Transfer</u>.  All payments to the Lender shall be made by wire transfer pursuant to such wire transfer instructions as the Lender shall provide to the Obligors' counsel upon request therefore.

5.     <u>No Reinstatement of any Loan</u>. The Lender's acceptance of any payment (other than total indefeasible payment in cash of the Payoff Amount) made by any of the Obligor Related Parties on or after the date hereof, nor the Lender's application of any of such payments to amounts owing under the Loan Documents, shall constitute or be construed as: (a) a waiver by the Lender of (i) the Stated Default or any other breach or default by any of the Obligor Related Parties under any or all of the Loan Documents or this Forbearance Agreement, (ii) any of the Lender's rights or remedies in connection with the Loan, any of the Loan Documents or this Forbearance Agreement, or (iii) any of the provisions of the Loan Documents or this Forbearance Agreement; or (b) a cure of the Stated Default or any other breach or default by any of the Obligor Related Parties under the Loan Documents or this Forbearance Agreement.

6.     <u>Application of Payments</u>. Any payments made by any of the Obligor Related Parties to the Lender on or after the date hereof may be accepted by the Lender and applied against the obligations owed under the Loan Documents in such manner as the Lender may hereafter determine from time to time, all in the Lender's sole and absolute discretion.

7.     <u>Termination</u>. The agreement by the Lender to forbear under the terms of this Forbearance Agreement shall automatically terminate, without any notice, any further act or otherwise, upon the earliest to occur of any of the following events:

7.1     The Forbearance Date; or

8

7.2    A Termination Event (as such term is defined in Section 9 below); or

7.3    The Lender hereafter becomes aware of any fact or circumstance that the Lender believes in good faith is reasonably likely to impair any of the Lender's collateral under the Loan Documents, including, without limitation, its first priority liens on all of the Mortgaged Premises (other than the failure to pay real estate taxes on the Mortgaged Pemises), and all collateral under the Pledge Agreement.

8.    Representations and Warranties. In order to induce the Lender to enter into this Forbearance Agreement, each of the Obligor Related Parties hereby represents, warrants and covenants to the Lender as follows, all of which representations, warranties and covenants shall survive the execution of this Forbearance Agreement:

8.1    Binding Obligations. The Note, the Mortgage, the ALR, the Guaranty, the Pledge Agreement, and all of the other Loan Documents and this Forbearance Agreement, have been duly executed and delivered by the Obligor Related Parties (as applicable) and constitute legal, valid and binding obligations of the Obligor Related Parties (as applicable), enforceable in accordance with their respective terms.

8.2    No Defenses or Claims.  (a)  The Obligor Related Parties expressly represent, warrant and acknowledge that: (i) the Lender (or its predecessors as applicable) has provided any notice of default required under the Loan Documents and would be fully entitled to foreclose on any and/or all of its collateral and otherwise exercise all of its rights and remedies on account of the Stated Default, but for the effect of this Forbearance Agreement; (ii) all amounts owed to the Lender under the Note, the Mortgage, the ALR, the Guaranty, the Pledge Agreement, and the other Loan Documents are now due and payable; (iii) the Lender has elected to grant the forbearance hereunder in its sole discretion, and that absent such election there exists no impediment whatsoever to the commencement of the exercise of any and/or all remedies under the Loan Documents; (iv) there are no defenses, offsets or counterclaims of any nature whatsoever to any of the Loan Documents or to the Lender's ownership thereof or the Lender's status as the due holder of the Note, the Mortgage, the ALR, the Guaranty, the Pledge Agreement, and the other Loan Documents or the  Lender's standing to enforce all of the foregoing; (v) the Loan Documents are hereby reaffirmed by the Obligors in their entirety; (vi) the Loan Documents are in full force and effect and the Lender shall not be deemed to waived or modified any of its rights thereunder, at law or in equity by virtue of this Forbearance Agreement, except to the extent specifically provided in Section 2 above; and (vii) none of the Obligor Related Parties is the subject of a bankruptcy proceeding as of the date of this Forbearance Agreement.

(b)    None of the Obligor Related Parties has any defense, affirmative defense, setoff, claim, counterclaim, action, or cause of action of any kind or nature whatsoever against the Lender or any of its past, present, or future directors, officers, employees, agents, attorneys, legal representatives, predecessors, affiliates, successors, or assigns, directly or indirectly, arising out of, based upon, or in any manner connected with any act, transaction, event, circumstance, action, failure to act, or occurrence of any sort or type, whether known or unknown, which occurred, existed, was taken, permitted, or begun prior to the execution of this Forbearance Agreement or which occurred, existed, was taken, permitted, or begun in accordance with, pursuant

9

to, or relating to, or by virtue of the Loan or any of the terms of any of the Loan Documents, or which directly or indirectly relates to or arises out of, or in any manner is connected with, the Loan or any or all of the Loan Documents (including, without limitation, the enforcement by the Lender or its predecessor of any of its rights and remedies under any or all of the Loan Documents); and if any such defense, affirmative defense, setoff, claim, counterclaim, action or cause of action exists without the knowledge of any of the Obligor Related Parties, the same is hereby unconditionally forever waived with prejudice as against the Lender, or any of its past, present or future directors, officers, employees, agents, attorneys, legal representatives, predecessors, affiliates, successors, or assigns.

8.3 <u>Maturity of the Note</u>. Pursuant to the express terms of the Note the entire principal balance together with all other amounts payable under the Note, the Mortgage, the Guaranty, the Pledge Agreement and the other Loan Documents were immediately due and payable on December 1, 2020, and the Obligors have failed to pay such obligations as of the date hereof.

8.4 <u>Representations in Loan Documents</u>. All of the representations and warranties made by each of the Obligors in each of the Loan Documents are true and correct in all material respects as if made on the date hereof, except for those made with respect to financial statements bearing a particular date, which representations and warranties are hereby restated to be effective as of the date of the last such financial statements provided to the Lender by the Obligors in question.

8.5 <u>Insurance Policies</u>. Insurance policies complying with the terms of the Loan Documents are in full force and effect.

8.6 <u>Leases</u>. (a) There are no leases or licenses to use any part of the Mortgaged Premises other than the following leases (the "**Stated Leases**"):

(i) That certain Commercial Lease dated as of November 12, 2019 between the Borrower, as landlord, and SPI, as tenant (the "**2019 Scheib's Lease**"), which lease expired and terminated by its terms on November 12, 2020 and is no longer in effect;

(ii) That certain Commercial Lease dated as of November 12, 2019 between the Borrower, as landlord, and AGI, as tenant (the "**2019 Museum Lease**"), which lease expired and terminated by its terms on November 12, 2020 and is no longer in effect;

(iii) That certain Commercial Lease dated as of November 12, 2019 between the Borrower, as landlord, and the Guarantor, as tenant (the "**2019 Otway Lease**"), which lease expired and terminated by its terms on November 12, 2020 and is no longer in effect;

(iv) That certain Commercial Lease dated as of November 12, 2019 between the Borrower, as landlord, and Theater 80 LLC ("**2019 Theater 80**"), as tenant (the "**Theater Lease**"), which lease expired and terminated by its terms on November 12, 2020 and is no longer in effect;

(v)  That certain Standard Form of Loft Lease, dated as of September 1, 2019, between the Borrower (as successor-in-interest to Lawrence Otway), as landlord, and Mr. Ori Kushnir ("**Kushnir**") and Ms. Sivan Lahat ("**Lahat**"), jointly as tenants (the "**Kushnir/Lahat Lease**"), for the 3rd floor (aka Unit 3) of a portion of the Mortgaged Premises located at 78 St. Marks Place, New York, New York. The Kushnir/Lahat Lease expires on August 31, 2022 and has not been modified, amended or extended in any way whatsoever;

(vi)  That certain Lease Agreement, dated as of August 1, 2019 between the Borrower (as successor-in-interest to Lawrence Otway), as landlord, and Mr. Aya Ikeda, as tenant ("**Ikeda**"), for the Unit 4 of a portion of the Mortgaged Premises located at 78 St. Marks Place, New York, New York (the "**Ikeda Lease**"). The Ikeda Lease expires on July 31, 2021 and has not been modified, amended or extended in any way whatsoever;

(vii)  That certain oral sublease (the "**Oral Sublease**") between Theater 80, as sub-landlord, and SPI, as sub-tenant, for a portion of the ground floor of the Mortgaged Premises for the operation of a tavern/bar;

(viii)  That certain oral agreement (the "**Oral Sub-Sublease**") between SPI, as sub-sub-landlord, and Kushnir and Lahat d/b/a Foxface Sandwich Shop ("**Foxface**") for a portion of the ground floor of the Mortgaged Premises consisting of 200 square feet with a concession window opening to St. Marks Place. Foxface is an unincorporated business, is not a legal entity, and is a business owned and operated solely by Kushnir and Lahat under the trade name Foxface Sandwich Shop;

(ix)  That certain Commercial Lease dated as of November 12, 2020 between the Borrower, as landlord, and SPI, as tenant, for 4,875 square feet of the ground floor/basement of 80 St. Marks Place, New York, New York (the "**2020 Scheib's Lease**");

(x)  That certain Commercial Lease dated as of November 12, 2020 between the Borrower, as landlord, and AGI, as tenant, for 750 square feet of the Gallery Museum at 80 St. Marks Place, New York, New York (the "**2020 Museum Lease**");

(xi)  That certain Lease Agreement dated as of November 12, 2020 between the Borrower, as landlord, and the Guarantor and Mrs. Eugenie Otway, as tenants, for the portion of the Mortgaged Premises known quadplex, a/k/a Unit No.1 (the "**2020 Otway Lease**");

(xii)  That certain Commercial Sublease Agreement dated as of November 12, 2020 between Scheibs Place LLC, as sublessor, and Theater 80, as subtenant, for the auditorium, cellar and backstage at 80 St Marks Place, New York, New York (the "**2020 Theater Sublease**"). Scheibs Place LLC is not a legal entity. The reference to "Scheibs Place LLC" in the 2020 Theater Sublease was a typographical error and the correct name of the sublessor under the 2020 Theater Sublease is "Scheib's Place, Inc."; and

573231-1

(xiii) That certain Sub-Commercial Sublease Agreement dated as of November 12, 2020 between Theater 80, as sublessor, and Meeting Space, as subtenant, for the 2nd floor of the Mortgaged Premises (the "**2020 Meeting Space Sub-Sublease**"). Meeting Space is an unincorporated business, is not a legal entity, and is a business owned and operated solely by the Guarantor under the trade name Meeting Space.

(b)     The Guarantor is (i) the sole shareholder and president of both SPI and AGI; and (ii) the sole member and sole manager of Theater 80. The Guarantor solely owns and controls SPI, AGI, and Theater 80, and each of such entities is an affiliate of the Guarantor.

(c)     The 2019 Scheib's Lease, the 2019 Museum Lease, the 2019 Otway Lease, and the 2019 Theater Lease each expired and terminated by its terms on November 12, 2020 and has not been modified, amended or extended in any way whatsoever, and is no longer in effect.

(d)     The 2020 Museum Lease, the 2020 Otway Lease, the 2020 Theater Sublease and 2020 Meeting Space Sub-Sublease, (i) were each entered into in violation of the Borrower's obligations under the Loan Documents and without the consent of the Lender (or its predecessor-in-interest); and (ii) are each hereby forever terminated and without effect as of the date hereof.

(e)     The 2020 Scheib's Lease (i) was entered into in violation of the Borrower's obligations under the Loan Documents and without the consent of the Lender (or its predecessor-in-interest); and (ii) is hereby automatically forever terminated and without effect as of June 1, 2021.  For the avoidance of doubt, no notice or act shall be required to effectuate the termination of the 2020 Scheib's Lease as of June 1, 2021 and SPI shall vacate and surrender the premises under such lease by June 1, 2021.

(d)     AGI, Guarantor, Theater 80, Foxface and Meeting Space have no legal right to use any part of the Mortgaged Premises as of the date hereof. SPI has no legal right to use any part of the Mortgaged Premises as of June 1, 2021.

(e)     The Oral Sublease and the Oral Sub-Sublease are void and of no effect whatsoever, as among other things, they were entered into without the Lender's (or its predecessor-in-interest's) consent and they are oral only and in violation of the statute of frauds.

(f)     In all events, the Oral Sublease is hereby forever terminated and of no effect whatsoever. As a result of the termination of the Oral Sublease, the Oral Sub-Sublease is terminated as a matter of law due to the termination of the Oral Sublease (i.e. its master lease).

(g)     In all events, the Oral Sub-Sublease is hereby forever terminated and of no effect whatsoever.

8.7     Compliance with Laws. The Obligor Related Parties are in compliance with all material laws, ordinances, rules and regulations of all governmental entities (and all agencies,

12

bodies and subdivisions thereof) affecting the ownership, use, or operation of the Mortgaged Premises, and none of the Obligor Related Parties has received any notice of noncompliance from any such governmental entity with respect to the Mortgaged Premises or that appropriate corrective action is being taken to promptly cure any non-compliance issues(s).

        8.8     No Breach of Other Agreements. Neither the execution or delivery of this Forbearance Agreement, nor the consummation of this transactions contemplated by this Forbearance Agreement, nor the compliance with the terms and provisions hereof: (i) will constitute or result in a breach of any of any the Obligor Related Party's respective articles of incorporation or operating agreement, or will constitute or result in a violation of any law, order, writ, injunction, or decree of any court or governmental department, commission, board, bureau, agency, or instrumentality applicable to any of the Obligor Related Parties; (ii) will conflict or will be inconsistent with, or will result in any breach of, any of the terms, covenants, conditions, or provisions thereof; or (iii) will constitute a default under any indenture, mortgage, instrument, documents, agreement, or contract of any kind to which any of the Obligor Related Parties may be bound or subject.

        8.9     The Obligor Related Parties Benefitted. The Obligor Related Parties have each derived direct and substantial benefits from this Forbearance Agreement and the transactions contemplated by this Forbearance Agreement.

        8.10   Other Documents. (a) All documents, reports, certificates, financial statements, and other statements of any kind furnished to the Lender by or on behalf of each of the Obligor Related Parties in connection with the transactions contemplated by this Forbearance Agreement: (i) are true, correct, and complete in all material respects; (ii) do not contain any untrue statement of material fact; and (iii) do not omit any fact necessary to make the information contained therein not misleading.

        (b)     The continued validity in all respects of all representations and warranties made by the Obligor Related Parties in the Loan Documents, this Forbearance Agreement and any other documents delivered by the Obligor Related Parties in connection with this Forbearance Agreement constitutes a condition precedent to the Lender's agreements under this Forbearance Agreement.

        8.11   Forbearance Agreement Is Duly Executed and Enforceable. Each of the signatories, on behalf of the Obligor Related Parties, to this Forbearance Agreement has full and complete authorization and power to execute and deliver this Forbearance Agreement in the capacity herein stated. This Forbearance Agreement is a valid, binding and enforceable obligation of each of the Obligor Related Parties and does not violate any law, rule or regulation, or any contract or agreement to which any of the Obligor Related Parties is a party. None of the Obligor Related Parties has conveyed, transferred, assigned, pledged or otherwise encumbered any claim or causes of action covered by the releases set forth in this Forbearance Agreement.

        8.12   Benefitted From This Stipulation. The Borrower, the Guarantor and the other Obligor Related Parties have each derived direct and substantial benefits from this Forbearance Agreement.

13

9.    Termination Events. The occurrence of any one or more of the following shall constitute a "**Termination Event**" under this Forbearance Agreement:

9.1    Failure to Perform Obligations. The failure of the Obligor Related Parties to observe or perform any of its respective obligations under this Forbearance Agreement when due; or

9.2    Other Loan Defaults. The occurrence of any of the following: (i) any "Event of Default" (as defined in the Note) under the Note (other than the timely payment of real estate taxes on the Mortgaged Premises); (ii) any "Event of Default" (as defined in the Mortgage) under the Mortgage(other than the timely payment of real estate taxes on the Mortgaged Premises); or (iii) any default or event of default under any of the other Loan Documents (other than the Stated Default), and the applicable Obligors' time, if any, to cure the same has expired under the applicable Loan Document(s); or

9.3    Misrepresentation. If any representation or warranty made herein, or in any report, certificate, financial statement or other instrument or document furnished in connection with this Forbearance Agreement or contemplated hereby, shall prove to have been materially false or misleading on the date as of which it was made; or

9.4    Judgment. Entry of a judgment or filing of a lien after the date hereof against any of the Obligor Related Parties, the Mortgaged Premises, or any other property of any of the Obligor Related Parties;

9.5    Failure to Maintain Insurance. If at any time (i) the Borrower fails to maintain insurance on the Mortgaged Premises in accordance with the Mortgage or (ii) such insurance fails to include the Lender as an additional insured or fails to provide that the Lender is the sole loss payee. The Borrower shall provide a copy of its insurance policy and proof of insurance within 48 hours of any request by the Lender.

9.6    Bankruptcy. If any of the Obligor Related Parties shall: (i) make a general assignment for the benefit of creditors; (ii) file a voluntary petition or a petition or answer seeking reorganization or an arrangement with creditors or take advantage of any bankruptcy, reorganization, insolvency, readjustment of debt, dissolution, or liquidation statute or law, or make or file an answer admitting material allegations of a petition filed against it in any proceeding under any such law; (iii) have any bankruptcy proceedings commenced against it by any person or entity; or (iv) have entered against it an order, judgment or decree of any court of competent jurisdiction approving a petition seeking reorganization of assets or appointing a receiver, trustee, or liquidator for any assets.

10.    Covenants Regarding the Mortgaged Premises.

(a)    The Obligor Related Parties shall not in any way whatsoever modify, amend, extend or renew any of the Stated Leases without the Lender's express prior written consent, and any modification, amendment, extension or renewal of any of the Stated Leases without the Lender's express prior written consent shall be void *ab initio* and of no effect

14

573231-1

whatsoever. Neither of the Obligor Related Parties shall enter into any agreement of any kind or nature concerning the lease, license, use or sale of the Mortgaged Premises, or any part thereof, without the Lender's express prior written consent, and any such agreement entered into by any Obligor Related Party without the Lender's express prior written consent shall be void *ab initio* and of no effect whatsoever.

(b)     The Borrower, SPI, AGI, the Guarantor, EO, Theater 80 and Meeting Space, and all relatives of the Guarantor and all persons and entities directly or indirectly controlled by either of the Obligors shall completely vacate, and shall cause Foxface, Kushnir, Lahat, and Ikeda to completely vacate, the Mortgaged Premises (other than Kushnir and Lahat with respect to the portion of the Mortgaged Premises demised under the Kushnir/Lahat Lease) no later than July 31, 2021, time being of the essence. In the event that any of the Borrower, SPI, AGI, the Guarantor, EO, Theater 80, Foxface, Kushnir, Lahat, or Ikeda fails to completely vacate the Mortgaged Premises by July 31, 2021 (other than Kushnir and Lahat with respect to the portion of the Mortgaged Premises demised under the Kushnir/Lahat Lease), time being of the essence, then the Obligor Related Parties shall be jointly and severally liable to the Lender in the sum of $200,000 as liquidated damages for the failure of the Obligor Related Parties to timely cause each of the Borrower, SPI, AGI, the Guarantor, EO, Theater 80, Foxface, Kushnir, Lahat, and Ikeda to timely vacate the Mortgaged Premises as required by this Section 10 (b), time being of the essence. Notwithstanding the foregoing, SPI, AGI, the Guarantor, EO, Theater 80, Meeting Space, Kushnir, and Lahat, shall not be obligated to vacate the Mortgaged Premises by July 31, 2021 if and only if each of the following conditions precedent are satisfied not later than July 15, 2021, time being of the essence: (i) the Obligors and a buyer acceptable to the Lender have entered into a fully executed and delivered contract to sell the Mortgaged Premises for an amount greater than $8,500,000 (an "**Executed Sale Agreement**"), (ii) the Executed Sale Agreement has been approved in writing by the Lender, (iii) the Executed Sale Agreement provides that the closing of the sale of the Mortgaged Premises shall occur not later than August 15, 2021, time being of the essence, and (iv) the buyer under the Executed Sale Agreement has expressly agreed, in a writing acceptable to the Lender, that (x) such person or entity may remain in possession of the Mortgaged Premises, (y) that the failure of such person or entity to vacate the Mortgaged Premises shall not in any way be used by the buyer to refuse to close, or to delay or condition the closing of, the sale of the Mortgaged Premises pursuant to the Executed Sale Agreement, and (z) the buyer forever waives any right to refuse to close, or to delay or condition the closing of, the sale of the Mortgaged Premises pursuant to the Executed Sale Agreement based on the occupancy of any part of the Mortgaged Premises by SPI, AGI, the Guarantor, EO, Theater 80, Meeting Space, Kushnir, and/or Lahat, or any person or entity that is affiliated with, a relative of, or under the control of any of them.

11.     Remedies. Without limiting the rights and remedies of the Lender under any of the other Loan Documents, under this Forbearance Agreement, or under applicable law or in equity, immediately upon the occurrence of any Termination Event hereunder (without any notice or any opportunity to cure), the obligations and agreements of the Lender under this Forbearance Agreement shall immediately terminate, and the Lender shall have the right to immediately exercise any and all rights and remedies available to it hereunder, under the Judgment, under any and all of the other Loan Documents and under applicable law, without regard to any notice or cure period contained therein or otherwise available. All rights and remedies available to the Lender under this Forbearance Agreement, the Judgment, any of the Loan Documents and applicable law may be

asserted concurrently, cumulatively, or successively, from time to time, as long as any indebtedness or obligations under the Loan Documents shall remain unpaid or outstanding. By entering into this Forbearance Agreement, or accepting any payments hereunder, the Lender shall in no way be considered to have waived or be estopped from exercising any or all of its rights and remedies under any of the Loan Documents. Nothing contained herein shall be considered a forgiveness of any obligation under the Loan Documents (except the full, timely payment of the Payoff Amount) and the accommodations made by the Lender herein do not constitute a "course of dealing" or a "course of conduct" in contravention of the terms of the Loan Documents.

12.    Amendments. This Forbearance Agreement may be amended only by a written amendment, fully executed and delivered by each of the Parties.

13.    Loan Documents Still in Force. Notwithstanding anything to the contrary in this Forbearance Agreement, the Note, the Mortgage, the ALR, the Guaranty, the Pledge Agreement and all of the other Loan Documents are in full force and effect in accordance with their respective terms, remain valid and binding obligations of the Obligors and have not been modified or amended, and are hereby reaffirmed and ratified by the Obligors in all respects. The liens, security interests and pledges created by the Mortgage and Pledge Agreement, and the other Loan Documents are and continue to be valid, effective, properly perfected, enforceable and are hereby ratified and confirmed in all respects.

14.    No Waiver of Rights Under Loan Documents. Neither the failure nor the delay by the Lender to exercise its remedies, nor the acceptance by the Lender of partial payments or any other partial performance (whether any of the foregoing is before or after the date of this Forbearance Agreement), nor any provision of this Forbearance Agreement, shall (a) amend, modify, supplement, extend, delay, renew, terminate, waive, release or otherwise limit or prejudice the Lender's rights and remedies under the Loan Documents or any of the Obligors' obligations under the Loan Documents (including, without limitation, the Lender's right to receive full payment of principal and interest as well as all late charges, default rate interest, delinquent interest, attorneys' fees and expenses, the Lender's protective advances and other charges to the extent provided in the Loan Documents), nor (b) affect the priority of the Lender's security interests in and liens on the property of any of the Obligors (including, without limitations, the Lender's first priority mortgage lien on the Mortgaged Premises pursuant to the Mortgage and the other Loan Documents and the Lender's first priority security interest and lien on all of the equity interests in the Borrower pursuant to the Pledge Agreement and the other Loan Documents). Nothing contained in this Forbearance Agreement shall operate to prohibit, restrict or otherwise inhibit the Lender from exercising any right or remedy the Lender may have under the Loan Documents (except to the extent that the Lender agrees to forbear as specifically provided in Section 2 above) or constitute a cure of the Stated Default or any other existing default or serve to extend any applicable grace or cure period and, without limitation, shall not extend any applicable reinstatement or redemption period.

15.    Release of Claims and Waivers.

15.1    Release of Claims. Each of the Obligor Related Parties, for itself and on behalf of its agents, employees, representatives, affiliates, predecessors-in-interest, successors, and assigns (such persons and entities other than the Obligor Related Parties being collectively referred to herein as the "**Other Releasors**"), does hereby release, discharge and acquit the Lender, and the

16

573231-1

Lender's past, present and future officers, directors, shareholders, agents, employees, professionals, predecessors, successors, assigns and affiliates, and their respective successors, heirs and assigns (collectively, the "**Released Parties**"), of and from any and all rights, claims, causes of action, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, causes of action, promises, damages, costs, losses and expenses of every kind, nature, description or character whatsoever, and irrespective of how, why, or by reason of any facts, which could or may be claimed to exist, whether known or unknown, matured or contingent, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, fraud, breach of any duty, breach of any federal, state or local laws of any kind or nature whatsoever, or any other legal or equitable theory whatsoever, each as though fully set forth herein at length, from the beginning of the world to the date of execution of this Forbearance Agreement by the Obligor Related Parties (collectively, the "**Claims**"), which in any way arise out of, are connected with or relate to any or all of the following: (a) the Loan or the administration of any or all of the Loan or any or all of the Loan Documents, as well as any action or inaction of the Released Parties or any of them with respect to the Loan or the administration thereof or any or all of the Loan Documents or the enforcement thereof; (b) any or all of the transactions which are the subject of or contemplated by any or all of the Loan Documents; (c) the Mortgaged Premises and/or any other collateral granted under any of the Loan Documents; or (d) any fact, matter or transaction existing or occurring as of or prior to the execution of this Forbearance Agreement by the Parties, which in any way, directly or indirectly, relates to the Loan, any of the Loan Documents, or the Mortgaged Premises.

      15.2   Waiver. Each of the Obligor Related Parties hereby: (i) waives any and all defenses to the Lender's exercise of any or all of its rights under the Loan Documents, including, without limitation, the defenses of payment, waiver, estoppel, laches, unclean hands, unconscionability, the election of remedies defense, or any claim that the Obligors are not in default under the Loan Documents, or any claim that any notice was not given by the Lender, or that the Note fully matured; (ii) acknowledges and re-affirms its due execution and delivery of the Loan Documents (as applicable); (iii) agrees that it shall not file an answer, counterclaim, motion, order to show cause or appeal as to any judicial or non-judicial actions that may be taken by the Lender after the earlier of the Forbearance Date or the date that any Termination Event occurs; (iv) admits and acknowledges that, the Note matured by its terms on the Maturity Date (i.e. December 1, 2020) 2020 and that as of December 31, 2020 the Payoff Amount is due and owing to the Lender; (v) expressly waives the appointment of a referee in any action to foreclose the Mortgage to compute the sums due and owing to the Lender; (vi) waives any claim or defense regarding the Loan, the Loan Documents or this Forbearance Agreement, including, without limitation, as to the Lender's standing or that the Loan is usurious or requires the Obligors to pay "hidden" or "disguised" interest, fees or charges; (vii) waives any claim or defense that the Lender is prohibited from commencing a proceeding to recover under the Loan Documents by reason of New York State's issuance of any Executive Order, including, without limitation, Executive Order 202.28, 202.48, 202.75, 201.81 and any subsequent modifications and/or extension of said Executive Orders, and/or New York's Chief Administrative Judge's issuance of Administrative Order of the Chief Administrative Judge of the Courts; and (viii) agrees that in the event that any conference is scheduled in the Foreclosure Action it shall agree that the Foreclosure Action may immediately proceed and shall not request an adjournment of the Foreclosure Action for any reason.

17

15.3 Indemnity. Each of the Obligor Related Parties hereby agrees to defend, indemnify, and hold the Lender and each of the other Released Parties harmless from and against any losses, damages, costs (including, without limitation, attorneys' fees, court costs, and costs of appeal), expenses, judgments, liens, decrees, fines, penalties, liabilities, claims, actions, suits, and causes of action (collectively, the "**Indemnified Claims**") arising, directly or indirectly, from (to the extent not inconsistent with the terms of this Forbearance Agreement): (a) any material breach by any of the Obligor Related Parties of any warranty or representation contained in this Forbearance Agreement or in the documents executed and delivered by any of the Obligor Related Parties pursuant to this Forbearance Agreement (collectively referred to as the "**Obligors Documents**"); (b) and after any material breach, default, or violation by any of the Obligor Related Parties of any covenant, agreement, or provision of any of the Obligors Documents or the Loan Documents; (c) any claims by or liabilities to third parties pertaining to injury to persons or damage to the Mortgaged Premises; and (d) any claims and/ or defenses of any past, present, or future tenants at the Mortgaged Premises, including, without limitation, SPI, AGI, the Guarantor, EO, Theater 80, Foxface, Kushnir, Lahat and Ikeda.

15.4 Waivers of Unknown Claims. As to all matters being released by the Obligor Related Parties pursuant to the provisions hereof, each of the Obligor Related Parties for itself and on behalf of the Other Releasors, expressly acknowledges that the release of Claims set forth in Section 15.1 hereof applies to all Claims whether or not known to, or suspected by the Obligor Related Parties to exist. Each of the Obligor Related Parties, for itself and on behalf of all Other Releasors, acknowledges and agrees that the facts with respect to which the release of Claims contained in Section 15.1 is executed may hereafter be found to be different from the facts now believed by the Obligor Related Parties to be true, and each of the Obligor Related Parties, for itself and on behalf of all Other Releasors, expressly accepts and assumes the risk of all such possible differences, and agrees that the release of Claims contained in this Section shall be and remain effective notwithstanding any such difference in facts.

15.5 No Admission of Liability. Nothing contained in this Forbearance Agreement, including, without limitation, the terms of this Section 15, constitutes or shall be construed as an admission by the Lender of any liability whatsoever.

15.6 No Assignment. Each of the Obligor Related Parties, for itself and on behalf of all Other Releasors, warrants and represents to the Lender that none of the Obligor Related Parties and none of the Other Releasors have sold, assigned, transferred, conveyed or otherwise disposed of any Claims or Indemnified Claims which are the subject of this Section 15.

16. No Waiver by the Lender. The agreement by the Lender to forbear from exercising its rights and remedies under the Loan Documents shall not constitute a waiver of, consent to, or condoning of the Stated Default or any other default by any of the Obligor Related Parties. The Obligor Related Parties agree that Lender may immediately exercise all rights and remedies available to the Lender under the Loan Documents by reason of the Stated Default or any other default immediately upon the earlier of (i) the Forbearance Date, (ii) the occurrence of any Termination Event; or (iii) the expiration or termination of this Forbearance Agreement for any

18

reason, without the Lender being required to provide any additional notice of default or of acceleration and without any grace or cure periods therefor.

17.    Bankruptcy.

17.1    Statement of Intent. Each of the Obligor Related Parties warrants and represents to the Lender that it has no present intent (i) to file any voluntary petition in bankruptcy under any chapter of the United States Bankruptcy Code (the "**Bankruptcy Code**"), or directly or indirectly to cause any Obligor Related Party, or any other person or entity that may hereafter own any interest in, or claim any beneficial interest in, the Mortgaged Premises, to file any voluntary petition in bankruptcy under any chapter of the Bankruptcy Code or to have any involuntary petition in bankruptcy filed against it under any chapter of the Bankruptcy Code, or (ii) in any manner, directly or indirectly, to cause the any of the Obligor Related Parties, or any other person or entity that may hereafter own any interest in, or claim any beneficial interest in, the Mortgaged Premises, to seek relief, protection, reorganization, liquidation, dissolution, or similar relief for debtors under any federal, state, or local law, or in equity, or (iii) in any manner, directly or indirectly, to cause the Mortgaged Premises to be the subject of any bankruptcy or insolvency proceedings or the property of any bankruptcy or insolvency estate.

17.2    Further Agreement. As additional consideration for the Lender's execution of this Forbearance Agreement, the Obligor Related Parties agree that in the event of a bankruptcy filing by or against any of the Obligor Related Parties, no Obligor Related Party shall  reject this Forbearance Agreement, nor shall any of the Obligor Related Parties contest any claim or assertion by the Lender that this Forbearance Agreement is binding on the Parties, and that valuable consideration has been received by the Obligor Related Parties for this Forbearance Agreement.

18.    Miscellaneous.

18.1    Costs and Expenses. Nothing in this Forbearance Agreement shall (i) diminish or otherwise limit any obligation that any of the Obligors has under the Loan Documents with respect to payment of the costs and expenses (including, without limitation, attorneys' fees and expenses) of the Lender, or (ii) prevent the Lender from requiring each of the Obligors to pay all such costs and expenses in accordance with the terms of the Loan Documents.

18.2    Further Instruments. The Obligor Related Parties shall, whenever and as often as they shall be requested to do so by the Lender, cause to be executed, acknowledged and/or delivered to the Lender any and all such further instruments and documents as may be necessary or desirable, in the sole discretion of the Lender, in order to carry out the intent and purpose of this Forbearance Agreement. Without limiting of the foregoing, each of the Obligor Related Parties hereby irrevocably appoints Lender as its and his attorney-in-fact, coupled with an interest, to execute any such documents as provided above and to fill in any blank in the Judgment, or any modification thereof, in accordance with the terms of this Forbearance Agreement.

18.3    Written Waiver Only. No waiver by the Lender of any of its rights or remedies in connection with the Loan or any Loan Documents shall be effective unless such

19

waiver is in writing and signed and delivered by the Lender. Without limiting the generality of the preceding sentence, nothing contained in this Forbearance Agreement nor any delay or omission by the Lender in exercising or enforcing any of its rights and remedies in connection with the Loan Documents constitutes or shall be construed as a waiver by the Lender of: (i) the Stated Default or any other breach or default by any of the Obligors under any of the Loan Documents; or (ii) any of the Lender's rights or remedies in connection with the Loan or any of the provisions of any of the Loan Documents.

18.4    Governing Law. This Forbearance Agreement shall be governed by and construed and enforced in accordance with the internal laws of the State of New York, without regard to the law on conflicts of law.

18.5    Third Party Beneficiaries. Nothing in this Forbearance Agreement is intended to or shall confer any rights or remedies upon any person, other than the Parties hereto and the Released Parties and, subject to any restrictions on assignment contained in this Forbearance Agreement and the other Loan Documents, their respective successors and assigns.

18.6    No Offsets. No indebtedness evidenced by the Note or any other Loan Documents shall be offset by all or part of any claim, cause of action, or cross-claim of any kind, whether liquidated or unliquidated, which any of the Obligor Related Parties now has or may hereafter acquire or allege to have acquired against the Lender.

18.7    Relationship of Parties. Nothing contained in this Forbearance Agreement or the other Loan Documents constitutes or shall be construed as the formation of a partnership, joint venture, tenancy-in-common, or any other form of co-ownership, or the creation of any confidential or fiduciary relationship of any kind between the Lender, on the one hand, and the Obligor Related Parties and/or any other person or entity on the other hand. The Obligor Related Parties acknowledge and agree that the Lender has at all times acted and shall at all times continue to be acting only as a lender to the Obligors within the normal and usual scope of activities of a lender.

18.8    Attorneys' Fees. Upon demand therefor by the Lender, the Obligors shall pay all costs and expenses, including, without limitation, reasonable attorneys' fees and costs, now or hereafter incurred by the Lender (i) in negotiating and preparing this Forbearance Agreement; and (ii) in administering, enforcing or effectuating any of the terms of this Forbearance Agreement and the other Loan Documents, whether or not any legal proceedings are instituted by the Lender. Without limiting the generality of the immediately preceding sentence, such costs and expenses shall include all attorneys' fees and costs now or hereafter incurred by the Lender in connection with any federal or state bankruptcy, insolvency, reorganization, foreclosure, or other similar proceeding or action by or against any of the Obligor Related Parties which in any way relates to or affects the Lender's exercise of its rights and remedies under any or all of the Loan Documents. The amount of any attorneys' fees, costs and expenses of the Lender that are not paid by the Obligors shall be added to the Payoff Amount, shall constitute secured obligations of the Obligors under the Loan Documents and shall bear interest at the default rate under the Loan Documents.

20

18.9    Descriptive Headings; Interpretation. The headings to sections of this Forbearance Agreement are for convenient reference only, do not in any way limit or amplify the terms of this Forbearance Agreement, and shall not be used in interpreting this Forbearance Agreement. For purposes of this Forbearance Agreement: (i) the term "including" shall be deemed to mean "including, without limitation,"; (ii) the term "Loan Documents" shall be deemed to include, without limitation, this Forbearance Agreement; (iii) the term "person" means any natural person or any entity, including any corporation, partnership, joint venture, trust, limited liability Borrower, unincorporated organization or association, or trustee; and (iv) whenever the context of this Forbearance Agreement reasonably requires, all words used in the singular shall be deemed to have been used in the plural, and the neuter gender shall be deemed to include the masculine and feminine gender, and vice versa. This Forbearance Agreement has been prepared and drafted through a joint effort of the Parties and, therefore, shall not be construed against any of the Parties as the person who prepared or drafted this Forbearance Agreement.

18.10    Entire Agreement. This Forbearance Agreement and the other Loan Documents contain the entire agreement and understanding between the Parties concerning the matters covered by this Forbearance Agreement and the other Loan Documents, and supersede all prior and contemporaneous agreements, statements, understandings, terms, conditions, negotiations, representations and warranties, whether written or oral, made by the Lender or any of the Obligor Related Parties concerning the matters covered by this Forbearance Agreement and the other Loan Documents.

18.11    Payoff Amount. Each of the Obligor Related Parties hereby acknowledges and agrees that the Payoff Amount as of December 31, 2020 is $6,245,653.65 (exclusive of attorneys' fees and expenses and protective advances incurred after December 18, 2020, which amounts have accrued and continue to accrue and shall be added to the Payoff Amount), that interest is continuing to accrue thereon at the default rate of 24% per annum from and after December 2, 2020, and that the Obligors are jointly and severally liable for the Payoff Amount.

**18.12    TIME OF THE ESSENCE. NOTWITHSTANDING ANYTHING TO THE CONTRARY, TIME IS OF THE ESSENCE WITH RESPECT TO EACH OF THE OBLIGOR RELATED PARTIES' OBLIGATIONS HEREUNDER.**

18.13    Severability. If any term or provision of this Forbearance Agreement or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Forbearance Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each such term and provision of this Forbearance Agreement shall be valid and shall be enforced to the fullest extent permitted by law.

18.14    Notices. All notices and other communications provided for in this Forbearance Agreement shall be in writing and shall be given by Federal Express or hand delivery:

21

If to the Lender, at:

St. Mark's Mixed Use LLC
100 Park Avenue, Suite 2305
New York, New York 10012
Attn: Jason S. Leibowitz, Esq.

with a copy to:

Katsky Korins LLP
605 Third Avenue, 17th Floor
New York, New York 10158
Attn.: Steven H. Newman, Esq.
Email: snewman@katskykorins.com

If to the Borrower, at:

78-80 St. Marks Place, LLC
78-80 St. Marks Place
New York, New York 10003
Attn: Lawrence v. Otway

With a copy to:

Scott Markowitz, Esq.
Tarter Krinsky & Drogin LLP
1350 Broadway
New York, New York 10018
Email: smarkowitz@tarterkrinsky.com

If to the Guarantor, at:

Mr. Lawrence v. Otway
78-80 St. Marks Place, Apt. No. 1
New York, New York 10003

With a copy to:

Scott Markowitz, Esq.
Tarter Krinsky & Drogin LLP
1350 Broadway
New York, New York 10018
Email: smarkowitz@tarterkrinsky.com

22

If to EO, SPI, AGI or Theater 80, to such person or entity at:

78-80 St. Marks Place
New York, New York 10003
Attn: Lawrence v. Otway

With a copy to:

Scott Markowitz, Esq.
Tarter Krinsky & Drogin LLP
1350 Broadway
New York, New York 10018
Email: smarkowitz@tarterkrinsky.com

Notices shall be deemed given (i) if sent by hand, the date sent; and (ii) if sent by Federal Express, one (1) business day after delivery to an authorized agent or authorized depository box of Federal Express.

18.15  Counterparts, Etc. This Forbearance Agreement may be executed in any number of counterparts so long as each signatory hereto executes at least one such counterpart. Each such counterpart shall constitute one original, but all such counterparts taken together shall constitute one and the same instrument. This Forbearance Agreement may be executed by electronic signatures, including without limitation, by PDF, and all electronic signatures shall have the same force and effect as an original signature.

18.16  Service of Process. The Obligor Related Parties hereby irrevocably agrees that service of process of any action or proceeding by the Lender against the Guarantor and/or any other Obligor Related Parties may be served upon the Guarantor or such Obligor Related Party by first class mail addressed to "Mr. Lawrence V. Otway, 78-80 St. Marks Place, Apt. No. 1, New York, New York 10003" and the Obligor Related Parties hereby irrevocably waive any objection or defense whatsoever that any service of process so effectuated is invalid or improper in any manner. The foregoing is without prejudice to the Lender's rights to effectuate service of process by any other means allowed by applicable law.

18.17  **WAIVER OF JURY TRIAL. THE OBLIGOR RELATED PARTIES AND THE LENDER IRREVOCABLY WAIVE ALL RIGHTS TO A JURY TRIAL IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM OF ANY KIND ARISING OUT OF OR IN ANY WAY RELATING TO THE LOAN, THE NOTE, THE MORTGAGE, THE GUARANTY, THE PLEDGE AGREEMENT, THIS FORBEARANCE AGREEMENT, ANY OF THE OTHER LOAN DOCUMENTS, THE MORTGAGED PREMISES, ANY OR ALL OF THE REAL AND PERSONAL PROPERTY COLLATERAL SECURING THE LOAN OR ANY OF THE TRANSACTIONS WHICH ARE CONTEMPLATED BY THE LOAN DOCUMENTS. THE JURY TRIAL WAIVER CONTAINED IN THIS SECTION IS INTENDED TO APPLY, TO THE FULLEST EXTENT PERMITTED BY LAW, TO ANY AND ALL**

23

DISPUTES AND CONTROVERSIES THAT ARISE OUT OF OR IN ANY WAY RELATE TO ANY OR ALL OF THE MATTERS DESCRIBED IN THE PRECEDING SENTENCE, INCLUDING WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS OF ANY KIND WHATSOVER. THE WAIVER CONTAINED IN THIS SECTION SHALL APPLY TO ALL SUBSEQUENT EXTENSIONS, RENEWALS, MODIFICATIONS AND REPLACEMENTS OF ANY OR ALL OF THE LOAN DOCUMENTS. THIS FORBEARANCE AGREEMENT MAY BE FILED WITH ANY COURT OF COMPETENT JURISDICTION AS EACH PARTY'S WRITTEN CONSENT TO WAIVER OF A JURY TRIAL.

       18.18 <u>Conflicts With Loan Documents</u>. Notwithstanding anything in this Forbearance Agreement to the contrary, in the event of an actual conflict or inconsistency between this Forbearance Agreement and any of the Loan Documents (which is not resolved by the terms of this Forbearance Agreement itself), the provisions which shall enlarge the rights of the Lender shall govern to the extent of such conflict.

       18.19 **REVIEW WITH COUNSEL.** THE OBLIGOR RELATED PARTIES HEREBY ACKNOWLEDGE AND AGREE THAT: (A) THE OBLIGOR RELATED PARTIES HAVE CAREFULLY READ AND UNDERSTAND ALL OF THE TERMS OF THIS FORBEARANCE AGREEMENT; (B) THE OBLIGOR RELATED PARTIES HAVE EXECUTED THIS FORBEARANCE AGREEMENT FREELY AND VOLUNTARILY AND WITHOUT ANY DURESS, AFTER HAVING CONSULTED WITH THE OBLIGOR RELATED PARTIES' INDEPENDENT LEGAL COUNSEL AND AFTER HAVING ALL OF THE TERMS OF THIS FORBEARANCE AGREEMENT EXPLAINED TO EACH OF THEM BY THEIR INDEPENDENT LEGAL COUNSEL; (C) THE WAIVERS AND RELEASES CONTAINED IN THIS FORBEARANCE AGREEMENT ARE REASONABLE, NOT CONTRARY TO PUBLIC POLICY OR LAW, AND HAVE BEEN INTENTIONALLY, INTELLIGENTLY, KNOWINGLY AND VOLUNTARILY AGREED TO BY EACH OF THE OBLIGOR RELATED PARTIES; (D) THE WAIVERS AND RELEASES CONTAINED IN THIS FORBEARANCE AGREEMENT HAVE BEEN AGREED TO BY THE OBLIGOR RELATED PARTIES WITH FULL KNOWLEDGE OF THEIR SIGNIFICANCE AND CONSEQUENCES, INCLUDING FULL KNOWLEDGE OF THE SPECIFIC NATURE OF ANY RIGHTS OR DEFENSES WHICH THE OBLIGOR RELATED PARTIES HAVE AGREED TO WAIVE OR RELEASE PURSUANT TO THIS FORBEARANCE AGREEMENT; (E) THE OBLIGOR RELATED PARTIES HAVE HAD A FULL AND ADEQUATE OPPORTUNITY TO NEGOTIATE THE TERMS CONTAINED IN THIS FORBEARANCE AGREEMENT; (F) THE OBLIGOR RELATED PARTIES ARE EXPERIENCED IN AND FAMILIAR WITH LOAN TRANSACTIONS OF THE TYPE EVIDENCED BY THIS FORBEARANCE AGREEMENT; (G) THE OBLIGOR RELATED PARTIES EXECUTION AND DELIVERY OF THIS FORBEARANCE AGREEMENT IS NOT BASED UPON RELIANCE UPON ANY REPRESENTATION, UNDERSTANDING OR AGREEMENT NOT EXPRESSLYSET FORTH IN THIS FORBEARANCE AGREEMENT AND NEITHER THE LENDER NOR ANY AFFILIATE THEREOF

**HAS MADE ANY REPRSENTATION WHATSOVER TO ANY THE OBLIGOR
RELATED PARTIES NOT EXPRESSLY SET FORTH HEREIN; (H) THE WAIVERS
AND RELEASES CONTAINED IN THIS FORBEARANCE AGREEMENT ARE
MATERIAL INDUCEMENTS TO THE LENDER'S EXECUTION OF THIS
FORBEARANCE AGREEMENT, AND THE LENDER HAS RELIED ON SUCH
WAIVERS AND RELEASES IN ENTERING INTO THIS FORBEARANCE
AGREEMENT AND WILL CONTINUE TO RELY ON SUCH WAIVERS AND
RELEASES IN ANY RELATED FUTURE DEALINGS WITH THE OBLIGOR
RELATED PARTIES.**

18.20    Conditions Precedent. This Forbearance Agreement shall not be effective
and binding on the Parties unless and until it is executed and delivered by each of the Obligor
Related Parties and by the Lender.

18.21    Agreement May Be Used Against Obligor Related Parties. This
Forbearance Agreement may be used as evidence against any or all of the Obligor Related
Parties in any litigation now or hereafter existing, including, without limitation, in the
Foreclosure Action.

[SIGNATURES APPEAR ON NEXT PAGE]

Executed as of the date set forth above:

**78-80 ST. MARKS PLACE, LLC**

By: _____

Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
Title: Manager and Sole Member

_____

**LAWRENCE V. OTWAY,** a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway,
Individually

_____

**EUGENIE OTWAY,**
Individually

**SCHIEB'S PLACE, INC.**

By: _____

Name: Lawrence V Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
Title: President and sole shareholder

**EXHIBITION OF THE AMERICAN GANGSTER, INC.**

By: _____

Name: Lawrence V Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
Title: President and sole shareholder

**THEATER 80 LLC**

By: _____

Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
Title: Manager and Sole Member

**ST. MARK'S MIXED USE LLC**

By: _____

Name:
Title:

573231-1

Executed as of the date set forth above:

**78-80 ST. MARKS PLACE, LLC**

By: _____

    Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
    Title: Manager and Sole Member

_____

**LAWRENCE V. OTWAY**, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway,
Individually

_____

**EUGENIE OTWAY**,
Individually

**SCHIEB'S PLACE, INC.**

By: _____

    Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
    Title: President and sole shareholder

**EXHIBITION OF THE AMERICAN GANGSTER, INC.**

By: _____

    Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
    Title: President and sole shareholder

**THEATER 80 LLC**

By: _____

    Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
    Title: Manager and Sole Member

**ST. MARK'S MIXED USE LLC**

By: _____

    Name: Jason Leibowitz
    Title: Manager

573231-1

State of New York    )

                )ss.:

County of New York  )

On the 14 day of January in the year 2021, before me, the undersigned, a notary public in and for said state, personally appeared Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, as Manager and sole member of 78-80 St. Marks Place, LLC, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

> CARMINE J. PALERMO
> Notary Public, State of New York
> No. 4769339
> Certified in Rockland County
> Commission Expires 12/31/202_

NOTARY PUBLIC

State of New York    )

                )ss.:

County of New York  )

On the 14 day of January in the year 2021, before me, the undersigned, a notary public in and for said state, personally appeared Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his individual capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

> CARMINE J. PALERMO
> Notary Public, State of New York
> No. 4769339
> Certified in Rockland County
> Commission Expires

NOTARY PUBLIC

State of New York    )

                )ss.:

County of New York  )

On the 14 day of January in the year 2021, before me, the undersigned, a notary public in and for said state, personally appeared Eugenie Otway, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her individual capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

> CARMINE J. PALERMO
> Notary Public, State of New York
> No. 4769339
> Certified in Rockland County
> Commission Expires

> CARMINE J. PALERMO
> Notary Public, State of New York
> No. 4769339
> Certified in Rockland County
> Commission Expires 12/31/202_

NOTARY PUBLIC

27

573231-1

State of New York )
       )ss.:
County of New York )

On the 14 day of JANUAR in the year 2021, before me, the undersigned, a notary public in and for said state, personally appeared Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, as president of Scheib's Place, Inc., and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

CARMINE J. PALERMO
Notary Public, State of New York
No. 4769389
Certified in Rockland County
Commission Expires _____

NOTARY PUBLIC

State of New York )
       )ss.:
County of New York )

On the 14 day of JANUAR in the year 2021, before me, the undersigned, a notary public in and for said state, personally appeared Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, as president of Exhibition of the American Gangster, Inc., and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument

CARMINE J. PALERMO
Notary Public, State of New York
No. 4769389
Certified in Rockland County
Commission Expires _____

NOTARY PUBLIC

State of New York )
       )ss.:
County of New York )

On the 14 day of JANUAR in the year 2021, before me, the undersigned, a notary public in and for said state, personally appeared Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, as Manager and sole member of Theater 80 LLC, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

CARMINE J. PALERMO
Notary Public, State of New York
No. 4769389
Certified in Rockland County
Commission Expires _____

NOTARY PUBLIC

28

573231-1

## EXHIBIT A

Form of Foreclosure Complaint

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------------------x

ST. MARK'S MIXED USE LLC,

                               Plaintiff,

        -against-

78-80 ST. MARKS PLACE, LLC, LAWRENCE V.
OTWAY A/K/A LAWRENCE LORCAN OTWAY A/K/A
LORCAN OTWAY, SCHEIB'S PLACE, INC.,
EXHIBITION OF THE AMERICAN GANGSTER INC.,
THEATRE 80, LLC, FOXFACE SANDWICH SHOP, ORI
KUSHNIR, SIVAN LAHAT, AYA IKEDA, MEETING
SPACE, EUGENIE OTWAY, and "JOHN DOE #1 through
JOHN DOE #12", the last twelve names being fictitious and
unknown to Plaintiff, the persons or parties intended being
the tenants, occupants, persons or corporations, if any,
having or claiming an interest upon the premises described in
the Complaint,

                              Defendants.

---------------------------------------------------------------------------x

Index #:

Date Purchased:

Plaintiff designates New York
county as the place of trial

## SUMMONS

The basis of the venue is the
location of the mortgaged premises.

Plaintiff's place of business is:
100 Park Avenue, Suite 2805
New York, NY 10017

**TO THE ABOVE-NAMED DEFENDANTS:**

     **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of

your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the

plaintiff's attorneys within 20 days after the service of this summons, exclusive of the day of service (or

within 30 days after the service is complete if this summons is not personally delivered to you within the

State of New York); and in case of your failure to appear or answer, judgment will be taken against you by

default for the relief demanded in the complaint.

     **PLEASE TAKE NOTICE**, that this is an action to foreclose a Mortgage and Security Agreement

dated as of November 12, 2019 in the original principal amount of Six Million One Hundred Thousand

Dollars and 00/100 ($6,100,000.00) Dollars, upon real property known as **78-80 St. Marks Place, New**

**York, New York 10003 (Block: 449, Lot: 28)** in New York County. This is a commercial foreclosure

action. The object of this action is to obtain a judgment of foreclosure and sale.

## THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED IN CONNECTION THEREWITH.

Dated:   New York, New York
         January ___, 2021

                                        KATSKY KORINS LLP

                                        By: _____
                                             Robert A. Abrams, Esq.
                                             Steven H. Newman, Esq.
                                             605 Third Avenue
                                             New York, New York 10156
                                             (212) 953-6000

                                        *Attorneys for Plaintiff*
                                        *St. Mark's Mixed Use LLC*

TO:   78-80 St. Marks Place LLC
      78-80 St. Marks Place
      New York, New York 10003

      Lawrence V. Otway a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
      78-80 St. Marks Place
      New York, New York 10003

      Scheib's Place, Inc.
      80 St. Marks Place
      New York, New York 10003

      Exhibition of the American Gangster Inc.
      80 St. Marks Place
      New York, New York 10003

      Theatre 80, LLC
      80 St. Marks Place
      New York, New York 10003

      Foxface Sandwich Shop
      78-80 St. Marks Place
      New York, New York 10003

Ori Kushnir
78-80 St. Marks Place
New York, New York 10003
Sivan Lahat
78-80 St. Marks Place
New York, New York 10003

Aya Ikeda
78-80 St. Marks Place
New York, New York 10003

Meeting Space
80 St. Marks Place
New York, New York 10003

Eugenie Otway
80 St. Marks Place
New York, New York 10003

All tenants at the Property:
"John Doe #1 through John Doe # 12"
78-80 St. Marks Place
New York, New York 10003
**(Block: 449, Lot: 28)**

3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------x

ST. MARK'S MIXED USE LLC,

                                 Plaintiff,

        -against-

78-80 ST. MARKS PLACE, LLC, LAWRENCE V.
OTWAY A/K/A LAWRENCE LORCAN OTWAY A/K/A
LORCAN OTWAY, SCHEIB'S PLACE, INC.,
EXHIBITION OF THE AMERICAN GANGSTER INC.,
THEATRE 80, LLC, FOXFACE SANDWICH SHOP, ORI
KUSHNIR, SIVAN LAHAT, AYA IKEDA, MEETING
SPACE, EUGENIE OTWAY, and "JOHN DOE #1 through
JOHN DOE #12", the last twelve names being fictitious and
unknown to Plaintiff, the persons or parties intended being
the tenants, occupants, persons or corporations, if any,
having or claiming an interest upon the premises described in
the Complaint,

                              Defendants.
-------------------------------------------------------------------------x

Index No.

Date Filed:

**VERIFIED COMPLAINT
IN A FORECLOSURE
ACTION**

       Plaintiff St. Mark's Mixed Use LLC (the "**Plaintiff**" or "**Lender**"), by its attorneys

Katsky Korins LLP, as and for its verified complaint in this action, respectfully alleges as

follows:

## NATURE OF THE ACTION

       1.     This is an action brought pursuant to New York Real Property Actions and

Proceedings Law Sections 1301 *et seq.* to foreclose a certain commercial real estate

mortgage encumbering real property in the borough of Manhattan known as 78-80 St. Marks

Place, New York, New York 10003 (Block: 449, Lot: 28), and more particularly described

in Schedule A annexed hereto and made a part hereof. The "**Mortgaged Premises,**" as that

term is used in this Verified Complaint in a Foreclosure Action (the "**Complaint**"), refers to

real property as aforesaid property and any buildings, improvements, fixtures, machinery,

equipment, personality and other rights and interests of any kind or nature which are the subject of the mortgage described in this Complaint.

2.     The underlying Loan (as defined below) was borrowed by 78-80 St. Marks Place, LLC (the "**Borrower**").

3.     The Loan matured by its terms on December 1, 2020 (the "**Maturity Date**").

4.     Despite maturity of the Loan and due demand, the Borrower and guarantor Lawrence V. Otway a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway (the "**Guarantor**") have failed to pay their obligations under the Loan Documents (as defined below).

5.     The Borrower's failure to pay the Loan in full at maturity has necessitated this foreclosure action.

## THE PARTIES

6.     The Plaintiff is a New York limited liability company, has its principal place of business at 100 Park Avenue, Suite 2805, New York, New York 10017, and is authorized to conduct business in the State of New York.

7.     The Borrower is a domestic limited liability company and Borrower's principal place of business is located at 78-80 St. Marks Place, New York, New York 10003.

8.     The Guarantor is an individual and Guarantor's primary place of residence is located at 78-80 St. Marks Place, New York, New York 10003. Guarantor is made a party defendant by virtue of his Guaranty (as defined below), pursuant to which he guaranteed payment of the obligations due under the Note (as defined below) and the Mortgage (as defined below), as more fully set forth in the Guaranty. Guarantor is also made a party defendant for the purpose of extinguishing any interests that Guarantor may have in the Mortgaged Premises, which interests are subject to and subordinate to the lien of the

Plaintiff under the Mortgage and the other Loan Documents (as defined below).

    9.    Upon information and belief, Scheib's Place, Inc. ("**Scheib's**") is a domestic business corporation with a principal place of business at 80 St. Marks Place, New York, New York 10003.

    10.    Upon information and belief, Exhibition of the American Gangster Inc. (the "**Exhibition**") is a domestic business corporation with a principal place of business at 80 St. Marks Place, New York, New York 10003.

    11.    Upon information and belief, Theatre 80 LLC (the "**Theatre 80**") is a domestic limited liability company with a principal place of business at 80 St. Marks Place, New York, New York 10003.

    12.    Upon information and belief, Foxface Sandwich Shop ("**Foxface**") is an unincorporated entity with a principal place of business at 80 St. Marks Place, New York, New York 10003.

    13.    Upon information and belief, Ori Kushnir, Sivan Lahat, and Aya Ikeda are individuals having an address at 78-80 St. Marks Place, New York, New York 10003, and each individual may have possessory interests in the Mortgaged Premises.

    14.    Upon information and belief, Meeting Space ("**Meeting Space**") is an unincorporated entity having its principal place of business at 80 St. Marks Place, New York, New York 10003.

    15.    Upon information and belief, Eugenie Otway is an individual having an address at 80 St. Marks Place, New York, New York 10003.

    16.    The interests of Scheib's, Exhibition, Theatre 80, Foxface, Ori Kushnir, Sivan Lahat, Aya Ikeda, Meeting Space, and Eugenie Otway in the Mortgaged Premises are

subject to and subordinate to the lien of the Plaintiff under the Mortgage and the other Loan Documents.

17.    Upon information and belief, the "John Doe" defendants constitute persons and entities who may be in possession of, or who may have possessory liens or other interests in the Mortgaged Premises, which possessory liens or other interests, if any, are subordinate to and subject to the mortgage being foreclosed herein. Said defendants are named as party-defendants hereto for the purpose of terminating their interests.

## AS AND FOR A FIRST CAUSE OF ACTION

18.    On or about November 12, 2019, the Borrower borrowed the principal sum of six million one hundred thousand and 00/100 dollars ($6,100,000.00) from 80 St. Marks Place Funding LLC (the "**Funding LLC**"), which loan is evidenced by a Promissory Note, dated as of November 12, 2019 (the "**Note**"), which Note was duly executed and delivered by Borrower to Funding LLC. A true and correct copy of Note is annexed hereto as **Exhibit 1.**

19.    In order to secure its obligations under the Note, the Borrower, as mortgagor, duly executed, acknowledged and delivered to Funding LLC, as mortgagee, a Mortgage and Security Agreement, dated as of November 12, 2019 (the "**Mortgage**"), which Mortgage encumbers the Mortgaged Premises. A true and correct copy of the Mortgage is annexed hereto as **Exhibit 2**. The Mortgage was duly recorded in the Office of City Register of the City of New York, New York County (the "**Register's Office**") on November 22, 2019 at CRFN: 2019000383130. Any applicable recording tax was duly paid at the time the Mortgage was recorded.

20.    In order to further secure its obligations under the Note and Mortgage, the

Borrower duly executed, acknowledged and delivered to Funding LLC an Assignment of
Leases and Rents, dated as of November 12, 2019 (the "**ALR**"), which ALR was duly
recorded with the City Register on December 4, 2019 under CRFN: 2019000395326.

21.     In order to induce Funding LLC to make the Loan to the Borrower, the
Guarantor duly executed and delivered to Funding LLC a Guaranty dated as of November
12, 2019 (the "**Guaranty**"). Pursuant to the Guaranty, the Guarantor absolutely,
unconditionally and irrevocably guaranteed to Funding LLC the payment to the Lender of all
amounts and obligations under the Note, the Mortgage and other Loan Documents when
same become when due and payable, and the due and prompt performance of all obligations,
terms, agreements and covenants under all of the Loan Documents. A true and correct copy
of the Guaranty is annexed hereto as **Exhibit 3.**

22.     On December 1, 2020, the Note was duly indorsed by Funding LLC to the
Plaintiff pursuant to, among other things, an Allonge to Promissory Note, dated December 1,
2020 (the **"Allonge"**). A true and correct copy of the Allonge is firmly affixed to the Note
(*see* **Exhibit 1** hereto).

23.     On December 1, 2020, Funding LLC further assigned, among other things,
the Mortgage to the Plaintiff, as evidenced by an Assignment of Mortgage, dated as of
December 1, 2020 (the "**Mortgage Assignment**"). A true and correct copy of the Mortgage
Assignment is annexed hereto as **Exhibit 4**. The Mortgage Assignment is in the process of
being recorded with the Register's Office.

24.     On December 1, 2020, Funding LLC assigned, among other things, the ALR
to the Plaintiff, as evidenced by an Assignment of Assignment of Leases and Rents, dated as
of December 1, 2020 (the "**ALR Assignment**"). A true and correct copy of the ALR

Assignment is annexed hereto as **Exhibit 5**. The ALR Assignment is in the process of being recorded with the Register's Office.

25.    Furthermore, pursuant to an Omnibus Assignment of Loan Documents dated as of December 1, 2020 (the "**Omnibus Assignment**"), the Note, the Mortgage, the Guaranty and all of the other loan documents described therein were each duly assigned by Funding LLC to the Plaintiff. A true and correct copy of the Omnibus Assignment is annexed hereto as **Exhibit 6**.

26.    As a result of the above described assignments, the Plaintiff has possession of, and is now the owner and holder of, the Note, the Mortgage, the ALR, the Guaranty, and all of the other documents executed in connection with the Note, the Mortgage, the ALR, the Guaranty, and the Loan. The Note, the Mortgage, the ALR, the Guaranty, the Allonge, the Mortgage Assignment, the ALR Assignment, the Omnibus Assignment and all other documents evidencing, securing, or guaranteeing the Loan and/or the assignment thereof to the Lender are collectively referred to herein as the "**Loan Documents**"

## THE TERMS OF THE NOTE AND THE MORTGAGE

27.    The Note obligated the Borrower to pay to the holder of the Note, among other things, installments of interest, and the balance of the principal, interest, and all other sums due under the Loan Documents on the Maturity Date (*i.e.*, December 1, 2020).

28.    Similarly, the Mortgage provides that the Borrower shall pay all of the indebtedness evidenced by the Note at the time and in the manner as provided for in the Note.

29.    The Note provides that the "Applicable Interest Rate" is equal to ten and one quarter percent (10.25%) per annum during the initial term of the Note.

30.    The Note provides that from and after the occurrence of an "Event of Default,"

interest shall accrue on the outstanding indebtedness, and shall be payable, at a rate equal to twenty-four percent (24.00%) per annum (the "**Default Rate**").

31.    Similarly, the Mortgage provides that from and after the occurrence of an Event of Default, interest shall accrue on the outstanding indebtedness, and shall be payable at a rate equal to the Default Rate.

32.    The Note provides that except for payment of the indebtedness after acceleration, if any payment (or part thereof) is not made within five (5) days of the date when due, a late charge of six ($0.06) cents for each dollar so overdue shall become immediately due and payable (the "**Late Fee**").

33.    Similarly, the Mortgage provides that except for payment of the indebtedness after acceleration, if any payment (or part thereof) is not made within five (5) days of the date when due, the Late Fee shall become immediately due and payable.

34.    The Note further provides that should the indebtedness or any part thereof be collected at law or in equity, that Borrower agrees to pay, in addition to the principal, any late payment charge and interest due and payable, all costs of collecting or attempting to collect the indebtedness, including attorneys' fees and expenses, together with interest thereon at the Default Rate.

35.    Similarly, the Mortgage provides that if any action or proceeding is commenced by Lender to enforce, declare or adjudicate any rights or obligations under the Mortgage or the Note, Borrower agrees to pay all of the costs thereof, including, without limitation, reasonable attorneys' fees and expenses, together with interest thereon at the Default Rate.

36.    The Mortgage further provides that upon the occurrence of an Event of Default, the Plaintiff may take such actions, to the extent permitted by law, as it deems advisable to

protect and enforce its rights against the Borrower and in and to the Mortgaged Premises, including, but not limited to, applying for the appointment of a receiver of the Mortgaged Premises, without notice and without regard for the adequacy of the security for the debt and without regard for the solvency of the Borrower.

37. Pursuant to the Guaranty, the Guarantor irrevocably and unconditionally guaranteed to Lender the entire indebtedness set forth in the Note and the Mortgage, and other sums as provided therein.

## BORROWER AND GUARANTOR DEFAULTED UNDER THE LOAN DOCUMENTS

38. The Borrower breached and defaulted on its obligations under the Note, the Mortgage and the other Loan Documents by, among other things, and without limitation, failing and omitting to pay in full all obligations under the Loan Documents on or before the Maturity Date (*i.e.*, December 1, 2020).

39. Although not required under the Loan Documents, Lender notified the Borrower and the Guarantor by letter dated December 7, 2020 that, among other things, (i) on December 1, 2020, the Loan matured by its terms and the entirety of the indebtedness became immediately due and payable pursuant to the Note and the Mortgage, (ii) the Borrower failed to pay the entire indebtedness within five (5) days of when it became due, constituting an Event of Default under the Note and the Mortgage, and (iii) interest on the indebtedness began to accrue at the Default Rate from and after December 2, 2020.

40. As a result of, among other things, the Borrower's failure to pay all amounts due under the Loan Documents on the Maturity Date, the Loan is now immediately due and payable in full and the Plaintiff is entitled to, among other things, foreclose the Mortgage and the personalty located at the Mortgaged Premises and exercise all of its rights and remedies

under the Loan Documents.

41. Accordingly, there is now justly due and owing to the Plaintiff upon the Note, the Mortgage, and the Guaranty, among other sums, the outstanding principal amount of $6,100,000.00, together with accrued interest at the rate specified in the Note and the Mortgage, Late Fees, interest at the Default Rate, and other costs, expenses (including, without limitation, attorneys' fees) and charges which sums, among others, are unpaid and due and owing in addition to any usual costs and allowances to which the Plaintiff may be entitled and awarded under any law or statute applicable to this action.

42. The Loan was made to a commercial entity, was not incurred for personal, family or household purposes, and the Borrower does not reside at the Mortgaged Premises. As a result, the Borrower is not entitled to a 90-day notice and is not entitled to the settlement conference required under C.P.L.R. § 3408.

43. Upon information and belief, all of the defendants named in this action have, or claim to have, some claim to an interest in or lien upon the Mortgaged Premises or some part thereof, which claim, interest or lien, if any, is subject and subordinate to the lien of the Plaintiff. Conversely, upon information and belief, no persons or entities other than those described herein have, may have, or claim to have, any interest in and lien upon the Mortgaged Premises.

44. In the event that the Plaintiff possesses any other lien(s) against the Mortgaged Premises either by way of judgment, junior mortgage or otherwise, the Plaintiff requests that such other lien(s) shall not be merged in the Plaintiff's cause(s) of action set forth in this Complaint, but that the Plaintiff shall be permitted to enforce said other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including,

9

without limitation, any surplus money proceedings.

45.     No other action or proceeding is now pending to recover the sum secured by the Mortgages or any part thereof.

46.     The Plaintiff shall not be deemed to have waived any default or event of default not specified herein, nor to have waived, altered, released or changed the election hereinbefore made by reason of any payment made after the Maturity Date, or by reason of any cure or remedy, or attempted cure or remedy, of any or all of the defaults or events of defaults named herein, and such election shall continue and remain effective.

47.     In order to protect its security, the Plaintiff may be compelled to pay during the pendency of this action local real estate taxes, assessments, water rates, insurance premiums and other charges affecting the Mortgaged Premises (in addition to advances already paid by the Plaintiff) and the Plaintiff requests that any sums thus paid by it for said purposes (together with interest thereon) be added to the sum otherwise due and be deemed secured by the Mortgage and be adjudged a valid lien on the Mortgaged Premises.

48.     The Plaintiff requests that in the event that this action will proceed to judgment of foreclosure and sale, the Mortgaged Premises should be sold subject to the following:

> (a)     Any state of facts that an inspection of the Mortgaged Premises would disclose.
>
> (b)     Any state of facts that an accurate survey of the Mortgaged Premises would show.
>
> (c)     Covenants, restrictions, easements and public utility agreements of record, if any.
>
> (d)     Building and zoning ordinances of the municipality in which the Mortgaged Premises is located and possible violations of same.
>
> (e)     Any rights of tenants or persons in possession of the subject Mortgaged Premises.
>
> (f)     Any equity of redemption of the United States of America to redeem the Mortgaged Premises within 120 days from date of sale.

> (g)    Prior mortgage liens of record held by and any advances and arrears thereunder.
>
> (h)    Prior lien(s) of record, if any.

## AS AND FOR A SECOND CAUSE OF ACTION

49.    The Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the paragraphs above.

50.    Guarantor executed the Guaranty dated as of November 12, 2019 as additional security for the repayment of the sums due under the Note. Pursuant to the Guaranty, the Guarantor guaranteed repayment of the Loan upon the occurrence of one or more events set forth therein. A copy of the Guaranty is annexed hereto as **Exhibit 3**.

51.    Borrower has failed to pay all amounts due and owing to the Plaintiff under the Note and Mortgage, including, without limitation, Borrower's failure to pay to Lender all amounts due on the Maturity Date, thereby triggering liability of the Guarantor for all obligations under the Note, the Mortgage and the other Loan Documents.

52.    By reason of the foregoing, the Plaintiff reserves the right to seek a deficiency judgment against the Guarantor pursuant to Real Property Actions and Proceedings Law § 1371 to the extent of the liability under the Guaranty, as applicable, upon the completion the foreclosure sale of the Mortgaged Premises.

**WHEREFORE**, the Plaintiff demands judgment that:

1.    The defendants, or any of them, and all persons claiming by, through or under all or any of them, and every person or entity whose right, title, conveyance or encumbrance is recorded subsequent to the filing of the notice of pendency with respect to this matter in the Register's Office, be barred and forever foreclosed of all right, title, interest, claim, lien and equity of redemption in and to the Mortgaged Premises, and in and to the fixtures and articles of

personalty upon which the Mortgage is a lien attached to or used in connection with said premises;

    2.    Each of the Mortgaged Premises be decreed to be sold as one parcel, pursuant to law, including the buildings, improvements, fixtures, articles of personalty and other interests constituting the Mortgaged Premises described in this Complaint, and that the monies arising from such sale be brought into Court;

    3.    The Plaintiff be paid the amounts due upon the Note and the Mortgage with interest thereon to the time of such payment, together with the expenses of the sale, the costs, allowances and disbursements of this action, the Plaintiff's attorneys' fees and expenses, late fees and other charges, any monies advanced or paid to protect the liens of the Plaintiff's Mortgage, and the taxes, assessments, water charges and sewer rents, premiums for insurance, repairs to the premises and all other charges which may have been made by the Plaintiff to protect the security afforded by the Mortgage and the liens thereon to be paid, with interest upon said amounts from the dates of the respective payments and advances thereof, so far as the amounts of such monies properly applicable thereto will pay the same;

    4.    The referee (or other officer) making such sale be directed to pay from the proceeds thereof all taxes, assessments, water rates, sewer rents and other charges which are liens on the property sold;

    5.    Defendants 78-80 St. Marks Place LLC and Lawrence V. Otway a/k/a Lorcan Otway, and/or their respective estates, legal representatives, heirs, successors and assigns, jointly and severally, in accordance with the Note, the Mortgage, the Guaranty, and related Loan Documents, pay to the Plaintiff the amount of any deficiency which may remain, or so much thereof as the Court may determine to be just and equitable, of the debt remaining unsatisfied

after a sale of the Mortgaged Premises and the application of the proceeds pursuant to the directions contained in such judgment, the amount thereof to be determined by the Court, as provided in Section 1371 of the Real Property Actions and Proceedings Law;

6.  In the event that the Plaintiff possesses any other liens against the Mortgaged Premises either by way of judgment, junior mortgage or otherwise, such liens shall not be merged in the Plaintiff's causes of action set forth in this Complaint, but that the Plaintiff shall be permitted to enforce said other liens and/or seek determination of priority thereof in any independent action or proceeding, including, without limitation, any surplus money proceedings;

7.  The purchaser or purchasers at sale be let into possession on production or delivery of a referee's deed or deeds; and

8.  The Plaintiff have such other and further relief as may be just and equitable.

Dated: New York, New York
          January __, 2021

KATSKY KORINS LLP

By: _____
          Robert A. Abrams, Esq.
          Steven H. Newman, Esq.
          605 Third Avenue
          New York, New York 10156
          (212) 953-6000

          *Attorneys for Plaintiff*
          *St. Mark's Mixed Use LLC*

# SCHEDULE A

# ATTORNEY CERTIFICATION PURSUANT

## TO

## 22 NYCRR 130-1.1a

Pursuant to 22 NYCRR 130-1.1a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that upon information and belief, and after reasonable inquiry, the contentions contained in the annexed document(s) are not frivolous.

Dated: January __, 2021

Robert A. Abrams, Esq.

## VERIFICATION

STATE OF NEW YORK   )
                             )ss.:
COUNTY OF SUFFOLK  )

      **JASON LEIBOWITZ**, being duly sworn, deposes and says that he is a Manager of St.

Mark's Mixed Use LLC, the Plaintiff in this action, that he is physically situated in the State of

New York, that he has read the foregoing Complaint and knows the contents thereof, and that the

same is true to his knowledge.

 

                                  _____

                                    **JASON LEIBOWITZ**

Sworn to before me on this
_____day of January 2021

_____
  Notary Public

# EXHIBIT B

Form of Consent Judgment of Foreclosure and Sale

At IAS Part ___ of the Supreme
Court of the State of New York, held
in and for the County of New York,
at the County Courthouse at 60
Centre Street, New York New York
on the ___ day of _____, 2021

P R E S E N T :

   HONORABLE _____,

        Justice.

-----------------------------------------------------------------------X

ST. MARK'S MIXED USE LLC,

        Plaintiff,

  -against-

78-80 ST. MARKS PLACE, LLC, LAWRENCE V.
OTWAY A/K/A LAWRENCE LORCAN OTWAY
A/K/A LORCAN OTWAY, SCHEIB'S PLACE, INC.,
EXHIBITION OF THE AMERICAN GANGSTER INC.,
THEATRE 80, LLC, FOXFACE SANDWICH SHOP,
ORI KUSHNIR, SIVAN LAHAT, AYA IKEDA,
MEETING SPACE, EUGENIE OTWAY, and "JOHN
DOE #1 through JOHN DOE #12", the last twelve names
being fictitious and unknown to Plaintiff, the persons or
parties intended being the tenants, occupants, persons or
corporations, if any, having or claiming an interest upon
the premises described in the Complaint,

        Defendants.

-----------------------------------------------------------------------X

Index No.

**CONSENT JUDGMENT OF
FORECLOSURE AND SALE**

**78-80 St. Marks Place
New York, New York 10003
County: New York
Block: 449
Lot: 28**

Upon the Summons, Verified Complaint in this action (the "**Complaint**"), and the Notice

of Pendency duly filed in New York County in this action on January ___, 2021 by plaintiff St.

Mark's Mixed Use LLC ("**Plaintiff**"), the Notice of Motion dated _____ ___, 2021, the

Affidavit of Jason Leibowitz, duly sworn to on _____ ___, 2021 (the "**Leibowitz Affidavit**"), a

Manager of Plaintiff, together with the exhibits annexed thereto, including that certain

Forbearance Agreement, dated as of January ___, 2021 (the "**Agreement**"), all in support of

Plaintiff's motion for a Judgment of Foreclosure and Sale; and upon proof that each of the

defendants herein has been duly served with the Summons and Verified Complaint in this action,

and has voluntarily appeared either personally or by an attorney   [-OR- has not served any

answer to the Complaint or otherwise appeared, nor had their time to do so extended; and it

appearing that more than the legally required number of days has elapsed since defendants [*List*

*Defaulting Defendants*] were so served and/or appeared]; and that the Complaint herein

containing all the particulars required to be stated therein was duly filed in the Office of the

Clerk of the County of New York _____, 2021, and has not been amended to add new

parties or to embrace real property not described in the original complaint, and defendant

borrower 78-80 St. Marks Place, LLC ("**Borrower**") and defendant guarantor Mr. Lawrence V.

Otway a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway ("**Guarantor**") and defendants

Scheib's Place, Inc., Exhibition Of The American Gangster Inc., Theatre 80, LLC, Meeting

Space, Mrs. Eugenie Otway having consented to the issuance and entry of this Consent Judgment

of Foreclosure and Sale and the amounts due and owing by the Borrower and the Guarantor

pursuant to the "**Note**" (as defined in the Complaint) and "**Mortgage**" (as defined in the

Complaint) which are the subject of this action and consented to the sale of the "**Mortgaged**

**Premises**" (as defined in the Complaint) in one parcel, all as set forth in that Agreement and

upon proof of due notice of this motion upon all parties entitled to receive same, and upon all the

prior proceedings and papers filed herein;

    **NOW**, on motion of Katsky Korins LLP, attorneys for the Plaintiff herein, it is hereby

    **ORDERED, ADJUDGED AND DECREED** that the motion is granted; and it is further

-2-

**ORDERED, ADJUDGED AND DECREED**, that the caption of this action is hereby

amended as follows:

-----------------------------------------------------------------------X

ST. MARK'S MIXED USE LLC,

                                Plaintiff,           Index No.

        -against-

78-80 ST. MARKS PLACE, LLC, LAWRENCE V.
OTWAY A/K/A LAWRENCE LORCAN OTWAY
A/K/A LORCAN OTWAY, SCHEIB'S PLACE, INC.,
EXHIBITION OF THE AMERICAN GANGSTER INC.,
THEATRE 80, LLC, FOXFACE SANDWICH SHOP,
ORI KUSHNIR, SIVAN LAHAT, AYA IKEDA,
MEETING SPACE, and EUGENIE OTWAY,

                              Defendants.

-----------------------------------------------------------------------X

      ORDERED, ADJUDGED AND DECREED, that the Mortgaged Premises described in

the Complaint in this action, and hereinafter described, or such part thereof as may be

sufficient to discharge the mortgage debt under the Note and Mortgage, the expenses of sale

and the costs of this action as provided by the Real Property Actions and Proceedings Law be

sold, in one parcel, at public auction at the Supreme Court of the State of New York for New

York County, located at _____, New York, New York, and conducted

by and under the direction of _____, Fiduciary #

_____, who is hereby appointed Referee for that purpose; that said Referee

give public notice of the time and place of such sale in accordance with law, practice of this

Court and RPAPL § 231 in the _____and that

the Plaintiff or any other parties to this action may become the purchaser or purchasers at the

said sale; that in case the Plaintiff shall become the purchaser at the said sale, it shall not be

required to make any deposit thereon; that said Referee execute to the purchaser or purchasers

on such sale a deed of the Mortgaged Premises sold; that in the event a party other than the

Plaintiff becomes the purchaser or purchasers at such sale, it shall be required to tender a

deposit of 10% of the purchase price in certified funds and the closing of title shall be had

thirty days after such sale unless otherwise stipulated by all parties to the sale and the proceeds

are to be paid to Plaintiff's counsel by the successful bidder via wire transfer or bank check

drawn on a member of the New York Clearinghouse; and it is further

ORDERED, ADJUDGED AND DECREED, that said Referee, upon receiving the

proceeds of the sale, shall forthwith pay therefrom, in accordance with their priority according to

law, the taxes, assessments, sewer rents or water rates which are or may become liens on the

Mortgaged Premises at the time of sale with such interest or penalties which may have lawfully

accrued thereon to the date of payment; and it is further

ORDERED, ADJUDGED AND DECREED, that a third party purchaser other than

Plaintiff shall be responsible for all common charges, real estate taxes, water charges, and

assessments accruing from the time of the sale until closing of title. A third party purchaser shall

also be responsible for all expenses of recording the Referee's deed, including real property,

transfer taxes and stamps on the sale; and it is further

ORDERED, ADJUDGED AND DECREED, that said Referee shall deposit the balance

of said proceeds of sale in his/her own name as Referee in _____

and shall thereafter make the following payments and his/her checks drawn for that purpose shall

be paid by said depository for:

FIRST: The statutory fees of the Referee appointed to conduct the sale in the sum of

$750.00.

SECOND: The expenses of sale and the advertising expenses as shown on the bills presented and certified by said Referee to be correct, duplicate copies of which shall be annexed to the report of sale.

THIRD: Said Referee shall also pay to the Plaintiff, or Plaintiff's attorney, the sum of $_____ to be determined by the Clerk and adjudged to the Plaintiff for costs and disbursements in this action to be taxed by the Clerk and inserted herein; together with an additional allowance pursuant to CPLR§ 8303(a)(1) of $_____ hereby awarded to the Plaintiff in addition to costs; and also the sum of $_____ the said amount so consented due as aforesaid, together with interest at the per diem rate of $___ per day  from [Insert date through which the amount above was calculated] until the date of transfer of the referee's deed, or so much thereof as the purchase money of the Mortgaged Premises will pay of the same, together with any advances necessarily paid by the Plaintiff for taxes, fire insurance, principal and interest to prior mortgages to preserve and or maintain the Mortgaged Premises not previously included in any computations, upon presentation of receipts for said expenditures to the Referee, together with any attorneys' fees and expenses incurred by the Plaintiff on and after December 18, 2020,  together with all advances as provided for in the Note and Mortgage, which Plaintiff has made for taxes, insurance, principal and interest and any other charges due to prior mortgages, or to maintain the Mortgaged Premises pending consummation of this foreclosure sale, not previously included in the computation and upon presentation of receipts for said expenditures to the Referee, all together with interest thereon at the rate set forth in the Note and Mortgage until the date of the transfer of the referee's deed.

FOURTH: If such Referee intends to apply for a further allowance for his/her fees, he/she may leave upon deposit such amount as will cover such additional allowance, to await the further

order of this Court thereon after application duly made upon due notice to those parties entitled
thereof.

ORDERED, ADJUDGED AND DECREED, that in case the Plaintiff be the purchaser of
said Mortgaged Premises at said sale, or in the event that the rights of the purchasers at said sale
and the terms of sale under this judgment shall be assigned to and be acquired by the Plaintiff, and
a valid assignment thereof filed with said Referee, said Referee shall not require the Plaintiff to
pay in cash the entire amount bid at said sale, but shall execute and deliver to the Plaintiff, or it's
assignee, a deed or deeds of the Mortgaged Premises sold upon the payment to said Referee of
the amount specified above in items marked "FIRST" and "SECOND" and the amounts of the
aforesaid taxes, assessments, sewer rents and water rates, with interest and penalties thereon, or, in
lieu of the payment of said last mentioned amounts, upon filing with said Referee receipts of the
proper municipal authorities showing payment thereof; that the balance of the amount bid, after
deducting therefrom the aforesaid amounts paid by the Plaintiff for Referee's fees, advertising
expenses, taxes, assessments, sewer rents and water rates shall be allowed to the Plaintiff and
applied by said Referee upon the amounts due to the Plaintiff as specified in item marked
"THIRD"; that if after so applying the balance of the amount bid, there shall be a surplus over and
above the said amounts due to the Plaintiff, the Plaintiff shall pay to the said Referee, upon
delivery to Plaintiff of said Referee's deed, the amount of such surplus; that said Referee, upon
receiving said several amounts from the Plaintiff, shall forthwith pay therefrom said taxes,
assessments, sewer rents and water rates, with interest and penalties thereon, unless the same
have already been paid, and shall then deposit the balance.

ORDERED, ADJUDGED AND DECREED, the said Referee shall take the receipt of the
Plaintiff, or the attorneys for the Plaintiff, for the amounts paid as directed in item "THIRD"

573229-1

above, and file it with his/her report of sale; that he/she deposit the surplus monies, if any, with
the New York County Treasurer within five days after the same shall be received and be
ascertainable, to the credit of this action, to be withdrawn only on a written order of this Court,
signed by a Justice of this Court. The Referee shall make his/her report of such sale under oath
showing the disposition of the proceeds of the sale and accompanied by the vouchers of the
persons to whom payments were made, and shall file it with the New York County Clerk within
thirty days after completing the sale and executing the proper conveyance to the purchaser and
that if the proceeds of such sale be insufficient to pay the amount reported due to the Plaintiff
with interest and costs as aforesaid, the said Referee shall specify the amount of such deficiency
in his/her report of sale; that the Plaintiff may recover from 78-80 St. Marks Place, LLC and
Lawrence V. Otway a/k/a Lorcan Otway, jointly and severally, the whole deficiency or so much
thereof as this Court may determine to be just and equitable of the residue of the mortgage debt
remaining unsatisfied after a sale of the Mortgaged Premises and the application of the proceeds
thereof, provided a motion for a deficiency judgment shall be made as prescribed by Section
1371 of the Real Property Actions and Proceedings Law within the time limited therein, and the
amount thereof is determined and awarded by an order of this Court as provided for in said
section; and it is further

ORDERED, ADJUDGED AND DECREED, that the purchaser or purchasers at said
sale be let into possession on production or delivery of the Referee's deed or deeds; and it is
further

ORDERED, ADJUDGED AND DECREED, that each and all of the defendants in this
action and all persons claiming under them, or any or either of them, after the filing of such
Notice of Pendency of this action, be and they are hereby forever barred and foreclosed of all

right, claim, lien, title, interest, and equity of redemption in said Mortgaged Premises and each and every part thereof; and it is further

ORDERED, ADJUDGED AND DECREED, that said Mortgaged Premises is to be sold in one parcel in "as is" physical order and condition, subject to any state of facts that an inspection of the Mortgaged Premises would disclose; any state of facts that an accurate survey of the Mortgaged Premises would show; any covenants, restrictions, declarations, reservations, easements, rights of way and public utility agreements of record, if any; any building and zoning ordinances of the municipality in which the Mortgaged Premises is located and possible violations of same; any rights of tenants or persons in possession of the subject Mortgaged Premises; prior, liens of record, if any, except those liens addressed in Section 1354 of the Real Property Actions and Proceedings Law; any equity of redemption of the UNITED STATES OF AMERICA to redeem the Mortgaged Premises within 120 days from the date of sale; and it is further

ORDERED, ADJUDGED AND DECREED, that the Referee is prohibited from accepting or retaining any funds for him/herself or paying funds to him/herself without compliance with Part 36 of the Rules of the Chief Administrative Judge; and it is further

ORDERED, ADJUDGED AND DECREED, that by accepting appointment the Referee certifies that he/she is in compliance with Part 36 of the Rules of the Chief Judge (22 NYCRR Part 36), including, but not limited to section 36.2 (c) ("Disqualifications from appointment"), and section 36.2(d) ("Limitations on appointments based upon compensation"); and it is further

-8-

ORDERED, ADJUDGED AND DECREED, that the Referee appointed to sell herein be served with a signed copy of this Judgment of Foreclosure and Sale with notice of entry; and it is further

ORDERED, ADJUDGED AND DECREED, that, pursuant to CPLR 8003(b), absent application to the court, further court order, and compliance with Part 36 of the Rules of the Chief Judge, the Referee shall not demand or accept or receive more than the amount of $750.00, otherwise payable to the Referee for the foreclosure sale stage, regardless of adjournment, delay or stay of the sale, and it is further

ORDERED, ADJUDGED AND DECREED, that a copy of this Judgment with Notice of Entry shall be served upon the owner of the equity of redemption, any tenants named in this action and any other party entitled to notice.

Said Mortgaged Premises is commonly known as 78-80 St. Marks Place, New York, New York 10003 (County: New York; Block: 449; Lot 28). A description of said Mortgaged Premises is annexed hereto and make a part hereof as Schedule A.

ENTER,

_____
J.S.C.

-9-

**SCHEDULE A**
**DESCRIPTION**

573229-1

# EXHIBIT C

Form of Stipulation

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------- x

ST. MARK'S MIXED USE LLC,

                                           Plaintiff,

           -against-

78-80 ST. MARKS PLACE, LLC, LAWRENCE V.
OTWAY A/K/A LAWRENCE LORCAN OTWAY A/K/A
LORCAN OTWAY, SCHEIB'S PLACE, INC.,
EXHIBITION OF THE AMERICAN GANGSTER INC.,
THEATRE 80, LLC, FOXFACE SANDWICH SHOP, ORI
KUSHNIR, SIVAN LAHAT, AYA IKEDA, MEETING
SPACE, EUGENIE OTWAY and "JOHN DOE #1 through
JOHN DOE #12", the last twelve names being fictitious and
unknown to Plaintiff, the persons or parties intended being
the tenants, occupants, persons or corporations, if any,
having or claiming an interest upon the premises described in
the Complaint,

                                        Defendants.

-------------------------------------------------------------------- x

Index #:

**STIPULATION**

      This Stipulation is entered into as of January __, 2021, by and among (i) (a) 78-80 St. Marks Place, LLC, a New York limited liability company (the "**Borrower**"), and (b) Lawrence V. Otway, a/k/a Lawrence Lorcan Otway, a/k/a Lorcan Otway, individually, whose principal residence is located at 78-80 St. Marks Place, Apartment No. 1, New York, New York 10003 ("**Guarantor**"; and together with Borrower are collectively referred to herein as the "**Obligors**"), (ii) Eugenie Otway, individually, whose principal residence is located at 78-80 St. Marks Place, Apartment No. 1, New York, New York 10003 ("**EO**"), (iii) Scheib's Place, Inc., a New York corporation ("**SPI**"), (iv) Exhibition of the American Gangster, Inc., a New York corporation ("**AGI**"), (v) Theater 80 LLC, a New York limited liability company ("**Theater 80**"), and (vi) St. Mark's Mixed Use LLC (the "**Lender**"). Each of the Obligors, EO, SPI, AGI, Theater 80 and the Lender are sometimes referred to herein individually as a "**Party**", and the Obligors, EO, SPI, AGI, Theater 80 and the Lender are sometimes collectively referred to herein as the "**Parties**". Each of the Obligors, EO, SPI, AGI, and Theater 80 are sometimes referred to herein individually as an "**Obligor Related Party**", and the Obligors, EO, SPI, AGI, and Theater 80 are sometimes collectively referred to herein as the "**Obligor Related Parties**".

      **WHEREAS**, Borrower is a New York limited liability company and is the fee owner of the premises known as 78-80 St. Marks Place, New York, New York 10003 (Block: 449, Lot: 28) (the "**Mortgaged Premises**");

      **WHEREAS**, SPI is a New York corporation;

**WHEREAS**, AGI is a New York corporation;

**WHEREAS**, Theater 80 is a New York limited liability company;

**WHEREAS**, on or about November 12, 2019, the Borrower borrowed the principal sum of six million one hundred thousand and 00/100 dollars ($6,100,000.00) from 80 St. Marks Place Funding LLC ("**Funding LLC**"), which loan is evidenced by a Promissory Note, dated as of November 12, 2019 (the "**Note**"), which Note was duly executed by Borrower and delivered by Borrower to Funding LLC;

**WHEREAS**, in order to secure its obligations under the Note, the Borrower, as mortgagor, duly executed, acknowledged and delivered to Funding LLC, as mortgagee, a Mortgage and Security Agreement, dated as of November 12, 2019 (the "**Mortgage**"), which Mortgage encumbers the Mortgaged Premises. The Mortgage was duly recorded in the Office of City Register of the City of New York, New York County (the "**Register's Office**") on November 22, 2019 at CRFN 2019000383130. Any applicable recording tax was duly paid at the time the Mortgage was recorded. The Mortgage constitutes a valid first priority mortgage and lien on the Mortgaged Premises;

**WHEREAS**, in order to further secure its obligations under the Note and Mortgage, the Borrower duly executed, acknowledged and delivered to Funding LLC an Assignment of Leases and Rents, dated as of November 12, 2019 (the "**ALR**"), which ALR was duly recorded with the Register's Office on December 4, 2019 under CRFN: 2019000395326;

**WHEREAS**, in order to induce Funding LLC to make the Loan to the Borrower, Guarantor duly executed and delivered to Funding LLC a certain Guaranty, dated as of November 12, 2019 (the "**Guaranty**"). Pursuant to the Guaranty, the Guarantor absolutely, unconditionally and irrevocably guaranteed to Funding LLC the payment to the Lender of all amounts and obligations under the Note, the Mortgage and other Loan Documents (as defined below) when same become when due and payable, and the due and prompt performance of all obligations, terms, agreements and covenants under all of the Loan Documents;

**WHEREAS**, the Guarantor is the sole member of the Borrower and the Guarantor owns 100% of the limited liability company membership interests in the Borrower, and in order to further secure, among other things, the Borrower's obligations under the Note and the other Loan Documents, the Guarantor pledged to Funding LLC, among other things, all of his right, title and interest in, to and under his membership interests in the Borrower and the other "Collateral", as that term is defined in that certain Pledge and Security Agreement dated as of November 12, 2019 (the "**Pledge Agreement**")(the "Collateral" as defined in the Pledge Agreement is referred to herein as the "**Pledged Collateral**");

**WHEREAS**, Funding LLC perfected its security interest against the Pledged Collateral by, among other things, taking possession of the certificate of membership interests (the "**Certificated Interest**") in the Borrower pledged under the Pledge Agreement and also by duly filing a UCC-1 financing statement (the "**UCC-1**"), which adequately described the Pledged Collateral, with the New York State Department of State on December 18, 2019, designated as

2

File No. 201912180587574. The Certificated Interest and the UCC-1 constitute a valid and perfected first priority lien on the Pledged Collateral;

**WHEREAS**, on December 1, 2020, the Note was duly assigned by Funding LLC to the Lender pursuant to, among other things, an Allonge to Promissory Note, dated December 1, 2020 (the "**Allonge**");

**WHEREAS**, in addition, on December 1, 2020, Funding LLC assigned, among other things, the Mortgage to the Lender, as evidenced by an Assignment of Mortgage, dated as of December 1, 2020 (the "**Mortgage Assignment**"). The Mortgage Assignment was duly submitted for recording in the Register's Office;

**WHEREAS**, in addition, on December 1, 2020, Funding LLC assigned, among other things, the ALR to Plaintiff, as evidenced by an Assignment of Assignment of Leases and Rents, dated as of December 1, 2020 (the "**ALR Assignment**"). The ALR Assignment was duly submitted for recording in the Register's Office;

**WHEREAS**, in addition, Funding LLC assigned, among other things, the UCC-1 to Plaintiff, as evidenced by a UCC Financing Statement Amendment (the "**UCC-3**");

**WHEREAS**, in addition, pursuant to an Omnibus Assignment of Loan Documents dated as of December 1, 2020 (the "**Omnibus Assignment**"), the Note, the Mortgage, the Guaranty, the Pledge Agreement, the ALR, the Certificated Interest, the UCC-1 and all of the other Loan Documents were each duly assigned by Funding LLC to the Lender. The Note, the Mortgage, the ALR, the Guaranty, the Pledge Agreement, the Allonge, the Mortgage Assignment, the ALR Assignment, the Certificated Interest, the UCC-1, the UCC-3, the Omnibus Assignment and all other documents evidencing, securing, or guaranteeing the Loan and/or the assignment thereof to the Lender are collectively referred to herein as the "**Loan Documents**";

**WHEREAS**, pursuant to the Allonge, the Mortgage Assignment, the ALR Assignment, the UCC-3 and the Omnibus Assignment, the Lender is the current holder and owner of the Loan and all of the Loan Documents, and the Lender has standing to enforce the Note, the Pledge Agreement, and other Loan Documents;

**WHEREAS**, pursuant to the Note the Borrower is obligated to pay to the holder of the Note, among other things, installments of interest, and the balance of the principal, interest, and all other sums due under the Loan Documents on December 1, 2020 (the "**Maturity Date**");

**WHEREAS**, the Mortgage provides that the Borrower shall pay all of the indebtedness evidenced by the Note at the time and in the manner as provided for in the Note;

**WHEREAS**, the Borrower breached and defaulted on its obligations under the Note, the Mortgage and the other Loan Documents by, among other things, and without limitation, failing and omitting to pay in full all obligations under the Loan Documents on or before the Maturity Date (*i.e.*, December 1, 2020);

**WHEREAS**, the Borrower's failure to pay the entire indebtedness within five (5) days of when it became due, constitutes an "Event of Default" as defined in the Note and the Mortgage;

3

572939-1

**WHEREAS**, the Lender duly sent to the Borrower and the Guarantor a letter dated December 7, 2020, which letter duly notified the Borrower and the Guarantor, among other things, (i) that on December 1, 2020, the Loan matured by its terms and the entirety of the indebtedness became immediately due and payable pursuant to the Note and the Mortgage, (ii) that the Borrower failed to pay the entire indebtedness within five (5) days of when it became due, constituting an Event of Default under both the Note and the Mortgage, and (iii) interest on the indebtedness began to accrue at the "Default Rate" as defined in the Note and Mortgage from and after December 2, 2020;

**WHEREAS**, as a result of, among other things, the Borrower's failure to pay all amounts due under the Loan Documents on the Maturity Date, the Loan is now immediately due and payable in full and the Lender is entitled to, among other things, (i) foreclose the Mortgage and the personalty located at the Mortgaged Premises, (ii) foreclose on all collateral granted by the Guarantor to the Lender under the Pledge Agreement, including, without limitation, all of the Guarantor's limited liability company membership interests in the Borrower, and (iii) exercise all of the Lender's rights and remedies under all of the Loan Documents;

**WHEREAS**, without limiting in any manner any other existing defaults, the Obligors are now in default under the Loan Documents based upon the Borrower's failure to pay to the Lender all amounts due under the Loan Documents on the Maturity Date (the "**Stated Default**");

**WHEREAS**, any and all notice provisions contained in all of the Loan Documents have been complied with by the Lender and any applicable grace periods, if any, pertaining to Obligors' defaults occurring prior to the date of this Stipulation have expired or have been forever waived by the Obligors;

**WHEREAS**, as of December 31, 2020, there is due and owing to the Lender under the Note, the Mortgage, the Guaranty, the Pledge Agreement, and the other Loan Documents the following amounts:

| Payoff | |
|---|---|
| Principal Balance | $6,100,000.00 |
| Interest | $122,000.00 |
| Protective Advances | $0.00 |
| Legal Fees (through 12/18/20) | $23,653.65 |
| **Total Due** | **$6,245,653.65** |

Total Due:  $6,245,653.65[1] as of December 31, 2020;

---

[1] Legal fees and protective advances are reflected herein only as of December 18, 2020. Additional legal fees and expenses and protective advances have accrued and continue to accrue after December_18, 2020 and such additional amounts are owed under the Loan Documents and shall be added to the Payoff Amount (as defined herein below).

4

**WHEREAS**, the Lender is currently entitled to exercise any and all of its rights and remedies under the Note, the Mortgage, the Guaranty, the Pledge Agreement, and each of the other Loan Documents; and

**WHEREAS**, on _____ __, 2021 the Lender commenced this action (this "**Action**") by, among other things, filing the complaint in this Action against the Obligor Related Parties and the other defendants named therein, to, among other things, enforce the Lenders' rights against the Obligor Related Parties and any other persons or entities, including, without limitation, to foreclose on the Mortgaged Premises (the "**Complaint**").

**NOW, THEREFORE**, in consideration of the sum of \$10.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

1.      Recitals Incorporated Herein. The Parties acknowledge, represent and agree that each of the facts set forth in the recitals above are true and correct in all respects and are incorporated herein as if fully set forth in the body of this Stipulation.

2.      Existing Agreement. The Obligor Related Parties and the Lender entered into a certain Forbearance Agreement, dated as of January __, 2021, pursuant to which, among other things, the Obligor Related Parties acknowledged their defaults under the Loan Documents and amount owed to the Lender and agreed to execute and deliver this Stipulation (the "**Forbearance Agreement**"). The Obligor Related Parties hereby ratify and reaffirm the Forbearance Agreement and the provisions therein in all respects, and agree to be bound by the Forbearance Agreement.

3.      Consents and Waivers By the Obligor Related Parties. The Obligor Related Parties hereby:

(a)      Acknowledge valid service of the summons and Complaint in this action, the notice of pendency of this Action, and a notice of mandatory electronic filing, and waive, with prejudice, any and all defenses of any kind relating to, or in any way based on, (i) service or improper service of the summons and Complaint, (ii) the personal jurisdiction of this Court with respect to the Obligor Related Parties and this action; and (iii) the subject matter jurisdiction of the Court as to all matters in this action;

(b)      Admit all allegations in the Complaint and consent to all relief requested in the Complaint, and consent to the immediate entry of a judgment of foreclosure and sale in the form of Exhibit A[2] attached hereto (the "**Judgment**"), which among other things, fixes the amount owed by the Obligors and directs the foreclosure sale of the Mortgaged Premises (a "**Foreclosure Sale**").

(c)      Expressly: (i) waive any and all defenses to this Action and the Complaint and the claims asserted therein, with prejudice, including, without limitation, the defenses of

_____

[2] Note: The form of the Judgment to be attached to this Stipulation upon execution hereof will be in substantially the form as the proposed judgment attached an exhibit to the Forbearance Agreement.

572939-1

improper service, lack of jurisdiction, lacking of standing, payment, waiver, estoppel, laches, unclean hands, unconscionability, the election of remedies defense, or any claim that the Obligors are not in default under the Loan Documents or that the Note fully matured and that all obligations became due and payable on December 1, 2020; (ii) admit all allegations in the Complaint; (iii) acknowledge and re-affirm the Obligors' due execution of each of the Loan Documents; (iv) agree that none of the Obligor Related Parties shall file any answer, counterclaim, motion, order to show cause or notice of appeal, and that none of the Obligor Related Parties shall contest or delay this Action or the Judgment in any way; (v) admit and acknowledge that, as of December 31, 2020 the Payoff Amount of $6,245,563.65 is due and owing to the Lender (and that additional attorneys' fees and expenses and protective advances have accrued after December 18, 2020 and continue to accrue, and such amounts shall be added to the Payoff Amount and the amount of the Judgment) and interest thereon at the rate of 24% per annum continues to accrue and shall be added to the Payoff Amount and the amount if the Judgment; (vi) waive the appointment of a referee to compute the sums due and owing to the Lender and hereby consent to the immediate entry of the Judgment, which incorporates the amounts due and owing to the Lender and agree that the Mortgaged Premises shall be sold in one parcel; and (vii) irrevocably and unconditionally agree that the Lender may present the Judgment to the Justice assigned in this Action for signature without any further notice to the Obligor Related Parties and that the Judgment may be presented to the Clerk of Court for entry at any time in the Lender's sole discretion.

(d) Consent to the immediate appointment of a receiver for the Mortgaged Premises and that the such receiver may be any person selected by the Lender.

(e) Agree that each of them and their counsel shall use best efforts to timely and fully cooperate with the Lender in connection with all matters related to the sale of the Mortgaged Premises and/or the Pledged Collateral, including, without limitation, (i) providing information about the Mortgaged Premises, (ii) providing access, at all times and from time to time, to the Mortgaged Premises to the Lender, any prospective purchaser of the Mortgaged Premises and all agents and representatives of all of the foregoing, and (iii) executing all documents and performing all acts requested by the Lender in connection with or related to the sale. The Obligor Related Parties hereby each grant the Lender an irrevocable power of attorney, coupled with an interest, to take any and all acts on behalf of each Obligor Related Party in connection with the sale of the Mortgaged Premises and/or the Pledged Collateral, including, without limitation, to execute and deliver any and all documents in connection with the sale of the Mortgaged Premises and/or the Pledged Collateral (including, without limitation, an advertisement of sale, a deed, a title affidavit and transfer tax forms). Notwithstanding, the foregoing nothing herein shall require the Lender to take any act and the Lender shall have no obligation to do so. In addition, the Lender shall be fully exonerated and shall have no liability to any of the Obligor Related Parties or any other person or entity for any acts taken or not taken by the Lender in connection with the sale of the Mortgaged Premises and/or the Pledged Collateral.

4. Interest Rate; Financial Statements. (a) Interest Rate; Payoff Amount; Financial Statements.

(a) Interest shall continue to accrue at the default rate of 24% per annum provided in the Note from December 2, 2020 until the date that the Obligors have indefeasibly paid

6

572939-1

and satisfied all of their obligations (including, without limitation, principal, interest, default rate interest, late fees, service fees, legal fees and expenses, protective advances, and all other fees and charges) under each of the Loan Documents and this Stipulation (collectively, the "**Payoff Amount**").

        (b)    The Obligors shall promptly deliver to the Lender any and all financial information that the Lender may reasonably request, including, without limitation, (i) a current rent roll for Mortgaged Premises; (ii) the operating agreement and other organizational documents of the Borrower; (iii) copies of all leases for the Mortgaged Premises; and (iv) proof of insurance of the Mortgaged Premises and Obligors.

     5.    No Reinstatement of any Loan. The Lender's acceptance of any payment (other than total indefeasible payment in cash of the Payoff Amount) made by any of the Obligor Related Parties on or after the date hereof, nor the Lender's application of any of such payments to amounts owing under the Loan Documents, shall constitute or be construed as: (a) a waiver by the Lender of (i) the Stated Default or any other breach or default by any of the Obligor Related Parties under any or all of the Loan Documents or this Stipulation, (ii) any of the Lender's rights or remedies in connection with the Loan, any of the Loan Documents or this Stipulation, or (iii) any of the provisions of the Loan Documents or this Stipulation; or (b) a cure of the Stated Default or any other breach or default by any of the Obligor Related Parties under the Loan Documents or this Stipulation.

     6.    Application of Payments. Any payments made by any of the Obligor Related Parties to the Lender on or after the date hereof may be accepted by the Lender and applied against the obligations owed under the Loan Documents in such manner as the Lender may hereafter determine from time to time, all in the Lender's sole and absolute discretion.

     7.    Representations and Warranties. In order to induce the Lender to enter into this Stipulation, each of the Obligor Related Parties hereby represents, warrants and covenants to the Lender as follows, all of which representations, warranties and covenants shall survive the execution of this Stipulation:

     7.1    Binding Obligations. The Note, the Mortgage, the ALR, the Guaranty, the Pledge Agreement, and all of the other Loan Documents, the Forbearance Agreement and this Stipulation, have been duly executed and delivered by the Obligor Related Parties (as applicable) and constitute legal, valid and binding obligations of the Obligor Related Parties (as applicable), enforceable in accordance with their respective terms.

     7.2    No Defenses or Claims.    (a)    The Obligor Related Parties expressly represent, warrant and acknowledge that (i) there are no defenses, offsets or counterclaims of any nature whatsoever to any of the Loan Documents or to the Lender's ownership thereof or the Lender's status as the due holder of the Note, the Mortgage, the ALR, the Guaranty, the Pledge Agreement, and the other Loan Documents or the Lender's standing to enforce all of the foregoing; (ii) the Loan Documents are hereby reaffirmed by the Obligors in their entirety; and (iii) the Loan Documents are in full force and effect and the Lender shall not be deemed to waived or modified any of its rights thereunder, at law or in equity.

7

(b)    None of the Obligor Related Parties has any defense, affirmative defense, setoff, claim, counterclaim, action, or cause of action of any kind or nature whatsoever against the Lender or any of its past, present, or future directors, officers, employees, agents, attorneys, legal representatives, predecessors, affiliates, successors, or assigns, directly or indirectly, arising out of, based upon, or in any manner connected with any act, transaction, event, circumstance, action, failure to act, or occurrence of any sort or type, whether known or unknown, which occurred, existed, was taken, permitted, or begun prior to the execution of this Stipulation or which occurred, existed, was taken, permitted, or begun in accordance with, pursuant to, or relating to, or by virtue of the Loan or any of the terms of any of the Loan Documents, or which directly or indirectly relates to or arises out of, or in any manner is connected with, the Loan or any or all of the Loan Documents (including, without limitation, the enforcement by the Lender or its predecessor of any of its rights and remedies under any or all of the Loan Documents); and if any such defense, affirmative defense, setoff, claim, counterclaim, action or cause of action exists without the knowledge of any of the Obligor Related Parties, the same is hereby unconditionally forever waived with prejudice as against the Lender, or any of its past, present or future directors, officers, employees, agents, attorneys, legal representatives, predecessors, affiliates, successors, or assigns.

7.3    Maturity of the Note.  Pursuant to the express terms of the Note the entire principal balance together with all other amounts payable under the Note, the Mortgage, the Guaranty, the Pledge Agreement and the other Loan Documents were immediately due and payable on December 1, 2020, and the Obligors have failed to pay such obligations as of the date hereof.

7.4    Representations in Loan Documents.    All of the representations and warranties made by each of the Obligors in each of the Loan Documents  and the Forbearance Agreement are true and correct in all material respects as if made on the date hereof, except for those made with respect to financial statements bearing a particular date, which representations and warranties are hereby restated to be effective as of the date of the last such financial statements provided to the Lender by the Obligors in question.

7.5    Insurance Policies.  Insurance policies complying with the terms of the Loan Documents are in full force and effect.

7.6    Leases.  (a) There are no leases or licenses to use any part of the Mortgaged Premises other than the following leases (the "**Stated Leases**"):

(i)    That certain Commercial Lease dated as of November 12, 2019 between the Borrower, as landlord, and SPI, as tenant (the "**2019 Scheib's Lease**"), which lease expired and terminated by its terms on November 12, 2020 and is no longer in effect;

(ii)    That certain Commercial Lease dated as of November 12, 2019 between the Borrower, as landlord, and AGI, as tenant (the "**2019 Museum Lease**"), which lease expired and terminated by its terms on November 12, 2020 and is no longer in effect;

(iii)    That certain Commercial Lease dated as of November 12, 2019 between the Borrower, as landlord, and the Guarantor, as tenant (the "**2019 Otway Lease**"),

8

which lease expired and terminated by its terms on November 12, 2020 and is no longer in effect;

(iv) That certain Commercial Lease dated as of November 12, 2019 between the Borrower, as landlord, and Theater 80 LLC ("**2019 Theater 80**"), as tenant (the "**Theater Lease**"), which lease expired and terminated by its terms on November 12, 2020 and is no longer in effect;

(v) That certain Standard Form of Loft Lease, dated as of September 1, 2019, between the Borrower (as successor-in-interest to Lawrence Otway), as landlord, and Mr. Ori Kushnir ("**Kushnir**") and Ms. Sivan Lahat ("**Lahat**"), jointly as tenants (the "**Kushnir/Lahat Lease**"), for the 3rd floor (aka Unit 3) of a portion of the Mortgaged Premises located at 78 St. Marks Place, New York, New York. The Kushnir/Lahat Lease expires on August 31, 2022 and has not been modified, amended or extended in any way whatsoever;

(vi) That certain Lease Agreement, dated as of August 1, 2019 between the Borrower (as successor-in-interest to Lawrence Otway), as landlord, and Mr. Aya Ikeda, as tenant ("**Ikeda**"), for the Unit 4 of a portion of the Mortgaged Premises located at 78 St. Marks Place, New York, New York (the "**Ikeda Lease**"). The Ikeda Lease expires on July 31, 2021 and has not been modified, amended or extended in any way whatsoever;

(vii) That certain oral sublease (the "**Oral Sublease**") between Theater 80, as sub-landlord, and SPI, as sub-tenant, for a portion of the ground floor of the Mortgaged Premises for the operation of a tavern/bar;

(viii) That certain oral agreement (the "**Oral Sub-Sublease**") between SPI, as sub-sub-landlord, and Kushnir and Lahat d/b/a Foxface Sandwich Shop ("**Foxface**") for a portion of the ground floor of the Mortgaged Premises consisting of 200 square feet with a concession window opening to St. Marks Place. Foxface is an unincorporated business, is not a legal entity, and is a business owned and operated solely by Kushnir and Lahat under the trade name Foxface Sandwich Shop;

(ix) That certain Commercial Lease dated as of November 12, 2020 between the Borrower, as landlord, and SPI, as tenant, for 4,875 square feet of the ground floor of \_\_\_\_ St. Marks Place, New York, New York (the "**2020 Scheib's Lease**");

(x) That certain Commercial Lease dated as of November 12, 2020 between the Borrower, as landlord, and AGI, as tenant, for 750 square feet of the Gallery Museum at 80 St. Marks Place, New York, New York (the "**2020 Museum Lease**");

(xi) That certain Lease Agreement dated as of November 12, 2020 between the Borrower, as landlord, and the Guarantor and Mrs. Eugenie Otway, as tenants, for the portion of the Mortgaged Premises known quadplex, a/k/a Unit No.1 (the "**2020 Otway Lease**");

9

(xii)    That certain Commercial Sublease Agreement dated as of November 12, 2020 between Scheibs Place LLC, as sublessor, and Theater 80, as subtenant, for the auditorium, cellar and backstage at 80 St Marks Place, New York, New York (the "**2020 Theater Sublease**"). Scheibs Place LLC is not a legal entity. The reference to "Scheibs Place LLC" in the 2020 Theater Sublease was a typographical error and the correct name of the sublessor under the 2020 Theater Sublease is "Scheib's Place, Inc."; and

(xiii)    That certain Sub-Commercial Sublease Agreement dated as of November 12, 2020 between Theater 80, as sublessor, and Meeting Space, as subtenant, for the 2nd floor of the Mortgaged Premises (the "**2020 Meeting Space Sub-Sublease**"). Meeting Space is an unincorporated business, is not a legal entity, and is a business owned and operated solely by the Guarantor under the trade name Meeting Space.

(b)    The Guarantor is (i) the sole shareholder and president of both SPI and AGI; and (ii) the sole member and sole manager of Theater 80. The Guarantor solely owns and controls SPI, AGI, and Theater 80, and each of such entities is an affiliate of the Guarantor.

(c)    The 2019 Scheib's Lease, the 2019 Museum Lease, the 2019 Otway Lease, and the 2019 Theater Lease each expired and terminated by its terms on November 12, 2020 and has not been modified, amended or extended in any way whatsoever, and is no longer in effect.

(d)    The 2020 Museum Lease, the 2020 Otway Lease, the 2020 Theater Sublease and 2020 Meeting Space Sub-Sublease, (i) were each entered into in violation of the Borrower's obligations under the Loan Documents and without the consent of the Lender (or its predecessor-in-interest); and (ii) are each hereby forever terminated and without effect as of the date hereof.

(e)    The 2020 Scheib's Lease (i) was entered into in violation of the Borrower's obligations under the Loan Documents and without the consent of the Lender (or its predecessor-in-interest); and (ii) is hereby automatically forever terminated and without effect as of June 1, 2021. For the avoidance of doubt, no notice or act shall be required to effectuate the termination of the 2020 Scheib's Lease as of June 1, 2021 and SPI shall vacate and surrender the premises under such lease by June 1, 2021.

(d)    AGI, Guarantor, Theater 80, Foxface and Meeting Space have no legal right to use any part of the Mortgaged Premises as of the date hereof. SPI has no legal right to use any part of the Mortgaged Premises as of June 1, 2021.

(e)    The Oral Sublease and the Oral Sub-Sublease are void and of no effect whatsoever, as among other things, they were entered into without the Lender's (or its predecessor-in-interest's) consent and they are oral only and in violation of the statute of frauds.

(f)     In all events, the Oral Sublease is hereby forever terminated and of no effect whatsoever. As a result of the termination of the Oral Sublease, the Oral Sub-Sublease is terminated as a matter of law due to the termination of the Oral Sublease (i.e. its master lease).

(g)     In all events, the Oral Sub-Sublease is hereby forever terminated and of no effect whatsoever.

7.7     Compliance with Laws. The Obligor Related Parties are in compliance with all material laws, ordinances, rules and regulations of all governmental entities (and all agencies, bodies and subdivisions thereof) affecting the ownership, use, or operation of the Mortgaged Premises, and none of the Obligor Related Parties has received any notice of noncompliance from any such governmental entity with respect to the Mortgaged Premises or that appropriate corrective action is being taken to promptly cure any non-compliance issues(s).

7.8     No Breach of Other Agreements. Neither the execution or delivery of this Stipulation, nor the consummation of this transactions contemplated by this Stipulation, nor the compliance with the terms and provisions hereof: (i) will constitute or result in a breach of any of any the Obligor Related Party's respective articles of incorporation or operating agreement, or will constitute or result in a violation of any law, order, writ, injunction, or decree of any court or governmental department, commission, board, bureau, agency, or instrumentality applicable to any of the Obligor Related Parties; (ii) will conflict or will be inconsistent with, or will result in any breach of, any of the terms, covenants, conditions, or provisions thereof; or (iii) will constitute a default under any indenture, mortgage, instrument, documents, agreement, or contract of any kind to which any of the Obligor Related Parties may be bound or subject.

7.9     The Obligor Related Parties Benefitted. The Obligor Related Parties have each derived direct and substantial benefits from this Stipulation and the transactions contemplated by this Stipulation.

7.10     Other Documents. (a) All documents, reports, certificates, financial statements, and other statements of any kind furnished to the Lender by or on behalf of each of the Obligor Related Parties in connection with the transactions contemplated by this Stipulation: (i) are true, correct, and complete in all material respects; (ii) do not contain any untrue statement of material fact; and (iii) do not omit any fact necessary to make the information contained therein not misleading.

(b)     The continued validity in all respects of all representations and warranties made by the Obligor Related Parties in the Loan Documents, this Stipulation and any other documents delivered by the Obligor Related Parties in connection with this Stipulation constitutes a condition precedent to the Lender's agreements under this Stipulation.

7.11     Stipulation Is Duly Executed and Enforceable. Each of the signatories, on behalf of the Obligor Related Parties, to this Stipulation has full and complete authorization and power to execute and deliver this Stipulation in the capacity herein stated. This Stipulation is a valid, binding and enforceable obligation of each of the Obligor Related Parties and does not violate any law, rule or regulation, or any contract or agreement to which any of the Obligor

11

Related Parties is a party. None of the Obligor Related Parties has conveyed, transferred, assigned, pledged or otherwise encumbered any claim or causes of action covered by the releases set forth in this Stipulation.

       7.12   Benefitted From This Stipulation. The Borrower, the Guarantor and the other Obligor Related Parties have each derived direct and substantial benefits from this Stipulation.

       8.   Amendments. This Stipulation may be amended only by a written amendment, fully executed and delivered by each of the Parties.

       9.   Loan Documents Still in Force. Notwithstanding anything to the contrary in this Stipulation, the Note, the Mortgage, the ALR, the Guaranty, the Pledge Agreement and all of the other Loan Documents are in full force and effect in accordance with their respective terms, remain valid and binding obligations of the Obligors and have not been modified or amended, and are hereby reaffirmed and ratified by the Obligors in all respects. The liens, security interests and pledges created by the Mortgage and Pledge Agreement, and the other Loan Documents are and continue to be valid, effective, properly perfected, enforceable and are hereby ratified and confirmed in all respects.

       10.   No Waiver of Rights Under Loan Documents. Neither the failure nor the delay by the Lender to exercise its remedies, nor the acceptance by the Lender of partial payments or any other partial performance (whether any of the foregoing is before or after the date of this Stipulation), nor any provision of this Stipulation, shall (a) amend, modify, supplement, extend, delay, renew, terminate, waive, release or otherwise limit or prejudice the Lender's rights and remedies under the Loan Documents or any of the Obligors' obligations under the Loan Documents (including, without limitation, the Lender's right to receive full payment of principal and interest as well as all late charges, default rate interest, delinquent interest, attorneys' fees and expenses, the Lender's protective advances and other charges to the extent provided in the Loan Documents), nor (b) affect the priority of the Lender's security interests in and liens on the property of any of the Obligors (including, without limitations, the Lender's first priority mortgage lien on the Mortgaged Premises pursuant to the Mortgage and the other Loan Documents and the Lender's first priority security interest and lien on all of the equity interests in the Borrower pursuant to the Pledge Agreement and the other Loan Documents). Nothing contained in this Stipulation shall operate to prohibit, restrict or otherwise inhibit the Lender from exercising any right or remedy the Lender may have under the Loan Documents (except to the extent that the Lender agrees to forbear as specifically provided in Section 2 above) or constitute a cure of the Stated Default or any other existing default or serve to extend any applicable grace or cure period and, without limitation, shall not extend any applicable reinstatement or redemption period.

       11.   Release of Claims and Waivers.

       11.1   Release of Claims. Each of the Obligor Related Parties, for itself and on behalf of its agents, employees, representatives, affiliates, predecessors-in-interest, successors, and assigns (such persons and entities other than the Obligor Related Parties being collectively referred to herein as the **"Other Releasors"**), does hereby release, discharge and acquit the Lender, and the Lender's past, present and future officers, directors, shareholders, agents, employees, professionals,

predecessors, successors, assigns and affiliates, and their respective successors, heirs and assigns (collectively, the "**Released Parties**"), of and from any and all rights, claims, causes of action, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, causes of action, promises, damages, costs, losses and expenses of every kind, nature, description or character whatsoever, and irrespective of how, why, or by reason of any facts, which could or may be claimed to exist, whether known or unknown, matured or contingent, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, fraud, breach of any duty, breach of any federal, state or local laws of any kind or nature whatsoever, or any other legal or equitable theory whatsoever, each as though fully set forth herein at length, from the beginning of the world to the date of execution of this Stipulation by the Obligor Related Parties (collectively, the "**Claims**"), which in any way arise out of, are connected with or relate to any or all of the following: (a) the Loan or the administration of any or all of the Loan or any or all of the Loan Documents, as well as any action or inaction of the Released Parties or any of them with respect to the Loan or the administration thereof or any or all of the Loan Documents or the enforcement thereof; (b) any or all of the transactions which are the subject of or contemplated by any or all of the Loan Documents; (c) the Mortgaged Premises and/or any other collateral granted under any of the Loan Documents; or (d) any fact, matter or transaction existing or occurring as of or prior to the execution of this Stipulation by the Parties, which in any way, directly or indirectly, relates to the Loan, any of the Loan Documents, or the Mortgaged Premises.

        11.2  Waiver. Each of the Obligor Related Parties hereby: (i) waives any and all defenses to the Lender's exercise of any or all of its rights under the Loan Documents, including, without limitation, the defenses of payment, waiver, estoppel, laches, unclean hands, unconscionability, the election of remedies defense, or any claim that the Obligors are not in default under the Loan Documents, or any claim that any notice was not given by the Lender, or that the Note fully matured; (ii) acknowledges and re-affirms its due execution and delivery of the Loan Documents (as applicable); (iii) agrees that it shall not file an answer, counterclaim, motion, order to show cause or appeal as to any judicial or non-judicial actions that may be taken by the Lender after the earlier of the Forbearance Date (as defined in the Forbearance Agreement) or the date that any Termination Event (as defined in the Forbearance Agreement) occurs; (iv) admits and acknowledges that, the Note matured by its terms on the Maturity Date (i.e. December 1, 2020) 2020 and that as of December 31, 2020 the Payoff Amount is due and owing to the Lender; (v) expressly waives the appointment of a referee in any action to foreclose the Mortgage to compute the sums due and owing to the Lender; (vi) waives any claim or defense regarding the Loan, the Loan Documents or this Stipulation, including, without limitation, as to the Lender's standing or that the Loan is usurious or requires the Obligors to pay "hidden" or "disguised" interest, fees or charges; (vii) waives any claim or defense that the Lender is prohibited from commencing a proceeding to recover under the Loan Documents by reason of New York State's issuance of any Executive Order, including, without limitation, Executive Order 202.28, 202.48, 202.75, 201.81 and any subsequent modifications and/or extension of said Executive Orders, and/or New York's Chief Administrative Judge's issuance of Administrative Order of the Chief Administrative Judge of the Courts; and (viii) agrees that in the event that any conference is scheduled in the Foreclosure Action it shall agree that the Foreclosure Action may immediately proceed and shall not request an adjournment of the Foreclosure Action for any reason.

13

11.3    Indemnity. Each of the Obligor Related Parties hereby agrees to defend, indemnify, and hold the Lender and each of the other Released Parties harmless from and against any losses, damages, costs (including, without limitation, attorneys' fees, court costs, and costs of appeal), expenses, judgments, liens, decrees, fines, penalties, liabilities, claims, actions, suits, and causes of action (collectively, the "**Indemnified Claims**") arising, directly or indirectly, from (to the extent not inconsistent with the terms of this Stipulation): (a) any material breach by any of the Obligor Related Parties of any warranty or representation contained in this Stipulation or in the documents executed and delivered by any of the Obligor Related Parties pursuant to this Stipulation (collectively referred to as the "**Obligors Documents**"); (b) and after any material breach, default, or violation by any of the Obligor Related Parties of any covenant, agreement, or provision of any of the Obligors Documents or the Loan Documents; (c) any claims by or liabilities to third parties pertaining to injury to persons or damage to the Mortgaged Premises; and (d) any claims and/ or defenses of any past, present, or future tenants at the Mortgaged Premises, including, without limitation, SPI, AGI, the Guarantor, EO, Theater 80, Foxface, Kushnir, Lahat and Ikeda.

11.4    Waivers of Unknown Claims. As to all matters being released by the Obligor Related Parties pursuant to the provisions hereof, each of the Obligor Related Parties for itself and on behalf of the Other Releasors, expressly acknowledges that the release of Claims set forth in Section 15.1 hereof applies to all Claims whether or not known to, or suspected by the Obligor Related Parties to exist. Each of the Obligor Related Parties, for itself and on behalf of all Other Releasors, acknowledges and agrees that the facts with respect to which the release of Claims contained in Section 15.1 is executed may hereafter be found to be different from the facts now believed by the Obligor Related Parties to be true, and each of the Obligor Related Parties, for itself and on behalf of all Other Releasors, expressly accepts and assumes the risk of all such possible differences, and agrees that the release of Claims contained in this Section shall be and remain effective notwithstanding any such difference in facts.

11.5    No Admission of Liability. Nothing contained in this Stipulation, including, without limitation, the terms of this Section 11, constitutes or shall be construed as an admission by the Lender of any liability whatsoever.

11.6    No Assignment. Each of the Obligor Related Parties, for itself and on behalf of all Other Releasors, warrants and represents to the Lender that none of the Obligor Related Parties and none of the Other Releasors have sold, assigned, transferred, conveyed or otherwise disposed of any Claims or Indemnified Claims which are the subject of this Section 11.

12.    No Waiver by the Lender. The agreement by the Lender to forbear from exercising its rights and remedies under the Loan Documents shall not constitute a waiver of, consent to, or condoning of the Stated Default or any other default by any of the Obligor Related Parties. The Obligor Related Parties agree that Lender may immediately exercise all rights and remedies available to the Lender under the Loan Documents by reason of the Stated Default or any other default immediately upon the earlier of (i) the Forbearance Date (as defined in the Forbearance Agreement), (ii) the occurrence of any Termination Event (as defined in the Forbearance

14

Agreement); or (iii) the expiration or termination of this Stipulation for any reason, without the Lender being required to provide any additional notice of default or of acceleration and without any grace or cure periods therefor.

13.     Miscellaneous.

13.1     Costs and Expenses. Nothing in this Stipulation shall (i) diminish or otherwise limit any obligation that any of the Obligors has under the Loan Documents with respect to payment of the costs and expenses (including, without limitation, attorneys' fees and expenses) of the Lender, or (ii) prevent the Lender from requiring each of the Obligors to pay all such costs and expenses in accordance with the terms of the Loan Documents.

13.2     Further Instruments. The Obligor Related Parties shall, whenever and as often as they shall be requested to do so by the Lender, cause to be executed, acknowledged and/or delivered to the Lender any and all such further instruments and documents as may be necessary or desirable, in the sole discretion of the Lender, in order to carry out the intent and purpose of this Stipulation. Without limiting of the foregoing, each of the Obligor Related Parties hereby irrevocably appoints Lender as its and his attorney-in-fact, coupled with an interest, to execute any such documents as provided above and to fill in any blank in the Judgment, or any modification thereof, in accordance with the terms of this Stipulation.

13.3     Written Waiver Only. No waiver by the Lender of any of its rights or remedies in connection with the Loan or any Loan Documents shall be effective unless such waiver is in writing and signed and delivered by the Lender. Without limiting the generality of the preceding sentence, nothing contained in this Stipulation nor any delay or omission by the Lender in exercising or enforcing any of its rights and remedies in connection with the Loan Documents constitutes or shall be construed as a waiver by the Lender of: (i) the Stated Default or any other breach or default by any of the Obligors under any of the Loan Documents; or (ii) any of the Lender's rights or remedies in connection with the Loan or any of the provisions of any of the Loan Documents.

13.4     Governing Law. This Stipulation shall be governed by and construed and enforced in accordance with the internal laws of the State of New York, without regard to the law on conflicts of law.

13.5     Third Party Beneficiaries. Nothing in this Stipulation is intended to or shall confer any rights or remedies upon any person, other than the Parties hereto and the Released Parties and, subject to any restrictions on assignment contained in this Stipulation and the other Loan Documents, their respective successors and assigns.

13.6     No Offsets. No indebtedness evidenced by the Note or any other Loan Documents shall be offset by all or part of any claim, cause of action, or cross-claim of any kind, whether liquidated or unliquidated, which any of the Obligor Related Parties now has or may hereafter acquire or allege to have acquired against the Lender.

15

572939-1

13.7    Relationship of Parties. Nothing contained in this Stipulation or the other
Loan Documents constitutes or shall be construed as the formation of a partnership, joint venture,
tenancy-in-common, or any other form of co-ownership, or the creation of any confidential or
fiduciary relationship of any kind between the Lender, on the one hand, and the Obligor Related
Parties and/or any other person or entity on the other hand. The Obligor Related Parties
acknowledge and agree that the Lender has at all times acted and shall at all times continue to be
acting only as a lender to the Obligors within the normal and usual scope of activities of a lender.

13.8    Attorneys' Fees. Upon demand therefor by the Lender, the Obligors shall pay
all costs and expenses, including, without limitation, reasonable attorneys' fees and costs, now or
hereafter incurred by the Lender (i) in negotiating and preparing this Stipulation; and (ii) in
administering, enforcing or effectuating any of the terms of this Stipulation and the other Loan
Documents, whether or not any legal proceedings are instituted by the Lender. Without limiting the
generality of the immediately preceding sentence, such costs and expenses shall include all
attorneys' fees and costs now or hereafter incurred by the Lender in connection with any federal or
state bankruptcy, insolvency, reorganization, foreclosure, or other similar proceeding or action by or
against any of the Obligor Related Parties which in any way relates to or affects the Lender's
exercise of its rights and remedies under any or all of the Loan Documents. The amount of any
attorneys' fees, costs and expenses of the Lender that are not paid by the Obligors shall be added to
the Payoff Amount, shall constitute secured obligations of the Obligors under the Loan Documents
and shall bear interest at the default rate under the Loan Documents.

13.9    Descriptive Headings; Interpretation. The headings to sections of this
Stipulation are for convenient reference only, do not in any way limit or amplify the terms of this
Stipulation, and shall not be used in interpreting this Stipulation. For purposes of this Stipulation: (i)
the term "including" shall be deemed to mean "including, without limitation,"; (ii) the term "Loan
Documents" shall be deemed to include, without limitation, this Stipulation; (iii) the term "person"
means any natural person or any entity, including any corporation, partnership, joint venture, trust,
limited liability Borrower, unincorporated organization or association, or trustee; and (iv) whenever
the context of this Stipulation reasonably requires, all words used in the singular shall be deemed to
have been used in the plural, and the neuter gender shall be deemed to include the masculine and
feminine gender, and vice versa. This Stipulation has been prepared and drafted through a joint effort
of the Parties and, therefore, shall not be construed against any of the Parties as the person who
prepared or drafted this Stipulation.

13.10    Entire Agreement. This Stipulation and the other Loan Documents contain
the entire agreement and understanding between the Parties concerning the matters covered by this
Stipulation and the other Loan Documents, and supersede all prior and contemporaneous
agreements, statements, understandings, terms, conditions, negotiations, representations and
warranties, whether written or oral, made by the Lender or any of the Obligor Related Parties
concerning the matters covered by this Stipulation and the other Loan Documents.

13.11    Payoff Amount. Each of the Obligor Related Parties hereby acknowledges
and agrees that the Payoff Amount as of December 31, 2020 is $6,245,653.65 (exclusive of
attorneys' fees and expenses and protective advances incurred after December 18, 2020, which

16

572939-1

amounts have accrued and continue to accrue and shall be added to the Payoff Amount), that interest is continuing to accrue thereon at the default rate of 24% per annum from and after December 2, 2020, and that the Obligors are jointly and severally liable for the Payoff Amount.

           13.12  Severability. If any term or provision of this Stipulation or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Stipulation, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each such term and provision of this Stipulation shall be valid and shall be enforced to the fullest extent permitted by law.

           13.13  Notices. All notices and other communications provided for in this Stipulation shall be in writing and shall be given by Federal Express or hand delivery:

        If to the Lender, at:

        St. Mark's Mixed Use LLC
        100 Park Avenue, Suite 2305
        New York, New York 10012
        Attn: Jason S. Leibowitz, Esq.

        with a copy to:

        Katsky Korins LLP
        605 Third Avenue, 17th Floor
        New York, New York 10158
        Attn.: Steven H. Newman, Esq.
        Email: snewman@katskykorins.com

        If to the Borrower, at:

        78-80 St. Marks Place, LLC
        78-80 St. Marks Place
        New York, New York 10003
        Attn: Lawrence v. Otway

        With a copy to:

        Scott Markowitz, Esq.
        Tarter Krinsky & Drogin LLP
        1350 Broadway
        New York, New York 10018
        Email: smarkowitz@tarterkrinsky.com

        If to the Guarantor, at:

Mr. Lawrence v. Otway
78-80 St. Marks Place, Apt. No. 1
New York, New York 10003

With a copy to:

Scott Markowitz, Esq.
Tarter Krinsky & Drogin LLP
1350 Broadway
New York, New York 10018
Email: smarkowitz@tarterkrinsky.com

If to EO, SPI, AGI or Theater 80, to such person or entity at:

78-80 St. Marks Place
New York, New York 10003
Attn: Lawrence v. Otway

With a copy to:

Scott Markowitz, Esq.
Tarter Krinsky & Drogin LLP
1350 Broadway
New York, New York 10018
Email: smarkowitz@tarterkrinsky.com

Notices shall be deemed given (i) if sent by hand, the date sent; and (ii) if sent by Federal Express, one (1) business day after delivery to an authorized agent or authorized depository box of Federal Express.

13.14 Counterparts, Etc. This Stipulation may be executed in any number of counterparts so long as each signatory hereto executes at least one such counterpart. Each such counterpart shall constitute one original, but all such counterparts taken together shall constitute one and the same instrument. This Stipulation may be executed by electronic signatures, including without limitation, by PDF, and all electronic signatures shall have the same force and effect as an original signature.

13.15 Conflicts With Loan Documents. Notwithstanding anything in this Stipulation to the contrary, in the event of an actual conflict or inconsistency between this Stipulation and any of the Loan Documents (which is not resolved by the terms of this Stipulation itself), the provisions which shall enlarge the rights of the Lender shall govern to the extent of such conflict.

18

13.16 **REVIEW WITH COUNSEL.** THE OBLIGOR RELATED PARTIES HEREBY ACKNOWLEDGE AND AGREE THAT: (A) THE OBLIGOR RELATED PARTIES HAVE CAREFULLY READ AND UNDERSTAND ALL OF THE TERMS OF THIS STIPULATION; (B) THE OBLIGOR RELATED PARTIES HAVE EXECUTED THIS STIPULATION FREELY AND VOLUNTARILY AND WITHOUT ANY DURESS, AFTER HAVING CONSULTED WITH THE OBLIGOR RELATED PARTIES' INDEPENDENT LEGAL COUNSEL AND AFTER HAVING ALL OF THE TERMS OF THIS STIPULATION EXPLAINED TO EACH OF THEM BY THEIR INDEPENDENT LEGAL COUNSEL; (C) THE WAIVERS AND RELEASES CONTAINED IN THIS STIPULATION ARE REASONABLE, NOT CONTRARY TO PUBLIC POLICY OR LAW, AND HAVE BEEN INTENTIONALLY, INTELLIGENTLY, KNOWINGLY AND VOLUNTARILY AGREED TO BY EACH OF THE OBLIGOR RELATED PARTIES; (D) THE WAIVERS AND RELEASES CONTAINED IN THIS STIPULATION HAVE BEEN AGREED TO BY THE OBLIGOR RELATED PARTIES WITH FULL KNOWLEDGE OF THEIR SIGNIFICANCE AND CONSEQUENCES, INCLUDING FULL KNOWLEDGE OF THE SPECIFIC NATURE OF ANY RIGHTS OR DEFENSES WHICH THE OBLIGOR RELATED PARTIES HAVE AGREED TO WAIVE OR RELEASE PURSUANT TO THIS STIPULATION; (E) THE OBLIGOR RELATED PARTIES HAVE HAD A FULL AND ADEQUATE OPPORTUNITY TO NEGOTIATE THE TERMS CONTAINED IN THIS STIPULATION; (F) THE OBLIGOR RELATED PARTIES ARE EXPERIENCED IN AND FAMILIAR WITH LOAN TRANSACTIONS OF THE TYPE EVIDENCED BY THIS STIPULATION; (G) THE OBLIGOR RELATED PARTIES EXECUTION AND DELIVERY OF THIS STIPULATION IS NOT BASED UPON RELIANCE UPON ANY REPRESENTATION, UNDERSTANDING OR AGREEMENT NOT EXPRESSLYSET FORTH IN THIS STIPULATION AND NEITHER THE LENDER NOR ANY AFFILIATE THEREOF HAS MADE ANY REPRSENTATION WHATSOVER TO ANY THE OBLIGOR RELATED PARTIES NOT EXPRESSLY SET FORTH HEREIN; (H) THE WAIVERS AND RELEASES CONTAINED IN THIS STIPULATION ARE MATERIAL INDUCEMENTS TO THE LENDER'S EXECUTION OF THIS STIPULATION, AND THE LENDER HAS RELIED ON SUCH WAIVERS AND RELEASES IN ENTERING INTO THIS STIPULATION AND WILL CONTINUE TO RELY ON SUCH WAIVERS AND RELEASES IN ANY RELATED FUTURE DEALINGS WITH THE OBLIGOR RELATED PARTIES.

13.17 Agreement May Be Used Against Obligor Related Parties. This Stipulation may be used as evidence against any or all of the Obligor Related Parties in any litigation now or hereafter existing, including, without limitation, in this Action.

19

572939-1

Executed as of the date set forth above:

**78-80 ST. MARKS PLACE, LLC**

By: _____
      Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
      Title: Manager and Sole Member


_____

**LAWRENCE V. OTWAY**, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway,
Individually


_____

**EUGENIE OTWAY**,
Individually


**SCHIEB'S PLACE, INC.**

By: _____
      Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
      Title: President and sole shareholder

**EXHIBITION OF THE AMERICAN GANGSTER, INC.**

By: _____
      Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
      Title: President and sole shareholder


**THEATER 80 LLC**

By: _____
      Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
      Title: Manager and Sole Member


**ST. MARK'S MIXED USE LLC**

By: _____
      Name:
      Title:

Katsky Korins LLP,

By: _____

    Steven H. Newman, Esq.
605 Third Avenue
New York, New York 10158
(212) 716-3235
Attorneys for the Plaintiff

Tarter Krinsky & Drogin LLP,

By: _____

    Scott Markowitz, Esq.
1350 Broadway
New York, New York 10018
(212) 216-8005
Attorneys for Defendants 78-80 St. Marks Place, LLC, Lawrence V. Otway a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway, Eugenie Otway, Scheib's Place, Inc., Exhibition of the American Gangster, Inc., and Theater 80 LLC

"SO-ORDERED" this ___ day of ____, 2021

HON. _____

# **EXHIBIT F**

FILED: NEW YORK COUNTY CLERK 11/11/2021 04:03 PM
NYSCEF DOC. NO. 1
INDEX NO. 656446/2021
RECEIVED NYSCEF: 11/11/2021
22-01152-mg   Doc 19-2   Filed 12/13/22   Entered 12/13/22 16:41:57   Plaintiffs
Statement of Material Facts Pursuant to Rule 7056-1(b) of the   Pg 119 of 351

# SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

78-80 ST. MARKS PLACE, LLC, LAWRENCE OTWAY a/k/a LORCAN OTWAY, EUGENIE OTWAY, SCHEIB'S PLACE, INC., EXHIBITION OF THE AMERICAN GANGSTER, INC., and THEATRE 80 LLC,

**SUMMONS**

Index No.

                              Plaintiffs,

Date Index No.
Purchased:

              ·against·

The basis for venue is
the Plaintiffs place of residence and business

ST. MARK'S MIXED USE LLC,

                              Defendant.

TO THE ABOVE-NAMED DEFENDANT:

You are hereby summoned and required to serve upon plaintiffs' attorneys an answer to the verified complaint in this action within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:      New York, New York
            November 5, 2021

                    THE ROTH LAW FIRM, PLLC

                    By:
                         Richard Roth
                    295 Madison Avenue
                    New York, New York 10017
                    Tel. (212) 542-8882

22-01152-mg   Doc 19-2   Filed 12/13/22   Entered 12/13/22 16:41:57   Plaintiffs'
Statement of Material Facts Pursuant to Rule 7056-1(b) of the   Pg 120 of 351

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
-----------------------------------------------------------------X
78-80 ST. MARKS PLACE, LLC, LAWRENCE
OTWAY a/k/a LORCAN OTWAY, EUGENIE
OTWAY, SCHEIB'S PLACE, INC.,
EXHIBITION OF THE AMERICAN GANGSTER,
INC., and THEATRE 80 LLC,

                                        Plaintiff,                    Index No.:

                    -against-                                    **COMPLAINT**

ST. MARK'S MIXED USE LLC,

                                        Defendant.

-----------------------------------------------------------------X

      Plaintiffs 78-80 ST. MARKS PLACE, LLC, LAWRENCE OTWAY a/k/a LORCAN

OTWAY, EUGENIE OTWAY, SCHEIB'S PLACE, INC., EXHIBITION OF THE AMERICAN

GANGSTER, INC., and THEATRE 80 LLC (collectively "Plaintiffs"), by their undersigned

attorneys, The Roth Law Firm, PLLC, files this Complaint against Defendant ST. MARKS'S

MIXED USE LLC ("Defendant"), and states as follows:

## PRELIMINARY STATEMENT

      The COVID crisis has affected us all physically, emotionally, mentally and in business.

Particularly, with regard to businesses in New York City, there is no doubt that the entertainment

industry has suffered the worst.  That is, theaters closed down, restaurants and bars could not

function and museums saw their doors locked.

      Plaintiffs herein were affected the worst as the properties upon which this action is based

– a historical site on St. Mark's Place – as the business underlying this dispute are comprised of a

theater, a museum and a restaurant.  Accordingly, Plaintiffs have been struggling financially to

FILED: NEW YORK COUNTY CLERK 11/11/2021 04:03 PM
NYSCEF DOC. NO.
Statement of Material Facts Pursuant to Rule 7056-1(b) of the
22-01152-mg    Doc 19-2    Filed 12/13/22    Entered 12/13/22 16:41:57    Plaintiffs
Pg 121 of 351
INDEX NO. 656446/2021
RECEIVED NYSCEF: 11/11/2021

stay afloat.

Defendant, which took over a loan from a non-party, recently issued a notice of sale of all of the underlying properties pursuant to the UCC. While technically, Defendant has a right to auction of the property, because it is dealing with very strict rules governing a UCC sale – which it has failed to comply with – the sale must be stayed to allow the new creditor to come in and save the property, its owners and their businesses.

That is, as set forth in the accompanying affidavits, help is on the way. Plaintiffs are in the middle of negotiating with a new creditor to pay Defendants and, now that the corner is turning from the pandemic, enable Plaintiffs to conduct business.

Plaintiffs cannot do so without the Court's help, as Defendant – like a bulldozer – will no longer afford Plaintiffs any leeway and wants to proceed full speed ahead to Plaintiffs demise.

## **PARTIES**

1. Plaintiff 78-80 St. Marks Place, LLC ("SMP"), a New York limited liability company located at 78-80 St. Marks Place, New York, New York 10003.

2. Plaintiff Lawrence Otway a/k/a Lorcan Otway, is an individual who resides at 78-80 St. Marks Place, Apartment No.1, New York, New York 10003

3. Plaintiff Eugenie Otway, is an individually, whose resides at 78-80 St. Marks Place, Apartment No. 1, New York, New York 10003.

4. Plaintiff Scheib's Place, Inc., is a New York corporation whose principal place of business is 78-80 St. Marks Place, New York, New York 10003.

5. Plaintiff Exhibition of the American Gangster, Inc., is a New York corporation whose principal place of business is 78-80 St. Marks Place, New York, New York 10003.

6. Plaintiff Theatre 80 LLC, is a New York limited liability company whose principal

FILED: NEW YORK COUNTY CLERK 11/11/2021 04:03 PM    INDEX NO. 656446/2021

NYSCEF DOC. NO. 11    22-01152-mg    Doc 19-2    Filed 12/13/22    Entered 12/13/22 16:41:57    Plaintiffs'    RECEIVED NYSCEF: 11/11/2021
Statement of Material Facts Pursuant to Rule 7056-1(b) of the    Pg 122 of 351

place of business is 78-80 St. Marks Place, New York, New York 10003.

7.    Defendant St. Mark's Mixed Use LLC (the "Lender"), is a limited liability company whose principal place of business is 100 Park Avenue, Suite 2805, New York, New York 10017.

## JURISDICTION AND VENUE

8.    Jurisdiction is based in New York as the Company's only place of business is located in the City, State and County of New York and all acts underlying the facts complained of herein occurred in the City, State and County of New York.

## UNDERLYING FACTS

### The History and Businesses of the "Property"

9.    In 1964, as a child, Lorcan Otway helped his father build Theatre 80 – a new theater in the middle of St. Marks Place that, soon thereafter, became a famous off-Broadway theater, with "You're A Good Man Charlie Brown" opening there and seeing the careers of Gary Burghoff (Radar in M*A*S*H), Bob Balaban and Billy Crystal beginning their careers in that theater (Billy Crystal as an usher).

10.    The Property also houses a Sidewalk of the Stars, which has been described by travel magazines as the East Coast Grauman's Chinese Theater, having thirty stars place their hand prints and signatures in the concrete including Joan Crawford, Myrna Loy, Alan Cumming and Joan Rivers.

11.    Prior to COVID, the owners of the Plaintiff Properties, incurred debt after the deaths of members of their family, requiring a mortgage.

12.    Unlike many theaters in New York, the Otways own the businesses and the real estate at 78-80 St. Marks Place.

13.     Shortly after obtaining a mortgage, the Corona virus hit, seriously harming the businesses.

14.     Over the ten years before the Corona virus hit, at least 75 theaters closed due to hyperinflation. In response to this hyperinflation, Plaintiffs expanded the income of the Property by restoring the tap room of the speakeasy during the Prohibition.

15.     Plaintiffs also opened a museum which illustrates the history of organized crime in the United States, from the smuggling gangs of the Revolutionary War period, through the Underground Railroad, which aided people who had freed themselves from slavery, to the Prohibition period.

16.     The new businesses increased the value of the brand considerably.

17.     In those ten years, Plaintiffs expanded the gross revenue of the building from tens of thousands gross revenues to approximately $800,000 gross revenues on an annual basis.

18.     However, all of that forward progress was halted by the nationwide shut down, necessitated by the Corona virus crisis.

19.     Plaintiffs were unable to obtain refinancing for a hard money loan that became due in November 2020.

20.     The Property is unique. Built in the late 1820s, it was built over the foundations of a Dutch wilderness hunting cabin from the 1630s. The foundations of this structure are still visible in the basement.

**The Historical and Current Value of the Property**

21.     Annexed hereto as Exhibit A is a letter dated November 4, 2021 from Andrew Berman, the Executive Director of the Greenwich Village Society for Historic Preservation (the "Greenwich Village Society") that describes the historic importance and significance of Theatre

22-01152-mg    Doc 19-2    Filed 12/13/22    Entered 12/13/22 16:41:57    Plaintiffs'
Statement of Material Facts Pursuant to Rule 7056-1(b) of the    Pg 124 of 351

80, the theater housed on the Property.

22. As Mr. Berman states, Theatre 80 plays an "important role as a bastion of culture and pillar of our community. Theatre 80 at 80 St. Mark's Place is a unique East Village treasure in that it is both architecturally and culturally significant to the story of New York City." Exh. A.

23. Mr. Berman continues:

During prohibition, 80 St. Mark's Place was known as "Schieb's Place" and was the favored speakeasy of the New York City Council. The interior of the bar at Theatre 80, now called the William Barnacle Tavern, boasts historic iron fittings that held steel plates over the windows to hide the bar from law enforcement and even remnants of bomb triggers in the basement – the last resort if the club was raided. The building houses the Museum of the American Gangster to further elaborate on this history. From 1959 until 1964, a music club called Jazz Gallery, owned by brothers Joe and Iggy Termini, was located at 80 St. Mark's. The Thelonious Monk Quartet, the John Coltrane Quartet, Lord Buckley, Harry "Sweets" Edison, and Frank Sinatra, among many others, performed at this venue.

In the 1960s, Theatre 80 began to make its mark in the New York City theater world. It was here that Clark Gesner's You're a Good Man, Charlie Brown premiered in 1967 and ran until 1971. When the theatre was converted into a revival movie house with double features of old Hollywood films showing every day, Theatre 80 further solidified its standing in the community as a gathering spot for those interested in all aspects of theater, performance, and film. In 1994, the Pearl Theatre Company took up residence at Theatre 80 and staged numerous performances here until 2009. The mini-Off-Broadway Walk of Fame, consisting of handprints, footprints, and signatures from some celebrated 20th-century actors and actresses such as Gloria Swanson, Joan Crawford, Myrna Loy, Ruby Keeler, Joan Blondell, Kitty Carlisle, Allan Jones, Winnie Shaw, Fifi D'Orsay, Joan Rivers, and many more, is a testament to the cultural value of Theatre 80 in the community.

24. Mr. Berman concludes that Theatre 80's cultural contribution "has helped make the East Village what it is today" and congratulates the Otway family who, over the past 57 years, has "turned Theatre 80 into a pillar of the community by providing space for community meetings, local filmmakers, playwrights, 12 Step meetings, and memorials, as well as hosting fundraisers such as those to benefit victims of the 2015 East Village gas explosion. Independent theaters like Theatre 80 are at the heart of what makes New York City a thriving world cultural center and the continued existence is crucial to maintaining outlets for avant-garde creativity."

FILED: NEW YORK COUNTY CLERK 11/11/2021 04:03 PM
INDEX NO. 656446/2021
NYSCEF DOC. NO. 13
22-01152-mg   Doc 19-2   Filed 12/13/22   Entered 12/13/22 16:41:57   Plaintiffs'
RECEIVED NYSCEF: 11/11/2021
Statement of Material Facts Pursuant to Rule 7056-1(b) of the   Pg 125 of 351

25.     Everything that Theater 80 and the Property stand for will be lost, without the Court's intervention, before November 18, 2021.

**The Hard Money Loans**

26.     As set forth above, because of certain deaths in the Otway family, Plaintiffs were forced to seek financing for the Property and the businesses.

27.     On or about November 12, 2019, 80 St. Marks Place Funding LLC (the "Original Creditor") loaned SMP $6, l00,000.00 (the "Loan") which was evidenced by a Promissory Note made by SMP to Defendants.

28.     On or about the same date, certain Plaintiffs guaranteed the obligations under the Loan (the "Guaranty").

29.     On or about the same date, SMP executed a Pledge and Security Agreement in favor of the Original Creditor duly executed  by the Pledgor and duly delivered by the Pledgor to the Original Creditor. Pursuant to the Pledge Agreement, among other things, the Pledgor pledged to the Original Creditor, among other things,all of his rights, title and interests in, to and under 100% of the limited liability company membership interests in the Borrower.  The Loan, Note, the Guaranty, the Pledge Agreement, and all other documents evidencing the Loan are collectively referred to herein as the "Agreements."

30.     Covid struck and on March 16, 2020, all of the businesses – the museum, the tavern and the theater -- were ordered closed.

31.     When it was time to refinance, the Otways were unable to obtain a mortgage with the businesses not operating at all or operating minimally, notwithstanding the fact that the businesses were still under the New York State order to have the theater closed and restaurants open with harsh restrictions.

32.     While Plaintiffs' attorneys were attempting to negotiate an extension in obtaining a new mortgage, the Original creditor, without informing Plaintiffs' counsel attorney, sold the debt to Defendant, owned by Maverick Real Estate Partners.

33.     On December 1, 2020, the Loan matured and the principal balance became due and payable.

34.     In January 2021, Plaintiffs and Defendant entered into a Forbearance Agreement wherein Plaintiffs acknowledged their obligations and Defendant, for consideration, agreed to extend the obligations under the Agreements. A copy of the Forbearance Agreement is annexed hereto as Exhibit B.

35.     Plaintiffs have not, to date, made all payments to Defendant.

36.     On September 3, 2021, Defendant forwarded Plaintiffs a Notice of Disposition of Collateral that seeks to conduct an auction of all of Plaintiffs' right, title and interest in the Real Property (the "Notice"). A copy of the Notice is annexed hereto as Exhibit C.

37.     The Notice, which was only sent to the Plaintiffs, sets forth that there will be a sale of the Property on November 18, 2021 at 1:00 pm by remote access.

38.     The Notice is unreasonable in that it does not provide Plaintiffs sufficient time in which to cure any default and did not go out to sufficient individuals or entities, to be deemed reasonable.

39.     Plaintiffs continued to seek a mortgage and have recently had more possibilities as the market has opened up and are working with several brokers.

40.     Plaintiffs expect a mortgage loan to come through within the next 90 days.

41.     There is currently an appraisal produced for Whisper Capital, one of the entities

that considered refinancing the building, that established the value at $15, 000,000.

42.     Accordingly, by this action, Plaintiffs seek damages for Defendant's improper conduct but also seek an injunction to stay the sale to allow Plaintiffs to properly and orderly make payment and continue to own title to the Property.

## <u>AS AND FOR A FIRST CAUSE OF ACTION</u>
### (Breach of Contract)

43.     Plaintiffs repeat the foregoing allegations as if fully set forth herein.

44.     Plaintiffs at all times, to the best of their ability, performed under the Agreements.

45.     Defendant, by forcing a sale, are thereby breaching said Agreements.

46.     Plaintiffs have been damaged thereby in an amount to be established at trial that is impossible to determine.

## <u>AS AND FOR A SECOND CAUSE OF ACTION</u>
### (Breach of Obligation of Good Faith/Lender Liability)

47.     Plaintiffs repeat the foregoing allegations as if fully set forth herein.

48.     Plaintiffs at all times, to the best of their ability, performed under the Agreements.

49.     Defendant, by forcing a sale, are thereby breaching said Agreements.

50.     Defendant, at all times, was obligated to conduct itself in good faith and fair dealing under the Agreements.

51.     Defendants have breached their obligation of good faith and fair dealing.

52.     Plaintiffs have been damaged thereby in an amount to be established at trial that is impossible to determine.

## <u>AS AND FOR A THIRD CAUSE OF ACTION</u>
### (Unjust Enrichment)

53.     Plaintiffs repeat the foregoing allegations as if fully set forth herein.

54.    Defendant, by going forward with the UCC Sale, will be unjustly enriched thereby.

55.    Plaintiffs, thus, have been damages thereby in an amount to be established at trial.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (For Specific Performance)

56.    Plaintiffs repeat and reallege the above paragraphs as though fully set forth herein.

57.    As a result of the foregoing, Defendants is obligated to delay the sale of the Properties.

58.    As a direct result of Defendant's conduct, Plaintiffs have been injured in an amount to be determined at trial.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (For Declaratory Judgment)

59.    Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

60.    Plaintiff requests the court to declare the rights of the parties with regard to the Company.

### AS AND FOR A SIXTH CAUSE OF ACTION
### (For a Permanent Injunction)

61.    Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

62.    As a result of Defendant's conduct, it should be permanently enjoined from engaging in the UCC Sale.

FILED: NEW YORK COUNTY CLERK 11/11/2021 04:03 PM
INDEX NO. 656446/2021
NYSCEF DOC. NO. 11
RECEIVED NYSCEF: 11/11/2021
22-01152-mg    Doc 19-2    Filed 12/13/22    Entered 12/13/22 16:41:57    Plaintiffs
Statement of Material Facts Pursuant to Rule 7056-1(b) of the    Pg 129 of 351

**WHEREFORE**, Plaintiff respectfully requests the relief sought herein, together with any

other relief that the Court deems just and proper.

Dated:  New York, New York
       November 11, 2021                THE ROTH LAW FIRM, PLLC

By:_____
      Richard A. Roth
295 Madison Avenue, 22nd Fl.
New York, New York 10017
Tel: 212-542-8882
Fax: 212-542-8883
*Attorneys for Plaintiffs*

# **<u>EXHIBIT G</u>**

FILED: NEW YORK COUNTY CLERK 11/29/2021 12:41 PM

NYSCEF DOC. NO. 35

22-01152-mg    Doc 19-2    Filed 12/13/22    Entered 12/13/22 16:41:57    Plaintiffs'
Statement of Material Facts Pursuant to Rule 7056-1(b) of the    Pg 131 of 351

INDEX NO. 656446/2021

RECEIVED NYSCEF: 11/29/2021

-------------------------------------------------------------------X

78-80 ST. MARKS PLACE, LLC, LAWRENCE
OTWAY a/k/a LORCAN OTWAY, EUGENIE OTWAY,
SCHEIB'S PLACE, INC, EXHIBITION OF THE
AMERICAN GANGSTER, INC., and THEATRE 80
LLC,

                                 Plaintiffs,

           v.

ST. MARK'S MIXED USE LLC,

                                 Defendant.

-------------------------------------------------------------------X

Index No. 656446/2021

~~[PROPOSED]~~ SO-ORDERED
STIPULATION OF
SETTLEMENT AND
DISMISSAL OF ACTION

      This Stipulation of Settlement and Dismissal of Action (this "**Stipulation**") is entered into as of November 29, 2021, by and among (i) (a) 78-80 St. Marks Place, LLC, a New York limited liability company (the "**Borrower**"), and (b) Lawrence V. Otway, a/k/a Lawrence Lorcan Otway, a/k/a Lorcan Otway, individually, whose principal residence is located at 78-80 St. Marks Place, Apartment No. 1, New York, New York 10003 ("**Guarantor**"; and together with Borrower are collectively referred to herein as the "**Obligors**"), (ii) Eugenie Otway, individually, whose principal residence is located at 78-80 St. Marks Place, Apartment No. 1, New York, New York 10003 ("**EO**"), (iii) Scheib's Place, Inc., a New York corporation ("**SPI**"), (iv) Exhibition of the American Gangster, Inc., a New York corporation ("**AGI**"), (v) Theatre 80 LLC, a New York limited liability company ("**Theatre 80**"), and (vi) St. Mark's Mixed Use LLC (the "**Lender**"). Each of the Obligors, EO, SPI, AGI, Theatre 80 and the Lender are sometimes referred to herein individually as a "**Party**", and the Obligors, EO, SPI, AGI, Theatre 80 and the Lender are sometimes collectively referred to herein as the "**Parties**". Each of the Obligors, EO, SPI, AGI, and Theatre 80 are sometimes referred to herein individually as an "**Obligor Related Party**", and the Obligors, EO, SPI, AGI, and Theatre 80 are sometimes collectively referred to herein as the "**Obligor Related Parties**".

      **WHEREAS**, Borrower is a New York limited liability company and is the fee owner of the premises known as 78-80 St. Marks Place, New York, New York 10003 (Block: 449, Lot: 28) (the "**Mortgaged Premises**");

      **WHEREAS**, SPI is a New York corporation;

      **WHEREAS**, AGI is a New York corporation;

      **WHEREAS**, Theatre 80 is a New York limited liability company;

      **WHEREAS**, on or about November 12, 2019, the Borrower borrowed the principal sum of six million one hundred thousand and 00/100 dollars ($6,100,000.00) from 80 St. Marks Place

596657-1
596657-1

Funding LLC ("**Funding LLC**"), which loan is evidenced by a Promissory Note, dated as of November 12, 2019 (the "**Note**"), which Note was duly executed by Borrower and delivered by Borrower to Funding LLC;

**WHEREAS**, in order to secure its obligations under the Note, the Borrower, as mortgagor, duly executed, acknowledged and delivered to Funding LLC, as mortgagee, a Mortgage and Security Agreement, dated as of November 12, 2019 (the "**Mortgage**"), which Mortgage encumbers the Mortgaged Premises. The Mortgage was duly recorded in the Office of City Register of the City of New York, New York County (the "**Register's Office**") on November 22, 2019 at CRFN 2019000383130. Any applicable recording tax was duly paid at the time the Mortgage was recorded. The Mortgage constitutes a valid first priority mortgage and lien on the Mortgaged Premises;

**WHEREAS**, in order to further secure its obligations under the Note and Mortgage, the Borrower duly executed, acknowledged and delivered to Funding LLC an Assignment of Leases and Rents, dated as of November 12, 2019 (the "**ALR**"), which ALR was duly recorded with the Register's Office on December 4, 2019 at CRFN: 2019000395326;

**WHEREAS**, in order to induce Funding LLC to make the Loan to the Borrower, Guarantor duly executed and delivered to Funding LLC a certain Guaranty, dated as of November 12, 2019 (the "**Guaranty**"). Pursuant to the Guaranty, the Guarantor absolutely, unconditionally and irrevocably guaranteed to Funding LLC the payment to the Lender of all amounts and obligations under the Note, the Mortgage and other Loan Documents (as defined below) when same become when due and payable, and the due and prompt performance of all obligations, terms, agreements and covenants under all of the Loan Documents;

**WHEREAS**, the Guarantor is the sole member of the Borrower and the Guarantor owns 100% of the limited liability company membership interests in the Borrower, and in order to further secure, among other things, the Borrower's obligations under the Note and the other Loan Documents, the Guarantor pledged to Funding LLC, among other things, all of his right, title and interest in, to and under his 100% of the membership interests in the Borrower and the other "Collateral", as that term is defined in that certain Pledge and Security Agreement dated as of November 12, 2019 (the "**Pledge Agreement**")(the "Collateral" as defined in the Pledge Agreement is referred to herein as the "**Pledged Collateral**");

**WHEREAS**, Funding LLC perfected its security interest against the Pledged Collateral by, among other things, taking possession of the certificate of membership interests (the "**Certificated Interest**") in the Borrower pledged under the Pledge Agreement and also by duly filing a UCC-1 financing statement (the "**UCC-1**"), which adequately described the Pledged Collateral, with the New York State Department of State ("**NYSOS**") on December 18, 2019, designated as File No. 201912180587574. The Certificated Interest and the UCC-1 constitute a valid and perfected first priority lien on the Pledged Collateral;

**WHEREAS**, on December 1, 2020, the Note was duly assigned by Funding LLC to the Lender pursuant to, among other things, an Allonge to Promissory Note, dated December 1, 2020 (the "**Allonge**");

2

**WHEREAS**, in addition, on December 1, 2020, Funding LLC assigned, among other things, the Mortgage to the Lender, as evidenced by an Assignment of Mortgage, dated as of December 1, 2020 (the "**Mortgage Assignment**"). The Mortgage Assignment was duly recorded in the Register's Office on January 14, 2021 at CRFN 2021000015556;

**WHEREAS**, in addition, on December 1, 2020, Funding LLC assigned, among other things, the ALR to Plaintiff, as evidenced by an Assignment of Assignment of Leases and Rents, dated as of December 1, 2020 (the "**ALR Assignment**"). The ALR Assignment was duly duly recorded in the Register's Office on January 14, 2021 at CRFN 2021000015557;

**WHEREAS**, in addition, Funding LLC assigned, among other things, the UCC-1 to Plaintiff, as evidenced by a UCC Financing Statement Amendment (the "**UCC-3**"). The UCC-3 was duly filed with the NYSOS on June 8, 2021;

**WHEREAS**, in addition, pursuant to an Omnibus Assignment of Loan Documents dated as of December 1, 2020 (the "**Omnibus Assignment**"), the Note, the Mortgage, the Guaranty, the Pledge Agreement, the ALR, the Certificated Interest, the UCC-1 and all of the other Loan Documents were each duly assigned by Funding LLC to the Lender. The Note, the Mortgage, the ALR, the Guaranty, the Pledge Agreement, the Allonge, the Mortgage Assignment, the ALR Assignment, the Certificated Interest, the UCC-1, the UCC-3, the Omnibus Assignment and all other documents evidencing, securing, or guaranteeing the Loan and/or the assignment thereof to the Lender are collectively referred to herein as the "**Loan Documents**";

**WHEREAS**, pursuant to the Allonge, the Mortgage Assignment, the ALR Assignment, the UCC-3 and the Omnibus Assignment, the Lender is the current holder and owner of the Loan and all of the Loan Documents, and the Lender has standing to enforce the Note, the Pledge Agreement, and other Loan Documents;

**WHEREAS**, pursuant to the Note the Borrower is obligated to pay to the holder of the Note, among other things, installments of interest, and the balance of the principal, interest, and all other sums due under the Loan Documents on December 1, 2020 (the "**Maturity Date**");

**WHEREAS**, the Mortgage provides that the Borrower shall pay all of the indebtedness evidenced by the Note at the time and in the manner as provided for in the Note;

**WHEREAS**, the Borrower breached and defaulted on its obligations under the Note, the Mortgage and the other Loan Documents by, among other things, and without limitation, failing and omitting to pay in full all obligations under the Loan Documents on or before the Maturity Date (*i.e.*, December 1, 2020);

**WHEREAS**, the Borrower's failure to pay the entire indebtedness within five (5) days of when it became due, constitutes an "Event of Default" as defined in the Note and the Mortgage;

**WHEREAS**, the Lender duly sent to the Borrower and the Guarantor a letter dated December 7, 2020, which letter duly notified the Borrower and the Guarantor, among other things, (i) that on December 1, 2020, the Loan matured by its terms and the entirety of the indebtedness became immediately due and payable pursuant to the Note and the Mortgage, (ii)

3

that the Borrower failed to pay the entire indebtedness within five (5) days of when it became due, constituting an Event of Default under both the Note and the Mortgage, and (iii) interest on the indebtedness began to accrue at the "Default Rate" as defined in the Note and Mortgage from and after December 2, 2020;

**WHEREAS**, as a result of, among other things, the Borrower's failure to pay all amounts due under the Loan Documents on the Maturity Date, the Loan is now immediately due and payable in full and the Lender is entitled to, among other things, (i) foreclose the Mortgage and the personalty located at the Mortgaged Premises, (ii) foreclose on all collateral granted by the Guarantor to the Lender under the Pledge Agreement, including, without limitation, all of the Guarantor's limited liability company membership interests in the Borrower, and (iii) exercise all of the Lender's rights and remedies under all of the Loan Documents;

**WHEREAS**, without limiting in any manner any other existing defaults, the Obligors are now in default under the Loan Documents based upon the Borrower's failure to pay to the Lender all amounts due under the Loan Documents on the Maturity Date (the "**Maturity Default Default**") and the Obligors failure to pay the property taxes due on July 1, 2021 with respect to the Mortgaged Premises (the "**Tax Default**");

**WHEREAS**, on or about January 14, 2021, the Parties entered into that certain Forbearance Agreement dated as of January 14, 2021 (the "**Existing Forbearance Agreement**") pursuant to the terms contained therein;

**WHEREAS**, without limiting in any manner any other existing defaults, the Obligors are now in default under the Existing Forbearance Agreement based upon the Borrower's failure to, among other things (i) to pay Lender the Payoff Amount by 10:00 a.m. on April 15, 2020 and (ii) they failed to cause Lee & Associates Licensing & Administration Co., L.P. (the "**Broker**") to (a) reduce the asking price for the sale of the Mortgaged Premises to $11,000,000 by May 15, 2021; and (b) reduce the asking price of the Mortgaged Premises to $10,000,000 by June 15, 2021 (the "**Existing Forbearance Agreement Defaults**"; and together with Maturity Default and the Tx Default, collectively the "**Stated Defaults**"). Each of the forgoing failures described in clauses (i) and (ii) in the immediately preceding sentence constitutes a separate and independent breach of the Existing Forbearance Agreement and a Termination Event (as defined in the Existing Forbearance Agreement) thereunder. As a result of each of such Termination Events, the agreement of Lender to forbear under the Existing Forbearance Agreement automatically terminated, and Lender was automatically entitled to schedule enforce al of its remedies, including conducting a foreclosure sale of all of its collateral;

**WHEREAS**, by a Notice of Disposition of Collateral dated September 3, 2021, Lender properly and timely noticed the November 18, 2021 sale ("**11/18/21 Scheduled UCC Sale**") at public auction of all of Guarantor's right, title and interest in and to the Pledged Collateral pursuant to the New York UCC;

**WHEREAS**, on November 11, 2021, the Obligor Related Parties brought the above-captioned action in the Supreme Court Supreme Court of the State of New York for New York County (this "**Court**") styled *78-80 St. Marks Place, LLC et al. v. St. Mark's Mixed Use LLC* (Index No. 656446/2021) (this "**Obligor Action**") by summons and complaint and

4

contemporaneously filed a motion by Order to Show Cause seeking to preliminarily enjoin the 11/18/21 Scheduled UCC Sale (NYSCEF Dkt. No. 6 through 18) [Motion Seq. No. 1] (the "**Stay Motion**");

**WHEREAS**, by Order to Show Cause dated November 17, 2021 and entered in this Obligor Action on November 19, 2021, the Hon. Barry R. Ostrager, J.S.C. ordered that "pending the hearing of the [Stay Motion] brought on by this Order to Show Cause, Defendant shall not go forward with the UCC sale anticipated to take place on November 18, 2021" and scheduled the Stay Motion for a hearing on December 3, 2021 (NYSCEF Dkt. No. 25) (the "**11/17/21 OSC**");

**WHEREAS**, any and all notice provisions contained in all of the Loan Documents and the Existing Forbearance Agreement have been complied with by the Lender and any applicable grace periods, if any, pertaining to Obligor Related Parties' defaults occurring prior to the date of this Stipulation have expired or have been forever waived by the Obligors;

**WHEREAS**, the sale of the Pledged Collateral pursuant to the New York UCC has been duly adjourned from November 18, 2021 to December 7, 2021 at 2:00 p.m.;

**WHEREAS**, as of November 30, 2021 there is due and owing to the Lender under the Note, the Mortgage, the Guaranty, the Pledge Agreement, and the other Loan Documents and the Existing Forbearance Agreement, the following amounts:

| Payoff | |
| --- | --- |
| Principal Balance | $6,100,000.00 |
| Interest | $1,484,333.33 |
| Protective Advances (through 11/21/21) | $202,121.59 |
| Legal Fees (through 11/21/21) | $194,400.73 |
| **Total Due** | **$7,980,855.65** |

Total Due:  $7,980,855.65[1] as of November 30, 2021;

**WHEREAS**, the Lender is currently entitled to exercise any and all of its rights and remedies under the Note, the Mortgage, the Guaranty, the Pledge Agreement, and each of the other Loan Documents and the Existing Forbearance Agreement;

WHEREAS, the Parties have reached a settlement with respect to this matter; and

---

[1] Legal fees and protective advances are reflected herein only as of November 21, 2021. Additional legal fees and expenses and protective advances have accrued and continue to accrue after November 21, 2021 and such additional amounts are owed under the Loan Documents and shall be added to the Payoff Amount (as defined herein below).

5

WHEREAS, in connection with the aforesaid settlement, among other things, (i) Borrower has agreed, among other things, to (a) dismiss this Obligor Action, with prejudice, and (b) withdraw its Stay Motion, with prejudice, and (ii) Lender has agreed to adjourn its sale of the Pledged Collateral, all on the terms set forth hereinbelow;

**NOW, THEREFORE**, in consideration of the sum of $10.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

1.       Recitals Incorporated Herein. The Parties acknowledge, represent and agree that each of the facts set forth in the recitals above are true and correct in all respects and are incorporated herein as if fully set forth in the body of this Stipulation.

2.       Dismissal of this Obligor Action and Stay Motion; Forbearance; Consent to Sale of the Pledged Collateral.

(a)       The Stay Motion is hereby withdrawn, with prejudice.

(b)       The 11/17/21 OSC is hereby vacated.

(c)       This action (ie. this Obligor Action) be and hereby is dismissed, with prejudice.

(d)       Subject to (1) the continued validity of the representations and warranties of the Obligor Related Parties set forth in this Stipulation (2) the termination provisions set forth in Section 7 below, the Lender shall temporarily forbear from further enforcing any of its remedies under the Pledge Agreement during the period from the date hereof to and including December 30, 2021 (the "**Forbearance Date**"); notwithstanding the foregoing however, the foregoing provisions shall not apply to the Lender taking any of the actions described in Sections 2(e) through (g) below or otherwise set forth elsewhere in this Stipulation.

(e)       The Obligors shall not enter into any lease, contract or other agreement for the sale, lease or use of the Mortgaged Premises, or any part thereof, unless (i) the contract is for the sale of all of the Mortgaged Premises and contains a 10% non-refundable deposit to be held in escrow by Borrower's counsel pending a closing, (ii) the sale price of the Mortgaged Premises is equal to or more than the 100% of the Payoff Amount, (iii) the closing of the sale must be set for a date that is not later than December 30, 2021, time being of the essence as to the closing date, and (iv) the obligation of the buyer to close is not subject to any contingencies whatsoever, including, without limitation, as to financing, zoning, development or any other matter of any kind.

(f)       If no Termination Event (as defined below) occurs, then the Lender will forbear, until and including 10:00 a.m. on December 30, 2021, from holding a foreclosure sale of the Pledged Collateral pursuant to the New York UCC. On and after 10:00 a.m. December 30, 2021 (or on any earlier date on which a Termination Event hereunder has occurred) the Lender may enforce all of its rights under the Loan Documents, including without limitation, taking any and all steps whatsoever to conduct a foreclosure sale of the Pledged Collateral, and may thereafter continue to enforce any and all of its rights under the Loan Documents, applicable law, equity and otherwise,

6

including, without limitation, its rights to any deficiency judgment. An announcement of the adjournment of the sale of the Pledged Collateral from December 7, 2021 to a date and time on and after 10:00 a.m. on December 30, 2021, on the record of the auction sale (currently scheduled to be held on December 7, 2021) shall be sufficient notice of the adjournment of the sale of the Pledged Collateral. The Obligor Related Parties hereby irrevocably (i) agree that the auction sale of the Pledged Collateral pursuant to the New York UCC to be conducted on or after 10:00 a.m. on December 30, 2021 based on the publication and marketing of the sale that has been done to date is commercially reasonable in all respects, (ii) waive any further notice of the adjournment of the sale of the Pledged Collateral and requirement, if any, to give further notice or advertisement of the sale of the Pledged Collateral, all of which is hereby dispensed with, and (iii) agree that they shall not in any way file, or collude with any person or entity to file, any motion or proceeding to stay or vacate the sale of the Pledged Collateral. For the avoidance of doubt, nothing herein shall restrict Lender from taking any acts to adjourn the sale or market the Pledged Collateral, it being the intent that only the occurrence of the sale itself shall not occur prior to December 30, 2021 at 10:00 a.m.

(g)  The Obligor Related Parties and their counsel shall use best efforts to timely and fully cooperate with the Lender in connection with all matters related to the sale of the Pledged Collateral, including, without limitation, (i) providing information about the Mortgaged Premises, (ii) providing access, on 48 hours notice, at all times and from time to time, to the Mortgaged Premises to any brokers, the Lender, any prospective purchaser of the Pledged Collateral and all agents and representatives of all of the foregoing.

3.   Interest Rate; Financial Statements. (a) Interest Rate; Payoff Amount; Financial Statements.

(a)  Interest shall continue to accrue at the default rate of 24% per annum provided in the Note from December 2, 2020 until the date that the Obligors have indefeasibly paid and satisfied all of their obligations (including, without limitation, principal, interest, default rate interest, late fees, service fees, legal fees and expenses, protective advances, and all other fees and charges) under each of the Loan Documents and this Stipulation (collectively, the "**Payoff Amount**").

(b)  The Obligors shall promptly deliver to the Lender any and all financial information that the Lender may reasonably request, including, without limitation, (i) a current rent roll for Mortgaged Premises; (ii) the operating agreement and other organizational documents of the Borrower; (iii) copies of all leases for the Mortgaged Premises; and (iv) proof of insurance of the Mortgaged Premises and Obligors.

4.   Payments to the Lender By Wire Transfer. All payments to the Lender shall be made by wire transfer pursuant to such wire transfer instructions as the Lender shall provide to the Obligors' counsel upon request therefore.

5.   No Reinstatement of any Loan. The Lender's acceptance of any payment (other than total indefeasible payment in cash of the Payoff Amount) made by any of the Obligor Related Parties on or after the date hereof, nor the Lender's application of any of such payments to amounts owing under the Loan Documents, shall constitute or be construed as: (a) a waiver by the Lender of (i) the Stated Defaults or any other breach or default by any of the Obligor Related Parties under any or all

7

of the Loan Documents or this Stipulation, (ii) any of the Lender's rights or remedies in connection with the Loan, any of the Loan Documents, the Existing Forbearance Agreement, or this Stipulation, or (iii) any of the provisions of the Loan Documents, the Existing Forbearance Agreement, or this Stipulation; or (b) a cure of any of the Stated Defaults or any other breach or default by any of the Obligor Related Parties under the Loan Documents, the Existing Forbearance Agreement, or this Stipulation.

6. _Application of Payments_. Any payments made by any of the Obligor Related Parties to the Lender on or after the date hereof may be accepted by the Lender and applied against the obligations owed under the Loan Documents in such manner as the Lender may hereafter determine from time to time, all in the Lender's sole and absolute discretion.

7. _Termination_. The agreement by the Lender to forbear under the terms of this Stipulation shall automatically terminate, without any notice, any further act or otherwise, upon the earliest to occur of any of the following events:

7.1    The Forbearance Date; or

7.2    A Termination Event (as such term is defined in Section 9 below); or

7.3    The Lender hereafter becomes aware of any fact or circumstance that the Lender believes in good faith is reasonably likely to impair any of the Lender's collateral under the Loan Documents, including, without limitation, its first priority liens on all of the Mortgaged Premises (other than the failure to pay real estate taxes on the Mortgaged Premises), and all collateral under the Pledge Agreement.

8. _Representations and Warranties_. In order to induce the Lender to enter into this Stipulation, each of the Obligor Related Parties hereby represents, warrants and covenants to the Lender as follows, all of which representations, warranties and covenants shall survive the execution of this Stipulation:

8.1    _Binding Obligations_. The Note, the Mortgage, the ALR, the Guaranty, the Pledge Agreement, all of the other Loan Documents, the Existing Forbearance Agreement and this Stipulation, have been duly executed and delivered by the Obligor Related Parties (as applicable) and constitute legal, valid and binding obligations of the Obligor Related Parties (as applicable), enforceable in accordance with their respective terms.

8.2    _No Defenses or Claims_.    (a)    The Obligor Related Parties expressly represent, warrant and acknowledge that: (i) the Lender (or its predecessors as applicable) has provided any notice of default required under the Loan Documents and/or the Existing Forbearance Agreement, and is now fully entitled to foreclose on any and/or all of its collateral and otherwise exercise all of its rights and remedies on account of the Stated Defaults, but for the effect of this Stipulation; (ii) all amounts owed to the Lender under the Note, the Mortgage, the ALR, the Guaranty, the Pledge Agreement, the other Loan Documents, and the Existing Forbearance Agreement are now due and payable; (iii) the Lender has elected to grant the forbearance hereunder in its sole discretion, and that absent such election there exists no impediment whatsoever to the commencement of the exercise of any and/or all remedies under

8

FILED: NEW YORK COUNTY CLERK 11/29/2021 12:41 PM
INDEX NO. 656446/2021
NYSCEF DOC. NO. 36
RECEIVED NYSCEF: 11/29/2021

22-01152-mg   Doc 19-2   Filed 12/13/22   Entered 12/13/22 16:41:57   Plaintiffs'
Statement of Material Facts Pursuant to Rule 7056-1(b) of the   Pg 139 of 351

the Loan Documents or the Existing Forbearance Agreement; (iv) there are no defenses, offsets or counterclaims of any nature whatsoever to any of the Loan Documents, the Existing Forbearance Agreement, or to the Lender's ownership thereof or the Lender's status as the due holder of the Note, the Mortgage, the ALR, the Guaranty, the Pledge Agreement, and the other Loan Documents or the Lender's standing to enforce all of the foregoing; (v) the Loan Documents and the Existing Forbearance Agreement are hereby reaffirmed by the Obligors in their entirety; (vi) the Loan Documents and the Existing Forbearance Agreement are in full force and effect and the Lender shall not be deemed to waived or modified any of its rights thereunder, at law or in equity by virtue of this Stipulation, except to the extent specifically provided in Section 2 above; and (vii) none of the Obligor Related Parties is the subject of a bankruptcy proceeding as of the date of this Stipulation.

(b)     None of the Obligor Related Parties has any defense, affirmative defense, setoff, claim, counterclaim, action, or cause of action of any kind or nature whatsoever against the Lender or any of its past, present, or future directors, officers, employees, agents, attorneys, legal representatives, predecessors, affiliates, successors, or assigns, directly or indirectly, arising out of, based upon, or in any manner connected with any act, transaction, event, circumstance, action, failure to act, or occurrence of any sort or type, whether known or unknown, which occurred, existed, was taken, permitted, or begun prior to the execution of this Stipulation or which occurred, existed, was taken, permitted, or begun in accordance with, pursuant to, or relating to, or by virtue of the Loan or any of the terms of any of the Loan Documents, or which directly or indirectly relates to or arises out of, or in any manner is connected with, the Loan or any or all of the Loan Documents (including, without limitation, the enforcement by the Lender or its predecessor of any of its rights and remedies under any or all of the Loan Documents or the Existing Forbearance Agreement); and if any such defense, affirmative defense, setoff, claim, counterclaim, action or cause of action exists without the knowledge of any of the Obligor Related Parties, the same is hereby unconditionally forever waived with prejudice as against the Lender, or any of its past, present or future directors, officers, employees, agents, attorneys, legal representatives, predecessors, affiliates, successors, or assigns.

8.3  <u>Maturity of the Note and Stated Defaults</u>.  Pursuant to the express terms of the Note the entire principal balance together with all other amounts payable under the Note, the Mortgage, the Guaranty, the Pledge Agreement and the other Loan Documents were immediately due and payable on December 1, 2020, and the Obligors have failed to pay such obligations as of the date hereof. Obligors are in default under the Loan Documents and the Existing Forbearance Agreement on account of the Stated Defaults.

8.4  <u>Representations in Loan Documents</u>.  All of the representations and warranties made by each of the Obligors in each of the Loan Documents are true and correct in all material respects as if made on the date hereof, except for those made with respect to financial statements bearing a particular date, which representations and warranties are hereby restated to be effective as of the date of the last such financial statements provided to the Lender by the Obligors in question.

8.5  <u>Insurance Policies</u>. Insurance policies complying with the terms of the Loan Documents are in full force and effect.

9

596657-1

8.6    Leases.    (a) There are no leases or licenses to use any part of the Mortgaged Premises other than the following leases (the "**Stated Leases**"):

(i)    That certain Commercial Lease dated as of November 12, 2019 between the Borrower, as landlord, and SPI, as tenant (the "**2019 Scheib's Lease**"), which lease expired and terminated by its terms on November 12, 2020 and is no longer in effect;

(ii)    That certain Commercial Lease dated as of November 12, 2019 between the Borrower, as landlord, and AGI, as tenant (the "**2019 Museum Lease**"), which lease expired and terminated by its terms on November 12, 2020 and is no longer in effect;

(iii)    That certain Commercial Lease dated as of November 12, 2019 between the Borrower, as landlord, and the Guarantor, as tenant (the "**2019 Otway Lease**"), which lease expired and terminated by its terms on November 12, 2020 and is no longer in effect;

(iv)    That certain Commercial Lease dated as of November 12, 2019 between the Borrower, as landlord, and Theatre 80 LLC ("**2019 Theatre 80 Lease**"), as tenant, which lease expired and terminated by its terms on November 12, 2020 and is no longer in effect;

(v)    That certain Standard Form of Loft Lease, dated as of September 1, 2019, between the Borrower (as successor-in-interest to Lawrence Otway), as landlord, and Mr. Ori Kushnir ("**Kushnir**") and Ms. Sivan Lahat ("**Lahat**"), jointly as tenants (the "**Kushnir/Lahat Lease**"), for the 3rd floor (aka Unit 3) of a portion of the Mortgaged Premises located at 78 St. Marks Place, New York, New York. The Kushnir/Lahat Lease expires on August 31, 2022 and has not been modified, amended or extended in any way whatsoever;

(vi)    That certain Lease Agreement, dated as of August 1, 2019 between the Borrower (as successor-in-interest to Lawrence Otway), as landlord, and Mr. Aya Ikeda, as tenant ("**Ikeda**"), for the Unit 4 of a portion of the Mortgaged Premises located at 78 St. Marks Place, New York, New York (the "**Ikeda Lease**"). The Ikeda Lease expired on July 31, 2021 and has not been modified, amended or extended in any way whatsoever;

(vii)    That certain oral sublease (the "**Oral Sublease**") between Theatre 80, as sub-landlord, and SPI, as sub-tenant, for a portion of the ground floor of the Mortgaged Premises for the operation of a tavern/bar;

(viii)    That certain oral agreement (the "**Oral Sub-Sublease**") between SPI, as sub-sub-landlord, and Kushnir and Lahat d/b/a Foxface Sandwich Shop ("**Foxface**") for a portion of the ground floor of the Mortgaged Premises consisting of 200 square feet with a concession window opening to St. Marks Place. Foxface is an unincorporated business, is not a legal entity, and is a business owned and operated solely by Kushnir and Lahat under the trade name Foxface Sandwich Shop;

10

(ix)     That certain Commercial Lease dated as of November 12, 2020 between the Borrower, as landlord, and SPI, as tenant, for 4,875 square feet of the ground floor of 80 St. Marks Place, New York, New York (the "**2020 Scheib's Lease**");

(x)      That certain Commercial Lease dated as of November 12, 2020 between the Borrower, as landlord, and AGI, as tenant, for 750 square feet of the Gallery Museum at 80 St. Marks Place, New York, New York (the "**2020 Museum Lease**");

(xi)     That certain Lease Agreement dated as of November 12, 2020 between the Borrower, as landlord, and the Guarantor and Mrs. Eugenie Otway, as tenants, for the portion of the Mortgaged Premises known quadplex, a/k/a Unit 1 (the "**2020 Otway Lease**");

(xii)    That certain Commercial Sublease Agreement dated as of November 12, 2020 between Scheibs Place LLC, as sublessor, and Theatre 80, as subtenant, for the auditorium, cellar and backstage at 80 St Marks Place, New York, New York (the "**2020 Theatre Sublease**"). Scheibs Place LLC is not a legal entity. The reference to "Scheibs Place LLC" in the 2020 Theatre Sublease was a typographical error and the correct name of the sublessor under the 2020 Theatre Sublease is "Scheib's Place, Inc."; and

(xiii)   That certain Sub-Commercial Sublease Agreement dated as of November 12, 2020 between Theatre 80, as sublessor, and Meeting Space, as subtenant, for the 2nd floor of the Mortgaged Premises (the "**2020 Meeting Space Sub-Sublease**"). Meeting Space is an unincorporated business, is not a legal entity, and is a business owned and operated solely by the Guarantor under the trade name Meeting Space.

(b)      The Guarantor is (i) the sole shareholder and president of both SPI and AGI; and (ii) the sole member and sole manager of Theatre 80. The Guarantor solely owns and controls SPI, AGI, and Theatre 80, and each of such entities is an affiliate of the Guarantor.

(c)      The 2019 Scheib's Lease, the 2019 Museum Lease, the 2019 Otway Lease, and the 2019 Theatre 80 Lease each expired and terminated by its terms on November 12, 2020 and has not been modified, amended or extended in any way whatsoever, and is no longer in effect.

(d)      The 2020 Museum Lease, the 2020 Otway Lease, the 2020 Theatre Sublease and 2020 Meeting Space Sub-Sublease, (i) were each entered into in violation of the Borrower's obligations under the Loan Documents and without the consent of the Lender (or its predecessor-in-interest); and (ii) are each hereby forever terminated and without effect as of the date hereof.

(e)      The 2020 Scheib's Lease (i) was entered into in violation of the Borrower's obligations under the Loan Documents and without the consent of the Lender (or its predecessor-in-interest); and (ii) is hereby automatically forever terminated and without effect as of June 1, 2021. For the avoidance of doubt, no notice or act shall be required to effectuate the

11

FILED: NEW YORK COUNTY CLERK 11/29/2021 12:41 PM    INDEX NO. 656446/2021

NYSCEF DOC. NO. 35    22-01152-mg    Doc 19-2    Filed 12/13/22    Entered 12/13/22 16:41:57    Plaintiffs    RECEIVED NYSCEF: 11/29/2021
Statement of Material Facts Pursuant to Rule 7056-1(b) of the    Pg 142 of 351

termination of the 2020 Scheib's Lease as of June 1, 2021 and SPI shall vacate and surrender the premises under such lease by December 30, 2021.

(d)     AGI, Guarantor, Theatre 80, Foxface and Meeting Space have no legal right to use any part of the Mortgaged Premises as of the date hereof. SPI has no legal right to use any part of the Mortgaged Premises as of June 1, 2021.

(e)     The Oral Sublease and the Oral Sub-Sublease are void and of no effect whatsoever, as among other things, they were entered into without the Lender's (or its predecessor-in-interest's) consent and they are oral only and in violation of the statute of frauds.

(f)     In all events, the Oral Sublease is hereby forever terminated and of no effect whatsoever. As a result of the termination of the Oral Sublease, the Oral Sub-Sublease is terminated as a matter of law due to the termination of the Oral Sublease (i.e. its master lease).

(g)     In all events, the Oral Sub-Sublease is hereby forever terminated and of no effect whatsoever.

8.7     Compliance with Laws. The Obligor Related Parties are, to the best of their knowledge, in compliance with all material laws, ordinances, rules and regulations of all governmental entities (and all agencies, bodies and subdivisions thereof) affecting the ownership, use, or operation of the Mortgaged Premises, and none of the Obligor Related Parties has received any notice of noncompliance from any such governmental entity with respect to the Mortgaged Premises or that appropriate corrective action is being taken to promptly cure any non-compliance issues(s).

8.8     No Breach of Other Agreements. To the best of the knowledge of the Obligor Related Parties, neither the execution or delivery of this Stipulation, nor the consummation of this transactions contemplated by this Stipulation, nor the compliance with the terms and provisions hereof: (i) will constitute or result in a breach of any of any the Obligor Related Party's respective articles of incorporation or operating agreement, or will constitute or result in a violation of any law, order, writ, injunction, or decree of any court or governmental department, commission, board, bureau, agency, or instrumentality applicable to any of the Obligor Related Parties; (ii) will conflict or will be inconsistent with, or will result in any breach of, any of the terms, covenants, conditions, or provisions thereof; or (iii) will constitute a default under any indenture, mortgage, instrument, documents, agreement, or contract of any kind to which any of the Obligor Related Parties may be bound or subject.

8.9     The Obligor Related Parties Benefitted. The Obligor Related Parties have each derived direct and substantial benefits from this Stipulation and the transactions contemplated by this Stipulation.

8.10     Other Documents. (a) All documents, reports, certificates, financial statements, and other statements of any kind furnished to the Lender by or on behalf of each of the Obligor Related Parties in connection with the transactions contemplated by this Stipulation: (i) are true, correct, and complete in all material respects; (ii) do not contain any untrue statement

12

of material fact; and (iii) do not omit any fact necessary to make the information contained therein not misleading.

(b)    The continued validity in all respects of all representations and warranties made by the Obligor Related Parties in the Loan Documents, this Stipulation and any other documents delivered by the Obligor Related Parties in connection with this Stipulation constitutes a condition precedent to the Lender's agreements under this Stipulation.

8.11    <u>Stipulation Is Duly Executed and Enforceable</u>. Each of the signatories, on behalf of the Obligor Related Parties, to this Stipulation has full and complete authorization and power to execute and deliver this Stipulation in the capacity herein stated. This Stipulation is a valid, binding and enforceable obligation of each of the Obligor Related Parties and does not violate any law, rule or regulation, or any contract or agreement to which any of the Obligor Related Parties is a party.    None of the Obligor Related Parties has conveyed, transferred, assigned, pledged or otherwise encumbered any claim or causes of action covered by the releases set forth in this Stipulation.

8.12    <u>Benefitted From This Stipulation</u>. The Borrower, the Guarantor and the other Obligor Related Parties have each derived direct and substantial benefits from this Stipulation.

9.    <u>Termination Events.</u> The occurrence of any one or more of the following shall constitute a "**Termination Event**" under this Stipulation:

9.1    <u>Failure to Perform Obligations.</u> The failure of the Obligor Related Parties to observe or perform any of its respective obligations under this Stipulation when due; or

9.2    <u>Other Loan Defaults.</u> The occurrence of any of the following: (i) any "Event of Default" (as defined in the Note) under the Note (other than the timely payment of real estate taxes on the Mortgaged Premises); (ii) any "Event of Default" (as defined in the Mortgage) under the Mortgage (other than the timely payment of real estate taxes on the Mortgaged Premises); or (iii) any default or event of default under any of the other Loan Documents (other than the Stated Defaults), and the applicable Obligors' time, if any, to cure the same has expired under the applicable Loan Document(s); or

9.3    <u>Misrepresentation.</u> If any representation or warranty made herein, or in any report, certificate, financial statement or other instrument or document furnished in connection with this Stipulation or contemplated hereby, shall prove to have been knowingly and materially false or misleading on the date as of which it was made; or

9.4    <u>Judgment.</u> Entry of a judgment or filing of a lien after the date hereof against any of the Obligor Related Parties, the Mortgaged Premises, or any other property of any of the Obligor Related Parties;

9.5    <u>Failure to Maintain Insurance.</u> If at any time (i) the Borrower fails to maintain insurance on the Mortgaged Premises in accordance with the Mortgage or (ii) such

13

insurance fails to include the Lender as an additional insured or fails to provide that the Lender is the sole loss payee. The Borrower shall provide a copy of its insurance policy and proof of insurance within 48 hours of any request by the Lender.

9.6 <u>Bankruptcy.</u> If any of the Obligor Related Parties shall: (i) make a general assignment for the benefit of creditors; (ii) file a voluntary petition or a petition or answer seeking reorganization or an arrangement with creditors or take advantage of any bankruptcy, reorganization, insolvency, readjustment of debt, dissolution, or liquidation statute or law, or make or file an answer admitting material allegations of a petition filed against it in any proceeding under any such law; (iii) have any bankruptcy proceedings commenced against it by any person or entity; or (iv) have entered against it an order, judgment or decree of any court of competent jurisdiction approving a petition seeking reorganization of assets or appointing a receiver, trustee, or liquidator for any assets.

10. <u>Covenants Regarding the Mortgaged Premises.</u>

(a) The Obligor Related Parties shall not in any way whatsoever modify, amend, extend or renew any of the Stated Leases without the Lender's express prior written consent, and any modification, amendment, extension or renewal of any of the Stated Leases without the Lender's express prior written consent shall be void *ab initio* and of no effect whatsoever. Neither of the Obligor Related Parties shall enter into any agreement of any kind or nature concerning the lease, license, use or sale of the Mortgaged Premises, or any part thereof, without the Lender's express prior written consent, and any such agreement entered into by any Obligor Related Party without the Lender's express prior written consent shall be void *ab initio* and of no effect whatsoever.

(b) The Borrower, SPI, AGI, the Guarantor, EO, Theatre 80 and Meeting Space, and all relatives of the Guarantor and all persons and entities directly or indirectly controlled by either of the Obligors shall completely vacate, and shall cause Foxface, Kushnir, Lahat, and Ikeda to completely vacate, the Mortgaged Premises (other than Kushnir and Lahat with respect to the portion of the Mortgaged Premises demised under the Kushnir/Lahat Lease) no later than December 30, 2021, time being of the essence. In the event that any of the Borrower, SPI, AGI, the Guarantor, EO, Theatre 80, Foxface, Kushnir, Lahat, or Ikeda fails to completely vacate the Mortgaged Premises by December 30, 2021 (other than Kushnir and Lahat with respect to the portion of the Mortgaged Premises demised under the Kushnir/Lahat Lease), time being of the essence, then the Obligor Related Parties shall be jointly and severally liable to the Lender in the sum of $200,000 as liquidated damages for the failure of the Obligor Related Parties to timely cause each of the Borrower, SPI, AGI, the Guarantor, EO, Theatre 80, Foxface, Kushnir, Lahat, and Ikeda to timely vacate the Mortgaged Premises as required by this Section 10 (b), time being of the essence.

11. <u>Remedies.</u> Without limiting the rights and remedies of the Lender under any of the other Loan Documents, under this Stipulation, or under applicable law or in equity, immediately upon the occurrence of any Termination Event hereunder (without any notice or any opportunity to cure), the obligations and agreements of the Lender under this Stipulation shall immediately

14

terminate, and the Lender shall have the right to immediately exercise any and all rights and remedies available to it hereunder, under any and all of the other Loan Documents, the Existing Forbearance Agreement, and under applicable law, without regard to any notice or cure period contained therein or otherwise available. All rights and remedies available to the Lender under this Stipulation, any of the Loan Documents, the Existing Forbearance Agreement and applicable law may be asserted concurrently, cumulatively, or successively, from time to time, as long as any indebtedness or obligations under the Loan Documents shall remain unpaid or outstanding. By entering into this Stipulation, or accepting any payments hereunder, the Lender shall in no way be considered to have waived or be estopped from exercising any or all of its rights and remedies under any of the Loan Documents and/or the Existing Forbearance Agreement. Nothing contained herein shall be considered a forgiveness of any obligation under the Loan Documents (except the full, timely payment of the Payoff Amount) and the accommodations made by the Lender herein do not constitute a "course of dealing" or a "course of conduct" in contravention of the terms of the Loan Documents.

12. <u>Amendments</u>. This Stipulation may be amended only by a written amendment, fully executed and delivered by each of the Parties.

13. <u>Loan Documents Still in Force</u>. Notwithstanding anything to the contrary in this Stipulation, the Note, the Mortgage, the ALR, the Guaranty, the Pledge Agreement, and all of the other Loan Documents and Existing Forbearance Agreement are in full force and effect in accordance with their respective terms, remain valid and binding obligations of the Obligors and have not been modified or amended, and are hereby reaffirmed and ratified by the Obligors in all respects. The liens, security interests and pledges created by the Mortgage and Pledge Agreement, and the other Loan Documents are and continue to be valid, effective, properly perfected, enforceable and are hereby ratified and confirmed in all respects.

14. <u>No Waiver of Rights Under Loan Documents</u>. Neither the failure nor the delay by the Lender to exercise its remedies, nor the acceptance by the Lender of partial payments or any other partial performance (whether any of the foregoing is before or after the date of this Stipulation), nor any provision of this Stipulation, shall (a) amend, modify, supplement, extend, delay, renew, terminate, waive, release or otherwise limit or prejudice the Lender's rights and remedies under the Loan Documents and Existing Forbearance Agreement or any of the Obligors' obligations under the Loan Documents (including, without limitation, the Lender's right to receive full payment of principal and interest as well as all late charges, default rate interest, delinquent interest, attorneys' fees and expenses, the Lender's protective advances and other charges to the extent provided in the Loan Documents), nor (b) affect the priority of the Lender's security interests in and liens on the property of any of the Obligors (including, without limitations, the Lender's first priority mortgage lien on the Mortgaged Premises pursuant to the Mortgage and the other Loan Documents and the Lender's first priority security interest and lien on all of the equity interests in the Borrower pursuant to the Pledge Agreement and the other Loan Documents). Nothing contained in this Stipulation shall operate to prohibit, restrict or otherwise inhibit the Lender from exercising any right or remedy the Lender may have under the Loan Documents and Existing Forbearance Agreement (except to the extent that the Lender agrees to forbear as specifically provided in Section 2 above) or constitute a cure of the Stated Defaults or any other existing default or serve to extend any applicable grace or cure period and, without limitation, shall not extend any applicable reinstatement or redemption period.

15

15.     Release of Claims and Waivers.

15.1     Release of Claims. Each of the Obligor Related Parties, for itself and on behalf of its agents, employees, representatives, affiliates, predecessors-in-interest, successors, and assigns (such persons and entities other than the Obligor Related Parties being collectively referred to herein as the "**Other Releasors**"), does hereby release, discharge and acquit the Lender, and the Lender's past, present and future officers, directors, shareholders, agents, employees, professionals, predecessors, successors, assigns and affiliates, and their respective successors, heirs and assigns (collectively, the "**Released Parties**"), of and from any and all rights, claims, causes of action, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, causes of action, promises, damages, costs, losses and expenses of every kind, nature, description or character whatsoever, and irrespective of how, why, or by reason of any facts, which could or may be claimed to exist, whether known or unknown, matured or contingent, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, fraud, breach of any duty, breach of any federal, state or local laws of any kind or nature whatsoever, or any other legal or equitable theory whatsoever, each as though fully set forth herein at length, from the beginning of the world to the date of execution of this Stipulation by the Obligor Related Parties (collectively, the "**Claims**"), which in any way arise out of, are connected with or relate to any or all of the following: (a) the Loan or the administration of any or all of the Loan or any or all of the Loan Documents, as well as any action or inaction of the Released Parties or any of them with respect to the Loan or the administration thereof or any or all of the Loan Documents or the enforcement thereof; (b) any or all of the transactions which are the subject of or contemplated by any or all of the Loan Documents and/or the Existing Forbearance Agreement; (c) the Mortgaged Premises and/or any other collateral granted under any of the Loan Documents; (d) any fact, matter or transaction existing or occurring as of or prior to the execution of this Stipulation by the Parties, which in any way, directly or indirectly, relates to the Loan, any of the Loan Documents, the Existing Forbearance Agreement, or the Mortgaged Premises; or (e) any and all claims that could or have been set forth in this Obligor Action.

15.2 Waiver. Each of the Obligor Related Parties hereby: (i) waives any and all defenses to the Lender's exercise of any or all of its rights under the Loan Documents, including, without limitation, the defenses of payment, waiver, estoppel, laches, unclean hands, unconscionability, the election of remedies defense, or any claim that the Obligors are not in default under the Loan Documents, or any claim that any notice was not given by the Lender, or that the Note fully matured; (ii) acknowledges and re-affirms its due execution and delivery of the Loan Documents (as applicable) and the Existing Forbearance Agreement; (iii) agrees that it shall not file an answer, counterclaim, motion, order to show cause or appeal as to any judicial or non-judicial actions that may be taken by the Lender after the earlier of the Forbearance Date or the date that any Termination Event occurs; (iv) admits and acknowledges that, the Note matured by its terms on the Maturity Date (i.e. December 1, 2020) and that the Payoff Amount is due and owing to the Lender; (v) expressly waives the appointment of a referee in any action to foreclose the Mortgage to compute the sums due and owing to the Lender; (vi) waives any claim or defense regarding the Loan, the Loan Documents or this Stipulation, including, without limitation, as to the Lender's standing or that the Loan is usurious or requires the Obligors to pay "hidden" or "disguised" interest, fees or charges; (vii) waives any claim or defense that the Lender is prohibited from commencing a proceeding to recover under the Loan Documents by reason of

16

22-01152-mg    Doc 19-2    Filed 12/13/22    Entered 12/13/22 16:41:57    Plaintiffs'
Statement of Material Facts Pursuant to Rule 7056-1(b) of the    Pg 147 of 351

any statute, law or executive order, or otherwise, including without limitation (a) New York State's issuance of any Executive Order, including, without limitation, Executive Order 202.28, 202.48, 202.75, 201.81, or (b) any statute in New York State, including without limitation, NY LEGIS 417 (2021), 2021 Sess. Law News of N.Y. Ch. 417 (S. 50001) (McKINNEY'S), and any subsequent modifications and/or extension of said executive orders or laws, and/or (c) New York's Chief Administrative Judge's issuance of Administrative Order of the Chief Administrative Judge of the Courts; and (viii) agrees that in the event that any conference is scheduled in any action to foreclose the Mortgaged Premises it shall agree that the action may immediately proceed and shall not request an adjournment or stay of any foreclosure action for any reason.

15.3    Indemnity. Each of the Obligor Related Parties hereby agrees to defend, indemnify, and hold the Lender and each of the other Released Parties harmless from and against any losses, damages, costs (including, without limitation, attorneys' fees, court costs, and costs of appeal), expenses, judgments, liens, decrees, fines, penalties, liabilities, claims, actions, suits, and causes of action (collectively, the **"Indemnified Claims"**) arising, directly or indirectly, from (to the extent not inconsistent with the terms of this Stipulation): (a) any material breach by any of the Obligor Related Parties of any warranty or representation contained in this Stipulation or in the documents executed and delivered by any of the Obligor Related Parties pursuant to this Stipulation (collectively referred to as the **"Obligors Documents"**); (b) and after any material breach, default, or violation by any of the Obligor Related Parties of any covenant, agreement, or provision of any of the Obligors Documents or the Loan Documents; (c) any claims by or liabilities to third parties pertaining to injury to persons or damage to the Mortgaged Premises; and (d) any claims and/ or defenses of any past, present, or future tenants at the Mortgaged Premises, including, without limitation, SPI, AGI, the Guarantor, EO, Theatre 80, Foxface, Kushnir, Lahat and Ikeda.

15.4    Waivers of Unknown Claims. As to all matters being released by the Obligor Related Parties pursuant to the provisions hereof, each of the Obligor Related Parties for itself and on behalf of the Other Releasors, expressly acknowledges that the release of Claims set forth in Section 15.1 hereof applies to all Claims whether or not known to, or suspected by the Obligor Related Parties to exist. Each of the Obligor Related Parties, for itself and on behalf of all Other Releasors, acknowledges and agrees that the facts with respect to which the release of Claims contained in Section 15.1 is executed may hereafter be found to be different from the facts now believed by the Obligor Related Parties to be true, and each of the Obligor Related Parties, for itself and on behalf of all Other Releasors, expressly accepts and assumes the risk of all such possible differences, and agrees that the release of Claims contained in this Section shall be and remain effective notwithstanding any such difference in facts.

15.5    No Admission of Liability. Nothing contained in this Stipulation, including, without limitation, the terms of this Section 15, constitutes or shall be construed as an admission by the Lender of any liability whatsoever.

15.6    No Assignment. Each of the Obligor Related Parties, for itself and on behalf of all Other Releasors, warrants and represents to the Lender that none of the Obligor Related Parties and none of the Other Releasors have sold, assigned, transferred, conveyed or

17

596657-1

otherwise disposed of any Claims or Indemnified Claims which are the subject of this Section 15.

16.     No Waiver by the Lender. The agreement by the Lender to forbear from exercising its rights and remedies under the Loan Documents shall not constitute a waiver of, consent to, or condoning of the Stated Defaults or any other default by any of the Obligor Related Parties. The Obligor Related Parties agree that Lender may immediately exercise all rights and remedies available to the Lender under the Loan Documents by reason of the Stated Defaults or any other default immediately upon the earlier of (i) the Forbearance Date, or (ii) the occurrence of any Termination Event for any reason, without the Lender being required to provide any additional notice of default or of acceleration and without any grace or cure periods therefor.

17.     Bankruptcy.

17.1     Statement of Intent. Each of the Obligor Related Parties warrants and represents to the Lender that it has no present intent (i) to file any voluntary petition in bankruptcy under any chapter of the United States Bankruptcy Code (the "**Bankruptcy Code**"), or directly or indirectly to cause any Obligor Related Party, or any other person or entity that may hereafter own any interest in, or claim any beneficial interest in, the Mortgaged Premises, to file any voluntary petition in bankruptcy under any chapter of the Bankruptcy Code or to have any involuntary petition in bankruptcy filed against it under any chapter of the Bankruptcy Code, or (ii) in any manner, directly or indirectly, to cause the any of the Obligor Related Parties, or any other person or entity that may hereafter own any interest in, or claim any beneficial interest in, the Mortgaged Premises, to seek relief, protection, reorganization, liquidation, dissolution, or similar relief for debtors under any federal, state, or local law, or in equity, or (iii) in any manner, directly or indirectly, to cause the Mortgaged Premises to be the subject of any bankruptcy or insolvency proceedings or the property of any bankruptcy or insolvency estate.

18.     Miscellaneous.

18.1     Costs and Expenses. Nothing in this Stipulation shall (i) diminish or otherwise limit any obligation that any of the Obligors has under the Loan Documents with respect to payment of the costs and expenses (including, without limitation, attorneys' fees and expenses) of the Lender, or (ii) prevent the Lender from requiring each of the Obligors to pay all such costs and expenses in accordance with the terms of the Loan Documents and the Existing Forbearance Agreement.

18.2     Further Instruments. The Obligor Related Parties shall, whenever and as often as they shall be requested to do so by the Lender, cause to be executed, acknowledged and/or delivered to the Lender any and all such further instruments and documents as may be necessary or desirable, in the sole discretion of the Lender, in order to carry out the intent and purpose of this Stipulation. Without limiting of the foregoing, each of the Obligor Related Parties hereby irrevocably appoints Lender as its and his attorney-in-fact, coupled with an interest, to execute any such documents as provided above.

18

596657-1

18.3   <u>Written Waiver Only</u>. No waiver by the Lender of any of its rights or remedies in connection with the Loan or any Loan Documents shall be effective unless such waiver is in writing and signed and delivered by the Lender. Without limiting the generality of the preceding sentence, nothing contained in this Stipulation nor any delay or omission by the Lender in exercising or enforcing any of its rights and remedies in connection with the Loan Documents constitutes or shall be construed as a waiver by the Lender of: (i) the Stated Defaults or any other breach or default by any of the Obligors under any of the Loan Documents; or (ii) any of the Lender's rights or remedies in connection with the Loan or any of the provisions of any of the Loan Documents or the Existing Forbearance Agreement.

18.4   <u>Governing Law</u>. This Stipulation shall be governed by and construed and enforced in accordance with the internal laws of the State of New York, without regard to the law on conflicts of law.

18.5   <u>Third Party Beneficiaries</u>. Nothing in this Stipulation is intended to or shall confer any rights or remedies upon any person, other than the Parties hereto and the Released Parties and, subject to any restrictions on assignment contained in this Stipulation and the other Loan Documents, their respective successors and assigns.

18.6   <u>No Offsets</u>. No indebtedness evidenced by the Note or any other Loan Documents shall be offset by all or part of any claim, cause of action, or cross-claim of any kind, whether liquidated or unliquidated, which any of the Obligor Related Parties now has or may hereafter acquire or allege to have acquired against the Lender.

18.7   <u>Relationship of Parties</u>. Nothing contained in this Stipulation or the other Loan Documents constitutes or shall be construed as the formation of a partnership, joint venture, tenancy-in-common, or any other form of co-ownership, or the creation of any confidential or fiduciary relationship of any kind between the Lender, on the one hand, and the Obligor Related Parties and/or any other person or entity on the other hand. The Obligor Related Parties acknowledge and agree that the Lender has at all times acted and shall at all times continue to be acting only as a lender to the Obligors within the normal and usual scope of activities of a lender.

18.8   <u>Attorneys' Fees</u>. Upon demand therefor by the Lender, the Obligors shall pay all costs and expenses, including, without limitation, reasonable attorneys' fees and costs, now or hereafter incurred by the Lender (i) in negotiating and preparing this Stipulation; and (ii) in administering, enforcing or effectuating any of the terms of this Stipulation and the other Loan Documents and the Existing Forbearance Agreement, whether or not any legal proceedings are instituted by the Lender. Without limiting the generality of the immediately preceding sentence, such costs and expenses shall include all attorneys' fees and costs now or hereafter incurred by the Lender in connection with any federal or state bankruptcy, insolvency, reorganization, foreclosure, or other similar proceeding or action by or against any of the Obligor Related Parties which in any way relates to or affects the Lender's exercise of its rights and remedies under any or all of the Loan Documents or the Existing Forbearance Agreement. The amount of any attorneys' fees, costs and expenses of the Lender that are not paid by the Obligors shall be added to the Payoff Amount, shall

19

596657-1

FILED: NEW YORK COUNTY CLERK 11/29/2021 12:41 PM   INDEX NO. 656446/2021

NYSCEF DOC. NO. 36   22-01152-mg   Doc 19-2   Filed 12/13/22   Entered 12/13/22 16:41:57   RECEIVED NYSCEF: 11/29/2021
Statement of Material Facts Pursuant to Rule 7056-1(b) of the   Pg 150 of 351   Plaintiffs

constitute secured obligations of the Obligors under the Loan Documents and shall bear interest at the default rate under the Loan Documents.

18.9   Descriptive Headings; Interpretation. The headings to sections of this Stipulation are for convenient reference only, do not in any way limit or amplify the terms of this Stipulation, and shall not be used in interpreting this Stipulation. For purposes of this Stipulation: (i) the term "including" shall be deemed to mean "including, without limitation,"; (ii) the term "Loan Documents" shall be deemed to include, without limitation, the Existing Forbearance Agreement and this Stipulation; (iii) the term "person" means any natural person or any entity, including any corporation, partnership, joint venture, trust, limited liability Borrower, unincorporated organization or association, or trustee; and (iv) whenever the context of this Stipulation reasonably requires, all words used in the singular shall be deemed to have been used in the plural, and the neuter gender shall be deemed to include the masculine and feminine gender, and vice versa. This Stipulation has been prepared and drafted through a joint effort of the Parties and, therefore, shall not be construed against any of the Parties as the person who prepared or drafted this Stipulation.

18.10   Entire Agreement. This Stipulation and the other Loan Documents contain the entire agreement and understanding between the Parties concerning the matters covered by this Stipulation and the other Loan Documents, and supersede all prior and contemporaneous agreements, statements, understandings, terms, conditions, negotiations, representations and warranties, whether written or oral, made by the Lender or any of the Obligor Related Parties concerning the matters covered by this Stipulation and the other Loan Documents.

18.11   Payoff Amount. Each of the Obligor Related Parties hereby acknowledges and agrees that the Payoff Amount as of November 30, 2021 is $7,980,855.65 (exclusive of attorneys' fees and expenses and protective advances incurred after November 21, 2021, which amounts have accrued and continue to accrue and shall be added to the Payoff Amount), that interest is continuing to accrue thereon at the default rate of 24% per annum from and after December 2, 2021, and that the Obligors are jointly and severally liable for the Payoff Amount.

**18.12   TIME OF THE ESSENCE. NOTWITHSTANDING ANYTHING TO THE CONTRARY, TIME IS OF THE ESSENCE WITH RESPECT TO EACH OF THE OBLIGOR RELATED PARTIES' OBLIGATIONS HEREUNDER.**

18.13   Severability. If any term or provision of this Stipulation or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Stipulation, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each such term and provision of this Stipulation shall be valid and shall be enforced to the fullest extent permitted by law.

18.14   Notices. All notices and other communications provided for in this Stipulation shall be in writing and shall be given by Federal Express or hand delivery:

20

If to the Lender, at:

St. Mark's Mixed Use LLC
100 Park Avenue, Suite 2305
New York, New York 10012
Attn: Jason Leibowitz

with a copy to:

Katsky Korins LLP
605 Third Avenue, 17th Floor
New York, New York 10158
Attn.: Steven H. Newman, Esq.


If to the Borrower, at:

78-80 St. Marks Place, LLC
78-80 St. Marks Place
New York, New York 10003
Attn: Lawrence v. Otway

With a copy to:

The Roth Law Firm, PLLC
295 Madison Avenue, 22nd Floor
New York, New York 10017
Attn: Richard Roth, Esq.


If to the Guarantor, at:

Mr. Lawrence v. Otway
78-80 St. Marks Place, Apt. 1
New York, New York 10003

With a copy to:

The Roth Law Firm, PLLC
295 Madison Avenue, 22nd Floor
New York, New York 10017

If to EO, SPI, AGI or Theatre 80, to such person or entity at:

78-80 St. Marks Place
New York, New York 10003

21

Attn: Lawrence v. Otway

With a copy to:

The Roth Law Firm, PLLC
295 Madison Avenue, 22nd Floor
New York, New York 10017

Notices shall be deemed given (i) if sent by hand, the date sent; and (ii) if sent by Federal Express, one (1) business day after delivery to an authorized agent or authorized depository box of Federal Express.

18.15   <u>Counterparts, Etc</u>. This Stipulation may be executed in any number of counterparts so long as each signatory hereto executes at least one such counterpart. Each such counterpart shall constitute one original, but all such counterparts taken together shall constitute one and the same instrument. This Stipulation may be executed by electronic signatures, including without limitation, by PDF, and all electronic signatures shall have the same force and effect as an original signature.

18.16   <u>Service of Process</u>. The Obligor Related Parties hereby irrevocably agrees that service of process of any action or proceeding by the Lender against the Guarantor and/or any other Obligor Related Parties may be served upon the Guarantor or such Obligor Related Party by first class mail addressed to "Mr. Lawrence V. Otway, 78-80 St. Marks Place, Apt. 1, New York, New York 10003" and the Obligor Related Parties hereby irrevocably waive any objection or defense whatsoever that any service of process so effectuated is invalid or improper in any manner. The foregoing is without prejudice to the Lender's rights to effectuate service of process by any other means allowed by applicable law.

18.17   **WAIVER OF JURY TRIAL. THE OBLIGOR RELATED PARTIES AND THE LENDER IRREVOCABLY WAIVE ALL RIGHTS TO A JURY TRIAL IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM OF ANY KIND ARISING OUT OF OR IN ANY WAY RELATING TO THE LOAN, THE NOTE, THE MORTGAGE, THE GUARANTY, THE PLEDGE AGREEMENT, THIS STIPULATION, ANY OF THE OTHER LOAN DOCUMENTS, THE MORTGAGED PREMISES, ANY OR ALL OF THE REAL AND PERSONAL PROPERTY COLLATERAL SECURING THE LOAN OR ANY OF THE TRANSACTIONS WHICH ARE CONTEMPLATED BY THE LOAN DOCUMENTS. THE JURY TRIAL WAIVER CONTAINED IN THIS SECTION IS INTENDED TO APPLY, TO THE FULLEST EXTENT PERMITTED BY LAW, TO ANY AND ALL DISPUTES AND CONTROVERSIES THAT ARISE OUT OF OR IN ANY WAY RELATE TO ANY OR ALL OF THE MATTERS DESCRIBED IN THE PRECEDING SENTENCE, INCLUDING WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS OF ANY KIND WHATSOVER. THE WAIVER CONTAINED IN THIS SECTION SHALL APPLY TO ALL SUBSEQUENT EXTENSIONS, RENEWALS, MODIFICATIONS AND REPLACEMENTS OF ANY OR ALL OF THE LOAN DOCUMENTS. THIS**

22

596657-1

FILED: NEW YORK COUNTY CLERK 11/29/2021 12:41 PM
INDEX NO. 656446/2021

NYSCEF DOC. NO. 35
22-01152-mg    Doc 19-2    Filed 12/13/22    Entered 12/13/22 16:41:57    Plaintiffs
RECEIVED NYSCEF: 11/29/2021
Statement of Material Facts Pursuant to Rule 7056-1(b) of the    Pg 153 of 351

STIPULATION MAY BE FILED WITH ANY COURT OF COMPETENT JURISDICTION AS EACH PARTY'S WRITTEN CONSENT TO WAIVER OF A JURY TRIAL.

18.18 <u>Conflicts With Loan Documents</u>. Notwithstanding anything in this Stipulation to the contrary, in the event of an actual conflict or inconsistency between this Stipulation and any of the Loan Documents (which is not resolved by the terms of this Stipulation itself), the provisions which shall enlarge the rights of the Lender shall govern to the extent of such conflict.

18.19 **<u>REVIEW WITH COUNSEL</u>. THE OBLIGOR RELATED PARTIES HEREBY ACKNOWLEDGE AND AGREE THAT: (A) THE OBLIGOR RELATED PARTIES HAVE CAREFULLY READ AND UNDERSTAND ALL OF THE TERMS OF THIS STIPULATION; (B) THE OBLIGOR RELATED PARTIES HAVE EXECUTED THIS STIPULATION FREELY AND VOLUNTARILY AND WITHOUT ANY DURESS, AFTER HAVING CONSULTED WITH THE OBLIGOR RELATED PARTIES' INDEPENDENT LEGAL COUNSEL AND AFTER HAVING ALL OF THE TERMS OF THIS STIPULATION EXPLAINED TO EACH OF THEM BY THEIR INDEPENDENT LEGAL COUNSEL; (C) THE WAIVERS AND RELEASES CONTAINED IN THIS STIPULATION ARE REASONABLE, NOT CONTRARY TO PUBLIC POLICY OR LAW, AND HAVE BEEN INTENTIONALLY, INTELLIGENTLY, KNOWINGLY AND VOLUNTARILY AGREED TO BY EACH OF THE OBLIGOR RELATED PARTIES; (D) THE WAIVERS AND RELEASES CONTAINED IN THIS STIPULATION HAVE BEEN AGREED TO BY THE OBLIGOR RELATED PARTIES WITH FULL KNOWLEDGE OF THEIR SIGNIFICANCE AND CONSEQUENCES, INCLUDING FULL KNOWLEDGE OF THE SPECIFIC NATURE OF ANY RIGHTS OR DEFENSES WHICH THE OBLIGOR RELATED PARTIES HAVE AGREED TO WAIVE OR RELEASE PURSUANT TO THIS STIPULATION; (E) THE OBLIGOR RELATED PARTIES HAVE HAD A FULL AND ADEQUATE OPPORTUNITY TO NEGOTIATE THE TERMS CONTAINED IN THIS STIPULATION; (F) THE OBLIGOR RELATED PARTIES ARE EXPERIENCED IN AND FAMILIAR WITH LOAN TRANSACTIONS OF THE TYPE EVIDENCED BY THIS STIPULATION; (G) THE OBLIGOR RELATED PARTIES EXECUTION AND DELIVERY OF THIS STIPULATION IS NOT BASED UPON RELIANCE UPON ANY REPRESENTATION, UNDERSTANDING OR AGREEMENT NOT EXPRESSLYSET FORTH IN THIS STIPULATION AND NEITHER THE LENDER NOR ANY AFFILIATE THEREOF HAS MADE ANY REPRSENTATION WHATSOVER TO ANY THE OBLIGOR RELATED PARTIES NOT EXPRESSLY SET FORTH HEREIN; (H) THE WAIVERS AND RELEASES CONTAINED IN THIS STIPULATION ARE MATERIAL INDUCEMENTS TO THE LENDER'S EXECUTION OF THIS STIPULATION, AND THE LENDER HAS RELIED ON SUCH WAIVERS AND RELEASES IN ENTERING INTO THIS STIPULATION AND WILL CONTINUE TO RELY ON SUCH WAIVERS AND RELEASES IN ANY RELATED FUTURE DEALINGS WITH THE OBLIGOR RELATED PARTIES.**

23

18.20 <u>Conditions Precedent</u>. This Stipulation shall not be effective and binding on the Parties unless and until it is executed and delivered by each of the Obligor Related Parties and by the Lender.

18.21 <u>Agreement May Be Used Against Obligor Related Parties</u>. This Stipulation may be used as evidence against any or all of the Obligor Related Parties in any litigation now or hereafter existing.

18.21 <u>Release Upon Payment in Full of the Payoff Amount</u>. If the Payoff Amount has been irrevocably paid (and without protest) in full to Lender, Lender will issue a general release of all its claims against the Obligor Related Parties under the Loan Documents.

24

22-01152-mg   Doc 19-2   Filed 12/13/22   Entered 12/13/22 16:41:57   Plaintiffs'
Statement of Material Facts Pursuant to Rule 7056-1(b) of the   Pg 155 of 351

Executed as of the date set forth above:

**78-80 ST. MARKS PLACE, LLC**

By: _____

Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
Title: Manager and Sole Member

_____

LAWRENCE V. OTWAY, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway,
Individually

_____

EUGENIE OTWAY,
Individually

**SCHIEB'S PLACE, INC.**

By: _____

Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
Title: President and sole shareholder

**EXHIBITION OF THE AMERICAN GANGSTER, INC.**

By: _____

Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
Title: President and sole shareholder

**THEATRE 80 LLC**

By: _____

Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
Title: Manager and Sole Member

**ST. MARK'S MIXED USE LLC**

By: _____

Name:
Title:

596657-1

22-01152-mg    Doc 19-2    Filed 12/13/22    Entered 12/13/22 16:41:57    Plaintiffs
Statement of Material Facts Pursuant to Rule 7056-1(b) of the    Pg 156 of 351

Executed as of the date set forth above:

**78-80 ST. MARKS PLACE, LLC**

By: _____
    Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
    Title: Manager and Sole Member


_____
**LAWRENCE V. OTWAY**, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway,
Individually


_____
**EUGENIE OTWAY**,
Individually


**SCHIEB'S PLACE, INC.**

By: _____
    Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
    Title: President and sole shareholder

**EXHIBITION OF THE AMERICAN GANGSTER, INC.**

By: _____
    Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
    Title: President and sole shareholder


**THEATRE 80 LLC**

By: _____
    Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
    Title: Manager and Sole Member


**ST. MARK'S MIXED USE LLC**

By: _____
    Name: Thomas Hooker
    Title:  Manager


596657-1

State of New York    )
                  )ss.:

County of New York    )

On the 23rd day of November, in the year 2021, before me, the undersigned, a notary public in and for said state, personally appeared Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, as Manager and sole member of 78-80 St. Marks Place, LLC, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

                                 NOTARY PUBLIC

RICHARD ROTH
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02RO5075155
Qualified in Westchester County
Commission Expires March 31, 2023

State of New York    )
                  )ss.:

County of New York    )

On the 23rd day of November in the year 2021, before me, the undersigned, a notary public in and for said state, personally appeared Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his individual capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

                                 NOTARY PUBLIC

RICHARD ROTH
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02RO5075155
Qualified in Westchester County
Commission Expires March 31, 2023

State of New York    )
                  )ss.:

County of New York    )

On the 23rd day of November in the year 2021, before me, the notary public in and for said state, personally appeared Eugenie Otway, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her individual capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

                                 NOTARY PUBLIC

26

RICHARD ROTH
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02RO5075155
Qualified in Westchester County
Commission Expires March 31, 2023

596657-1

State of New York    )
                  )ss.:
County of New York )

On the 23rd day of November in the year 2021, before me, the undersigned, a notary public in and for said state, personally appeared Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, as president of Scheib's Place, Inc., and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

NOTARY PUBLIC

RICHARD ROTH
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02RO5075155
Qualified in Westchester County
Commission Expires March 31, 2023

State of New York    )
                  )ss.:
County of New York )

On the 23rd day of November in the year 2021, before me, the undersigned, a notary public in and for said state, personally appeared Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, as president of Exhibition of the American Gangster, Inc., and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

NOTARY PUBLIC

RICHARD ROTH
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02RO5075155
Qualified in Westchester County
Commission Expires March 31, 2023

State of New York    )
                  )ss.:
County of New York )

On the 23rd day of November in the year 2021, before me, the undersigned, a notary public in and for said state, personally appeared Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, as Manager and sole member of Theatre 80 LLC, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

27

596657-1

22-01152-mg   Doc 19-2   Filed 12/13/22   Entered 12/13/22 16:41:57   Plaintiffs'
Statement of Material Facts Pursuant to Rule 7056-1(b) of the   Pg 159 of 351

NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02RO5075155
Qualified in Westchester County
Commission Expires March 31, 2025

NOTARY PUBLIC

KATSKY KORINS LLP,                        THE ROTH LAW FIRM

By: _____                       By: _____
    Steven H. Newman, Esq.                     Richard Roth, Esq.
605 Third Avenue                          295 Madison Avenue
New York, New York 10158                  New York, New York 10017
Attorneys for the Defendant               Attorneys for Plaintiffs

                                November
"**SO-ORDERED**" this 29th day of _____, 2021

HON. _____
              BARRY R. OSTRAGER, J.S.C.

28

KATSKY KORINS LLP,

By: _____
    Steven H. Newman, Esq.
605 Third Avenue
New York, New York 10158
Attorneys for the Defendant

NOTARY PUBLIC
THE ROTH LAW FIRM

By: _____
Richard Roth, Esq.
295 Madison Avenue
New York, New York 10017
Attorneys for Plaintiffs


**"SO-ORDERED"** this 29th day of November , 2021

HON. _____
      BARRY R. OSTRAGER, J.S.C.

28

596657-1

# **EXHIBIT H**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
In re:                                                          Chapter 11

78-80 ST. MARKS PLACE, LLC,                                     Case No.: 21-12139 (MG)

                    Debtor.
-----------------------------------------------------------x

### ORDER PURSUANT TO 11 U.S.C. § 1112(b) CONVERTING THE DEBTOR'S CASE TO A CASE UNDER CHAPTER 7 AND GRANTING RELATED RELIEF

Upon the motion ("Motion") of Marianne T. O'Toole, Esq., the Chapter 11 Trustee ("Trustee") of 78-80 St. Marks Place, LLC ("Debtor"), by her counsel, seeking entry of an Order converting the Debtor's case from Chapter 11 to Chapter 7 pursuant to section 1112(b) of Title 11 of the United States Code ("Bankruptcy Code") and granting such other, further, and different relief as this Court deems just and proper; and upon the Affidavit of Service of the Motion; and upon the Debtor's limited objection to the Motion ("Limited Objection"); and upon the record of the hearing held before this Court on July 21, 2022 ("Hearing"); and the Court having found that the relief sought by the Trustee in the Motion is warranted; and after due deliberation thereon, and for the reasons stated by the Court at the Hearing;

**THE COURT FINDS AND DETERMINES THAT:**

a.       There is cause to convert the Debtor's case from Chapter 11 to Chapter 7 pursuant to section 1112(b)(1) of the Bankruptcy Code.

b.       Conversion of the Debtor's case from Chapter 11 to Chapter 7 is in the best interests of the Debtor's estate and all creditors of the estate.

c.       There are no unusual circumstances that would justify not converting the Debtor's case pursuant to section 1112(b) of the Bankruptcy Code.

**NOW, THEREFORE, IT IS HEREBY**

**ORDERED** that the Limited Objection is overruled and the Motion is granted; and, it is further

**ORDERED** that the Debtor's case is converted from Chapter 11 to Chapter 7 for cause pursuant to section 1112 of the Bankruptcy Code; and, it is further

**ORDERED** that the United States Trustee is directed to appoint a Chapter 7 Trustee in the Debtor's case upon the entry of this Order; and, it is further

**ORDERED** that the Chapter 7 Trustee shall succeed to the rights of the Trustee as set forth in the Orders of this Court entered in this bankruptcy case prior to such appointment; and, it is further

**ORDERED** that the Chapter 7 Trustee appointed by the United States Trustee is authorized (but not directed) to operate the Debtor's business in accordance with section 721 of the Bankruptcy Code for the limited period of time required to liquidate the Debtor's real property.

**IT IS SO ORDERED.**

Dated:  July 25, 2022
        New York, New York

                                    _____/s/ Martin Glenn_____
                                    MARTIN GLENN
                                    Chief United States Bankruptcy Judge

# **EXHIBIT I**

21-12139-mg Doc 219 Filed 07/25/22 Entered 07/25/22 14:09:31 Main Document
Statement of Material Facts Pursuant to Rule 7056-1(b) of the Pg 165 of 351
Pg 6 of 2 Pg 165 of 351

**U.S. Department of Justice**

Office of the United States Trustee
*Southern District of New York*

*201 Varick Street*                                          *(212) 510-0500*
*Room 1006*
*New York, New York 10014*

### CONVERTED CASE MEMORANDUM

TO:                 Case Administration-Judge Team for <u>Judge Glenn</u>
                    White Plains, New York

FROM:               William K. Harrington
                    United States Trustee

PREPARED BY:   Mary V. Moroney

DATE:               July 25, 2022

RE:                 Appointment of Chapter 7 Trustee - Converted Case
                    From Chapter <u>11</u> case to Chapter <u>7</u> - And Scheduling
                    Of Section 341(a) Meeting To Be Noticed by Clerk's
                    Office
----------------------------------------------------------------
        The below listed case has been reviewed.

   **Marianne O'Toole** has been selected as the interim trustee for the case.  Her address is
**2 Depot Plaza, Suite 2E, Bedford Hills, NY  10507. Telephone (914) 232-1511 Fax # (914) 232-1599.**

### <u>CONVERTED CHAPTER (11) CASE TO CHAPTER 7N CASE</u>

78-80 St Marks Place, LLC                              21-12139(MG)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In Re:

78-80 St Marks Place, LLC ,                     21-12139(MG)


Debtor(s).

APPOINTMENT OF INTERIM TRUSTEE AND TRUSTEE
AND DESIGNATION OF REQUIRED BOND


   **Marianne T. O'Toole** of Bedford Hills, New York, is hereby
appointed, pursuant to 11 U.S.C. 701(a) as Interim Trustee for the
estate(s) of the above named debtor(s).  See 11 U.S.C. 701(c).  If no
trustee is elected, you shall serve as the Trustee in this case by
operation of law.  11 U.S.C. 702(d).

   The amount of your bond is covered by the bond of Interim
Trustees in Chapter 7 cases issued by Liberty Mutual Insurance Company
which is on file with the Office.  See 11 U.S.C. § 322(a) Federal
Rules of Bankruptcy Procedure 2010(a).  In addition, because your
blanket acceptance of appointment is on file (FRBP 2008; FRBP
2010(a)), you are required to notify the undersigned in writing within
five (5) business days after receipt of this notice only in the event
you reject this appointment.


Dated:  New York, New York
        July 25, 2022


                        William K. Harrington
                        William K. Harrington
                        United States Trustee
                        201 Varick Street, Room 1006
                        New York, New York 10014


‣ ‣ FILE A:\WP13TO7

# **EXHIBIT J**

<table>
<tr><td colspan="2"><strong>Fill in this information to identify your case:</strong></td></tr>
</table>

United States Bankruptcy Court for the:

SOUTHERN DISTRICT OF NEW YORK

Case number *(if known)* _____

Chapter you are filing under:

☐ Chapter 7

■ Chapter 11

☐ Chapter 12

☐ Chapter 13

☐ Check if this is an amended filing

---

Official Form 101

# Voluntary Petition for Individuals Filing for Bankruptcy

**04/20**

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be *yes* if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Identify Yourself |
|---|---|

|  | | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|---|
| **1.** | **Your full name**<br><br>Write the name that is on your government-issued picture identification (for example, your driver's license or passport).<br><br>Bring your picture identification to your meeting with the trustee. | Lawrence<br>First name<br><br>V,<br>Middle name<br><br>Otway<br>Last name and Suffix (Sr., Jr., II, III) | First name<br><br>Middle name<br><br>Last name and Suffix (Sr., Jr., II, III) |
| **2.** | **All other names you have used in the last 8 years**<br><br>Include your married or maiden names. | Lorcan Otway | |
| **3.** | **Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | xxx-xx-7118 | |

Statement of Material Facts Pursuant to Rule 7056-1(b) of the

Debtor 1    **Lawrence V, Otway**                                    Case number *(if known)* _____

| About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|

**4. Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years**

Include trade names and *doing business as* names

■ I have not used any business name or EINs.

Business name(s)
_____

EIN
_____

☐ I have not used any business name or EINs.

Business name(s)
_____

EIN
_____

**5. Where you live**

**80 St Mark's Place**
**Apt 1**
**New York, NY 10013**
Number, Street, City, State & ZIP Code

**New York**
County

**If your mailing address is different from the one above, fill it in here.** Note that the court will send any notices to you at this mailing address.

_____
Number, P.O. Box, Street, City, State & ZIP Code

If Debtor 2 lives at a different address:

_____
Number, Street, City, State & ZIP Code

_____
County

**If Debtor 2's mailing address is different from yours, fill it in here.** Note that the court will send any notices to this mailing address.

_____
Number, P.O. Box, Street, City, State & ZIP Code

**6. Why you are choosing *this district* to file for bankruptcy**

*Check one:*

■ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
Explain. (See 28 U.S.C. § 1408.)

_____

*Check one:*

☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
Explain. (See 28 U.S.C. § 1408.)

_____

Debtor 1   **Lawrence V, Otway**                                                    Case number *(if known)*

---

| Part 2: | **Tell the Court About Your Bankruptcy Case** |
|---|---|

**7.** **The chapter of the Bankruptcy Code you are choosing to file under**

*Check one.* (For a brief description of each, see *Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)*). Also, go to the top of page 1 and check the appropriate box.

☐ Chapter 7

■ Chapter 11

☐ Chapter 12

☐ Chapter 13

---

**8.** **How you will pay the fee**

■ **I will pay the entire fee when I file my petition**. Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

☐ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

☐ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments. If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

---

**9.** **Have you filed for bankruptcy within the last 8 years?**

■ No.

☐ Yes.

| District | _____ | When | _____ | Case number | _____ |
| District | _____ | When | _____ | Case number | _____ |
| District | _____ | When | _____ | Case number | _____ |

---

**10.** **Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

☐ No

■ Yes.

| Debtor | **78-80 St Mark's Place** | Relationship to you | **LLC owned by Debtor** |
| District | **SDNY** | When | Case number, if known | _____ |
| Debtor | _____ | Relationship to you | _____ |
| District | _____ | When | Case number, if known | _____ |

---

**11.** **Do you rent your residence?**

■ No.     Go to line 12.

☐ Yes.    Has your landlord obtained an eviction judgment against you?

☐ No. Go to line 12.

☐ Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it as part of this bankruptcy petition.

---

Debtor 1    **Lawrence V, Otway**                                                                   Case number *(if known)* _____

---

| **Part 3:** | **Report About Any Businesses You Own as a Sole Proprietor** |

**12. Are you a sole proprietor of any full- or part-time business?**

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

☑ No.    Go to Part 4.

☐ Yes.    Name and location of business

_____

Name of business, if any

_____

_____

Number, Street, City, State & ZIP Code

*Check the appropriate box to describe your business:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ None of the above

---

**13. Are you filing under Chapter 11 of the Bankruptcy Code, and are you a *small business debtor or a debtor as defined by 11 U.S.C. § 1182(1)*?**

For a definition of *small business debtor*, see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor or a debtor choosing to proceed under Subchapter V so that it can set appropriate deadlines.* If you indicate that you are a small business debtor or you are choosing to proceed under Subchapter V, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ No.    I am not filing under Chapter 11.

☑ No.    I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ Yes.   I am filing under Chapter 11, I am a small business debtor according to the definition in the Bankruptcy Code, and I do not choose to proceed under Subchapter V of Chapter 11.

☐ Yes.   I am filing under Chapter 11, I am a debtor according to the definition in § 1182(1) of the Bankruptcy Code, and I choose to proceed under Subchapter V of Chapter 11.

---

| **Part 4:** | **Report if You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention** |

**14. Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

☑ No.

☐ Yes.   What is the hazard?    _____

If immediate attention is needed, why is it needed?   _____

Where is the property?    _____

Number, Street, City, State & Zip Code

---

Statement of Material Facts Pursuant to Rule 7056-1(b) of the

| Debtor 1 | **Lawrence V, Otway** | Case number *(if known)* |
|---|---|---|

<table>
<tr><td colspan="3" style="background:black;color:white"><strong>Part 5:</strong>   Explain Your Efforts to Receive a Briefing About Credit Counseling</td></tr>
</table>

| | **About Debtor 1:** | **About Debtor 2 (Spouse Only in a Joint Case):** |
|---|---|---|
| **15. Tell the court whether you have received a briefing about credit counseling.**<br><br>The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.<br><br>If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again. | *You must check one:*<br><br>☑ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**<br><br>Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.<br><br>☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**<br><br>Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.<br><br>☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**<br><br>To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.<br><br>Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy. If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.<br><br>Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.<br><br>☐ **I am not required to receive a briefing about credit counseling because of:**<br><br>  ☐ **Incapacity.**<br>  I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.<br><br>  ☐ **Disability.**<br>  My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.<br><br>  ☐ **Active duty.**<br>  I am currently on active military duty in a military combat zone.<br><br>If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver credit counseling with the court. | *You must check one:*<br><br>☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**<br><br>Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.<br><br>☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**<br><br>Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.<br><br>☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**<br><br>To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.<br><br>Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.<br><br>If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.<br><br>Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.<br><br>☐ **I am not required to receive a briefing about credit counseling because of:**<br><br>  ☐ **Incapacity.**<br>  I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.<br><br>  ☐ **Disability.**<br>  My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.<br><br>  ☐ **Active duty.**<br>  I am currently on active military duty in a military combat zone.<br><br>If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court. |

Statement of Material Facts Pursuant to R.7 7056-1(b) of the

| Debtor 1 | **Lawrence V, Otway** | Case number *(if known)* |
|---|---|---|

| **Part 6:** | **Answer These Questions for Reporting Purposes** |
|---|---|

**16. What kind of debts do you have?**

**16a.**  **What kind of debts do you have?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

■ No. Go to line 16b.

☐ Yes. Go to line 17.

**16b.**  **Are your debts primarily business debts?** *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

☐ No. Go to line 16c.

■ Yes. Go to line 17.

**16c.**  State the type of debts you owe that are not consumer debts or business debts

---

**17. Are you filing under Chapter 7?**

■ No.   I am not filing under Chapter 7. Go to line 18.

**Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?**

☐ Yes.   I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

☐ No

☐ Yes

---

**18. How many Creditors do you estimate that you owe?**

| | | |
|---|---|---|
| ■ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

---

**19. How much do you estimate your assets to be worth?**

| | | |
|---|---|---|
| ■ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50  million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

---

**20. How much do you estimate your liabilities to be?**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ■ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50  million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

---

| **Part 7:** | **Sign Below** |
|---|---|

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**/s/ Lawrence V, Otway**

| **Lawrence V, Otway** | | Signature of Debtor 2 |
|---|---|---|
| Signature of Debtor 1 | | |

| Executed on | **December 29, 2021** | Executed on | |
|---|---|---|---|
| | MM / DD / YYYY | | MM / DD / YYYY |

Debtor 1  **Lawrence V, Otway** _____ Case number *(if known)* _____

---

**For your attorney, if you are represented by one**

**If you are not represented by an attorney, you do not need to file this page.**

I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible.  I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

**/s/ Andrew R. Gottesman**                          Date    **December 29, 2021**
Signature of Attorney for Debtor                          MM / DD / YYYY

**Andrew R. Gottesman**
Printed name

**Mintz & Gold LLP**
Firm name

**600 Third Avenue**
**25th Floor**
**New York, NY 10016**
Number, Street, City, State & ZIP Code

Contact phone   **(212) 696-4848**              Email address   **gottesman@mintzandgold.com**

**2960649 NY**
Bar number & State

---

# **EXHIBIT K**

**Fill in this information to identify your case:**

| Debtor 1 | **Lawrence V, Otway** | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK | | |
| Case number (if known) | | | |

☐ Check if this is an amended filing

# Official Form 106G
## Schedule G: Executory Contracts and Unexpired Leases    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).

1. **Do you have any executory contracts or unexpired leases?**
   ■ No. Check this box and file this form with the court with your other schedules.  You have nothing else to report on this form.
   ☐ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B:Property* (Official Form 106 A/B).

2. **List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone).** See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.

| Person or company with whom you have the contract or lease<br>Name, Number, Street, City, State and ZIP Code | State what the contract or lease is for |
|---|---|
| 2.1 _____ <br> Name <br> _____ <br> Number    Street <br> _____ <br> City       State    ZIP Code | |
| 2.2 _____ <br> Name <br> _____ <br> Number    Street <br> _____ <br> City       State    ZIP Code | |
| 2.3 _____ <br> Name <br> _____ <br> Number    Street <br> _____ <br> City       State    ZIP Code | |
| 2.4 _____ <br> Name <br> _____ <br> Number    Street <br> _____ <br> City       State    ZIP Code | |
| 2.5 _____ <br> Name <br> _____ <br> Number    Street <br> _____ <br> City       State    ZIP Code | |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                        Best Case Bankruptcy

# **EXHIBIT L**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

Lawrence V. Otway,

Debtor.

**NOT FOR PUBLICATION**

Chapter 11

Case No. 21-12140 (MG)

## MEMORANDUM OPINION AND ORDER GRANTING
## MOTION TO LIFT THE AUTOMATIC STAY

*A P P E A R A N C E S :*

LAMONICA HERBST & MANISCALCO, LLP
*Attorney for Interim Ch. 7 Trustee of 78-80 St. Mark's Place, LLC*
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
By:    Holly R. Holecek, Esq.

ADVOCATES FOR JUSTICE, CHARTERED
*Attorneys for Lawrence v. Otway, Debtor*
275 Seventh Avenue, Suite 1760
New York, New York 10001
By:    Arthur Z. Schwartz, Esq.
       Eugenie Otway, Esq., of counsel

MINTZ & GOLD, LLP
*Attorneys for 78-80 St. Mark's Place, LLC*
600 Third Avenue, 25th Floor
New York, New York 10016
By:    Andrew R. Gottesman, Esq.

KATSKY KORINS LLP
*Attorneys for St. Mark's Mixed Use, LLC.*
605 Third Avenue
New York, New York 10158
By:    Steven H. Newman, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion of Marianne T. O'Toole, Esq. ("O'Toole"), filed

in her capacity as the interim chapter 7 Trustee ("78-80 Trustee") of the estate of 78-80 St.

Marks Place, LLC (the "78-80 Debtor") for an order for relief from the automatic stay.

("Motion," ECF Doc. # 27.)  O'Toole was appointed as the chapter 11 Trustee of the 78-80

Debtor on May 24, 2022, and she was later appointed as the interim chapter 7 trustee of the 78-

80 Debtor when the chapter 11 case was converted to a case under chapter 7 on July 25, 2022.

The 78-80 Trustee seeks relief from the automatic stay pursuant to section 362 of the

Bankruptcy Code in order to commence an adversary proceeding against Lawrence V. Otway

a/k/a Lorcan Otway, the debtor and debtor-in-possession ("Otway," or the "Debtor"), and his

companies to: (1) compel the turnover of possession of the property of the 78-80 Debtor's estate

to the 78-80 Trustee and (2) seek money judgments in an amount to be determined at trial for the

use and occupancy of the property through the date of turnover of possession.  ("Proposed

Complaint," ECF Doc. # 27-3.)  The objection deadline was September 15, 2022.  (ECF Doc. #

28.)  The Debtor filed an *untimely* opposition ("Opposition," ECF Doc. # 31) on September 20,

2022.  The 78-80 Trustee filed a reply to the Opposition ("Reply," ECF Doc. #36) on September

21, 2022.

For the reasons discussed below, the Court **GRANTS** the Motion.

## I.      BACKGROUND

On December 29, 2021 (the "Filing Date"), Otway filed this chapter 11 case, in which he

is the Debtor, and he also filed a chapter 11 case for 78-80 St. Marks Place, LLC (Case No. 21-

12139 (MG)), an entity wholly owned by him.  (*See Order Directing the Appointment of a*

*Chapter 11 Trustee*, Findings of Fact and Conclusions of Law, ECF Doc. # 58 ¶ 3, Case No. 21-

12139 (hereinafter "Order Directing Appointment of Chapter 11 Trustee").).[1]  Those findings of

fact and conclusions of law are expressly incorporated herein.

That Order recounts the history Otway's ownership of the 78-80 Debtor and of the

businesses (also owned by Otway) that have been occupying substantial portions of the property.

The 78-80 Debtor's primary asset is a mixed-use property located at 78-80 St. Marks Place, New

York, New York 10003 (the "Property").  (Motion ¶ 12.)   The Order recounts the secured

financing in place regarding the Property (the "Secured Loan").

Otway is the sole member of the 78-80 Debtor.  The 78-80 Trustee was appointed as the

chapter 11 Trustee for the 78-80 Debtor on May 24, 2022, and she moved to convert the 78-80

Debtor's case to one under chapter 7 of the Bankruptcy Code on June 17, 2022.  (*Id.* ¶¶ 8, 10.)

By Order dated July 25, 2022, the Court converted the 78-80 Debtor's case to a case under

chapter 7 of the Bankruptcy Code.  (*Id.* ¶ 10.)

As set forth in ¶¶ 5 and 6 of the Order Directing Appointment of Chapter 11 Trustee,

"[o]n November 12, 2019, Mr. Otway personally guaranteed the [78-80] Debtor's obligations

under the Loan ('Guarantee'), and also executed a Pledge and security Agreement ('Pledge

Agreement') in favor of the Original Creditor.  Pursuant to the Pledge Agreement, Mr. Otway

pledged to the Original Creditor all of his rights, title and interests in, to and under his

membership interests in the Debtor (the 'Pledged Collateral').  The Original Creditor perfected

its security interest in the Pledged Collateral by taking possession of the certificate of

membership interests in the Debtor ('Certificated Interests') and filing UCC-1 financing

---

[1]     The Order Directing the Appointment of the Chapter 11 Trustee includes findings of fact and conclusions of law, equally applicable in this case since Otway fully participated in and is bound by the findings in that case.

2

statements" (internal citations omitted).  The assignee and current holder of the Secured Loan is
St. Mark's Mixed Use LLC ("Lender").  The Secured Loan matured on December 1, 2020; it
was not paid at maturity or at any time thereafter.  The 78-80 Debtor has not made any loan
payments or payments of real estate taxes in several years.  The amount due on the Loan now is
approximately $10 million.

The chapter 11 Trustee was appointed because of the 78-80 Debtor's substantial and
continuing losses, the failure to pay post-petition real estate taxes, and the failure of the 78-80
Debtor to establish a reasonable likelihood that a plan would be confirmed in a reasonable time.
The case was then converted to a case under chapter 7 on the motion of the chapter 11 Trustee
because the Debtor was generating insufficient funds to operate and maintain the property and
conversion was in the best interests of the Debtor's estate and all creditors of the estate.  The
goal of the 78-80 Trustee remains to sell the property and maximize the recovery for all
creditors.  It is doubtful, at best, that Otway retains any economic interest in the 78-80 Debtor.
Before and after the appointment of the chapter 11 Trustee and the conversion of the case to a
case under chapter 7, Otway has done all he can do to frustrate the efforts of the 78-80 Trustee to
carry out her responsibilities.  He and his businesses refuse to vacate the property even though
they have acknowledged that they have no leases to occupy the Property.

A.     **Property at Issue**

The 78-80 Debtor's primary asset is a mixed-use property located at 78-80 St. Marks
Place, New York, New York 10003 (the "Property").  (Motion ¶ 12.)  The Debtor currently
resides at the Property with his non-debtor spouse, Eugenie Otway, who has now appeared *of
counsel* in connection with the Motion.  (*Id.* ¶ 13.)  The Debtor's companies—Scheib's Place,
Inc. d/b/a William Barnacle Tavern, Exhibition Of The American Gangster, Inc., and Theatre 80,

3

LLC (collectively, the "Debtor's Companies" or "Companies")—have principal places of business and/or operate out of the Property.  (*Id.* ¶ 13.)

On December 7, 2020, the Lender sent to the 78-80 Debtor and the Debtor a letter notifying them of an Event of Default for failure to repay the indebtedness within 5 days of the December 1, 2020 maturity.  (*Id.*)  On January 14, 2021, the 78-80 Debtor, the Debtor, Eugenie Otway, and the Debtor's Companies (collectively, the "Tenants") entered into a Forbearance Agreement with the Lender.  (Motion ¶ 14.)  *The Forbearance Agreement provided for the termination of all leases between the Debtor, Eugenie Otway, and the Debtor's Companies as tenants and the 78-80 Debtor as landlord as of June 1, 2021.*  (*Id.*)  The Tenants agreed to surrender and vacate the Property by July 31, 2021.  (*Id.* ¶ 15.)  The Forbearance Agreement also gave the Lender the right to foreclose without opposition if the Property was not sold by August 15, 2021.  (*Id.*)  The property was not sold by this date, and on September 3, 2021, the Lender issued a "Notice of Disposition of Collateral" providing for a public auction on November 18, 2021.  (*Id.*)

On November 11, 2021, the Tenants commenced an action (the "State Court Action") against the Lender in the Supreme Court of the State of New York, New York County (the "State Court") and contemporaneously filed a motion seeking to preliminarily enjoin the Lender's auction sale.  (Motion ¶ 18.)

On November 29, 2021, all parties to the State Court Action signed a Stipulation of Settlement and Dismissal of Action (the "Consent Order"), which was entered by the State Court and fully resolved the case.  (Motion ¶ 19.)  The Consent Order acknowledged that all leases between the 78-80 Debtor and the Tenants were terminated and that the Tenants shall completely vacate the Property by December 30, 2021.  (*Id.*)  The Tenants failed to vacate the property, and

the 70-80 Debtor failed to sell or refinance the Property in accordance with the Consent Order.

(*Id.* ¶ 22.)  The Debtor and his companies remain in possession of the Property and are not

paying for their continued use of the Property.  (*Id.*)

On December 29, 2021, the day before the deadline for Tenants to vacate the Property,

the Debtor filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this

Court, which imposed an automatic stay of the commencement or continuation of all litigation

against the Debtor pursuant to 11 U.S.C. § 362(a)(1).  (Motion ¶ 5.)  It is beyond dispute that the

Property is property of the 78-80 Debtor's estate, and the Debtor and his companies have no

leases or agreements for their continued occupancy of the property.  (*Id.* ¶¶ 22–23.)

### B.    The Motion

The 78-80 Trustee asserts that she has sufficient cause to be granted relief from the

automatic stay under 11 U.S.C. § 362 and should be permitted to commence an adversary

proceeding in the 78-80 Debtor's Chapter 7 case against the Debtor and the Debtor's Companies.

(Motion ¶¶ 26, 28.)  The 78-80 Trustee submits that the Debtor's and his Companies' continued

wrongful possession of the Property devalues the Property and impedes the 78-80 Trustee's

ability to liquidate the Property.  (*Id.* ¶ 23.)  The Debtor remains a debtor-in-possession in this

case; however, the U.S. Trustee filed a motion on September 21, 2022, to dismiss the case or to

convert to a case under chapter 7, which is scheduled to be heard on October 19, 2022.  (ECF

Doc. # 35.)  A review of the docket in this case reflects that since the filing of the case on

December 29, 2021, the Debtor has *not* filed any operating reports or proposed a plan of

reorganization.

### C.    Untimely Opposition

The Debtor filed an untimely Opposition to the 78-80 Trustee's Motion on September 20, 2022.  The Opposition cites New York State COVID-19 business restrictions as a key catalyst to the Debtor's and 78-80 Debtor's financial hardship and ultimate bankruptcy filings.  (Opposition at 8.)  The Opposition advances several arguments that are without legal support, do not substantively address the bankruptcy law at issue in this case, or do not respond to the Motion.

### D.    Reply to Opposition

On September 21, 2022, the 78-80 Trustee filed a Reply to the Opposition.  The 78-80 Trustee asserts that the untimely Opposition is procedurally defective and reiterates her arguments set forth in the Motion.  (Reply at 4–8.)  The Reply also refutes many of the Opposition's allegations, and accurately notes that such allegations are not properly before the Court in this Motion.  (Reply ¶ 14.)

## II.    <u>LEGAL STANDARD</u>

Section 362(a)(1) of the Bankruptcy Code imposes an automatic stay of the commencement or continuation of all litigation against a debtor upon the debtor's filing of a bankruptcy petition.  *See* 11 U.S.C. § 362(a)(1); *In re Project Orange Assocs., LLC*, 432 B.R. 89, 101 (Bankr. S.D.N.Y. 2010).

Section 362(b), in relevant part, provides that the automatic stay does not apply to:

> (10)    any act by a lessor of the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property; or
> . . .
> (22)    the continuation of any eviction, unlawful detainer action, or similar proceeding by a lessor against a debtor involving residential property in which the debtor resides as a tenant under a lease or rental agreement and with respect to which the lessor has obtained before the date of the filing of the bankruptcy petition, a judgment for possession of such property against the debtor[.]

6

11 U.S.C. § 362(b)(10), (22).

Where the automatic stay applies, a party in interest can seek relief from the automatic

stay under section 362(d).  Section 362(d)(1), in relevant part, provides:

> On request of a party in interest and after notice and a hearing, the court shall grant
> relief from the stay provided under subsection (a) of this section, such as by
> terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection an interest in property of
>     such party in interest;

11 U.S.C. § 362(d)(1).

To prevail on a motion to lift the automatic stay under section 362(d), a movant must

establish its *prima facie* case that there is cause to lift the stay.  Neither section 362(d)(1) nor the

legislative history related thereto defines what constitutes "cause" for relief from the automatic

stay.  *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994).  "'Cause' is an intentionally

broad and flexible concept which must be determined on a case-by-case basis."  *Project Orange*,

432 B.R. at 103 (quoting *In re Brown*, 311 B.R. 409, 412-13 (E.D.Pa. 2004)) (internal citation

omitted).  A *prima facie* case that a party lacks adequate protection under 11 U.S.C. § 362(d)(1)

can be satisfied by showing (i) a quantitative decline in value of a property, or (ii) that the debtor

has failed to make numerous post-bankruptcy payments.  *See In re Elmira Litho, Inc.*, 174 B.R.

892, 902–04 (Bankr. S.D.N.Y. 1994).  The decision whether to grant relief from the automatic

stay falls within the discretion of the bankruptcy court.  *Burger Boys, Inc. v. S. St. Seaport Ltd.*

*P'ship* (*In re Burger Boys, Inc.*), 183 B.R. 682, 687-688 (S.D.N.Y. 1994).

Courts in the Second Circuit consider the twelve factors established in the Court of

Appeals decision in *Sonnax Industries, Inc. v. Tri-Component Products Corp. (In re Sonnax*

*Indus., Inc.)*, 907 F.2d 1280 (2d Cir. 1990), to determine, on a case-by-case basis, whether relief

from the automatic stay is appropriate.  *See, e.g., In re Lehman Bros. Holdings Inc.*, 435 B.R.

122, 138 (S.D.N.Y. 2010), *aff'd sub nom Suncal Cmtys. I LLC v. Lehman Commercial Paper*, *Inc.*, 402 F. App'x 634 (2d Cir. 2010) ("Sonnax . . . is routinely referenced as the leading relief from stay precedent in this Circuit."). The twelve *Sonnax* factors are:

1. whether relief would result in a partial or complete resolution of the issues;
2. lack of any connection with or interference with the bankruptcy case;
3. whether the other proceeding involves the debtor as a fiduciary;
4. whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
5. whether the debtor's insurer has assumed full responsibility for defending it;
6. whether the action primarily involves third parties;
7. whether litigation in another forum would prejudice the interests of other creditors;
8. whether the judgment claim arising from the other action is subject to equitable subordination;
9. whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
10. the interests of judicial economy and the expeditious and economical resolution of litigation;
11. whether the parties are ready for trial in the other proceeding; and
12. impact of the stay on the parties and the balance of harms.

Not all of the *Sonnax* factors are relevant in every case. *Spencer v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002) (citing *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999)). The Court need not assign equal weight to each factor. *In re Keene Corp.*, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994).

Alternatively, with respect to real property, a party can move to lift the automatic stay when a debtor has no equity interest in the property and the property is not necessary to reorganization of the estate. 11 U.S.C. § 362(d)(2); *see also In re Elmira Litho, Inc.*, 174 B.R. at 900 (collecting cases) ("Sections 362(d)(1) and (d)(2) are disjunctive. This means that the Court must lift the stay if the movant prevails under either of the two grounds.") A *prima facie* case under 11 U.S.C. § 362(d)(2) requires a showing that the debtor has no equity in the property and that the property is not necessary to the reorganization of the estate. *See* 11 U.S.C. § 362(d)(2).

21-22041-smg Doc 89 Filed 06/30/22 Entered 06/30/22 18:41:57 Main Document
Statement of Material Facts Pursuant to Rule 7056-1(b) of the    Pg 187 of 351
Part 10 of 14    Pg 187 of 351

If a movant fails to demonstrate its *prima facie* case, the court must deny the request to lift the stay. 3 COLLIER ON BANKRUPTCY ¶ 362.10 (16th ed. 2016). Once the creditor makes a *prima facie* case, the burden shifts to the debtor on all other issues. *Elmira Litho*, 174 B.R. at 902; 3 COLLIER ON BANKRUPTCY ¶ 362.10.

## III.    DISCUSSION

### A.    The Debtor Has No Lease Interest in the Properties

Section 362(b)(10) and (22) of the Bankruptcy Code clearly apply in this case. Before this bankruptcy case was filed, the Debtor agreed in two separate binding agreements that the leases (if any) expired before the commencement of the two bankruptcy cases.

The 78-80 Debtor was the Debtor's lessor under residential property leases and under nonresidential leases in relation to the Debtor's Companies. (Motion ¶¶ 14, 19.) The nonresidential and residential leases expired and terminated before the Petition Date. (*Id.*) The Forbearance Agreement and the Consent Order both obligated the Debtor and his businesses to vacate the Property under any and all leases. (*Id.*) The Opposition does not address leases and notes that the only tenant paying residential rent consistently has paid no commercial rent during the COVID-19 crisis. (Opposition at 2.) The Opposition otherwise does not respond to the Motion's statements that neither the Debtor nor his Companies have any valid residential or nonresidential leases with the 78-80 Debtor.

### B.    The Debtor Does Not Have Equity in the Property

A party can move to lift the automatic stay when a debtor has no equity interest in the property and the property is not necessary to reorganization of the estate. 11 U.S.C. § 362(d)(2). A *prima facie* case under 11 U.S.C. § 362(d)(2) requires a showing that the debtor has no equity in the property and that the property is not necessary to the reorganization of the estate.

The Property is solely owned by the 78-80 Debtor.   Any and all leases of the Debtor relating to the Property expired before the Filing Date or were consensually terminated by final order before the Filing Date.  (Motion ¶ 37.)  The Opposition states that the Debtor "still has equity in the property," but does not provide facts to substantiate this claim.  (Opposition at 5.) The Opposition argues that there have been a range of independent appraisals which value the Property between $13,680,000 and $15,000,000, but the Opposition does not show that the Debtor himself possesses equity in the Property.  (*Id.*)  Additionally, those purported appraised values were substantially disputed at the time of the motion to appointment the chapter 11 Trustee.  (*See* Findings of Fact and Conclusions of Law ¶ 13.)  Despite Otway's assurances in opposing appointment of the chapter 11 case of the 78-80 Debtor that he would be able to arrange takeout financing to repay the Lender in full, he was never able to do so.

Because the Opposition does not address the 78-80 Trustee's statement that the Debtor does not have equity in the property, the 78-80 Trustee has satisfied its burden of making a *prima facie* showing under section 362(d)(2).

## C.    Relevant *Sonnax* Factors Weigh in Favor of Lifting the Stay

The Court reaches the same conclusion that the 78-80 Trustee's Motion makes a sufficient showing for relief from the automatic stay under section 362(d)(1) of the Bankruptcy Code.  The Motion substantively argues that the *Sonnax* factors weigh in favor of lifting the automatic stay because the Tenants' continued occupancy hinders the 78-80 Trustee's ability to sell the Property for its maximum benefit to the estate.  The Opposition does not substantively engage with the *Sonnax* factors, but argues that the twelfth factor (impact of the stay on the parties and the balance of harms) weighs in favor of denying the Motion because Mr. Otway will become homeless and impoverished if the Court lifts the stay.  (Opposition at 5-6.)

The Court does not need to consider all *Sonnax* Factors because not all are relevant in

every case.  *See In re M.J. & K Co., Inc.,* 161 B.R. 586 (Bankr.S.D.N.Y.1993); *In re Burger*

*Boys, Inc.*, 183 B.R. at 688.  Only the relevant factors need to be considered.  *See In re*

*Touloumis*, 170 B.R. at 828.  On balance, and in light of the Opposition's failure to substantively

engage with the *Sonnax* factors, the relevant *Sonnax* factors weigh in favor of lifting the stay.

  *Sonnax* Factor 1: Whether Relief Would Result in a Partial or Complete Resolution of the
  Issues

The 78-80 Trustee's Proposed Complaint seeks the turnover of possession of the Property

currently occupied by the Tenants.  (*See* Proposed Complaint.)  The Tenants remain in

possession of the Property, despite the Forbearance Agreement and Consent Order resolving the

State Court action, which each separately obligated the Tenants to completely vacate the

property by December 30, 2021.  (*Id.* ¶ 48.)  As a result, the 78-80 Debtor, the sole owner of the

Property, has not sold or refinanced the Property and also failed to meet its obligation under the

Consent Order.  (*Id.* ¶¶ 50, 67.)

Lifting the stay to allow the 78-80 Trustee to proceed with the proposed adversary

proceeding will partially resolve the issue of the Tenants' continued occupancy of the Property.

A judgment on the matter would be a meaningful step in the 78-80 Trustee's disposition of the

property as part of the 78-80 Debtor's Chapter 7 bankruptcy liquidation.  Accordingly, this factor

weighs in favor of lifting the automatic stay.

  *Sonnax* Factor 2: Lack of Connection with or Interference with the Bankruptcy Case

The Tenants' continued occupancy of the Property is connected to the 78-80 Trustee's

inability to sell the Property for its maximum value and accord the greatest benefit to the estate.

The Debtor and his Companies do not have any leases or contracts with the 78-80 Debtor

because, prior to the Filing Date, the Debtor and his Companies agreed that any and all leases or

contracts expired, terminated on their own terms, or were terminated by the Forbearance

Agreement. (Motion ¶ 34.) As already discussed, the Consent Order further obligated the

Debtor and his Companies to vacate the Property at issue. (*Id.*)

The Opposition does not engage with *Sonnax* factor 2, but separately submits that the

Debtor's and Debtor's Companies' continued occupancy protects the value of the Property.

(Opposition at 4.) The Opposition argues that the Property would be at risk of vandalization if

the businesses occupying the Property closed and that this vandalization would result in

prospective buyers believing that the Property is in a "dangerous neighborhood and not worth its

value as a public business." (*Id.*)

The Court finds this hypothetical scenario unconvincing, and the Opposition does not

advance a compelling argument that the Tenants' continued possession maintains a higher value

for the Property than if the 78-80 Trustee were able to manage the sale of the Property

unencumbered by unauthorized possession. This factor weighs in favor of lifting the automatic

stay.

> *Sonnax* Factor 12: Impact of the Stay on the Parties and the Balance of Harms

The 78-80 Trustee asserts that the Debtor's continued occupancy of the Property

degrades the value of the Property given (a) the Debtor, as well as Eugenie Otway and the

Debtor's Companies, has not made any payment for such occupancy (Motion ¶ 35), and (b) the

Property is encumbered by, *inter alia*, a lien held by the Lender in the asserted amount of

$9,084,262.75 as of April 1, 2022, plus additional fees and expenses that continue to accrue, and

interest accruing on all of the foregoing at the rate of 24% per annum. (*Id.* ¶¶ 37, 38.) The 78-80

Trustee represents that these factors contribute to a quantitative decline in value of the property.

The Opposition cites numerous harms to the Debtor if the proposed adversary proceedings result in the turnover of possession of the property. The Opposition submits that, if the stay remains in place, the Debtor and his businesses would be able to pay into a reorganization plan to pay creditors in installments after an eight-month period. (Opposition at 5.) The Opposition also argues that the Debtor will have the financial means to relocate if the Debtor is allowed to leave after the sale of the Property. (*Id.*) The Opposition repeatedly submits that the potential harms of lifting the stay include the Debtor's homelessness and poverty. (*Id.*)

Homelessness is a significant harm to the Debtor, but the Opposition is without a concrete legal argument for allowing the Debtor, as well as the remaining parties as Tenants, to remain in possession of the property. Additionally, the Debtor's proposed reorganization and relocation plans are for the Debtor's financial benefit and do not address the financial harm to the 78-80 Debtor's estate and potential Property value. Ultimately this factor does not weigh heavily enough in the Debtor's favor to shift the entire *Sonnax* analysis, and the analysis as a whole weighs in favor of granting the 78-80 Trustee's Motion.

## IV. CONCLUSION

The Court **GRANTS** the Motion lifting the stay and **OVERRULES** the Debtor's Opposition. Once the turnover action is filed and served, the Court expects to set an expedited schedule to address the request for relief sought by the 78-80 Trustee.

**IT IS SO ORDERED.**

Dated:    September 30, 2022
          New York, New York

                                        *Martin Glenn*
                                   _____
                                        MARTIN GLENN
                                   Chief United States Bankruptcy Judge

# **EXHIBIT M**

**LaMonica Herbst & Maniscalco, LLP**
*Proposed Counsel to Plaintiff Marianne T. O'Toole, Esq.,*
*as Chapter 7 Trustee*
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Salvatore LaMonica, Esq.
Holly R. Holecek, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| 78-80 ST. MARKS PLACE, LLC, | Case No.: 21-12139 (MG) |
|        Debtor. | |

-----------------------------------------------------------x

| | |
|---|---|
| MARIANNE T. O'TOOLE, ESQ., solely in her capacity as the Chapter 7 Trustee of the estate of 78-80 St. Marks Place, LLC, | |
|        Plaintiff, | Adv. Pro. No.: 22-_____ (MG) |
| -against- | |
| LAWRENCE V. OTWAY, a/k/a LAWRENCE LORCAN OTWAY, a/k/a LORCAN OTWAY, EUGENIE OTWAY a/k/a EUGENIE GILMORE-OTWAY a/k/a EUGENIE GILMORE, SCHEIB'S PLACE, INC. D/B/A WILLIAM BARNACLE TAVERN, EXHIBITION OF THE AMERICAN GANGSTER, INC., THEATRE 80, LLC, and JOHN DOE CORPORATIONS "1" THROUGH "100", OTHER JOHN DOE ENTITIES "1" THROUGH "100", | |
|        Defendants. | |

-----------------------------------------------------------x

## <u>COMPLAINT</u>

Plaintiff Marianne T. O'Toole, Esq., solely in her capacity as the Chapter 7 Trustee

("<u>Trustee</u>" or "<u>Plaintiff</u>") of the estate of 78-80 St. Marks Place, LLC ("<u>Debtor</u>"), by her

undersigned proposed counsel, as and for her Complaint against defendants Lawrence V. Otway,

a/k/a Lawrence Lorcan Otway, a/k/a Lorcan Otway, Eugenie Otway a/k/a Eugenie Gilmore-

Otway, a/k/a Eugenie Gilmore, Scheib's Place, Inc. d/b/a William Barnacle Tavern, Exhibition Of

The American Gangster, Inc., Theatre 80, LLC (each a "<u>Defendant</u>" and collectively

"<u>Defendants</u>"), and John Doe Corporations "1" Through "100", Other John Doe Entities "1"

Through "100" (collectively, "<u>Unnamed Defendants</u>"), alleges as follows:

### <u>NATURE OF THE PROCEEDING</u>

1.        By this adversary proceeding the Trustee seeks entry of: (a) an order and judgment

directing the turnover of possession of the Debtor's real property known as and located at 78-80

St. Marks Place, New York, New York 10003 ("<u>Property</u>") to the Trustee by the Defendants and

any Unnamed Defendants; and (b) money judgments against certain of the Defendants in amounts

to be determined at trial for their respective use and occupancy of property of the Debtor's estate

for the period of not later than May 24, 2022 through the date of turnover of possession of the

property to the Trustee.

2.        This adversary proceeding arises under the Debtor's pending Chapter 7 bankruptcy

case.

3.        The United States Bankruptcy Court for the Southern District of New York

("<u>Court</u>") has jurisdiction under 28 U.S.C. §§ 157 and 1334 and Rules 6009 and 7001 of the

Federal Rules of Bankruptcy Procedure ("<u>Bankruptcy Rules</u>").

4.        This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§157 (b)(1),

157(b)(2) (A), (B), (E), (F) and (O).

5.        Venue in this Court is proper pursuant to 28 U.S.C. §§1408 and 1409.

6.      The predicates for the relief sought herein include sections 105, 541 and 542 of title 11 of the United States Code ("<u>Bankruptcy Code</u>"), Bankruptcy Rules 6009 and 7001, and applicable laws of the State of New York.

7.      Plaintiff consents to the entry of final Orders and judgments by this Court if it is determined that this Court, absent the consent of the parties, cannot enter final Orders or judgments consistent with Article III of the United States Constitution.

<u>**ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF**</u>

**A.      <u>Parties</u>**

8.      Defendant Lawrence V. Otway, a/k/a Lawrence Lorcan Otway, a/k/a Lorcan Otway ("<u>Lorcan Otway</u>") is an individual who currently resides at the Property.

9.      Lorcan Otway is the sole member of the Debtor.

10.     Lorcan executed the voluntary petition commencing the Debtor's Chapter 11 case.

11.     Lorcan Otway is currently a debtor-in-possession in a Chapter 11 case pending in this Court under case no. 21-12140-mg. Pursuant to a Memorandum Opinion and Order dated September 30, 2022, the Court granted Plaintiff's motion for relief from the automatic stay in Lorcan Otway's Chapter 11 case to permit the commencement of this adversary proceeding.

12.     Defendant Eugenie Otway a/k/a Eugenie Gilmore-Otway, a/k/a Eugenie Gilmore ("<u>Eugenie Otway</u>") is an individual who currently resides at the Property with Lorcan Otway.

13.     Upon information and belief, Eugenie Otway and Lorcan Otway are married and educated as lawyers.

14.     Eugenie Otway is an attorney licensed to practice law in the State of New York.

3

15.     Defendant Scheib's Place, Inc. d/b/a William Barnacle Tavern ("Scheib's") is a corporation existing and organized under the laws of the State of New York with a principal place of business at the Property.

16.     Lorcan Otway is the president and sole shareholder of Scheib's.

17.     Defendant Exhibition Of The American Gangster, Inc. ("Museum") is a corporation existing and organized under the laws of the State of New York with a principal place of business at the Property.

18.     Lorcan Otway is the president and sole shareholder of the Museum.

19.     Defendant Theatre 80, LLC ("Theatre 80") is a limited liability company existing and organized under the laws of the State of New York with a principal place of business at the Property.

20.     Lorcan Otway is the manager and sole member of Theatre 80.

21.     The Unnamed Defendants are those entities that are owned and/or controlled by Lorcan Otway and/or Eugenie Otway and are in possession of any portion of the Property (if any).

22.     Plaintiff was appointed as interim Chapter 7 Trustee of the Debtor's estate and is currently acting in that capacity.

23.     Plaintiff is authorized to assert her claims under section 323 of the Bankruptcy Code and Bankruptcy Rule 6009.

**B.    The Debtor and the Property**

24.     The Debtor is a limited liability company organized and existing under the laws of the State of New York with a principal place of business at the Property.

25.     The Debtor is the fee owner of the Property.

26.     The Property is a mixed-use property that includes three residential units, storage space, and commercial space including a theater, bar and kitchen.

27.     The Debtor does not operate any business other than the ownership of the Property.

**C.     The Forbearance Agreement**

28.     The Debtor, Lorcan Otway, Eugenie Otway, Scheib's, the Museum, Theatre 80, and St. Mark's Mixed Use LLC ("Lender") executed a Forbearance Agreement dated as of January 14, 2021 ("Forbearance Agreement"), a copy of which is annexed as Exhibit A.

29.     The Forbearance Agreement provides that, among other things, the certain Commercial Lease dated as of November 12, 2019 between the Debtor, as landlord, and Scheib's, as tenant, expired and terminated by its terms on November 12, 2020 and is no longer in effect.

30.     The Forbearance Agreement provides that, among other things, the certain Commercial Lease dated as of November 12, 2019 between the Debtor, as landlord, and the Museum, as tenant, expired and terminated by its terms on November 12, 2020 and is no longer in effect.

31.     The Forbearance Agreement provides that, among other things, the certain Commercial Lease dated as of November 12, 2019 between the Debtor, as landlord, and Lorcan Otway, as tenant, expired and terminated by its terms on November 12, 2020 and is no longer in effect.

32.     The Forbearance Agreement provides that, among other things, the certain Commercial Lease dated as of November 12, 2019 between the Debtor, as landlord, and Theatre 80, as tenant, expired and terminated by its terms on November 12, 2020 and is no longer in effect.

33.     The Forbearance Agreement provides that, among other things, the certain Commercial Lease dated as of November 12, 2020 between the Debtor, as landlord, and Scheib's,

as tenant: (a) was entered into in violation of the Debtor's obligations under certain loan documents and without the consent of the Lender (or its predecessor-in-interest); and (b) is hereby automatically forever terminated and without effect as of June 1, 2021.

34.    The Forbearance Agreement provides that Scheib's shall vacate and surrender the premises under such lease by June 1, 2021.

35.    The Forbearance Agreement provides that, among other things, the certain Commercial Lease dated as of November 12, 2020 between the Debtor, as landlord, and the Museum, as tenant: (a) was entered into in violation of the Debtor's obligations under certain loan documents and without the consent of the Lender (or its predecessor-in-interest); and (b) is hereby forever terminated and without effect as of the date hereof.

36.    The Forbearance Agreement provides that, among other things, the certain Lease Agreement dated as of November 12, 2020 between the Debtor, as landlord, and Lorcan Otway and Eugenie Otway, as tenants: (a) was entered into in violation of the Debtor's obligations under certain loan documents and without the consent of the Lender (or its predecessor-in-interest); and (b) is hereby forever terminated and without effect as of the date hereof.

37.    The Forbearance Agreement provides that, among other things, the certain Commercial Sublease Agreement dated as of November 12, 2020 between Scheibs Place LLC, as sublessor, and Theatre 80, as subtenant: (a) was entered into in violation of the Debtor's obligations under certain loan documents and without the consent of the Lender (or its predecessor-in-interest); and (b) is hereby forever terminated and without effect as of the date hereof.

38.    The Forbearance Agreement provides that Scheibs Place LLC is not a legal entity; that the reference to "Scheibs Place LLC" was a typographical error and the correct name of the sublessor is Scheib's.

6

39.    Under the Forbearance Agreement, among other things, if the Debtor failed to pay the Lender, the Debtor was required to list the Property for sale at $11,000,000 with the price decreasing each month through July 15, 2021, to a final listing price of $8,500,000.

40.    Under the Forbearance Agreement, if the Property was not sold by August 15, 2021, the Lender had the right to foreclose without opposition.

41.    The Property was not sold in accordance with the Forbearance Agreement.

42.    On September 3, 2021, the Lender issued a Notice of Disposition of Collateral providing for a public auction on November 18, 2021.

**D.    The State Court Action**

43.    On November 11, 2021, the Debtor, Lorcan Otway, Eugenie Otway, Scheib's, the Museum and Theatre 80 commenced an action in the Supreme Court of the State of New York, New York County ("State Court"), under Index No. 656446/2021("State Court Action") and contemporaneously filed a motion seeking to preliminarily enjoin the Lender's auction sale.

44.    On November 29, 2021 the State Court "So-Ordered" a Stipulation of Settlement and Dismissal of Action signed by the Debtor, Lorcan Otway, Eugenie Otway, Scheib's, the Museum, Theatre 80, and the Lender fully resolving the State Court Action, which was entered by the State Court on November 29, 2021 ("Consent Order"). A copy of the Consent Order is annexed as Exhibit B.

45.    The Consent Order agreed and acknowledged that, among other things, the Debtor's 2019 leases with Lorcan Otway and Eugenie Otway, the Museum, Scheib's, and Theatre 80 expired and terminated on November 12, 2020 and are no longer in effect.

46.     The Consent Order agreed and acknowledged that, among other things, the Debtor's 2020 leases with Lorcan Otway and Eugenie Otway, the Museum, and Scheib's were wrongfully created and were terminated.

47.     The Consent Order agreed and acknowledged that, among other things, the 2020 sublease between Scheib's and Theatre 80 was wrongfully created and was terminated.

48.     The Consent Order agreed and acknowledged that, among others, Scheib's, the Museum, Theatre 80, Lorcan Otway, Eugenie Otway and all relatives of Lorcan Otway shall completely vacate the Property no later than December 30, 2021.

49.     The Consent Order is final and non-appealable.

50.     The Debtor failed to sell or refinance the Property in accordance with the Consent Order.

51.     The Defendants failed to vacate the Property by December 30, 2021.

52.     The Defendants remain in possession of the Property.

**E.     The Bankruptcy Case**

53.     On December 29, 2021 ("Filing Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Court.

54.     By motion dated April 4, 2022, the Lender sought entry of an Order converting the Debtor's case to one under Chapter 7 of the Bankruptcy Code or, alternatively, appointing a Chapter 11 Trustee pursuant to sections 1104(a)(1) and 1104(a)(2) of the Bankruptcy Code ("Lender's Motion").

55.     The Debtor opposed the Lender's Motion.

56.     On April 27, 2022, the Court held a hearing on the Lender's Motion.

8

57.     By Order dated May 17, 2022, the Court directed the appointment of a Chapter 11 Trustee for the Debtor.

58.     Marianne T. O'Toole, Esq. was appointed as Chapter 11 Trustee for the Debtor.

59.     By Order dated May 24, 2022, the Court approved the appointment of Marianne T. O'Toole, Esq. as Chapter 11 Trustee for the Debtor ("Chapter 11 Trustee").

60.     By motion dated June 17, 2022, the Chapter 11 Trustee sought entry of an Order converting the Debtor's case to one under Chapter 7 of the Bankruptcy Code ("Chapter 11 Trustee's Motion").

61.     The Debtor filed a limited objection to the Chapter 11 Trustee's Motion.

62.     On July 21, 2022, the Court held a hearing on the Chapter 11 Trustee's Motion.

63.     By Order dated July 25, 2022, the Court converted the Debtor's case to a case under Chapter 7 of the Bankruptcy Code.

64.     During the period of May 24, 2022 to July 25, 2022, the Defendants did not pay the Chapter 11 Trustee for their use, occupancy or possession of the Property.

65.     Since July 25, 2022, the Defendants have not paid any use or occupancy for their possession of the Property to the Trustee.

### FIRST CLAIM FOR RELIEF
**(Turnover of Possession of Property of the Estate
Per 11 U.S.C. §§ 105, 541 and 542)**

66.     Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "65" as if set forth fully herein.

67.     The Debtor is the sole owner of the Property.

68.     The Property is property of the Debtor's estate.

69.     Prior to the Filing Date, each of the Defendants agreed in the Forbearance Agreement that their 2019 leases relating to the Property expired and/or terminated on their own terms.

70.     Prior to the Filing Date, each of the Defendants agreed in the Forbearance Agreement that their 2020 leases relating to the Property were forever terminated.

71.     Prior to the Filing Date, each of the Defendants agreed in the Consent Order that their 2019 leases relating to the Property terminated and were no longer in effect.

72.     Prior to the Filing Date, Defendants Lorcan Otway and Eugenie Otway, the Museum, and Scheib's each agreed in the Consent Order that their 2020 leases relating to the Property were wrongfully created and were terminated.

73.     Prior to the Filing Date, Defendant Theatre 80 agreed in the Consent Order that its 2020 sublease relating to the Property was wrongfully created and was terminated.

74.     The Consent Order agreed and acknowledged that, among other things, the 2020 sublease between Scheib's and Theatre 80 was wrongfully created and was terminated.

75.     Prior to the Filing Date, each of the Defendants agreed in the Consent Order to vacate the Property by December 31, 2021.

76.     Notwithstanding the Forbearance Agreement and Consent Order, by their respective occupancies, the Defendants remain in possession of the Property.

77.     By their respective occupancies, each of the Defendants are wrongfully in possession of property of the Debtor's estate.

78.     None of the Defendants are "custodians" as that term is defined in section 101(11) of the Bankruptcy Code.

10

79.    There are no valid and existent lease agreements between or among the Debtor and any of the Defendants for their possession of the Property.

80.    Any and all leases between or among the Debtor and any of the Defendants for their possession of the Property terminated prior to the Filing Date.

81.    Each of the Defendants must vacate the Property.

82.    Each of the Defendants must deliver possession of the Property and keys to the Property to the Trustee.

83.    To the extent any Unnamed Defendants are in possession of property of the Debtor's estate, such Unnamed Defendants must vacate the Property and must deliver possession of the Property and keys to the Property to the Trustee.

84.    By reason of the foregoing, and in accordance with sections 105(a) and 542(a) of the Bankruptcy Code, the Plaintiff is entitled to the entry of an order and judgment compelling the immediate turnover of possession and the keys to the Property to the Trustee by each of the Defendants and the Unnamed Defendants, failing which the U.S. Marshals Service shall forcibly remove the Defendants and the Unnamed Defendants.

## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment Per New York State Law)

85.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "84" as if set forth fully herein.

86.    Each of the Defendants is occupying the Property.

87.    Each of the Defendants has been occupying the Property since at least May 24, 2022 (the date of the appointment of the Chapter 11 Trustee).

88.    By their respective occupancies, each of the Defendants are wrongfully in possession of property of the Debtor's estate.

89.     None of the Defendants paid use or occupancy to the Chapter 11 Trustee.

90.     None of the Defendants have paid use or occupancy to the Trustee.

91.     Each of the Defendants has benefited from their continued use and occupancy of the Property.

92.     Permitting the Defendants to enjoy use and occupancy of the Property without compensation to the Debtor's estate unjustly enriches each of the Defendants to the detriment of the Debtor and its creditors.

93.     As a consequence of Defendants' use and occupancy of the Property without compensating the Debtor's estate for said use and possession, each of the Defendants has been unjustly enriched.

94.     Equity and good conscience require that Defendants Eugenie Otway, Scheib's, the Museum and Theatre 80 make restitution to the Debtor's estate for the period of not later than May 24, 2022 through the date of turnover of possession of the Property to the Trustee.

95.     Equity and good conscience require that any Unnamed Defendants using and occupying the Property make restitution to the Debtor's estate for the period of not later than May 24, 2022 through the date of turnover of possession of the Property to the Trustee.

96.     By reason of the foregoing, the Plaintiff is entitled to money judgments against Defendants Eugenie Otway, Scheib's, the Museum and Theatre 80 and any Unnamed Defendants in amounts to be determined at trial for their respective use and occupancy of the Property for the period of not later than May 24, 2022 through the date of turnover of possession of the Property to the Trustee.

**WHEREFORE**, Plaintiff demands relief against each of the Defendants as follows:

i.      on Plaintiff's First Claim for Relief, the entry of an order and judgment compelling the immediate turnover of possession and the keys to the Property to the Trustee by the Defendants and any Unnamed Defendants, in accordance with sections 105(a) and 542(a) of the Bankruptcy Code, failing which the U.S. Marshals Service shall forcibly remove the Defendants and the Unnamed Defendants;

ii.      on Plaintiff's Second Claim for Relief, the entry of money judgments against Defendants Eugenie Otway, Scheib's, the Museum and Theatre 80 and any Unnamed Defendants in amounts to be determined at trial for their respective use and occupancy of the Property for the period of not later than May 24, 2022 through the date of turnover of possession of the Property to the Trustee; and

iii.      such other and further relief as the Court deems just and proper.

Dated: September 30, 2022
        Wantagh, New York                **LaMONICA HERBST & MANISCALCO, LLP**
                                          Proposed Counsel to Plaintiff Marianne T. O'Toole,
                                          Esq., as Chapter 7 Trustee

                        By:     *s/ Holly R. Holecek*
                                Holly R. Holecek, Esq.
                                Salvatore LaMonica, Esq.
                                3305 Jerusalem Avenue, Suite 201
                                Wantagh, New York 11793
                                Telephone: (516) 826-6500

13

# EXHIBIT A

## FORBEARANCE AGREEMENT

This Forbearance Agreement (this "**Forbearance Agreement**") is entered into as of January 14, 2021, by and among (i) (a) 78-80 St. Marks Place, LLC, a New York limited liability company (the "**Borrower**"), and (b) Lawrence V. Otway, a/k/a Lawrence Lorcan Otway, a/k/a Lorcan Otway, individually, whose principal residence is located at 78-80 St. Marks Place, Apartment No.1 , New York, New York 10003 ("**Guarantor**"; and together with Borrower are collectively referred to herein as the "**Obligors**"), (ii) Eugenie Otway, individually, whose principal residence is located at 78-80 St. Marks Place, Apartment No. 1, New York, New York 10003 ("**EO**"), (iii) Scheib's Place, Inc., a New York corporation ("**SPI**"), (iv) Exhibition of the American Gangster, Inc., a New York corporation ("**AGI**"), (v) Theater 80 LLC, a New York limited liability company ("**Theater 80**"), and (vi) St. Mark's Mixed Use LLC (the "**Lender**"). Each of the Obligors, EO, SPI, AGI, Theater 80 and the Lender are sometimes referred to herein individually as a "**Party**", and the Obligors, EO, SPI, AGI, Theater 80 and the Lender are sometimes collectively referred to herein as the "**Parties**". Each of the Obligors, EO, SPI, AGI, and Theater 80 are sometimes referred to herein individually as an "**Obligor Related Party**", and the Obligors, EO, SPI, AGI, and Theater 80 are sometimes collectively referred to herein as the "**Obligor Related Parties**".

**WHEREAS**, Borrower is a New York limited liability company and is the fee owner of the premises known as 78-80 St. Marks Place, New York, New York 10003 (Block: 449, Lot: 28) (the "**Mortgaged Premises**");

**WHEREAS**, SPI is a New York corporation;

**WHEREAS**, AGI is a New York corporation;

**WHEREAS**, Theater 80 is a New York limited liability company;

**WHEREAS**, on or about November 12, 2019, the Borrower borrowed the principal sum of six million one hundred thousand and 00/100 dollars ($6,100,000.00) from 80 St. Marks Place Funding LLC ("**Funding LLC**"), which loan is evidenced by a Promissory Note, dated as of November 12, 2019 (the "**Note**"), which Note was duly executed by Borrower and delivered by Borrower to Funding LLC;

**WHEREAS**, in order to secure its obligations under the Note, the Borrower, as mortgagor, duly executed, acknowledged and delivered to Funding LLC, as mortgagee, a Mortgage and Security Agreement, dated as of November 12, 2019 (the "**Mortgage**"), which Mortgage encumbers the Mortgaged Premises. The Mortgage was duly recorded in the Office of City Register of the City of New York, New York County (the "**Register's Office**") on November 22, 2019 at CRFN 2019000383130. Any applicable recording tax was duly paid at the time the Mortgage was recorded. The Mortgage constitutes a valid first priority mortgage and lien on the Mortgaged Premises;

**WHEREAS**, in order to further secure its obligations under the Note and Mortgage, the Borrower duly executed, acknowledged and delivered to Funding LLC an Assignment of Leases and Rents, dated as of November 12, 2019 (the "**ALR**"), which ALR was duly recorded with the

22-01325-mg   Doc 86-5   Filed 04/04/22   Entered 04/04/22 18:35:35   Exhibit E-g
Statement of Material Facts Pursuant Agree Rule 7056-3 of the   Pg 208 of 351
Pg 208 of 351

Register's Office on December 4, 2019 under CRFN: 2019000395326;

**WHEREAS**, in order to induce Funding LLC to make the Loan to the Borrower, Guarantor duly executed and delivered to Funding LLC a certain Guaranty, dated as of November 12, 2019 (the "**Guaranty**"). Pursuant to the Guaranty, the Guarantor absolutely, unconditionally and irrevocably guaranteed to Funding LLC the payment to the Lender of all amounts and obligations under the Note, the Mortgage and other Loan Documents (as defined below) when same become when due and payable, and the due and prompt performance of all obligations, terms, agreements and covenants under all of the Loan Documents;

**WHEREAS**, the Guarantor is the sole member of the Borrower and the Guarantor owns 100% of the limited liability company membership interests in the Borrower, and in order to further secure, among other things, the Borrower's obligations under the Note and the other Loan Documents, the Guarantor pledged to Funding LLC, among other things, all of his right, title and interest in, to and under his membership interests in the Borrower and the other "Collateral", as that term is defined in that certain Pledge and Security Agreement dated as of November 12, 2019 (the "**Pledge Agreement**")(the "Collateral" as defined in the Pledge Agreement is referred to herein as the "**Pledged Collateral**");

**WHEREAS**, Funding LLC perfected its security interest against the Pledged Collateral by, among other things, taking possession of the certificate of membership interests (the "**Certificated Interest**") in the Borrower pledged under the Pledge Agreement and also by duly filing a UCC-1 financing statement (the "**UCC-1**"), which adequately described the Pledged Collateral, with the New York State Department of State on December 18, 2019, designated as File No. 201912180587574. The Certificated Interest and the UCC-1 constitute a valid and perfected first priority lien on the Pledged Collateral;

**WHEREAS**, on December 1, 2020, the Note was duly assigned by Funding LLC to the Lender pursuant to, among other things, an Allonge to Promissory Note, dated December 1, 2020 (the "**Allonge**");

**WHEREAS**, in addition, on December 1, 2020, Funding LLC assigned, among other things, the Mortgage to the Lender, as evidenced by an Assignment of Mortgage, dated as of December 1, 2020 (the "**Mortgage Assignment**"). The Mortgage Assignment was duly submitted for recording in the Register's Office;

**WHEREAS**, in addition, on December 1, 2020, Funding LLC assigned, among other things, the ALR to Plaintiff, as evidenced by an Assignment of Assignment of Leases and Rents, dated as of December 1, 2020 (the "**ALR Assignment**"). The ALR Assignment was duly submitted for recording in the Register's Office;

**WHEREAS**, in addition, Funding LLC assigned, among other things, the UCC-1 to Plaintiff, as evidenced by a UCC Financing Statement Amendment (the "**UCC-3**");

**WHEREAS**, in addition, pursuant to an Omnibus Assignment of Loan Documents dated as of December 1, 2020 (the "**Omnibus Assignment**"), the Note, the Mortgage, the Guaranty, the Pledge Agreement, the ALR, the Certificated Interest, the UCC-1 and all of the other Loan Documents were each duly assigned by Funding LLC to the Lender. The Note, the Mortgage,

the ALR, the Guaranty, the Pledge Agreement, the Allonge, the Mortgage Assignment, the ALR Assignment, the Certificated Interest, the UCC-1, the UCC-3, the Omnibus Assignment and all other documents evidencing, securing, or guaranteeing the Loan and/or the assignment thereof to the Lender are collectively referred to herein as the "**Loan Documents**";

**WHEREAS**, pursuant to the Allonge, the Mortgage Assignment, the ALR Assignment, the UCC-3 and the Omnibus Assignment, the Lender is the current holder and owner of the Loan and all of the Loan Documents, and the Lender has standing to enforce the Note, the Pledge Agreement, and other Loan Documents;

**WHEREAS**, pursuant to the Note the Borrower is obligated to pay to the holder of the Note, among other things, installments of interest, and the balance of the principal, interest, and all other sums due under the Loan Documents on December 1, 2020 (the "**Maturity Date**");

**WHEREAS**, the Mortgage provides that the Borrower shall pay all of the indebtedness evidenced by the Note at the time and in the manner as provided for in the Note;

**WHEREAS**, the Borrower breached and defaulted on its obligations under the Note, the Mortgage and the other Loan Documents by, among other things, and without limitation, failing and omitting to pay in full all obligations under the Loan Documents on or before the Maturity Date (*i.e.*, December 1, 2020);

**WHEREAS**, the Borrower's failure to pay the entire indebtedness within five (5) days of when it became due, constitutes an "Event of Default" as defined in the Note and the Mortgage;

**WHEREAS**, the Lender duly sent to the Borrower and the Guarantor a letter dated December 7, 2020, which letter duly notified the Borrower and the Guarantor, among other things, (i) that on December 1, 2020, the Loan matured by its terms and the entirety of the indebtedness became immediately due and payable pursuant to the Note and the Mortgage, (ii) that the Borrower failed to pay the entire indebtedness within five (5) days of when it became due, constituting an Event of Default under both the Note and the Mortgage, and (iii) interest on the indebtedness began to accrue at the "Default Rate" as defined in the Note and Mortgage from and after December 2, 2020;

**WHEREAS**, as a result of, among other things, the Borrower's failure to pay all amounts due under the Loan Documents on the Maturity Date, the Loan is now immediately due and payable in full and the Lender is entitled to, among other things, (i) foreclose the Mortgage and the personalty located at the Mortgaged Premises, (ii) foreclose on all collateral granted by the Guarantor to the Lender under the Pledge Agreement, including, without limitation, all of the Guarantor's limited liability company membership interests in the Borrower, and (iii) exercise all of the Lender's rights and remedies under all of the Loan Documents;

**WHEREAS**, without limiting in any manner any other existing defaults, the Obligors are now in default under the Loan Documents based upon the Borrower's failure to pay to the Lender all amounts due under the Loan Documents on the Maturity Date (the "**Stated Default**");

3

573231-1

WHEREAS, any and all notice provisions contained in all of the Loan Documents have been complied with by the Lender and any applicable grace periods, if any, pertaining to Obligors' defaults occurring prior to the date of this Forbearance Agreement have expired or have been forever waived by the Obligors;

WHEREAS, as of December 31, 2020, there is due and owing to the Lender under the Note, the Mortgage, the Guaranty, the Pledge Agreement, and the other Loan Documents the following amounts:

| Payoff | |
| --- | --- |
| Principal Balance | $6,100,000.00 |
| Interest | $122,000.00 |
| Protective Advances | $0.00 |
| Legal Fees (through 12/18/20) | $23,653.65 |
| **Total Due** | **$6,245,653.65** |

Total Due: $6,245,653.65[1] as of December 31, 2020;

WHEREAS, the Lender is currently entitled to exercise any and all of its rights and remedies under the Note, the Mortgage, the Guaranty, the Pledge Agreement, and each of the other Loan Documents; and

WHEREAS, each of the Obligors has requested that the Lender temporarily forbear from enforcing its rights under the Loan Documents based on the Stated Default, and the Lender is willing to do so, but only on the terms and conditions of this Forbearance Agreement.

NOW, THEREFORE, in consideration of the sum of $10.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

1.      Recitals Incorporated Herein. The Parties acknowledge, represent and agree that each of the facts set forth in the recitals above are true and correct in all respects and are incorporated herein as if fully set forth in the body of this Forbearance Agreement.

2.      Forbearance; Consent to Judgment of Foreclosure; Consent to Sale of the Mortgaged Premises; Consent to Sale of the Pledged Collateral.

        (a)      In consideration of the Obligor Related Parties' payment and performance of all of their other obligations under this Forbearance Agreement, and subject to (1) the continued validity of the representations and warranties of the Obligor Related Parties set forth in this

---

[1] Legal fees and protective advances are reflected herein only as of December 18, 2020. Additional legal fees and expenses and protective advances have accrued and continue to accrue after December_18, 2020 and such additional amounts are owed under the Loan Documents and shall be added to the Payoff Amount (as defined herein below).

573231-1

Forbearance Agreement, and (2) the termination provisions set forth in Section 7 below, the Lender shall temporarily forbear from further enforcing any of its remedies under the Pledge Agreement during the period from the date hereof to and including April 15, 2021 (the "**Forbearance Date**"); notwithstanding the foregoing however, the foregoing provisions shall not apply to the Lender taking any of the actions described in Sections 2(b) through (p) below or otherwise set forth elsewhere in this Forbearance Agreement.

       (b)    The Lender shall file a complaint against the Obligor Related Parties and such other persons and entities as the Lender may in its sole discretion determine seeking to enforce its rights against the Obligor Related Parties and any other persons or entities, including, without limitation, to foreclose on the Mortgaged Premises. The Obligor Related Parties hereby expressly consent to the immediate filing of the complaint in substantially the form attached hereto as Exhibit A (the "**Complaint**") in the Supreme Court of the State of New York for New York County (the "**State Court**") and the Obligor Related Parties consent to the relief set forth in the Complaint. The action in the State Court based on the Complaint is referred to herein as the "**Foreclosure Action**".

       (c)    The Obligor Related Parties shall, simultaneously herewith, execute and deliver to the Lender a Consent Judgment of Foreclosure and Sale (the "**Judgment**"), in the form of Exhibit B hereto, pursuant to which, among other things, (i) the Obligor Related Parties shall admit all allegations in the Complaint, (ii) the Obligor Related Parties consent to all relief requested in the Complaint, and (iii) a judgment shall be granted in favor of the Lender fixing the amount of its judgment as set forth therein and the State Court shall direct the foreclosure sale of the Mortgaged Premises (a "**Foreclosure Sale**").

       (d)    The Lender shall immediately take any and all acts and actions to prosecute the Foreclosure Action in any and all respects, including, without limitation, serving a summons and the Complaint on any and all defendants, filing and serving any motions or pleadings of any kind therein and seeking the entry of the Judgment. The Obligor Related Parties shall execute and deliver to counsel for the Lender a stipulation (the "**Stipulation**"), in the form of Exhibit C hereto, among other things, (i) acknowledging service of the summons and Complaint in the Foreclosure Action, a notice of pendency, and a notice of mandatory electronic filing, and (ii) containing the waivers and consents in connection with the Foreclosure Action set for the in this Forbearance Agreement (including, without limitation, those set forth in Section 2, 8, 10 and 15) of this Forbearance Agreement). The Obligor Related Parties shall execute and deliver the Stipulation to counsel for the Lender not later than three (3) days after counsel for the Lender sends a copy of the Stipulation to counsel for the Obligor Related Parties by email and requests that it be executed and delivered. Each of the Obligor Related Parties hereby represents to the Lender that its counsel is Scott Markowitz, Esq. at Tarter Krinsky & Drogin LLP, and his email address is smarkowitz@tarterkrinsky.com.

       (e)    The Obligor Related Parties agree that the form of the Judgment may hereafter be modified or amended in the Lender's sole discretion to address any relief or matters of any kind effecting any persons or entities other than the Obligor Related Parties, including, without limitation, any tenants or persons or entities in possession or located in or on any part of the Mortgaged Premises, and the Obligor Related Parties shall, on the Lender's request to the Obligor Related Parties' counsel, immediately execute and deliver all such documents as the Lender may request in connection therewith.

(f)     Without limiting any of the foregoing, the Obligor Related Parties hereby expressly: (i) waive any and all defenses to the Foreclosure Action and the Complaint, with prejudice, including, without limitation, the defenses of improper service, lack of jurisdiction, lacking of standing, payment, waiver, estoppel, laches, unclean hands, unconscionability, the election of remedies defense, or any claim that the Obligors are not in default under the Loan Documents or that the Note fully matured and that all obligations became due and payable on December 1, 2020; (ii) admit all allegations in the Complaint; (iii) acknowledge and re-affirm the Obligors' due execution of each of the Loan Documents; (iv) agree that none of the Obligor Related Parties shall file any answer, counterclaim, motion, order to show cause or notice of appeal, and that none of the Obligor Related Parties shall contest or delay the Foreclosure Action or the Judgment in any way; (v) admit and acknowledge that, as of December 31, 2020 the Payoff Amount of $6,245,653.65 is due and owing to the Lender (and that additional attorneys' fees and expenses and protective advances have accrued after December 18, 2020 and continue to accrue, and such amounts shall be added to the Payoff Amount and the amount of the Judgment) and interest thereon at the rate of 24% per annum continues to accrue and shall be added to the Payoff Amount and the amount of the Judgment; (vi) waive the appointment of a referee in the Foreclosure Action to compute the sums due and owing to the Lender and hereby consent to the immediate entry of the Judgment, which incorporates the amounts due and owing to the Lender and agree that the Mortgaged Premises shall be sold in one parcel; and (vii) irrevocably and unconditionally agree that the Lender may present the Judgment to the Justice assigned in the Foreclosure Action for signature without any further notice to the Obligor Related Parties and that the Judgment may be presented to the Clerk of Court for entry at any time in the Lender's sole discretion. In addition, all of the foregoing waivers and consents shall also be included in the Stipulation.

(g)     The Obligors shall, within five (5) business days after the date of this Forbearance Agreement, execute and sign a listing agreement with the firm of Lee & Associates Licensing & Administration Co., L. P., 845 Third Avenue, New York New York 10002 (the "**Broker**") in a form approved by the Lender (the "**Broker Listing Agreement**") pursuant to which the Obligors shall retain the Broker to market and sell the Mortgaged Premises (on the time frame set forth below), on an exclusive basis, and pay the Broker a commission of 3.5% upon the sale of the Mortgaged Premises. The Obligors shall be solely responsible for any broker's commissions with respect to the sale of the Mortgaged Premises.

(h)     If the Obligors have not paid the Payoff Amount in full to the Lender by 10:00 a.m. on April 15, 2021, then the Broker shall immediately begin to market, list and advertise the Mortgaged Premises for immediate sale.

(i)     The Obligors shall not enter into any lease, contract or other agreement for the sale, lease or use of the Mortgaged Premises, or any part thereof, without the Lender's express prior written consent, provided that such consent will not be unreasonably withheld if (i) the contract is for the sale of all of the Mortgaged Premises and contains a 10% non-refundable deposit to be held in escrow by Borrower's counsel pending a closing, (ii) the sale price of the Mortgaged Premises is more than 120% of the Payoff Amount on the date the contract is signed, (iii) the closing of the sale must be set for a date that is not later than 30 days after the date the contract is executed, time being of the essence as to the closing date, and (iv) the obligation of the buyer to close is not subject to any

6

contingencies whatsoever, including, without limitation, as to financing, zoning, development or any other matter of any kind.

        (j)     If the Obligors have not entered into a contract for the sale of Mortgaged Premises by May 15, 2021 in a form consented to by the Lender, then the asking price of the Mortgaged Premises shall be reduced to $11,000,000.

        (k)     If the Obligors have not entered into a contract for the sale of Mortgaged Premises by June 15, 2021 in a form consented to by the Lender, then the asking price of the Mortgaged Premises shall be reduced to $10,000,000.

        (l)     If the Obligors have not entered into a contract for the sale of Mortgaged Premises by July 15, 2021 in a form consented to by the Lender, then the asking price of the Mortgaged Premises shall be reduced to $8,500,000 or such lesser amount as the Lender may determine in its sole and absolute discretion.

        (m)     If and only if no Termination Event (as defined below) occurs, then the Lender will forbear, until and including August 15, 2021, from scheduling either (i) a foreclosure sale of the Mortgaged Premises or (ii) a foreclosure sale of the Pledged Collateral. On and after August 16, 2021 (or on any earlier date on which a Termination Event hereunder has occurred) the Lender may enforce all of its rights under the Loan Documents, including without limitation, taking any and all steps whatsoever to enforce the Judgment and schedule, advertise, and conclude a foreclosure sale of the Mortgaged Premises and/or a foreclosure sale of the Pledged Collateral, and may thereafter continue to enforce any and all of its rights under the Loan Documents, the Judgment, applicable law, equity and otherwise, including, without limitation, its rights to any deficiency judgment. If and only if the Payoff Amount is paid in full by the Obligors to the Lender on or before August 15, 2021, the Lender agrees that the Judgment shall be vacated (to the extent it has been signed and entered by the Court) and the Lender shall not enforce such Judgment.

        (n)     The Stipulation shall also contain a consent by the Obligor Related Parties to the immediate appointment of a receiver for the Mortgaged Premises and that the such receiver may be any person selected by the Lender.

        (o)     The Obligor Related Parties and their counsel shall use best efforts to timely and fully cooperate with the Lender in connection with all matters related to the sale of the Mortgaged Premises and/or the Pledged Collateral, including, without limitation, (i) providing information about the Mortgaged Premises, (ii) providing access, upon 24 hours prior notice, from time to time, to the Mortgaged Premises to the Broker, any other brokers, the Lender, any prospective purchaser of the Mortgaged Premises and all agents and representatives of all of the foregoing, and (iii) executing all documents and performing all acts requested by the Lender in connection with or related to the sale (including, without limitation, a Broker Listing Agreement, advertisement, a deed, a title affidavit, and transfer tax forms). The Obligor Related Parties hereby each grant the Lender an irrevocable power of attorney, coupled with an interest, to take any and all acts on behalf of each Obligor Related Party in connection with the sale of the Mortgaged Premises and/or the Pledged Collateral, including, without limitation, to execute and deliver any and all documents in connection with the sale of the Mortgaged Premises and/or the Pledged Collateral (including, without limitation, an advertisement of sale, a deed, a title

7

affidavit and transfer tax forms). Notwithstanding, the foregoing nothing herein shall require the Lender to take any act and the Lender shall have no obligation to do so. In addition, the Lender shall be fully exonerated and shall have no liability to any of the Obligor Related Parties or any other person or entity for any acts taken or not taken by the Lender in connection with the sale of the Mortgaged Premises and/or the Pledged Collateral.

3.      Interest Rate; Financial Statements. (a) Interest Rate; Payoff Amount; Financial Statements.

(a)      Interest shall continue to accrue at the default rate of 24% per annum provided in the Note from December 2, 2020 until the date that the Obligors have indefeasibly paid and satisfied all of their obligations (including, without limitation, principal, interest, default rate interest, late fees, service fees, legal fees and expenses, protective advances, and all other fees and charges) under each of the Loan Documents and this Forbearance Agreement (collectively, the **"Payoff Amount"**).

(b)      The Obligors shall promptly deliver to the Lender any and all financial information that the Lender may reasonably request, including, without limitation, (i) a current rent roll for Mortgaged Premises; (ii) the operating agreement and other organizational documents of the Borrower; (iii) copies of all leases for the Mortgaged Premises; and (iv) proof of insurance of the Mortgaged Premises and Obligors.

4.      Payments to the Lender By Wire Transfer.  All payments to the Lender shall be made by wire transfer pursuant to such wire transfer instructions as the Lender shall provide to the Obligors' counsel upon request therefore.

5.      No Reinstatement of any Loan. The Lender's acceptance of any payment (other than total indefeasible payment in cash of the Payoff Amount) made by any of the Obligor Related Parties on or after the date hereof, nor the Lender's application of any of such payments to amounts owing under the Loan Documents, shall constitute or be construed as: (a) a waiver by the Lender of (i) the Stated Default or any other breach or default by any of the Obligor Related Parties under any or all of the Loan Documents or this Forbearance Agreement, (ii) any of the Lender's rights or remedies in connection with the Loan, any of the Loan Documents or this Forbearance Agreement, or (iii) any of the provisions of the Loan Documents or this Forbearance Agreement; or (b) a cure of the Stated Default or any other breach or default by any of the Obligor Related Parties under the Loan Documents or this Forbearance Agreement.

6.      Application of Payments. Any payments made by any of the Obligor Related Parties to the Lender on or after the date hereof may be accepted by the Lender and applied against the obligations owed under the Loan Documents in such manner as the Lender may hereafter determine from time to time, all in the Lender's sole and absolute discretion.

7.      Termination. The agreement by the Lender to forbear under the terms of this Forbearance Agreement shall automatically terminate, without any notice, any further act or otherwise, upon the earliest to occur of any of the following events:

7.1      The Forbearance Date; or

8

7.2     A Termination Event (as such term is defined in Section 9 below); or

7.3     The Lender hereafter becomes aware of any fact or circumstance that the Lender believes in good faith is reasonably likely to impair any of the Lender's collateral under the Loan Documents, including, without limitation, its first priority liens on all of the Mortgaged Premises (other than the failure to pay real estate taxes on the Mortgaged Pemises), and all collateral under the Pledge Agreement.

8.     Representations and Warranties. In order to induce the Lender to enter into this Forbearance Agreement, each of the Obligor Related Parties hereby represents, warrants and covenants to the Lender as follows, all of which representations, warranties and covenants shall survive the execution of this Forbearance Agreement:

8.1     Binding Obligations. The Note, the Mortgage, the ALR, the Guaranty, the Pledge Agreement, and all of the other Loan Documents and this Forbearance Agreement, have been duly executed and delivered by the Obligor Related Parties (as applicable) and constitute legal, valid and binding obligations of the Obligor Related Parties (as applicable), enforceable in accordance with their respective terms.

8.2     No Defenses or Claims. (a) The Obligor Related Parties expressly represent, warrant and acknowledge that: (i) the Lender (or its predecessors as applicable) has provided any notice of default required under the Loan Documents and would be fully entitled to foreclose on any and/or all of its collateral and otherwise exercise all of its rights and remedies on account of the Stated Default, but for the effect of this Forbearance Agreement; (ii) all amounts owed to the Lender under the Note, the Mortgage, the ALR, the Guaranty, the Pledge Agreement, and the other Loan Documents are now due and payable; (iii) the Lender has elected to grant the forbearance hereunder in its sole discretion, and that absent such election there exists no impediment whatsoever to the commencement of the exercise of any and/or all remedies under the Loan Documents; (iv) there are no defenses, offsets or counterclaims of any nature whatsoever to any of the Loan Documents or to the Lender's ownership thereof or the Lender's status as the due holder of the Note, the Mortgage, the ALR, the Guaranty, the Pledge Agreement, and the other Loan Documents or the Lender's standing to enforce all of the foregoing; (v) the Loan Documents are hereby reaffirmed by the Obligors in their entirety; (vi) the Loan Documents are in full force and effect and the Lender shall not be deemed to waived or modified any of its rights thereunder, at law or in equity by virtue of this Forbearance Agreement, except to the extent specifically provided in Section 2 above; and (vii) none of the Obligor Related Parties is the subject of a bankruptcy proceeding as of the date of this Forbearance Agreement.

(b)     None of the Obligor Related Parties has any defense, affirmative defense, setoff, claim, counterclaim, action, or cause of action of any kind or nature whatsoever against the Lender or any of its past, present, or future directors, officers, employees, agents, attorneys, legal representatives, predecessors, affiliates, successors, or assigns, directly or indirectly, arising out of, based upon, or in any manner connected with any act, transaction, event, circumstance, action, failure to act, or occurrence of any sort or type, whether known or unknown, which occurred, existed, was taken, permitted, or begun prior to the execution of this Forbearance Agreement or which occurred, existed, was taken, permitted, or begun in accordance with, pursuant

9

to, or relating to, or by virtue of the Loan or any of the terms of any of the Loan Documents, or which directly or indirectly relates to or arises out of, or in any manner is connected with, the Loan or any or all of the Loan Documents (including, without limitation, the enforcement by the Lender or its predecessor of any of its rights and remedies under any or all of the Loan Documents); and if any such defense, affirmative defense, setoff, claim, counterclaim, action or cause of action exists without the knowledge of any of the Obligor Related Parties, the same is hereby unconditionally forever waived with prejudice as against the Lender, or any of its past, present or future directors, officers, employees, agents, attorneys, legal representatives, predecessors, affiliates, successors, or assigns.

        8.3  Maturity of the Note.  Pursuant to the express terms of the Note the entire principal balance together with all other amounts payable under the Note, the Mortgage, the Guaranty, the Pledge Agreement and the other Loan Documents were immediately due and payable on December 1, 2020, and the Obligors have failed to pay such obligations as of the date hereof.

        8.4  Representations in Loan Documents.    All of the representations and warranties made by each of the Obligors in each of the Loan Documents are true and correct in all material respects as if made on the date hereof, except for those made with respect to financial statements bearing a particular date, which representations and warranties are hereby restated to be effective as of the date of the last such financial statements provided to the Lender by the Obligors in question.

        8.5  Insurance Policies. Insurance policies complying with the terms of the Loan Documents are in full force and effect.

        8.6  Leases.  (a) There are no leases or licenses to use any part of the Mortgaged Premises other than the following leases (the "**Stated Leases**"):

        (i)    That certain Commercial Lease dated as of November 12, 2019 between the Borrower, as landlord, and SPI, as tenant (the "**2019 Scheib's Lease**"), which lease expired and terminated by its terms on November 12, 2020 and is no longer in effect;

        (ii)    That certain Commercial Lease dated as of November 12, 2019 between the Borrower, as landlord, and AGI, as tenant (the "**2019 Museum Lease**"), which lease expired and terminated by its terms on November 12, 2020 and is no longer in effect;

        (iii)    That certain Commercial Lease dated as of November 12, 2019 between the Borrower, as landlord, and the Guarantor, as tenant (the "**2019 Otway Lease**"), which lease expired and terminated by its terms on November 12, 2020 and is no longer in effect;

        (iv)    That certain Commercial Lease dated as of November 12, 2019 between the Borrower, as landlord, and Theater 80 LLC ("**2019 Theater 80**"), as tenant (the "**Theater Lease**"), which lease expired and terminated by its terms on November 12, 2020 and is no longer in effect;

10

(v)     That certain Standard Form of Loft Lease, dated as of September 1, 2019, between the Borrower (as successor-in-interest to Lawrence Otway), as landlord, and Mr. Ori Kushnir ("**Kushnir**") and Ms. Sivan Lahat ("**Lahat**"), jointly as tenants (the "**Kushnir/Lahat Lease**"), for the 3rd floor (aka Unit 3) of a portion of the Mortgaged Premises located at 78 St. Marks Place, New York, New York. The Kushnir/Lahat Lease expires on August 31, 2022 and has not been modified, amended or extended in any way whatsoever;

(vi)    That certain Lease Agreement, dated as of August 1, 2019 between the Borrower (as successor-in-interest to Lawrence Otway), as landlord, and Mr. Aya Ikeda, as tenant ("**Ikeda**"), for the Unit 4 of a portion of the Mortgaged Premises located at 78 St. Marks Place, New York, New York (the "**Ikeda Lease**"). The Ikeda Lease expires on July 31, 2021 and has not been modified, amended or extended in any way whatsoever;

(vii)   That certain oral sublease (the "**Oral Sublease**") between Theater 80, as sub-landlord, and SPI, as sub-tenant, for a portion of the ground floor of the Mortgaged Premises for the operation of a tavern/bar;

(viii)  That certain oral agreement (the "**Oral Sub-Sublease**") between SPI, as sub-sub-landlord, and Kushnir and Lahat d/b/a Foxface Sandwich Shop ("**Foxface**") for a portion of the ground floor of the Mortgaged Premises consisting of 200 square feet with a concession window opening to St. Marks Place. Foxface is an unincorporated business, is not a legal entity, and is a business owned and operated solely by Kushnir and Lahat under the trade name Foxface Sandwich Shop;

(ix)    That certain Commercial Lease dated as of November 12, 2020 between the Borrower, as landlord, and SPI, as tenant, for 4,875 square feet of the ground floor/basement of 80 St. Marks Place, New York, New York (the "**2020 Scheib's Lease**");

(x)     That certain Commercial Lease dated as of November 12, 2020 between the Borrower, as landlord, and AGI, as tenant, for 750 square feet of the Gallery Museum at 80 St. Marks Place, New York, New York (the "**2020 Museum Lease**");

(xi)    That certain Lease Agreement dated as of November 12, 2020 between the Borrower, as landlord, and the Guarantor and Mrs. Eugenie Otway, as tenants, for the portion of the Mortgaged Premises known quadplex, a/k/a Unit No.1 (the "**2020 Otway Lease**");

(xii)   That certain Commercial Sublease Agreement dated as of November 12, 2020 between Scheibs Place LLC, as sublessor, and Theater 80, as subtenant, for the auditorium, cellar and backstage at 80 St Marks Place, New York, New York (the "**2020 Theater Sublease**"). Scheibs Place LLC is not a legal entity. The reference to "Scheibs Place LLC" in the 2020 Theater Sublease was a typographical error and the correct name of the sublessor under the 2020 Theater Sublease is "Scheib's Place, Inc."; and

573231-1

(xiii) That certain Sub-Commercial Sublease Agreement dated as of November 12, 2020 between Theater 80, as sublessor, and Meeting Space, as subtenant, for the 2nd floor of the Mortgaged Premises (the "**2020 Meeting Space Sub-Sublease**"). Meeting Space is an unincorporated business, is not a legal entity, and is a business owned and operated solely by the Guarantor under the trade name Meeting Space.

(b) The Guarantor is (i) the sole shareholder and president of both SPI and AGI; and (ii) the sole member and sole manager of Theater 80. The Guarantor solely owns and controls SPI, AGI, and Theater 80, and each of such entities is an affiliate of the Guarantor.

(c) The 2019 Scheib's Lease, the 2019 Museum Lease, the 2019 Otway Lease, and the 2019 Theater Lease each expired and terminated by its terms on November 12, 2020 and has not been modified, amended or extended in any way whatsoever, and is no longer in effect.

(d) The 2020 Museum Lease, the 2020 Otway Lease, the 2020 Theater Sublease and 2020 Meeting Space Sub-Sublease, (i) were each entered into in violation of the Borrower's obligations under the Loan Documents and without the consent of the Lender (or its predecessor-in-interest); and (ii) are each hereby forever terminated and without effect as of the date hereof.

(e) The 2020 Scheib's Lease (i) was entered into in violation of the Borrower's obligations under the Loan Documents and without the consent of the Lender (or its predecessor-in-interest); and (ii) is hereby automatically forever terminated and without effect as of June 1, 2021. For the avoidance of doubt, no notice or act shall be required to effectuate the termination of the 2020 Scheib's Lease as of June 1, 2021 and SPI shall vacate and surrender the premises under such lease by June 1, 2021.

(d) AGI, Guarantor, Theater 80, Foxface and Meeting Space have no legal right to use any part of the Mortgaged Premises as of the date hereof. SPI has no legal right to use any part of the Mortgaged Premises as of June 1, 2021.

(e) The Oral Sublease and the Oral Sub-Sublease are void and of no effect whatsoever, as among other things, they were entered into without the Lender's (or its predecessor-in-interest's) consent and they are oral only and in violation of the statute of frauds.

(f) In all events, the Oral Sublease is hereby forever terminated and of no effect whatsoever. As a result of the termination of the Oral Sublease, the Oral Sub-Sublease is terminated as a matter of law due to the termination of the Oral Sublease (i.e. its master lease).

(g) In all events, the Oral Sub-Sublease is hereby forever terminated and of no effect whatsoever.

8.7    Compliance with Laws. The Obligor Related Parties are in compliance with all material laws, ordinances, rules and regulations of all governmental entities (and all agencies,

bodies and subdivisions thereof) affecting the ownership, use, or operation of the Mortgaged Premises, and none of the Obligor Related Parties has received any notice of noncompliance from any such governmental entity with respect to the Mortgaged Premises or that appropriate corrective action is being taken to promptly cure any non-compliance issues(s).

      8.8    No Breach of Other Agreements. Neither the execution or delivery of this Forbearance Agreement, nor the consummation of this transactions contemplated by this Forbearance Agreement, nor the compliance with the terms and provisions hereof: (i) will constitute or result in a breach of any of any the Obligor Related Party's respective articles of incorporation or operating agreement, or will constitute or result in a violation of any law, order, writ, injunction, or decree of any court or governmental department, commission, board, bureau, agency, or instrumentality applicable to any of the Obligor Related Parties; (ii) will conflict or will be inconsistent with, or will result in any breach of, any of the terms, covenants, conditions, or provisions thereof; or (iii) will constitute a default under any indenture, mortgage, instrument, documents, agreement, or contract of any kind to which any of the Obligor Related Parties may be bound or subject.

      8.9    The Obligor Related Parties Benefitted. The Obligor Related Parties have each derived direct and substantial benefits from this Forbearance Agreement and the transactions contemplated by this Forbearance Agreement.

      8.10    Other Documents. (a) All documents, reports, certificates, financial statements, and other statements of any kind furnished to the Lender by or on behalf of each of the Obligor Related Parties in connection with the transactions contemplated by this Forbearance Agreement: (i) are true, correct, and complete in all material respects; (ii) do not contain any untrue statement of material fact; and (iii) do not omit any fact necessary to make the information contained therein not misleading.

      (b)    The continued validity in all respects of all representations and warranties made by the Obligor Related Parties in the Loan Documents, this Forbearance Agreement and any other documents delivered by the Obligor Related Parties in connection with this Forbearance Agreement constitutes a condition precedent to the Lender's agreements under this Forbearance Agreement.

      8.11    Forbearance Agreement Is Duly Executed and Enforceable. Each of the signatories, on behalf of the Obligor Related Parties, to this Forbearance Agreement has full and complete authorization and power to execute and deliver this Forbearance Agreement in the capacity herein stated. This Forbearance Agreement is a valid, binding and enforceable obligation of each of the Obligor Related Parties and does not violate any law, rule or regulation, or any contract or agreement to which any of the Obligor Related Parties is a party. None of the Obligor Related Parties has conveyed, transferred, assigned, pledged or otherwise encumbered any claim or causes of action covered by the releases set forth in this Forbearance Agreement.

      8.12    Benefitted From This Stipulation. The Borrower, the Guarantor and the other Obligor Related Parties have each derived direct and substantial benefits from this Forbearance Agreement.

13

9.    Termination Events. The occurrence of any one or more of the following shall constitute a "**Termination Event**" under this Forbearance Agreement:

9.1    Failure to Perform Obligations. The failure of the Obligor Related Parties to observe or perform any of its respective obligations under this Forbearance Agreement when due; or

9.2    Other Loan Defaults. The occurrence of any of the following: (i) any "Event of Default" (as defined in the Note) under the Note (other than the timely payment of real estate taxes on the Mortgaged Premises); (ii) any "Event of Default" (as defined in the Mortgage) under the Mortgage(other than the timely payment of real estate taxes on the Mortgaged Premises); or (iii) any default or event of default under any of the other Loan Documents (other than the Stated Default), and the applicable Obligors' time, if any, to cure the same has expired under the applicable Loan Document(s); or

9.3    Misrepresentation. If any representation or warranty made herein, or in any report, certificate, financial statement or other instrument or document furnished in connection with this Forbearance Agreement or contemplated hereby, shall prove to have been materially false or misleading on the date as of which it was made; or

9.4    Judgment. Entry of a judgment or filing of a lien after the date hereof against any of the Obligor Related Parties, the Mortgaged Premises, or any other property of any of the Obligor Related Parties;

9.5    Failure to Maintain Insurance. If at any time (i) the Borrower fails to maintain insurance on the Mortgaged Premises in accordance with the Mortgage or (ii) such insurance fails to include the Lender as an additional insured or fails to provide that the Lender is the sole loss payee. The Borrower shall provide a copy of its insurance policy and proof of insurance within 48 hours of any request by the Lender.

9.6    Bankruptcy. If any of the Obligor Related Parties shall: (i) make a general assignment for the benefit of creditors; (ii) file a voluntary petition or a petition or answer seeking reorganization or an arrangement with creditors or take advantage of any bankruptcy, reorganization, insolvency, readjustment of debt, dissolution, or liquidation statute or law, or make or file an answer admitting material allegations of a petition filed against it in any proceeding under any such law; (iii) have any bankruptcy proceedings commenced against it by any person or entity; or (iv) have entered against it an order, judgment or decree of any court of competent jurisdiction approving a petition seeking reorganization of assets or appointing a receiver, trustee, or liquidator for any assets.

10.    Covenants Regarding the Mortgaged Premises.

(a)    The Obligor Related Parties shall not in any way whatsoever modify, amend, extend or renew any of the Stated Leases without the Lender's express prior written consent, and any modification, amendment, extension or renewal of any of the Stated Leases without the Lender's express prior written consent shall be void *ab initio* and of no effect

14

whatsoever. Neither of the Obligor Related Parties shall enter into any agreement of any kind or nature concerning the lease, license, use or sale of the Mortgaged Premises, or any part thereof, without the Lender's express prior written consent, and any such agreement entered into by any Obligor Related Party without the Lender's express prior written consent shall be void *ab initio* and of no effect whatsoever.

(b)     The Borrower, SPI, AGI, the Guarantor, EO, Theater 80 and Meeting Space, and all relatives of the Guarantor and all persons and entities directly or indirectly controlled by either of the Obligors shall completely vacate, and shall cause Foxface, Kushnir, Lahat, and Ikeda to completely vacate, the Mortgaged Premises (other than Kushnir and Lahat with respect to the portion of the Mortgaged Premises demised under the Kushnir/Lahat Lease) no later than July 31, 2021, time being of the essence. In the event that any of the Borrower, SPI, AGI, the Guarantor, EO, Theater 80, Foxface, Kushnir, Lahat, or Ikeda fails to completely vacate the Mortgaged Premises by July 31, 2021 (other than Kushnir and Lahat with respect to the portion of the Mortgaged Premises demised under the Kushnir/Lahat Lease), time being of the essence, then the Obligor Related Parties shall be jointly and severally liable to the Lender in the sum of $200,000 as liquidated damages for the failure of the Obligor Related Parties to timely cause each of the Borrower, SPI, AGI, the Guarantor, EO, Theater 80, Foxface, Kushnir, Lahat, and Ikeda to timely vacate the Mortgaged Premises as required by this Section 10 (b), time being of the essence. Notwithstanding the foregoing, SPI, AGI, the Guarantor, EO, Theater 80, Meeting Space, Kushnir, and Lahat, shall not be obligated to vacate the Mortgaged Premises by July 31, 2021 if and only if each of the following conditions precedent are satisfied not later than July 15, 2021, time being of the essence: (i) the Obligors and a buyer acceptable to the Lender have entered into a fully executed and delivered contract to sell the Mortgaged Premises for an amount greater than $8,500,000 (an "**Executed Sale Agreement**"), (ii) the Executed Sale Agreement has been approved in writing by the Lender, (iii) the Executed Sale Agreement provides that the closing of the sale of the Mortgaged Premises shall occur not later than August 15, 2021, time being of the essence, and (iv) the buyer under the Executed Sale Agreement has expressly agreed, in a writing acceptable to the Lender, that (x) such person or entity may remain in possession of the Mortgaged Premises, (y) that the failure of such person or entity to vacate the Mortgaged Premises shall not in any way be used by the buyer to refuse to close, or to delay or condition the closing of, the sale of the Mortgaged Premises pursuant to the Executed Sale Agreement, and (z) the buyer forever waives any right to refuse to close, or to delay or condition the closing of, the sale of the Mortgaged Premises pursuant to the Executed Sale Agreement based on the occupancy of any part of the Mortgaged Premises by SPI, AGI, the Guarantor, EO, Theater 80, Meeting Space, Kushnir, and/or Lahat, or any person or entity that is affiliated with, a relative of, or under the control of any of them.

11.     Remedies. Without limiting the rights and remedies of the Lender under any of the other Loan Documents, under this Forbearance Agreement, or under applicable law or in equity, immediately upon the occurrence of any Termination Event hereunder (without any notice or any opportunity to cure), the obligations and agreements of the Lender under this Forbearance Agreement shall immediately terminate, and the Lender shall have the right to immediately exercise any and all rights and remedies available to it hereunder, under the Judgment, under any and all of the other Loan Documents and under applicable law, without regard to any notice or cure period contained therein or otherwise available. All rights and remedies available to the Lender under this Forbearance Agreement, the Judgment, any of the Loan Documents and applicable law may be

15

asserted concurrently, cumulatively, or successively, from time to time, as long as any indebtedness or obligations under the Loan Documents shall remain unpaid or outstanding. By entering into this Forbearance Agreement, or accepting any payments hereunder, the Lender shall in no way be considered to have waived or be estopped from exercising any or all of its rights and remedies under any of the Loan Documents. Nothing contained herein shall be considered a forgiveness of any obligation under the Loan Documents (except the full, timely payment of the Payoff Amount) and the accommodations made by the Lender herein do not constitute a "course of dealing" or a "course of conduct" in contravention of the terms of the Loan Documents.

12.     Amendments. This Forbearance Agreement may be amended only by a written amendment, fully executed and delivered by each of the Parties.

13.     Loan Documents Still in Force. Notwithstanding anything to the contrary in this Forbearance Agreement, the Note, the Mortgage, the ALR, the Guaranty, the Pledge Agreement and all of the other Loan Documents are in full force and effect in accordance with their respective terms, remain valid and binding obligations of the Obligors and have not been modified or amended, and are hereby reaffirmed and ratified by the Obligors in all respects. The liens, security interests and pledges created by the Mortgage and Pledge Agreement, and the other Loan Documents are and continue to be valid, effective, properly perfected, enforceable and are hereby ratified and confirmed in all respects.

14.     No Waiver of Rights Under Loan Documents. Neither the failure nor the delay by the Lender to exercise its remedies, nor the acceptance by the Lender of partial payments or any other partial performance (whether any of the foregoing is before or after the date of this Forbearance Agreement), nor any provision of this Forbearance Agreement, shall (a) amend, modify, supplement, extend, delay, renew, terminate, waive, release or otherwise limit or prejudice the Lender's rights and remedies under the Loan Documents or any of the Obligors' obligations under the Loan Documents (including, without limitation, the Lender's right to receive full payment of principal and interest as well as all late charges, default rate interest, delinquent interest, attorneys' fees and expenses, the Lender's protective advances and other charges to the extent provided in the Loan Documents), nor (b) affect the priority of the Lender's security interests in and liens on the property of any of the Obligors (including, without limitations, the Lender's first priority mortgage lien on the Mortgaged Premises pursuant to the Mortgage and the other Loan Documents and the Lender's first priority security interest and lien on all of the equity interests in the Borrower pursuant to the Pledge Agreement and the other Loan Documents). Nothing contained in this Forbearance Agreement shall operate to prohibit, restrict or otherwise inhibit the Lender from exercising any right or remedy the Lender may have under the Loan Documents (except to the extent that the Lender agrees to forbear as specifically provided in Section 2 above) or constitute a cure of the Stated Default or any other existing default or serve to extend any applicable grace or cure period and, without limitation, shall not extend any applicable reinstatement or redemption period.

15.     Release of Claims and Waivers.

15.1     Release of Claims. Each of the Obligor Related Parties, for itself and on behalf of its agents, employees, representatives, affiliates, predecessors-in-interest, successors, and assigns (such persons and entities other than the Obligor Related Parties being collectively referred to herein as the "**Other Releasors**"), does hereby release, discharge and acquit the Lender, and the

16

573231-1

Lender's past, present and future officers, directors, shareholders, agents, employees, professionals, predecessors, successors, assigns and affiliates, and their respective successors, heirs and assigns (collectively, the "**Released Parties**"), of and from any and all rights, claims, causes of action, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, causes of action, promises, damages, costs, losses and expenses of every kind, nature, description or character whatsoever, and irrespective of how, why, or by reason of any facts, which could or may be claimed to exist, whether known or unknown, matured or contingent, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, fraud, breach of any duty, breach of any federal, state or local laws of any kind or nature whatsoever, or any other legal or equitable theory whatsoever, each as though fully set forth herein at length, from the beginning of the world to the date of execution of this Forbearance Agreement by the Obligor Related Parties (collectively, the "**Claims**"), which in any way arise out of, are connected with or relate to any or all of the following: (a) the Loan or the administration of any or all of the Loan or any or all of the Loan Documents, as well as any action or inaction of the Released Parties or any of them with respect to the Loan or the administration thereof or any or all of the Loan Documents or the enforcement thereof; (b) any or all of the transactions which are the subject of or contemplated by any or all of the Loan Documents; (c) the Mortgaged Premises and/or any other collateral granted under any of the Loan Documents; or (d) any fact, matter or transaction existing or occurring as of or prior to the execution of this Forbearance Agreement by the Parties, which in any way, directly or indirectly, relates to the Loan, any of the Loan Documents, or the Mortgaged Premises.

      15.2   Waiver. Each of the Obligor Related Parties hereby: (i) waives any and all defenses to the Lender's exercise of any or all of its rights under the Loan Documents, including, without limitation, the defenses of payment, waiver, estoppel, laches, unclean hands, unconscionability, the election of remedies defense, or any claim that the Obligors are not in default under the Loan Documents, or any claim that any notice was not given by the Lender, or that the Note fully matured; (ii) acknowledges and re-affirms its due execution and delivery of the Loan Documents (as applicable); (iii) agrees that it shall not file an answer, counterclaim, motion, order to show cause or appeal as to any judicial or non-judicial actions that may be taken by the Lender after the earlier of the Forbearance Date or the date that any Termination Event occurs; (iv) admits and acknowledges that, the Note matured by its terms on the Maturity Date (i.e. December 1, 2020) 2020 and that as of December 31, 2020 the Payoff Amount is due and owing to the Lender; (v) expressly waives the appointment of a referee in any action to foreclose the Mortgage to compute the sums due and owing to the Lender; (vi) waives any claim or defense regarding the Loan, the Loan Documents or this Forbearance Agreement, including, without limitation, as to the Lender's standing or that the Loan is usurious or requires the Obligors to pay "hidden" or "disguised" interest, fees or charges; (vii) waives any claim or defense that the Lender is prohibited from commencing a proceeding to recover under the Loan Documents by reason of New York State's issuance of any Executive Order, including, without limitation, Executive Order 202.28, 202.48, 202.75, 201.81 and any subsequent modifications and/or extension of said Executive Orders, and/or New York's Chief Administrative Judge's issuance of Administrative Order of the Chief Administrative Judge of the Courts; and (viii) agrees that in the event that any conference is scheduled in the Foreclosure Action it shall agree that the Foreclosure Action may immediately proceed and shall not request an adjournment of the Foreclosure Action for any reason.

17

15.3    Indemnity. Each of the Obligor Related Parties hereby agrees to defend, indemnify, and hold the Lender and each of the other Released Parties harmless from and against any losses, damages, costs (including, without limitation, attorneys' fees, court costs, and costs of appeal), expenses, judgments, liens, decrees, fines, penalties, liabilities, claims, actions, suits, and causes of action (collectively, the "**Indemnified Claims**") arising, directly or indirectly, from (to the extent not inconsistent with the terms of this Forbearance Agreement): (a) any material breach by any of the Obligor Related Parties of any warranty or representation contained in this Forbearance Agreement or in the documents executed and delivered by any of the Obligor Related Parties pursuant to this Forbearance Agreement (collectively referred to as the "**Obligors Documents**"); (b) and after any material breach, default, or violation by any of the Obligor Related Parties of any covenant, agreement, or provision of any of the Obligors Documents or the Loan Documents; (c) any claims by or liabilities to third parties pertaining to injury to persons or damage to the Mortgaged Premises; and (d) any claims and/ or defenses of any past, present, or future tenants at the Mortgaged Premises, including, without limitation, SPI, AGI, the Guarantor, EO, Theater 80, Foxface, Kushnir, Lahat and Ikeda.

15.4    Waivers of Unknown Claims. As to all matters being released by the Obligor Related Parties pursuant to the provisions hereof, each of the Obligor Related Parties for itself and on behalf of the Other Releasors, expressly acknowledges that the release of Claims set forth in Section 15.1 hereof applies to all Claims whether or not known to, or suspected by the Obligor Related Parties to exist. Each of the Obligor Related Parties, for itself and on behalf of all Other Releasors, acknowledges and agrees that the facts with respect to which the release of Claims contained in Section 15.1 is executed may hereafter be found to be different from the facts now believed by the Obligor Related Parties to be true, and each of the Obligor Related Parties, for itself and on behalf of all Other Releasors, expressly accepts and assumes the risk of all such possible differences, and agrees that the release of Claims contained in this Section shall be and remain effective notwithstanding any such difference in facts.

15.5    No Admission of Liability. Nothing contained in this Forbearance Agreement, including, without limitation, the terms of this Section 15, constitutes or shall be construed as an admission by the Lender of any liability whatsoever.

15.6    No Assignment. Each of the Obligor Related Parties, for itself and on behalf of all Other Releasors, warrants and represents to the Lender that none of the Obligor Related Parties and none of the Other Releasors have sold, assigned, transferred, conveyed or otherwise disposed of any Claims or Indemnified Claims which are the subject of this Section 15.

16.    No Waiver by the Lender. The agreement by the Lender to forbear from exercising its rights and remedies under the Loan Documents shall not constitute a waiver of, consent to, or condoning of the Stated Default or any other default by any of the Obligor Related Parties. The Obligor Related Parties agree that Lender may immediately exercise all rights and remedies available to the Lender under the Loan Documents by reason of the Stated Default or any other default immediately upon the earlier of (i) the Forbearance Date, (ii) the occurrence of any Termination Event; or (iii) the expiration or termination of this Forbearance Agreement for any

18

573231-1

reason, without the Lender being required to provide any additional notice of default or of acceleration and without any grace or cure periods therefor.

17.    Bankruptcy.

17.1    Statement of Intent. Each of the Obligor Related Parties warrants and represents to the Lender that it has no present intent (i) to file any voluntary petition in bankruptcy under any chapter of the United States Bankruptcy Code (the "**Bankruptcy Code**"), or directly or indirectly to cause any Obligor Related Party, or any other person or entity that may hereafter own any interest in, or claim any beneficial interest in, the Mortgaged Premises, to file any voluntary petition in bankruptcy under any chapter of the Bankruptcy Code or to have any involuntary petition in bankruptcy filed against it under any chapter of the Bankruptcy Code, or (ii) in any manner, directly or indirectly, to cause the any of the Obligor Related Parties, or any other person or entity that may hereafter own any interest in, or claim any beneficial interest in, the Mortgaged Premises, to seek relief, protection, reorganization, liquidation, dissolution, or similar relief for debtors under any federal, state, or local law, or in equity, or (iii) in any manner, directly or indirectly, to cause the Mortgaged Premises to be the subject of any bankruptcy or insolvency proceedings or the property of any bankruptcy or insolvency estate.

17.2    Further Agreement. As additional consideration for the Lender's execution of this Forbearance Agreement, the Obligor Related Parties agree that in the event of a bankruptcy filing by or against any of the Obligor Related Parties, no Obligor Related Party shall reject this Forbearance Agreement, nor shall any of the Obligor Related Parties contest any claim or assertion by the Lender that this Forbearance Agreement is binding on the Parties, and that valuable consideration has been received by the Obligor Related Parties for this Forbearance Agreement.

18.    Miscellaneous.

18.1    Costs and Expenses. Nothing in this Forbearance Agreement shall (i) diminish or otherwise limit any obligation that any of the Obligors has under the Loan Documents with respect to payment of the costs and expenses (including, without limitation, attorneys' fees and expenses) of the Lender, or (ii) prevent the Lender from requiring each of the Obligors to pay all such costs and expenses in accordance with the terms of the Loan Documents.

18.2    Further Instruments. The Obligor Related Parties shall, whenever and as often as they shall be requested to do so by the Lender, cause to be executed, acknowledged and/or delivered to the Lender any and all such further instruments and documents as may be necessary or desirable, in the sole discretion of the Lender, in order to carry out the intent and purpose of this Forbearance Agreement. Without limiting of the foregoing, each of the Obligor Related Parties hereby irrevocably appoints Lender as its and his attorney-in-fact, coupled with an interest, to execute any such documents as provided above and to fill in any blank in the Judgment, or any modification thereof, in accordance with the terms of this Forbearance Agreement.

18.3    Written Waiver Only. No waiver by the Lender of any of its rights or remedies in connection with the Loan or any Loan Documents shall be effective unless such

19

waiver is in writing and signed and delivered by the Lender. Without limiting the generality of the preceding sentence, nothing contained in this Forbearance Agreement nor any delay or omission by the Lender in exercising or enforcing any of its rights and remedies in connection with the Loan Documents constitutes or shall be construed as a waiver by the Lender of: (i) the Stated Default or any other breach or default by any of the Obligors under any of the Loan Documents; or (ii) any of the Lender's rights or remedies in connection with the Loan or any of the provisions of any of the Loan Documents.

18.4   Governing Law. This Forbearance Agreement shall be governed by and construed and enforced in accordance with the internal laws of the State of New York, without regard to the law on conflicts of law.

18.5   Third Party Beneficiaries. Nothing in this Forbearance Agreement is intended to or shall confer any rights or remedies upon any person, other than the Parties hereto and the Released Parties and, subject to any restrictions on assignment contained in this Forbearance Agreement and the other Loan Documents, their respective successors and assigns.

18.6   No Offsets. No indebtedness evidenced by the Note or any other Loan Documents shall be offset by all or part of any claim, cause of action, or cross-claim of any kind, whether liquidated or unliquidated, which any of the Obligor Related Parties now has or may hereafter acquire or allege to have acquired against the Lender.

18.7   Relationship of Parties. Nothing contained in this Forbearance Agreement or the other Loan Documents constitutes or shall be construed as the formation of a partnership, joint venture, tenancy-in-common, or any other form of co-ownership, or the creation of any confidential or fiduciary relationship of any kind between the Lender, on the one hand, and the Obligor Related Parties and/or any other person or entity on the other hand. The Obligor Related Parties acknowledge and agree that the Lender has at all times acted and shall at all times continue to be acting only as a lender to the Obligors within the normal and usual scope of activities of a lender.

18.8   Attorneys' Fees. Upon demand therefor by the Lender, the Obligors shall pay all costs and expenses, including, without limitation, reasonable attorneys' fees and costs, now or hereafter incurred by the Lender (i) in negotiating and preparing this Forbearance Agreement; and (ii) in administering, enforcing or effectuating any of the terms of this Forbearance Agreement and the other Loan Documents, whether or not any legal proceedings are instituted by the Lender. Without limiting the generality of the immediately preceding sentence, such costs and expenses shall include all attorneys' fees and costs now or hereafter incurred by the Lender in connection with any federal or state bankruptcy, insolvency, reorganization, foreclosure, or other similar proceeding or action by or against any of the Obligor Related Parties which in any way relates to or affects the Lender's exercise of its rights and remedies under any or all of the Loan Documents. The amount of any attorneys' fees, costs and expenses of the Lender that are not paid by the Obligors shall be added to the Payoff Amount, shall constitute secured obligations of the Obligors under the Loan Documents and shall bear interest at the default rate under the Loan Documents.

573231-1

18.9    Descriptive Headings; Interpretation. The headings to sections of this Forbearance Agreement are for convenient reference only, do not in any way limit or amplify the terms of this Forbearance Agreement, and shall not be used in interpreting this Forbearance Agreement. For purposes of this Forbearance Agreement: (i) the term "including" shall be deemed to mean "including, without limitation,"; (ii) the term "Loan Documents" shall be deemed to include, without limitation, this Forbearance Agreement; (iii) the term "person" means any natural person or any entity, including any corporation, partnership, joint venture, trust, limited liability Borrower, unincorporated organization or association, or trustee; and (iv) whenever the context of this Forbearance Agreement reasonably requires, all words used in the singular shall be deemed to have been used in the plural, and the neuter gender shall be deemed to include the masculine and feminine gender, and vice versa. This Forbearance Agreement has been prepared and drafted through a joint effort of the Parties and, therefore, shall not be construed against any of the Parties as the person who prepared or drafted this Forbearance Agreement.

18.10    Entire Agreement. This Forbearance Agreement and the other Loan Documents contain the entire agreement and understanding between the Parties concerning the matters covered by this Forbearance Agreement and the other Loan Documents, and supersede all prior and contemporaneous agreements, statements, understandings, terms, conditions, negotiations, representations and warranties, whether written or oral, made by the Lender or any of the Obligor Related Parties concerning the matters covered by this Forbearance Agreement and the other Loan Documents.

18.11    Payoff Amount. Each of the Obligor Related Parties hereby acknowledges and agrees that the Payoff Amount as of December 31, 2020 is $6,245,653.65 (exclusive of attorneys' fees and expenses and protective advances incurred after December 18, 2020, which amounts have accrued and continue to accrue and shall be added to the Payoff Amount), that interest is continuing to accrue thereon at the default rate of 24% per annum from and after December 2, 2020, and that the Obligors are jointly and severally liable for the Payoff Amount.

**18.12    TIME OF THE ESSENCE. NOTWITHSTANDING ANYTHING TO THE CONTRARY, TIME IS OF THE ESSENCE WITH RESPECT TO EACH OF THE OBLIGOR RELATED PARTIES' OBLIGATIONS HEREUNDER.**

18.13    Severability. If any term or provision of this Forbearance Agreement or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Forbearance Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each such term and provision of this Forbearance Agreement shall be valid and shall be enforced to the fullest extent permitted by law.

18.14    Notices. All notices and other communications provided for in this Forbearance Agreement shall be in writing and shall be given by Federal Express or hand delivery:

21

If to the Lender, at:

St. Mark's Mixed Use LLC
100 Park Avenue, Suite 2305
New York, New York 10012
Attn: Jason S. Leibowitz, Esq.

with a copy to:

Katsky Korins LLP
605 Third Avenue, 17th Floor
New York, New York 10158
Attn.: Steven H. Newman, Esq.
Email: snewman@katskykorins.com

If to the Borrower, at:

78-80 St. Marks Place, LLC
78-80 St. Marks Place
New York, New York 10003
Attn: Lawrence v. Otway

With a copy to:

Scott Markowitz, Esq.
Tarter Krinsky & Drogin LLP
1350 Broadway
New York, New York 10018
Email: smarkowitz@tarterkrinsky.com

If to the Guarantor, at:

Mr. Lawrence v. Otway
78-80 St. Marks Place, Apt. No. 1
New York, New York 10003

With a copy to:

Scott Markowitz, Esq.
Tarter Krinsky & Drogin LLP
1350 Broadway
New York, New York 10018
Email: smarkowitz@tarterkrinsky.com

22

If to EO, SPI, AGI or Theater 80, to such person or entity at:

78-80 St. Marks Place
New York, New York 10003
Attn: Lawrence v. Otway

With a copy to:

Scott Markowitz, Esq.
Tarter Krinsky & Drogin LLP
1350 Broadway
New York, New York 10018
Email: smarkowitz@tarterkrinsky.com

Notices shall be deemed given (i) if sent by hand, the date sent; and (ii) if sent by Federal Express, one (1) business day after delivery to an authorized agent or authorized depository box of Federal Express.

18.15  Counterparts, Etc. This Forbearance Agreement may be executed in any number of counterparts so long as each signatory hereto executes at least one such counterpart. Each such counterpart shall constitute one original, but all such counterparts taken together shall constitute one and the same instrument. This Forbearance Agreement may be executed by electronic signatures, including without limitation, by PDF, and all electronic signatures shall have the same force and effect as an original signature.

18.16  Service of Process. The Obligor Related Parties hereby irrevocably agrees that service of process of any action or proceeding by the Lender against the Guarantor and/or any other Obligor Related Parties may be served upon the Guarantor or such Obligor Related Party by first class mail addressed to "Mr. Lawrence V. Otway, 78-80 St. Marks Place, Apt. No. 1, New York, New York 10003" and the Obligor Related Parties hereby irrevocably waive any objection or defense whatsoever that any service of process so effectuated is invalid or improper in any manner. The foregoing is without prejudice to the Lender's rights to effectuate service of process by any other means allowed by applicable law.

18.17  **WAIVER OF JURY TRIAL. THE OBLIGOR RELATED PARTIES AND THE LENDER IRREVOCABLY WAIVE ALL RIGHTS TO A JURY TRIAL IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM OF ANY KIND ARISING OUT OF OR IN ANY WAY RELATING TO THE LOAN, THE NOTE, THE MORTGAGE, THE GUARANTY, THE PLEDGE AGREEMENT, THIS FORBEARANCE AGREEMENT, ANY OF THE OTHER LOAN DOCUMENTS, THE MORTGAGED PREMISES, ANY OR ALL OF THE REAL AND PERSONAL PROPERTY COLLATERAL SECURING THE LOAN OR ANY OF THE TRANSACTIONS WHICH ARE CONTEMPLATED BY THE LOAN DOCUMENTS. THE JURY TRIAL WAIVER CONTAINED IN THIS SECTION IS INTENDED TO APPLY, TO THE FULLEST EXTENT PERMITTED BY LAW, TO ANY AND ALL**

23

DISPUTES AND CONTROVERSIES THAT ARISE OUT OF OR IN ANY WAY RELATE TO ANY OR ALL OF THE MATTERS DESCRIBED IN THE PRECEDING SENTENCE, INCLUDING WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS OF ANY KIND WHATSOVER. THE WAIVER CONTAINED IN THIS SECTION SHALL APPLY TO ALL SUBSEQUENT EXTENSIONS, RENEWALS, MODIFICATIONS AND REPLACEMENTS OF ANY OR ALL OF THE LOAN DOCUMENTS. THIS FORBEARANCE AGREEMENT MAY BE FILED WITH ANY COURT OF COMPETENT JURISDICTION AS EACH PARTY'S WRITTEN CONSENT TO WAIVER OF A JURY TRIAL.

18.18 Conflicts With Loan Documents. Notwithstanding anything in this Forbearance Agreement to the contrary, in the event of an actual conflict or inconsistency between this Forbearance Agreement and any of the Loan Documents (which is not resolved by the terms of this Forbearance Agreement itself), the provisions which shall enlarge the rights of the Lender shall govern to the extent of such conflict.

18.19 **REVIEW WITH COUNSEL. THE OBLIGOR RELATED PARTIES HEREBY ACKNOWLEDGE AND AGREE THAT: (A) THE OBLIGOR RELATED PARTIES HAVE CAREFULLY READ AND UNDERSTAND ALL OF THE TERMS OF THIS FORBEARANCE AGREEMENT; (B) THE OBLIGOR RELATED PARTIES HAVE EXECUTED THIS FORBEARANCE AGREEMENT FREELY AND VOLUNTARILY AND WITHOUT ANY DURESS, AFTER HAVING CONSULTED WITH THE OBLIGOR RELATED PARTIES' INDEPENDENT LEGAL COUNSEL AND AFTER HAVING ALL OF THE TERMS OF THIS FORBEARANCE AGREEMENT EXPLAINED TO EACH OF THEM BY THEIR INDEPENDENT LEGAL COUNSEL; (C) THE WAIVERS AND RELEASES CONTAINED IN THIS FORBEARANCE AGREEMENT ARE REASONABLE, NOT CONTRARY TO PUBLIC POLICY OR LAW, AND HAVE BEEN INTENTIONALLY, INTELLIGENTLY, KNOWINGLY AND VOLUNTARILY AGREED TO BY EACH OF THE OBLIGOR RELATED PARTIES; (D) THE WAIVERS AND RELEASES CONTAINED IN THIS FORBEARANCE AGREEMENT HAVE BEEN AGREED TO BY THE OBLIGOR RELATED PARTIES WITH FULL KNOWLEDGE OF THEIR SIGNIFICANCE AND CONSEQUENCES, INCLUDING FULL KNOWLEDGE OF THE SPECIFIC NATURE OF ANY RIGHTS OR DEFENSES WHICH THE OBLIGOR RELATED PARTIES HAVE AGREED TO WAIVE OR RELEASE PURSUANT TO THIS FORBEARANCE AGREEMENT; (E) THE OBLIGOR RELATED PARTIES HAVE HAD A FULL AND ADEQUATE OPPORTUNITY TO NEGOTIATE THE TERMS CONTAINED IN THIS FORBEARANCE AGREEMENT; (F) THE OBLIGOR RELATED PARTIES ARE EXPERIENCED IN AND FAMILIAR WITH LOAN TRANSACTIONS OF THE TYPE EVIDENCED BY THIS FORBEARANCE AGREEMENT; (G) THE OBLIGOR RELATED PARTIES EXECUTION AND DELIVERY OF THIS FORBEARANCE AGREEMENT IS NOT BASED UPON RELIANCE UPON ANY REPRESENTATION, UNDERSTANDING OR AGREEMENT NOT EXPRESSLYSET FORTH IN THIS FORBEARANCE AGREEMENT AND NEITHER THE LENDER NOR ANY AFFILIATE THEREOF**

24

**HAS MADE ANY REPRSENTATION WHATSOVER TO ANY THE OBLIGOR RELATED PARTIES NOT EXPRESSLY SET FORTH HEREIN; (H) THE WAIVERS AND RELEASES CONTAINED IN THIS FORBEARANCE AGREEMENT ARE MATERIAL INDUCEMENTS TO THE LENDER'S EXECUTION OF THIS FORBEARANCE AGREEMENT, AND THE LENDER HAS RELIED ON SUCH WAIVERS AND RELEASES IN ENTERING INTO THIS FORBEARANCE AGREEMENT AND WILL CONTINUE TO RELY ON SUCH WAIVERS AND RELEASES IN ANY RELATED FUTURE DEALINGS WITH THE OBLIGOR RELATED PARTIES.**

18.20  Conditions Precedent. This Forbearance Agreement shall not be effective and binding on the Parties unless and until it is executed and delivered by each of the Obligor Related Parties and by the Lender.

18.21  Agreement May Be Used Against Obligor Related Parties. This Forbearance Agreement may be used as evidence against any or all of the Obligor Related Parties in any litigation now or hereafter existing, including, without limitation, in the Foreclosure Action.

[SIGNATURES APPEAR ON NEXT PAGE]

25

Executed as of the date set forth above:

**78-80 ST. MARKS PLACE, LLC**

By: _____
    Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
    Title: Manager and Sole Member

_____
**LAWRENCE V. OTWAY,** a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway,
Individually

_____
**EUGENIE OTWAY,**
Individually

**SCHIEB'S PLACE, INC.**

By: _____
    Name: Lawrence V Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
    Title: President and sole shareholder

**EXHIBITION OF THE AMERICAN GANGSTER, INC.**

By _____
    Name: Lawrence V Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
    Title: President and sole shareholder

**THEATER 80 LLC**

By: _____
    Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
    Title: Manager and Sole Member

**ST. MARK'S MIXED USE LLC**

By: _____
    Name:
    Title:

573231-1

Executed as of the date set forth above:

## 78-80 ST. MARKS PLACE, LLC

By: _____

    Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
    Title: Manager and Sole Member

_____

**LAWRENCE V. OTWAY**, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway,
Individually

_____

**EUGENIE OTWAY**,
Individually

## SCHIEB'S PLACE, INC.

By: _____

    Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
    Title: President and sole shareholder

## EXHIBITION OF THE AMERICAN GANGSTER, INC.

By: _____

    Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
    Title: President and sole shareholder

## THEATER 80 LLC

By: _____

    Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
    Title: Manager and Sole Member

## ST. MARK'S MIXED USE LLC

By: _____

    Name: Jason Leibowitz
    Title: Manager

573231-1

State of New York    )
                     )ss.:
County of New York  )

On the 14 day of JANUARY in the year 2021, before me, the undersigned, a notary public in and for said state, personally appeared Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, as Manager and sole member of 78-80 St. Marks Place, LLC, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

CARMINE J. PALERMO
Notary Public, State of New York
No. 4789339
Certified in Rockland County
Commission Expires 12 31 202

NOTARY PUBLIC

State of New York    )
                     )ss.:
County of New York  )

On the 14 day of JANUARY in the year 2021, before me, the undersigned, a notary public in and for said state, personally appeared Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his individual capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

CARMINE J. PALERMO
Notary Public, State of New York
No. 4769339
Certified in Rockland County
Commission Expires

NOTARY PUBLIC

State of New York    )
                     )ss.:
County of New York  )

On the 14 day of JANUARY in the year 2021, before me, the undersigned, a notary public in and for said state, personally appeared Eugenie Otway, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her individual capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

CARMINE J. PALERMO
Notary Public, State of New York
No. 4769339
Certified in Rockland County
Commission Expires

CARMINE J. PALERMO
Notary Public, State of New York
No. 4769339
2. Certified in Rockland County
Commission Expires

NOTARY PUBLIC

27

573231-1

State of New York      )
                       )ss.:
County of New York     )

On the 14 day of January in the year 2021, before me, the undersigned, a notary public in and for said state, personally appeared Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, as president of Scheib's Place, Inc., and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

CARMINE J. PALERMO
Notary Public, State of New York
No. 4769389
Certified in Rockland County
Commission Expires 12/31/2022

_____
NOTARY PUBLIC

State of New York      )
                       )ss.:
County of New York     )

On the 14 day of January in the year 2021, before me, the undersigned, a notary public in and for said state, personally appeared Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, as president of Exhibition of the American Gangster, Inc., and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

CARMINE J. PALERMO
Notary Public, State of New York
No. 4769389
Certified in Rockland County
Commission Expires 12/31/2022

_____
NOTARY PUBLIC

State of New York      )
                       )ss.:
County of New York     )

On the 14 day of January in the year 2021, before me, the undersigned, a notary public in and for said state, personally appeared Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, as Manager and sole member of Theater 80 LLC, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

CARMINE J. PALERMO
Notary Public, State of New York
No. 4769389
Certified in Rockland County
Commission Expires 12/31/2022

_____
NOTARY PUBLIC

28

573231-1

## EXHIBIT A

Form of Foreclosure Complaint

573231-1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------x

ST. MARK'S MIXED USE LLC,

<table>
<tr><td></td><td></td></tr>
</table>

|  |  |
|---|---|
| Plaintiff, | Index #: |
| -against- | Date Purchased: |
| 78-80 ST. MARKS PLACE, LLC, LAWRENCE V. OTWAY A/K/A LAWRENCE LORCAN OTWAY A/K/A LORCAN OTWAY, SCHEIB'S PLACE, INC., EXHIBITION OF THE AMERICAN GANGSTER INC., THEATRE 80, LLC, FOXFACE SANDWICH SHOP, ORI KUSHNIR, SIVAN LAHAT, AYA IKEDA, MEETING SPACE, EUGENIE OTWAY, and "JOHN DOE #1 through JOHN DOE #12", the last twelve names being fictitious and unknown to Plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest upon the premises described in the Complaint, | Plaintiff designates New York county as the place of trial |
|  | **SUMMONS** |
|  | The basis of the venue is the location of the mortgaged premises. |
|  | Plaintiff's place of business is: 100 Park Avenue, Suite 2805 New York, NY 10017 |
| Defendants. | |

------------------------------------------------------------------------x

## TO THE ABOVE-NAMED DEFENDANTS:

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of

your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the

plaintiff's attorneys within 20 days after the service of this summons, exclusive of the day of service (or

within 30 days after the service is complete if this summons is not personally delivered to you within the

State of New York); and in case of your failure to appear or answer, judgment will be taken against you by

default for the relief demanded in the complaint.

**PLEASE TAKE NOTICE**, that this is an action to foreclose a Mortgage and Security Agreement

dated as of November 12, 2019 in the original principal amount of Six Million One Hundred Thousand

Dollars and 00/100 ($6,100,000.00) Dollars, upon real property known as **78-80 St. Marks Place, New**

**York, New York 10003 (Block: 449, Lot: 28)** in New York County. This is a commercial foreclosure

action. The object of this action is to obtain a judgment of foreclosure and sale.

## THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED IN CONNECTION THEREWITH.

Dated:   New York, New York
    January __, 2021

KATSKY KORINS LLP

By: _____

Robert A. Abrams, Esq.
Steven H. Newman, Esq.
605 Third Avenue
New York, New York 10156
(212) 953-6000

*Attorneys for Plaintiff*
*St. Mark's Mixed Use LLC*

TO:   78-80 St. Marks Place LLC
    78-80 St. Marks Place
    New York, New York 10003

Lawrence V. Otway a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
78-80 St. Marks Place
New York, New York 10003

Scheib's Place, Inc.
80 St. Marks Place
New York, New York 10003

Exhibition of the American Gangster Inc.
80 St. Marks Place
New York, New York 10003

Theatre 80, LLC
80 St. Marks Place
New York, New York 10003

Foxface Sandwich Shop
78-80 St. Marks Place
New York, New York 10003

Ori Kushnir
78-80 St. Marks Place
New York, New York 10003
Sivan Lahat
78-80 St. Marks Place
New York, New York 10003

Aya Ikeda
78-80 St. Marks Place
New York, New York 10003

Meeting Space
80 St. Marks Place
New York, New York 10003

Eugenie Otway
80 St. Marks Place
New York, New York 10003

<u>All tenants at the Property</u>:
"John Doe #1 through John Doe # 12"
78-80 St. Marks Place
New York, New York 10003
**(Block: 449, Lot: 28)**

3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------x

ST. MARK'S MIXED USE LLC,

                             Plaintiff,

          -against-

78-80 ST. MARKS PLACE, LLC, LAWRENCE V.
OTWAY A/K/A LAWRENCE LORCAN OTWAY A/K/A
LORCAN OTWAY, SCHEIB'S PLACE, INC.,
EXHIBITION OF THE AMERICAN GANGSTER INC.,
THEATRE 80, LLC, FOXFACE SANDWICH SHOP, ORI
KUSHNIR, SIVAN LAHAT, AYA IKEDA, MEETING
SPACE, EUGENIE OTWAY, and "JOHN DOE #1 through
JOHN DOE #12", the last twelve names being fictitious and
unknown to Plaintiff, the persons or parties intended being
the tenants, occupants, persons or corporations, if any,
having or claiming an interest upon the premises described in
the Complaint,

                           Defendants.
-------------------------------------------------------------------------x

Index No.

Date Filed:

**VERIFIED COMPLAINT
IN A FORECLOSURE
ACTION**

     Plaintiff St. Mark's Mixed Use LLC (the "**Plaintiff**" or "**Lender**"), by its attorneys

Katsky Korins LLP, as and for its verified complaint in this action, respectfully alleges as

follows:

## NATURE OF THE ACTION

     1.     This is an action brought pursuant to New York Real Property Actions and

Proceedings Law Sections 1301 *et seq.* to foreclose a certain commercial real estate

mortgage encumbering real property in the borough of Manhattan known as 78-80 St. Marks

Place, New York, New York 10003 (Block: 449, Lot: 28), and more particularly described

in Schedule A annexed hereto and made a part hereof. The "**Mortgaged Premises,**" as that

term is used in this Verified Complaint in a Foreclosure Action (the "**Complaint**"), refers to

real property as aforesaid property and any buildings, improvements, fixtures, machinery,

                         1

equipment, personality and other rights and interests of any kind or nature which are the subject of the mortgage described in this Complaint.

2.      The underlying Loan (as defined below) was borrowed by 78-80 St. Marks Place, LLC (the "**Borrower**").

3.      The Loan matured by its terms on December 1, 2020 (the "**Maturity Date**").

4.      Despite maturity of the Loan and due demand, the Borrower and guarantor Lawrence V. Otway a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway (the "**Guarantor**") have failed to pay their obligations under the Loan Documents (as defined below).

5.      The Borrower's failure to pay the Loan in full at maturity has necessitated this foreclosure action.

## THE PARTIES

6.      The Plaintiff is a New York limited liability company, has its principal place of business at 100 Park Avenue, Suite 2805, New York, New York 10017, and is authorized to conduct business in the State of New York.

7.      The Borrower is a domestic limited liability company and Borrower's principal place of business is located at 78-80 St. Marks Place, New York, New York 10003.

8.      The Guarantor is an individual and Guarantor's primary place of residence is located at 78-80 St. Marks Place, New York, New York 10003. Guarantor is made a party defendant by virtue of his Guaranty (as defined below), pursuant to which he guaranteed payment of the obligations due under the Note (as defined below) and the Mortgage (as defined below), as more fully set forth in the Guaranty. Guarantor is also made a party defendant for the purpose of extinguishing any interests that Guarantor may have in the Mortgaged Premises, which interests are subject to and subordinate to the lien of the

Plaintiff under the Mortgage and the other Loan Documents (as defined below).

9.    Upon information and belief, Scheib's Place, Inc. ("**Scheib's**") is a domestic business corporation with a principal place of business at 80 St. Marks Place, New York, New York 10003.

10.    Upon information and belief, Exhibition of the American Gangster Inc. (the "**Exhibition**") is a domestic business corporation with a principal place of business at 80 St. Marks Place, New York, New York 10003.

11.    Upon information and belief, Theatre 80 LLC (the "**Theatre 80**") is a domestic limited liability company with a principal place of business at 80 St. Marks Place, New York, New York 10003.

12.    Upon information and belief, Foxface Sandwich Shop ("**Foxface**") is an unincorporated entity with a principal place of business at 80 St. Marks Place, New York, New York 10003.

13.    Upon information and belief, Ori Kushnir, Sivan Lahat, and Aya Ikeda are individuals having an address at 78-80 St. Marks Place, New York, New York 10003, and each individual may have possessory interests in the Mortgaged Premises.

14.    Upon information and belief, Meeting Space ("**Meeting Space**") is an unincorporated entity having its principal place of business at 80 St. Marks Place, New York, New York 10003.

15.    Upon information and belief, Eugenie Otway is an individual having an address at 80 St. Marks Place, New York, New York 10003.

16.    The interests of Scheib's, Exhibition, Theatre 80, Foxface, Ori Kushnir, Sivan Lahat, Aya Ikeda, Meeting Space, and Eugenie Otway in the Mortgaged Premises are

3

subject to and subordinate to the lien of the Plaintiff under the Mortgage and the other Loan Documents.

17.     Upon information and belief, the "John Doe" defendants constitute persons and entities who may be in possession of, or who may have possessory liens or other interests in the Mortgaged Premises, which possessory liens or other interests, if any, are subordinate to and subject to the mortgage being foreclosed herein. Said defendants are named as party-defendants hereto for the purpose of terminating their interests.

### AS AND FOR A FIRST CAUSE OF ACTION

18.     On or about November 12, 2019, the Borrower borrowed the principal sum of six million one hundred thousand and 00/100 dollars ($6,100,000.00) from 80 St. Marks Place Funding LLC (the "**Funding LLC**"), which loan is evidenced by a Promissory Note, dated as of November 12, 2019 (the "**Note**"), which Note was duly executed and delivered by Borrower to Funding LLC. A true and correct copy of Note is annexed hereto as **Exhibit 1**.

19.     In order to secure its obligations under the Note, the Borrower, as mortgagor, duly executed, acknowledged and delivered to Funding LLC, as mortgagee, a Mortgage and Security Agreement, dated as of November 12, 2019 (the "**Mortgage**"), which Mortgage encumbers the Mortgaged Premises. A true and correct copy of the Mortgage is annexed hereto as **Exhibit 2**. The Mortgage was duly recorded in the Office of City Register of the City of New York, New York County (the "**Register's Office**") on November 22, 2019 at CRFN: 2019000383130. Any applicable recording tax was duly paid at the time the Mortgage was recorded.

20.     In order to further secure its obligations under the Note and Mortgage, the

Borrower duly executed, acknowledged and delivered to Funding LLC an Assignment of
Leases and Rents, dated as of November 12, 2019 (the "**ALR**"), which ALR was duly
recorded with the City Register on December 4, 2019 under CRFN: 2019000395326.

21.    In order to induce Funding LLC to make the Loan to the Borrower, the
Guarantor duly executed and delivered to Funding LLC a Guaranty dated as of November
12, 2019 (the "**Guaranty**"). Pursuant to the Guaranty, the Guarantor absolutely,
unconditionally and irrevocably guaranteed to Funding LLC the payment to the Lender of all
amounts and obligations under the Note, the Mortgage and other Loan Documents when
same become when due and payable, and the due and prompt performance of all obligations,
terms, agreements and covenants under all of the Loan Documents. A true and correct copy
of the Guaranty is annexed hereto as **Exhibit 3.**

22.    On December 1, 2020, the Note was duly indorsed by Funding LLC to the
Plaintiff pursuant to, among other things, an Allonge to Promissory Note, dated December 1,
2020 (the "**Allonge**"). A true and correct copy of the Allonge is firmly affixed to the Note
(*see* **Exhibit 1** hereto).

23.    On December 1, 2020, Funding LLC further assigned, among other things,
the Mortgage to the Plaintiff, as evidenced by an Assignment of Mortgage, dated as of
December 1, 2020 (the "**Mortgage Assignment**"). A true and correct copy of the Mortgage
Assignment is annexed hereto as **Exhibit 4**. The Mortgage Assignment is in the process of
being recorded with the Register's Office.

24.    On December 1, 2020, Funding LLC assigned, among other things, the ALR
to the Plaintiff, as evidenced by an Assignment of Assignment of Leases and Rents, dated as
of December 1, 2020 (the "**ALR Assignment**"). A true and correct copy of the ALR

Assignment is annexed hereto as **Exhibit 5**. The ALR Assignment is in the process of being recorded with the Register's Office.

25.    Furthermore, pursuant to an Omnibus Assignment of Loan Documents dated as of December 1, 2020 (the "**Omnibus Assignment**"), the Note, the Mortgage, the Guaranty and all of the other loan documents described therein were each duly assigned by Funding LLC to the Plaintiff. A true and correct copy of the Omnibus Assignment is annexed hereto as **Exhibit 6**.

26.    As a result of the above described assignments, the Plaintiff has possession of, and is now the owner and holder of, the Note, the Mortgage, the ALR, the Guaranty, and all of the other documents executed in connection with the Note, the Mortgage, the ALR, the Guaranty, and the Loan. The Note, the Mortgage, the ALR, the Guaranty, the Allonge, the Mortgage Assignment, the ALR Assignment, the Omnibus Assignment and all other documents evidencing, securing, or guaranteeing the Loan and/or the assignment thereof to the Lender are collectively referred to herein as the "**Loan Documents**"

## THE TERMS OF THE NOTE AND THE MORTGAGE

27.    The Note obligated the Borrower to pay to the holder of the Note, among other things, installments of interest, and the balance of the principal, interest, and all other sums due under the Loan Documents on the Maturity Date (*i.e.*, December 1, 2020).

28.    Similarly, the Mortgage provides that the Borrower shall pay all of the indebtedness evidenced by the Note at the time and in the manner as provided for in the Note.

29.    The Note provides that the "Applicable Interest Rate" is equal to ten and one quarter percent (10.25%) per annum during the initial term of the Note.

30.    The Note provides that from and after the occurrence of an "Event of Default,"

interest shall accrue on the outstanding indebtedness, and shall be payable, at a rate equal to twenty-four percent (24.00%) per annum (the "**Default Rate**").

31.     Similarly, the Mortgage provides that from and after the occurrence of an Event of Default, interest shall accrue on the outstanding indebtedness, and shall be payable at a rate equal to the Default Rate.

32.     The Note provides that except for payment of the indebtedness after acceleration, if any payment (or part thereof) is not made within five (5) days of the date when due, a late charge of six ($0.06) cents for each dollar so overdue shall become immediately due and payable (the "**Late Fee**").

33.     Similarly, the Mortgage provides that except for payment of the indebtedness after acceleration, if any payment (or part thereof) is not made within five (5) days of the date when due, the Late Fee shall become immediately due and payable.

34.     The Note further provides that should the indebtedness or any part thereof be collected at law or in equity, that Borrower agrees to pay, in addition to the principal, any late payment charge and interest due and payable, all costs of collecting or attempting to collect the indebtedness, including attorneys' fees and expenses, together with interest thereon at the Default Rate.

35.     Similarly, the Mortgage provides that if any action or proceeding is commenced by Lender to enforce, declare or adjudicate any rights or obligations under the Mortgage or the Note, Borrower agrees to pay all of the costs thereof, including, without limitation, reasonable attorneys' fees and expenses, together with interest thereon at the Default Rate.

36.     The Mortgage further provides that upon the occurrence of an Event of Default, the Plaintiff may take such actions, to the extent permitted by law, as it deems advisable to

protect and enforce its rights against the Borrower and in and to the Mortgaged Premises, including, but not limited to, applying for the appointment of a receiver of the Mortgaged Premises, without notice and without regard for the adequacy of the security for the debt and without regard for the solvency of the Borrower.

37. Pursuant to the Guaranty, the Guarantor irrevocably and unconditionally guaranteed to Lender the entire indebtedness set forth in the Note and the Mortgage, and other sums as provided therein.

## **BORROWER AND GUARANTOR DEFAULTED UNDER THE LOAN DOCUMENTS**

38. The Borrower breached and defaulted on its obligations under the Note, the Mortgage and the other Loan Documents by, among other things, and without limitation, failing and omitting to pay in full all obligations under the Loan Documents on or before the Maturity Date (*i.e.*, December 1, 2020).

39. Although not required under the Loan Documents, Lender notified the Borrower and the Guarantor by letter dated December 7, 2020 that, among other things, (i) on December 1, 2020, the Loan matured by its terms and the entirety of the indebtedness became immediately due and payable pursuant to the Note and the Mortgage, (ii) the Borrower failed to pay the entire indebtedness within five (5) days of when it became due, constituting an Event of Default under the Note and the Mortgage, and (iii) interest on the indebtedness began to accrue at the Default Rate from and after December 2, 2020.

40. As a result of, among other things, the Borrower's failure to pay all amounts due under the Loan Documents on the Maturity Date, the Loan is now immediately due and payable in full and the Plaintiff is entitled to, among other things, foreclose the Mortgage and the personalty located at the Mortgaged Premises and exercise all of its rights and remedies

under the Loan Documents.

41.     Accordingly, there is now justly due and owing to the Plaintiff upon the Note, the Mortgage, and the Guaranty, among other sums, the outstanding principal amount of $6,100,000.00, together with accrued interest at the rate specified in the Note and the Mortgage, Late Fees, interest at the Default Rate, and other costs, expenses (including, without limitation, attorneys' fees) and charges which sums, among others, are unpaid and due and owing in addition to any usual costs and allowances to which the Plaintiff may be entitled and awarded under any law or statute applicable to this action.

42.     The Loan was made to a commercial entity, was not incurred for personal, family or household purposes, and the Borrower does not reside at the Mortgaged Premises. As a result, the Borrower is not entitled to a 90-day notice and is not entitled to the settlement conference required under C.P.L.R. § 3408.

43.     Upon information and belief, all of the defendants named in this action have, or claim to have, some claim to an interest in or lien upon the Mortgaged Premises or some part thereof, which claim, interest or lien, if any, is subject and subordinate to the lien of the Plaintiff. Conversely, upon information and belief, no persons or entities other than those described herein have, may have, or claim to have, any interest in and lien upon the Mortgaged Premises.

44.     In the event that the Plaintiff possesses any other lien(s) against the Mortgaged Premises either by way of judgment, junior mortgage or otherwise, the Plaintiff requests that such other lien(s) shall not be merged in the Plaintiff's cause(s) of action set forth in this Complaint, but that the Plaintiff shall be permitted to enforce said other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including,

without limitation, any surplus money proceedings.

45.     No other action or proceeding is now pending to recover the sum secured by the
Mortgages or any part thereof.

46.     The Plaintiff shall not be deemed to have waived any default or event of default
not specified herein, nor to have waived, altered, released or changed the election hereinbefore
made by reason of any payment made after the Maturity Date, or by reason of any cure or
remedy, or attempted cure or remedy, of any or all of the defaults or events of defaults named
herein, and such election shall continue and remain effective.

47.     In order to protect its security, the Plaintiff may be compelled to pay during the
pendency of this action local real estate taxes, assessments, water rates, insurance premiums
and other charges affecting the Mortgaged Premises (in addition to advances already paid by
the Plaintiff) and the Plaintiff requests that any sums thus paid by it for said purposes (together
with interest thereon) be added to the sum otherwise due and be deemed secured by the
Mortgage and be adjudged a valid lien on the Mortgaged Premises.

48.     The Plaintiff requests that in the event that this action will proceed to judgment
of foreclosure and sale, the Mortgaged Premises should be sold subject to the following:

> (a)   Any state of facts that an inspection of the Mortgaged Premises
> would disclose.
>
> (b)   Any state of facts that an accurate survey of the Mortgaged
> Premises would show.
>
> (c)   Covenants, restrictions, easements and public utility agreements
> of record, if any.
>
> (d)   Building and zoning ordinances of the municipality in which the
> Mortgaged Premises is located and possible violations of same.
>
> (e)   Any rights of tenants or persons in possession of the subject
> Mortgaged Premises.
>
> (f)   Any equity of redemption of the United States of America to
> redeem the Mortgaged Premises within 120 days from date of
> sale.

(g) Prior mortgage liens of record held by and any advances and arrears thereunder.

(h) Prior lien(s) of record, if any.

## AS AND FOR A SECOND CAUSE OF ACTION

49. The Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the paragraphs above.

50. Guarantor executed the Guaranty dated as of November 12, 2019 as additional security for the repayment of the sums due under the Note. Pursuant to the Guaranty, the Guarantor guaranteed repayment of the Loan upon the occurrence of one or more events set forth therein. A copy of the Guaranty is annexed hereto as **Exhibit 3**.

51. Borrower has failed to pay all amounts due and owing to the Plaintiff under the Note and Mortgage, including, without limitation, Borrower's failure to pay to Lender all amounts due on the Maturity Date, thereby triggering liability of the Guarantor for all obligations under the Note, the Mortgage and the other Loan Documents.

52. By reason of the foregoing, the Plaintiff reserves the right to seek a deficiency judgment against the Guarantor pursuant to Real Property Actions and Proceedings Law § 1371 to the extent of the liability under the Guaranty, as applicable, upon the completion the foreclosure sale of the Mortgaged Premises.

**WHEREFORE**, the Plaintiff demands judgment that:

1. The defendants, or any of them, and all persons claiming by, through or under all or any of them, and every person or entity whose right, title, conveyance or encumbrance is recorded subsequent to the filing of the notice of pendency with respect to this matter in the Register's Office, be barred and forever foreclosed of all right, title, interest, claim, lien and equity of redemption in and to the Mortgaged Premises, and in and to the fixtures and articles of

personalty upon which the Mortgage is a lien attached to or used in connection with said premises;

    2.    Each of the Mortgaged Premises be decreed to be sold as one parcel, pursuant to law, including the buildings, improvements, fixtures, articles of personalty and other interests constituting the Mortgaged Premises described in this Complaint, and that the monies arising from such sale be brought into Court;

    3.    The Plaintiff be paid the amounts due upon the Note and the Mortgage with interest thereon to the time of such payment, together with the expenses of the sale, the costs, allowances and disbursements of this action, the Plaintiff's attorneys' fees and expenses, late fees and other charges, any monies advanced or paid to protect the liens of the Plaintiff's Mortgage, and the taxes, assessments, water charges and sewer rents, premiums for insurance, repairs to the premises and all other charges which may have been made by the Plaintiff to protect the security afforded by the Mortgage and the liens thereon to be paid, with interest upon said amounts from the dates of the respective payments and advances thereof, so far as the amounts of such monies properly applicable thereto will pay the same;

    4.    The referee (or other officer) making such sale be directed to pay from the proceeds thereof all taxes, assessments, water rates, sewer rents and other charges which are liens on the property sold;

    5.    Defendants 78-80 St. Marks Place LLC and Lawrence V. Otway a/k/a Lorcan Otway, and/or their respective estates, legal representatives, heirs, successors and assigns, jointly and severally, in accordance with the Note, the Mortgage, the Guaranty, and related Loan Documents, pay to the Plaintiff the amount of any deficiency which may remain, or so much thereof as the Court may determine to be just and equitable, of the debt remaining unsatisfied

after a sale of the Mortgaged Premises and the application of the proceeds pursuant to the directions contained in such judgment, the amount thereof to be determined by the Court, as provided in Section 1371 of the Real Property Actions and Proceedings Law;

6.     In the event that the Plaintiff possesses any other liens against the Mortgaged Premises either by way of judgment, junior mortgage or otherwise, such liens shall not be merged in the Plaintiff's causes of action set forth in this Complaint, but that the Plaintiff shall be permitted to enforce said other liens and/or seek determination of priority thereof in any independent action or proceeding, including, without limitation, any surplus money proceedings;

7.     The purchaser or purchasers at sale be let into possession on production or delivery of a referee's deed or deeds; and

8.     The Plaintiff have such other and further relief as may be just and equitable.

Dated: New York, New York
     January __, 2021

KATSKY KORINS LLP

By: _____

Robert A. Abrams, Esq.
Steven H. Newman, Esq.
605 Third Avenue
New York, New York 10156
(212) 953-6000

*Attorneys for Plaintiff*
*St. Mark's Mixed Use LLC*

**SCHEDULE A**

## ATTORNEY CERTIFICATION PURSUANT

### TO

### 22 NYCRR 130-1.1a

Pursuant to 22 NYCRR 130-1.1a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that upon information and belief, and after reasonable inquiry, the contentions contained in the annexed document(s) are not frivolous.

Dated: January __, 2021

_____

Robert A. Abrams, Esq.

## VERIFICATION

STATE OF NEW YORK    )
                   )ss.:
COUNTY OF SUFFOLK )

**JASON LEIBOWITZ**, being duly sworn, deposes and says that he is a Manager of St.

Mark's Mixed Use LLC, the Plaintiff in this action, that he is physically situated in the State of

New York, that he has read the foregoing Complaint and knows the contents thereof, and that the

same is true to his knowledge.

_____

**JASON LEIBOWITZ**

Sworn to before me on this
_____day of January 2021

_____
Notary Public

16

## EXHIBIT B

Form of Consent Judgment of Foreclosure and Sale

At IAS Part ___ of the Supreme
Court of the State of New York, held
in and for the County of New York,
at the County Courthouse at 60
Centre Street, New York New York
on the __ day of _____, 2021

P R E S E N T:

     HONORABLE _____,

                  Justice.

------------------------------------------------------------------------X

ST. MARK'S MIXED USE LLC,

                 Plaintiff,

     -against-

78-80 ST. MARKS PLACE, LLC, LAWRENCE V.
OTWAY A/K/A LAWRENCE LORCAN OTWAY
A/K/A LORCAN OTWAY, SCHEIB'S PLACE, INC.,
EXHIBITION OF THE AMERICAN GANGSTER INC.,
THEATRE 80, LLC, FOXFACE SANDWICH SHOP,
ORI KUSHNIR, SIVAN LAHAT, AYA IKEDA,
MEETING SPACE, EUGENIE OTWAY, and "JOHN
DOE #1 through JOHN DOE #12", the last twelve names
being fictitious and unknown to Plaintiff, the persons or
parties intended being the tenants, occupants, persons or
corporations, if any, having or claiming an interest upon
the premises described in the Complaint,

                 Defendants.

------------------------------------------------------------------------X

Index No.

**CONSENT JUDGMENT OF
FORECLOSURE AND SALE**

**78-80 St. Marks Place
New York, New York 10003
County: New York
Block: 449
Lot: 28**

Upon the Summons, Verified Complaint in this action (the "**Complaint**"), and the Notice

of Pendency duly filed in New York County in this action on January ___, 2021 by plaintiff St.

Mark's Mixed Use LLC ("**Plaintiff**"), the Notice of Motion dated _____ __, 2021, the

Affidavit of Jason Leibowitz, duly sworn to on _____ __, 2021 (the "**Leibowitz Affidavit**"), a

Manager of Plaintiff, together with the exhibits annexed thereto, including that certain

573229-1

Forbearance Agreement, dated as of January ____, 2021 (the "**Agreement**"), all in support of

Plaintiff's motion for a Judgment of Foreclosure and Sale; and upon proof that each of the

defendants herein has been duly served with the Summons and Verified Complaint in this action,

and has voluntarily appeared either personally or by an attorney  [-OR- has not served any

answer to the Complaint or otherwise appeared, nor had their time to do so extended; and it

appearing that more than the legally required number of days has elapsed since defendants [*List*

*Defaulting Defendants*] were so served and/or appeared]; and that the Complaint herein

containing all the particulars required to be stated therein was duly filed in the Office of the

Clerk of the County of New York _____, 2021, and has not been amended to add new

parties or to embrace real property not described in the original complaint, and defendant

borrower 78-80 St. Marks Place, LLC ("**Borrower**") and defendant guarantor Mr. Lawrence V.

Otway a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway ("**Guarantor**") and defendants

Scheib's Place, Inc., Exhibition Of The American Gangster Inc., Theatre 80, LLC, Meeting

Space, Mrs. Eugenie Otway having consented to the issuance and entry of this Consent Judgment

of Foreclosure and Sale and the amounts due and owing by the Borrower and the Guarantor

pursuant to the "**Note**" (as defined in the Complaint) and "**Mortgage**" (as defined in the

Complaint) which are the subject of this action and consented to the sale of the "**Mortgaged**

**Premises**" (as defined in the Complaint) in one parcel, all as set forth in that Agreement and

upon proof of due notice of this motion upon all parties entitled to receive same, and upon all the

prior proceedings and papers filed herein;

     **NOW**, on motion of Katsky Korins LLP, attorneys for the Plaintiff herein, it is hereby

     **ORDERED, ADJUDGED AND DECREED** that the motion is granted; and it is further

**ORDERED, ADJUGED AND DECREED**, that the caption of this action is hereby amended as follows:

-----------------------------------------------------------------------X

ST. MARK'S MIXED USE LLC,

                         Plaintiff,               Index No.

        -against-

78-80 ST. MARKS PLACE, LLC, LAWRENCE V.
OTWAY A/K/A LAWRENCE LORCAN OTWAY
A/K/A LORCAN OTWAY, SCHEIB'S PLACE, INC.,
EXHIBITION OF THE AMERICAN GANGSTER INC.,
THEATRE 80, LLC, FOXFACE SANDWICH SHOP,
ORI KUSHNIR, SIVAN LAHAT, AYA IKEDA,
MEETING SPACE, and EUGENIE OTWAY,

                       Defendants.

-----------------------------------------------------------------------X

ORDERED, ADJUDGED AND DECREED, that the Mortgaged Premises described in the Complaint in this action, and hereinafter described, or such part thereof as may be sufficient to discharge the mortgage debt under the Note and Mortgage, the expenses of sale and the costs of this action as provided by the Real Property Actions and Proceedings Law be sold, in one parcel, at public auction at the Supreme Court of the State of New York for New York County, located at _____, New York, New York, and conducted by and under the direction of _____, Fiduciary # _____, who is hereby appointed Referee for that purpose; that said Referee give public notice of the time and place of such sale in accordance with law, practice of this Court and RPAPL § 231 in the _____ and that the Plaintiff or any other parties to this action may become the purchaser or purchasers at the said sale; that in case the Plaintiff shall become the purchaser at the said sale, it shall not be

-3-

required to make any deposit thereon; that said Referee execute to the purchaser or purchasers on such sale a deed of the Mortgaged Premises sold; that in the event a party other than the Plaintiff becomes the purchaser or purchasers at such sale, it shall be required to tender a deposit of 10% of the purchase price in certified funds and the closing of title shall be had thirty days after such sale unless otherwise stipulated by all parties to the sale and the proceeds are to be paid to Plaintiff's counsel by the successful bidder via wire transfer or bank check drawn on a member of the New York Clearinghouse; and it is further

ORDERED, ADJUDGED AND DECREED, that said Referee, upon receiving the proceeds of the sale, shall forthwith pay therefrom, in accordance with their priority according to law, the taxes, assessments, sewer rents or water rates which are or may become liens on the Mortgaged Premises at the time of sale with such interest or penalties which may have lawfully accrued thereon to the date of payment; and it is further

ORDERED, ADJUDGED AND DECREED, that a third party purchaser other than Plaintiff shall be responsible for all common charges, real estate taxes, water charges, and assessments accruing from the time of the sale until closing of title. A third party purchaser shall also be responsible for all expenses of recording the Referee's deed, including real property, transfer taxes and stamps on the sale; and it is further

ORDERED, ADJUDGED AND DECREED, that said Referee shall deposit the balance of said proceeds of sale in his/her own name as Referee in _____ and shall thereafter make the following payments and his/her checks drawn for that purpose shall be paid by said depository for:

FIRST: The statutory fees of the Referee appointed to conduct the sale in the sum of $750.00.

SECOND: The expenses of sale and the advertising expenses as shown on the bills presented and certified by said Referee to be correct, duplicate copies of which shall be annexed to the report of sale.

THIRD: Said Referee shall also pay to the Plaintiff, or Plaintiff's attorney, the sum of $_____ to be determined by the Clerk and adjudged to the Plaintiff for costs and disbursements in this action to be taxed by the Clerk and inserted herein; together with an additional allowance pursuant to CPLR§ 8303(a)(1) of $_____ hereby awarded to the Plaintiff in addition to costs; and also the sum of $_____ the said amount so consented due as aforesaid, together with interest at the per diem rate of $___ per day  from [Insert date through which the amount above was calculated] until the date of transfer of the referee's deed, or so much thereof as the purchase money of the Mortgaged Premises will pay of the same, together with any advances necessarily paid by the Plaintiff for taxes, fire insurance, principal and interest to prior mortgages to preserve and or maintain the Mortgaged Premises not previously included in any computations, upon presentation of receipts for said expenditures to the Referee, together with any attorneys' fees and expenses incurred by the Plaintiff on and after December 18, 2020,  together with all advances as provided for in the Note and Mortgage, which Plaintiff has made for taxes, insurance, principal and interest and any other charges due to prior mortgages, or to maintain the Mortgaged Premises pending consummation of this foreclosure sale, not previously included in the computation and upon presentation of receipts for said expenditures to the Referee, all together with interest thereon at the rate set forth in the Note and Mortgage until the date of the transfer of the referee's deed.

FOURTH: If such Referee intends to apply for a further allowance for his/her fees, he/she may leave upon deposit such amount as will cover such additional allowance, to await the further

-5-

573229-1

order of this Court thereon after application duly made upon due notice to those parties entitled thereof.

ORDERED, ADJUDGED AND DECREED, that in case the Plaintiff be the purchaser of said Mortgaged Premises at said sale, or in the event that the rights of the purchasers at said sale and the terms of sale under this judgment shall be assigned to and be acquired by the Plaintiff, and a valid assignment thereof filed with said Referee, said Referee shall not require the Plaintiff to pay in cash the entire amount bid at said sale, but shall execute and deliver to the Plaintiff, or it's assignee, a deed or deeds of the Mortgaged Premises sold upon the payment to said Referee of the amount specified above in items marked "FIRST" and "SECOND" and the amounts of the aforesaid taxes, assessments, sewer rents and water rates, with interest and penalties thereon, or, in lieu of the payment of said last mentioned amounts, upon filing with said Referee receipts of the proper municipal authorities showing payment thereof; that the balance of the amount bid, after deducting therefrom the aforesaid amounts paid by the Plaintiff for Referee's fees, advertising expenses, taxes, assessments, sewer rents and water rates shall be allowed to the Plaintiff and applied by said Referee upon the amounts due to the Plaintiff as specified in item marked "THIRD"; that if after so applying the balance of the amount bid, there shall be a surplus over and above the said amounts due to the Plaintiff, the Plaintiff shall pay to the said Referee, upon delivery to Plaintiff of said Referee's deed, the amount of such surplus; that said Referee, upon receiving said several amounts from the Plaintiff, shall forthwith pay therefrom said taxes, assessments, sewer rents and water rates, with interest and penalties thereon, unless the same have already been paid, and shall then deposit the balance.

ORDERED, ADJUDGED AND DECREED, the said Referee shall take the receipt of the Plaintiff, or the attorneys for the Plaintiff, for the amounts paid as directed in item "THIRD"

-6-

above, and file it with his/her report of sale; that he/she deposit the surplus monies, if any, with the New York County Treasurer within five days after the same shall be received and be ascertainable, to the credit of this action, to be withdrawn only on a written order of this Court, signed by a Justice of this Court. The Referee shall make his/her report of such sale under oath showing the disposition of the proceeds of the sale and accompanied by the vouchers of the persons to whom payments were made, and shall file it with the New York County Clerk within thirty days after completing the sale and executing the proper conveyance to the purchaser and that if the proceeds of such sale be insufficient to pay the amount reported due to the Plaintiff with interest and costs as aforesaid, the said Referee shall specify the amount of such deficiency in his/her report of sale; that the Plaintiff may recover from 78-80 St. Marks Place, LLC and Lawrence V. Otway a/k/a Lorcan Otway, jointly and severally, the whole deficiency or so much thereof as this Court may determine to be just and equitable of the residue of the mortgage debt remaining unsatisfied after a sale of the Mortgaged Premises and the application of the proceeds thereof, provided a motion for a deficiency judgment shall be made as prescribed by Section 1371 of the Real Property Actions and Proceedings Law within the time limited therein, and the amount thereof is determined and awarded by an order of this Court as provided for in said section; and it is further

ORDERED, ADJUDGED AND DECREED, that the purchaser or purchasers at said sale be let into possession on production or delivery of the Referee's deed or deeds; and it is further

ORDERED, ADJUDGED AND DECREED, that each and all of the defendants in this action and all persons claiming under them, or any or either of them, after the filing of such Notice of Pendency of this action, be and they are hereby forever barred and foreclosed of all

-7-

right, claim, lien, title, interest, and equity of redemption in said Mortgaged Premises and each and every part thereof; and it is further

ORDERED, ADJUDGED AND DECREED, that said Mortgaged Premises is to be sold in one parcel in "as is" physical order and condition, subject to any state of facts that an inspection of the Mortgaged Premises would disclose; any state of facts that an accurate survey of the Mortgaged Premises would show; any covenants, restrictions, declarations, reservations, easements, rights of way and public utility agreements of record, if any; any building and zoning ordinances of the municipality in which the Mortgaged Premises is located and possible violations of same; any rights of tenants or persons in possession of the subject Mortgaged Premises; prior, liens of record, if any, except those liens addressed in Section 1354 of the Real Property Actions and Proceedings Law; any equity of redemption of the UNITED STATES OF AMERICA to redeem the Mortgaged Premises within 120 days from the date of sale; and it is further

ORDERED, ADJUDGED AND DECREED, that the Referee is prohibited from accepting or retaining any funds for him/herself or paying funds to him/herself without compliance with Part 36 of the Rules of the Chief Administrative Judge; and it is further

ORDERED, ADJUDGED AND DECREED, that by accepting appointment the Referee certifies that he/she is in compliance with Part 36 of the Rules of the Chief Judge (22 NYCRR Part 36), including, but not limited to section 36.2 (c) ("Disqualifications from appointment"), and section 36.2(d) ("Limitations on appointments based upon compensation"); and it is further

573229-1

ORDERED, ADJUDGED AND DECREED, that the Referee appointed to sell herein be served with a signed copy of this Judgment of Foreclosure and Sale with notice of entry; and it is further

ORDERED, ADJUDGED AND DECREED, that, pursuant to CPLR 8003(b), absent application to the court, further court order, and compliance with Part 36 of the Rules of the Chief Judge, the Referee shall not demand or accept or receive more than the amount of $750.00, otherwise payable to the Referee for the foreclosure sale stage, regardless of adjournment, delay or stay of the sale, and it is further

ORDERED, ADJUDGED AND DECREED, that a copy of this Judgment with Notice of Entry shall be served upon the owner of the equity of redemption, any tenants named in this action and any other party entitled to notice.

Said Mortgaged Premises is commonly known as 78-80 St. Marks Place, New York, New York 10003 (County: New York; Block: 449; Lot 28). A description of said Mortgaged Premises is annexed hereto and make a part hereof as Schedule A.

ENTER,

_____
J.S.C.

**SCHEDULE A**
**DESCRIPTION**

573229-1

# EXHIBIT C

Form of Stipulation

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------------- x

ST. MARK'S MIXED USE LLC,

                                        Plaintiff,                          Index #:

                    -against-                                               **STIPULATION**

78-80 ST. MARKS PLACE, LLC, LAWRENCE V.
OTWAY A/K/A LAWRENCE LORCAN OTWAY A/K/A
LORCAN    OTWAY,    SCHEIB'S    PLACE,    INC.,
EXHIBITION OF THE AMERICAN GANGSTER INC.,
THEATRE 80, LLC, FOXFACE SANDWICH SHOP, ORI
KUSHNIR, SIVAN LAHAT, AYA IKEDA, MEETING
SPACE, EUGENIE OTWAY and "JOHN DOE #1 through
JOHN DOE #12", the last twelve names being fictitious and
unknown to Plaintiff, the persons or parties intended being
the tenants, occupants, persons or corporations, if any,
having or claiming an interest upon the premises described in
the Complaint,

                                        Defendants.

-------------------------------------------------------------------------- x

        This Stipulation is entered into as of January __, 2021, by and among (i) (a) 78-80 St.
Marks Place, LLC, a New York limited liability company (the "**Borrower**"), and (b) Lawrence
V. Otway, a/k/a Lawrence Lorcan Otway, a/k/a Lorcan Otway, individually, whose principal
residence is located at 78-80 St. Marks Place, Apartment No. 1, New York, New York 10003
("**Guarantor**"; and together with Borrower are collectively referred to herein as the
"**Obligors**"), (ii) Eugenie Otway, individually, whose principal residence is located at 78-80 St.
Marks Place, Apartment No. 1, New York, New York 10003 ("**EO**"), (iii) Scheib's Place, Inc., a
New York corporation ("**SPI**"), (iv) Exhibition of the American Gangster, Inc., a New York
corporation ("**AGI**"), (v) Theater 80 LLC, a New York limited liability company ("**Theater
80**"), and (vi) St. Mark's Mixed Use LLC (the "**Lender**"). Each of the Obligors, EO, SPI, AGI,
Theater 80 and the Lender are sometimes referred to herein individually as a "**Party**", and the
Obligors, EO, SPI, AGI, Theater 80 and the Lender are sometimes collectively referred to herein
as the "**Parties**". Each of the Obligors, EO, SPI, AGI, and Theater 80 are sometimes referred to
herein individually as an "**Obligor Related Party**", and the Obligors, EO, SPI, AGI, and Theater
80 are sometimes collectively referred to herein as the "**Obligor Related Parties**".

        **WHEREAS**, Borrower is a New York limited liability company and is the fee owner of
the premises known as 78-80 St. Marks Place, New York, New York 10003 (Block: 449, Lot:
28) (the "**Mortgaged Premises**");

        **WHEREAS**, SPI is a New York corporation;

**WHEREAS**, AGI is a New York corporation;

**WHEREAS**, Theater 80 is a New York limited liability company;

**WHEREAS**, on or about November 12, 2019, the Borrower borrowed the principal sum of six million one hundred thousand and 00/100 dollars ($6,100,000.00) from 80 St. Marks Place Funding LLC ("**Funding LLC**"), which loan is evidenced by a Promissory Note, dated as of November 12, 2019 (the "**Note**"), which Note was duly executed by Borrower and delivered by Borrower to Funding LLC;

**WHEREAS**, in order to secure its obligations under the Note, the Borrower, as mortgagor, duly executed, acknowledged and delivered to Funding LLC, as mortgagee, a Mortgage and Security Agreement, dated as of November 12, 2019 (the "**Mortgage**"), which Mortgage encumbers the Mortgaged Premises. The Mortgage was duly recorded in the Office of City Register of the City of New York, New York County (the "**Register's Office**") on November 22, 2019 at CRFN 2019000383130. Any applicable recording tax was duly paid at the time the Mortgage was recorded. The Mortgage constitutes a valid first priority mortgage and lien on the Mortgaged Premises;

**WHEREAS**, in order to further secure its obligations under the Note and Mortgage, the Borrower duly executed, acknowledged and delivered to Funding LLC an Assignment of Leases and Rents, dated as of November 12, 2019 (the "**ALR**"), which ALR was duly recorded with the Register's Office on December 4, 2019 under CRFN: 2019000395326;

**WHEREAS**, in order to induce Funding LLC to make the Loan to the Borrower, Guarantor duly executed and delivered to Funding LLC a certain Guaranty, dated as of November 12, 2019 (the "**Guaranty**"). Pursuant to the Guaranty, the Guarantor absolutely, unconditionally and irrevocably guaranteed to Funding LLC the payment to the Lender of all amounts and obligations under the Note, the Mortgage and other Loan Documents (as defined below) when same become when due and payable, and the due and prompt performance of all obligations, terms, agreements and covenants under all of the Loan Documents;

**WHEREAS**, the Guarantor is the sole member of the Borrower and the Guarantor owns 100% of the limited liability company membership interests in the Borrower, and in order to further secure, among other things, the Borrower's obligations under the Note and the other Loan Documents, the Guarantor pledged to Funding LLC, among other things, all of his right, title and interest in, to and under his membership interests in the Borrower and the other "Collateral", as that term is defined in that certain Pledge and Security Agreement dated as of November 12, 2019 (the "**Pledge Agreement**")(the "Collateral" as defined in the Pledge Agreement is referred to herein as the "**Pledged Collateral**");

**WHEREAS**, Funding LLC perfected its security interest against the Pledged Collateral by, among other things, taking possession of the certificate of membership interests (the "**Certificated Interest**") in the Borrower pledged under the Pledge Agreement and also by duly filing a UCC-1 financing statement (the "**UCC-1**"), which adequately described the Pledged Collateral, with the New York State Department of State on December 18, 2019, designated as

2

File No. 201912180587574. The Certificated Interest and the UCC-1 constitute a valid and perfected first priority lien on the Pledged Collateral;

**WHEREAS**, on December 1, 2020, the Note was duly assigned by Funding LLC to the Lender pursuant to, among other things, an Allonge to Promissory Note, dated December 1, 2020 (the "**Allonge**");

**WHEREAS**, in addition, on December 1, 2020, Funding LLC assigned, among other things, the Mortgage to the Lender, as evidenced by an Assignment of Mortgage, dated as of December 1, 2020 (the "**Mortgage Assignment**"). The Mortgage Assignment was duly submitted for recording in the Register's Office;

**WHEREAS**, in addition, on December 1, 2020, Funding LLC assigned, among other things, the ALR to Plaintiff, as evidenced by an Assignment of Assignment of Leases and Rents, dated as of December 1, 2020 (the "**ALR Assignment**"). The ALR Assignment was duly submitted for recording in the Register's Office;

**WHEREAS**, in addition, Funding LLC assigned, among other things, the UCC-1 to Plaintiff, as evidenced by a UCC Financing Statement Amendment (the "**UCC-3**");

**WHEREAS**, in addition, pursuant to an Omnibus Assignment of Loan Documents dated as of December 1, 2020 (the "**Omnibus Assignment**"), the Note, the Mortgage, the Guaranty, the Pledge Agreement, the ALR, the Certificated Interest, the UCC-1 and all of the other Loan Documents were each duly assigned by Funding LLC to the Lender. The Note, the Mortgage, the ALR, the Guaranty, the Pledge Agreement, the Allonge, the Mortgage Assignment, the ALR Assignment, the Certificated Interest, the UCC-1, the UCC-3, the Omnibus Assignment and all other documents evidencing, securing, or guaranteeing the Loan and/or the assignment thereof to the Lender are collectively referred to herein as the "**Loan Documents**";

**WHEREAS**, pursuant to the Allonge, the Mortgage Assignment, the ALR Assignment, the UCC-3 and the Omnibus Assignment, the Lender is the current holder and owner of the Loan and all of the Loan Documents, and the Lender has standing to enforce the Note, the Pledge Agreement, and other Loan Documents;

**WHEREAS**, pursuant to the Note the Borrower is obligated to pay to the holder of the Note, among other things, installments of interest, and the balance of the principal, interest, and all other sums due under the Loan Documents on December 1, 2020 (the "**Maturity Date**");

**WHEREAS**, the Mortgage provides that the Borrower shall pay all of the indebtedness evidenced by the Note at the time and in the manner as provided for in the Note;

**WHEREAS**, the Borrower breached and defaulted on its obligations under the Note, the Mortgage and the other Loan Documents by, among other things, and without limitation, failing and omitting to pay in full all obligations under the Loan Documents on or before the Maturity Date (*i.e.*, December 1, 2020);

**WHEREAS**, the Borrower's failure to pay the entire indebtedness within five (5) days of when it became due, constitutes an "Event of Default" as defined in the Note and the Mortgage;

3

**WHEREAS**, the Lender duly sent to the Borrower and the Guarantor a letter dated December 7, 2020, which letter duly notified the Borrower and the Guarantor, among other things, (i) that on December 1, 2020, the Loan matured by its terms and the entirety of the indebtedness became immediately due and payable pursuant to the Note and the Mortgage, (ii) that the Borrower failed to pay the entire indebtedness within five (5) days of when it became due, constituting an Event of Default under both the Note and the Mortgage, and (iii) interest on the indebtedness began to accrue at the "Default Rate" as defined in the Note and Mortgage from and after December 2, 2020;

**WHEREAS**, as a result of, among other things, the Borrower's failure to pay all amounts due under the Loan Documents on the Maturity Date, the Loan is now immediately due and payable in full and the Lender is entitled to, among other things, (i) foreclose the Mortgage and the personalty located at the Mortgaged Premises, (ii) foreclose on all collateral granted by the Guarantor to the Lender under the Pledge Agreement, including, without limitation, all of the Guarantor's limited liability company membership interests in the Borrower, and (iii) exercise all of the Lender's rights and remedies under all of the Loan Documents;

**WHEREAS**, without limiting in any manner any other existing defaults, the Obligors are now in default under the Loan Documents based upon the Borrower's failure to pay to the Lender all amounts due under the Loan Documents on the Maturity Date (the "**Stated Default**");

**WHEREAS**, any and all notice provisions contained in all of the Loan Documents have been complied with by the Lender and any applicable grace periods, if any, pertaining to Obligors' defaults occurring prior to the date of this Stipulation have expired or have been forever waived by the Obligors;

**WHEREAS**, as of December 31, 2020, there is due and owing to the Lender under the Note, the Mortgage, the Guaranty, the Pledge Agreement, and the other Loan Documents the following amounts:

| Payoff | |
|---|---|
| Principal Balance | $6,100,000.00 |
| Interest | $122,000.00 |
| Protective Advances | $0.00 |
| Legal Fees (through 12/18/20) | $23,653.65 |
| **Total Due** | **$6,245,653.65** |

Total Due: $6,245,653.65[1] as of December 31, 2020;

---

[1] Legal fees and protective advances are reflected herein only as of December 18, 2020. Additional legal fees and expenses and protective advances have accrued and continue to accrue after December_18, 2020 and such additional amounts are owed under the Loan Documents and shall be added to the Payoff Amount (as defined herein below).

4

**WHEREAS**, the Lender is currently entitled to exercise any and all of its rights and remedies under the Note, the Mortgage, the Guaranty, the Pledge Agreement, and each of the other Loan Documents; and

**WHEREAS**, on _____ __, 2021 the Lender commenced this action (this "**Action**") by, among other things, filing the complaint in this Action against the Obligor Related Parties and the other defendants named therein, to, among other things, enforce the Lenders' rights against the Obligor Related Parties and any other persons or entities, including, without limitation, to foreclose on the Mortgaged Premises (the "**Complaint**").

**NOW, THEREFORE**, in consideration of the sum of $10.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

1.      Recitals Incorporated Herein. The Parties acknowledge, represent and agree that each of the facts set forth in the recitals above are true and correct in all respects and are incorporated herein as if fully set forth in the body of this Stipulation.

2.      Existing Agreement. The Obligor Related Parties and the Lender entered into a certain Forbearance Agreement, dated as of January __, 2021, pursuant to which, among other things, the Obligor Related Parties acknowledged their defaults under the Loan Documents and amount owed to the Lender and agreed to execute and deliver this Stipulation (the "**Forbearance Agreement**"). The Obligor Related Parties hereby ratify and reaffirm the Forbearance Agreement and the provisions therein in all respects, and agree to be bound by the Forbearance Agreement.

3.      Consents and Waivers By the Obligor Related Parties. The Obligor Related Parties hereby:

(a)      Acknowledge valid service of the summons and Complaint in this action, the notice of pendency of this Action, and a notice of mandatory electronic filing, and waive, with prejudice, any and all defenses of any kind relating to, or in any way based on, (i) service or improper service of the summons and Complaint, (ii) the personal jurisdiction of this Court with respect to the Obligor Related Parties and this action; and (iii) the subject matter jurisdiction of the Court as to all matters in this action;

(b)      Admit all allegations in the Complaint and consent to all relief requested in the Complaint, and consent to the immediate entry of a judgment of foreclosure and sale in the form of Exhibit A[2] attached hereto (the "**Judgment**"), which among other things, fixes the amount owed by the Obligors and directs the foreclosure sale of the Mortgaged Premises (a "**Foreclosure Sale**").

(c)      Expressly: (i) waive any and all defenses to this Action and the Complaint and the claims asserted therein, with prejudice, including, without limitation, the defenses of

---

[2] Note: The form of the Judgment to be attached to this Stipulation upon execution hereof will be in substantially the form as the proposed judgment attached an exhibit to the Forbearance Agreement.

5

improper service, lack of jurisdiction, lacking of standing, payment, waiver, estoppel, laches, unclean hands, unconscionability, the election of remedies defense, or any claim that the Obligors are not in default under the Loan Documents or that the Note fully matured and that all obligations became due and payable on December 1, 2020; (ii) admit all allegations in the Complaint; (iii) acknowledge and re-affirm the Obligors' due execution of each of the Loan Documents; (iv) agree that none of the Obligor Related Parties shall file any answer, counterclaim, motion, order to show cause or notice of appeal, and that none of the Obligor Related Parties shall contest or delay this Action or the Judgment in any way; (v) admit and acknowledge that, as of December 31, 2020 the Payoff Amount of $6,245,563.65 is due and owing to the Lender (and that additional attorneys' fees and expenses and protective advances have accrued after December 18, 2020 and continue to accrue, and such amounts shall be added to the Payoff Amount and the amount of the Judgment) and interest thereon at the rate of 24% per annum continues to accrue and shall be added to the Payoff Amount and the amount if the Judgment; (vi) waive the appointment of a referee to compute the sums due and owing to the Lender and hereby consent to the immediate entry of the Judgment, which incorporates the amounts due and owing to the Lender and agree that the Mortgaged Premises shall be sold in one parcel; and (vii) irrevocably and unconditionally agree that the Lender may present the Judgment to the Justice assigned in this Action for signature without any further notice to the Obligor Related Parties and that the Judgment may be presented to the Clerk of Court for entry at any time in the Lender's sole discretion.

(d)    Consent to the immediate appointment of a receiver for the Mortgaged Premises and that the such receiver may be any person selected by the Lender.

(e)    Agree that each of them and their counsel shall use best efforts to timely and fully cooperate with the Lender in connection with all matters related to the sale of the Mortgaged Premises and/or the Pledged Collateral, including, without limitation, (i) providing information about the Mortgaged Premises, (ii) providing access, at all times and from time to time, to the Mortgaged Premises to the Lender, any prospective purchaser of the Mortgaged Premises and all agents and representatives of all of the foregoing, and (iii) executing all documents and performing all acts requested by the Lender in connection with or related to the sale. The Obligor Related Parties hereby each grant the Lender an irrevocable power of attorney, coupled with an interest, to take any and all acts on behalf of each Obligor Related Party in connection with the sale of the Mortgaged Premises and/or the Pledged Collateral, including, without limitation, to execute and deliver any and all documents in connection with the sale of the Mortgaged Premises and/or the Pledged Collateral (including, without limitation, an advertisement of sale, a deed, a title affidavit and transfer tax forms). Notwithstanding, the foregoing nothing herein shall require the Lender to take any act and the Lender shall have no obligation to do so. In addition, the Lender shall be fully exonerated and shall have no liability to any of the Obligor Related Parties or any other person or entity for any acts taken or not taken by the Lender in connection with the sale of the Mortgaged Premises and/or the Pledged Collateral.

4.    Interest Rate; Financial Statements. (a) Interest Rate; Payoff Amount; Financial Statements.

(a)    Interest shall continue to accrue at the default rate of 24% per annum provided in the Note from December 2, 2020 until the date that the Obligors have indefeasibly paid

6

and satisfied all of their obligations (including, without limitation, principal, interest, default rate interest, late fees, service fees, legal fees and expenses, protective advances, and all other fees and charges) under each of the Loan Documents and this Stipulation (collectively, the "**Payoff Amount**").

        (b)    The Obligors shall promptly deliver to the Lender any and all financial information that the Lender may reasonably request, including, without limitation, (i) a current rent roll for Mortgaged Premises; (ii) the operating agreement and other organizational documents of the Borrower; (iii) copies of all leases for the Mortgaged Premises; and (iv) proof of insurance of the Mortgaged Premises and Obligors.

     5.    No Reinstatement of any Loan. The Lender's acceptance of any payment (other than total indefeasible payment in cash of the Payoff Amount) made by any of the Obligor Related Parties on or after the date hereof, nor the Lender's application of any of such payments to amounts owing under the Loan Documents, shall constitute or be construed as: (a) a waiver by the Lender of (i) the Stated Default or any other breach or default by any of the Obligor Related Parties under any or all of the Loan Documents or this Stipulation, (ii) any of the Lender's rights or remedies in connection with the Loan, any of the Loan Documents or this Stipulation, or (iii) any of the provisions of the Loan Documents or this Stipulation; or (b) a cure of the Stated Default or any other breach or default by any of the Obligor Related Parties under the Loan Documents or this Stipulation.

     6.    Application of Payments. Any payments made by any of the Obligor Related Parties to the Lender on or after the date hereof may be accepted by the Lender and applied against the obligations owed under the Loan Documents in such manner as the Lender may hereafter determine from time to time, all in the Lender's sole and absolute discretion.

     7.    Representations and Warranties. In order to induce the Lender to enter into this Stipulation, each of the Obligor Related Parties hereby represents, warrants and covenants to the Lender as follows, all of which representations, warranties and covenants shall survive the execution of this Stipulation:

     7.1    Binding Obligations. The Note, the Mortgage, the ALR, the Guaranty, the Pledge Agreement, and all of the other Loan Documents, the Forbearance Agreement and this Stipulation, have been duly executed and delivered by the Obligor Related Parties (as applicable) and constitute legal, valid and binding obligations of the Obligor Related Parties (as applicable), enforceable in accordance with their respective terms.

     7.2    No Defenses or Claims. (a) The Obligor Related Parties expressly represent, warrant and acknowledge that (i) there are no defenses, offsets or counterclaims of any nature whatsoever to any of the Loan Documents or to the Lender's ownership thereof or the Lender's status as the due holder of the Note, the Mortgage, the ALR, the Guaranty, the Pledge Agreement, and the other Loan Documents or the Lender's standing to enforce all of the foregoing; (ii) the Loan Documents are hereby reaffirmed by the Obligors in their entirety; and (iii) the Loan Documents are in full force and effect and the Lender shall not be deemed to waived or modified any of its rights thereunder, at law or in equity.

(b)     None of the Obligor Related Parties has any defense, affirmative defense, setoff, claim, counterclaim, action, or cause of action of any kind or nature whatsoever against the Lender or any of its past, present, or future directors, officers, employees, agents, attorneys, legal representatives, predecessors, affiliates, successors, or assigns, directly or indirectly, arising out of, based upon, or in any manner connected with any act, transaction, event, circumstance, action, failure to act, or occurrence of any sort or type, whether known or unknown, which occurred, existed, was taken, permitted, or begun prior to the execution of this Stipulation or which occurred, existed, was taken, permitted, or begun in accordance with, pursuant to, or relating to, or by virtue of the Loan or any of the terms of any of the Loan Documents, or which directly or indirectly relates to or arises out of, or in any manner is connected with, the Loan or any or all of the Loan Documents (including, without limitation, the enforcement by the Lender or its predecessor of any of its rights and remedies under any or all of the Loan Documents); and if any such defense, affirmative defense, setoff, claim, counterclaim, action or cause of action exists without the knowledge of any of the Obligor Related Parties, the same is hereby unconditionally forever waived with prejudice as against the Lender, or any of its past, present or future directors, officers, employees, agents, attorneys, legal representatives, predecessors, affiliates, successors, or assigns.

7.3     Maturity of the Note.  Pursuant to the express terms of the Note the entire principal balance together with all other amounts payable under the Note, the Mortgage, the Guaranty, the Pledge Agreement and the other Loan Documents were immediately due and payable on December 1, 2020, and the Obligors have failed to pay such obligations as of the date hereof.

7.4     Representations in Loan Documents.    All of the representations and warranties made by each of the Obligors in each of the Loan Documents  and the Forbearance Agreement are true and correct in all material respects as if made on the date hereof, except for those made with respect to financial statements bearing a particular date, which representations and warranties are hereby restated to be effective as of the date of the last such financial statements provided to the Lender by the Obligors in question.

7.5     Insurance Policies.  Insurance policies complying with the terms of the Loan Documents are in full force and effect.

7.6     Leases.  (a) There are no leases or licenses to use any part of the Mortgaged Premises other than the following leases (the "**Stated Leases**"):

(i)     That certain Commercial Lease dated as of November 12, 2019 between the Borrower, as landlord, and SPI, as tenant (the "**2019 Scheib's Lease**"), which lease expired and terminated by its terms on November 12, 2020 and is no longer in effect;

(ii)     That certain Commercial Lease dated as of November 12, 2019 between the Borrower, as landlord, and AGI, as tenant (the "**2019 Museum Lease**"), which lease expired and terminated by its terms on November 12, 2020 and is no longer in effect;

(iii)     That certain Commercial Lease dated as of November 12, 2019 between the Borrower, as landlord, and the Guarantor, as tenant (the "**2019 Otway Lease**"),

8

which lease expired and terminated by its terms on November 12, 2020 and is no longer in effect;

        (iv)     That certain Commercial Lease dated as of November 12, 2019 between the Borrower, as landlord, and Theater 80 LLC ("**2019 Theater 80**"), as tenant (the "**Theater Lease**"), which lease expired and terminated by its terms on November 12, 2020 and is no longer in effect;

        (v)     That certain Standard Form of Loft Lease, dated as of September 1, 2019, between the Borrower (as successor-in-interest to Lawrence Otway), as landlord, and Mr. Ori Kushnir ("**Kushnir**") and Ms. Sivan Lahat ("**Lahat**"), jointly as tenants (the "**Kushnir/Lahat Lease**"), for the 3rd floor (aka Unit 3) of a portion of the Mortgaged Premises located at 78 St. Marks Place, New York, New York. The Kushnir/Lahat Lease expires on August 31, 2022 and has not been modified, amended or extended in any way whatsoever;

        (vi)     That certain Lease Agreement, dated as of August 1, 2019 between the Borrower (as successor-in-interest to Lawrence Otway), as landlord, and Mr. Aya Ikeda, as tenant ("**Ikeda**"), for the Unit 4 of a portion of the Mortgaged Premises located at 78 St. Marks Place, New York, New York (the "**Ikeda Lease**"). The Ikeda Lease expires on July 31, 2021 and has not been modified, amended or extended in any way whatsoever;

        (vii)     That certain oral sublease (the "**Oral Sublease**") between Theater 80, as sub-landlord, and SPI, as sub-tenant, for a portion of the ground floor of the Mortgaged Premises for the operation of a tavern/bar;

        (viii)     That certain oral agreement (the "**Oral Sub-Sublease**") between SPI, as sub-sub-landlord, and Kushnir and Lahat d/b/a Foxface Sandwich Shop ("**Foxface**") for a portion of the ground floor of the Mortgaged Premises consisting of 200 square feet with a concession window opening to St. Marks Place. Foxface is an unincorporated business, is not a legal entity, and is a business owned and operated solely by Kushnir and Lahat under the trade name Foxface Sandwich Shop;

        (ix)     That certain Commercial Lease dated as of November 12, 2020 between the Borrower, as landlord, and SPI, as tenant, for 4,875 square feet of the ground floor of _____ St. Marks Place, New York, New York (the "**2020 Scheib's Lease**");

        (x)     That certain Commercial Lease dated as of November 12, 2020 between the Borrower, as landlord, and AGI, as tenant, for 750 square feet of the Gallery Museum at 80 St. Marks Place, New York, New York (the "**2020 Museum Lease**");

        (xi)     That certain Lease Agreement dated as of November 12, 2020 between the Borrower, as landlord, and the Guarantor and Mrs. Eugenie Otway, as tenants, for the portion of the Mortgaged Premises known quadplex, a/k/a Unit No.1 (the "**2020 Otway Lease**");

9

(xii)     That certain Commercial Sublease Agreement dated as of November 12, 2020 between Scheibs Place LLC, as sublessor, and Theater 80, as subtenant, for the auditorium, cellar and backstage at 80 St Marks Place, New York, New York (the "**2020 Theater Sublease**"). Scheibs Place LLC is not a legal entity. The reference to "Scheibs Place LLC" in the 2020 Theater Sublease was a typographical error and the correct name of the sublessor under the 2020 Theater Sublease is "Scheib's Place, Inc."; and

(xiii)   That certain Sub-Commercial Sublease Agreement dated as of November 12, 2020 between Theater 80, as sublessor, and Meeting Space, as subtenant, for the 2nd floor of the Mortgaged Premises (the "**2020 Meeting Space Sub-Sublease**"). Meeting Space is an unincorporated business, is not a legal entity, and is a business owned and operated solely by the Guarantor under the trade name Meeting Space.

(b)     The Guarantor is (i) the sole shareholder and president of both SPI and AGI; and (ii) the sole member and sole manager of Theater 80. The Guarantor solely owns and controls SPI, AGI, and Theater 80, and each of such entities is an affiliate of the Guarantor.

(c)     The 2019 Scheib's Lease, the 2019 Museum Lease, the 2019 Otway Lease, and the 2019 Theater Lease each expired and terminated by its terms on November 12, 2020 and has not been modified, amended or extended in any way whatsoever, and is no longer in effect.

(d)     The 2020 Museum Lease, the 2020 Otway Lease, the 2020 Theater Sublease and 2020 Meeting Space Sub-Sublease, (i) were each entered into in violation of the Borrower's obligations under the Loan Documents and without the consent of the Lender (or its predecessor-in-interest); and (ii) are each hereby forever terminated and without effect as of the date hereof.

(e)     The 2020 Scheib's Lease (i) was entered into in violation of the Borrower's obligations under the Loan Documents and without the consent of the Lender (or its predecessor-in-interest); and (ii) is hereby automatically forever terminated and without effect as of June 1, 2021. For the avoidance of doubt, no notice or act shall be required to effectuate the termination of the 2020 Scheib's Lease as of June 1, 2021 and SPI shall vacate and surrender the premises under such lease by June 1, 2021.

(d)     AGI, Guarantor, Theater 80, Foxface and Meeting Space have no legal right to use any part of the Mortgaged Premises as of the date hereof. SPI has no legal right to use any part of the Mortgaged Premises as of June 1, 2021.

(e)     The Oral Sublease and the Oral Sub-Sublease are void and of no effect whatsoever, as among other things, they were entered into without the Lender's (or its predecessor-in-interest's) consent and they are oral only and in violation of the statute of frauds.

10

(f) In all events, the Oral Sublease is hereby forever terminated and of no effect whatsoever. As a result of the termination of the Oral Sublease, the Oral Sub-Sublease is terminated as a matter of law due to the termination of the Oral Sublease (i.e. its master lease).

(g) In all events, the Oral Sub-Sublease is hereby forever terminated and of no effect whatsoever.

7.7   Compliance with Laws. The Obligor Related Parties are in compliance with all material laws, ordinances, rules and regulations of all governmental entities (and all agencies, bodies and subdivisions thereof) affecting the ownership, use, or operation of the Mortgaged Premises, and none of the Obligor Related Parties has received any notice of noncompliance from any such governmental entity with respect to the Mortgaged Premises or that appropriate corrective action is being taken to promptly cure any non-compliance issues(s).

7.8   No Breach of Other Agreements. Neither the execution or delivery of this Stipulation, nor the consummation of this transactions contemplated by this Stipulation, nor the compliance with the terms and provisions hereof: (i) will constitute or result in a breach of any of any the Obligor Related Party's respective articles of incorporation or operating agreement, or will constitute or result in a violation of any law, order, writ, injunction, or decree of any court or governmental department, commission, board, bureau, agency, or instrumentality applicable to any of the Obligor Related Parties; (ii) will conflict or will be inconsistent with, or will result in any breach of, any of the terms, covenants, conditions, or provisions thereof; or (iii) will constitute a default under any indenture, mortgage, instrument, documents, agreement, or contract of any kind to which any of the Obligor Related Parties may be bound or subject.

7.9   The Obligor Related Parties Benefitted. The Obligor Related Parties have each derived direct and substantial benefits from this Stipulation and the transactions contemplated by this Stipulation.

7.10   Other Documents. (a) All documents, reports, certificates, financial statements, and other statements of any kind furnished to the Lender by or on behalf of each of the Obligor Related Parties in connection with the transactions contemplated by this Stipulation: (i) are true, correct, and complete in all material respects; (ii) do not contain any untrue statement of material fact; and (iii) do not omit any fact necessary to make the information contained therein not misleading.

(b) The continued validity in all respects of all representations and warranties made by the Obligor Related Parties in the Loan Documents, this Stipulation and any other documents delivered by the Obligor Related Parties in connection with this Stipulation constitutes a condition precedent to the Lender's agreements under this Stipulation.

7.11   Stipulation Is Duly Executed and Enforceable. Each of the signatories, on behalf of the Obligor Related Parties, to this Stipulation has full and complete authorization and power to execute and deliver this Stipulation in the capacity herein stated. This Stipulation is a valid, binding and enforceable obligation of each of the Obligor Related Parties and does not violate any law, rule or regulation, or any contract or agreement to which any of the Obligor

11

Related Parties is a party. None of the Obligor Related Parties has conveyed, transferred, assigned, pledged or otherwise encumbered any claim or causes of action covered by the releases set forth in this Stipulation.

        7.12    Benefitted From This Stipulation. The Borrower, the Guarantor and the other Obligor Related Parties have each derived direct and substantial benefits from this Stipulation.

        8.      Amendments. This Stipulation may be amended only by a written amendment, fully executed and delivered by each of the Parties.

        9.      Loan Documents Still in Force. Notwithstanding anything to the contrary in this Stipulation, the Note, the Mortgage, the ALR, the Guaranty, the Pledge Agreement and all of the other Loan Documents are in full force and effect in accordance with their respective terms, remain valid and binding obligations of the Obligors and have not been modified or amended, and are hereby reaffirmed and ratified by the Obligors in all respects. The liens, security interests and pledges created by the Mortgage and Pledge Agreement, and the other Loan Documents are and continue to be valid, effective, properly perfected, enforceable and are hereby ratified and confirmed in all respects.

        10.     No Waiver of Rights Under Loan Documents. Neither the failure nor the delay by the Lender to exercise its remedies, nor the acceptance by the Lender of partial payments or any other partial performance (whether any of the foregoing is before or after the date of this Stipulation), nor any provision of this Stipulation, shall (a) amend, modify, supplement, extend, delay, renew, terminate, waive, release or otherwise limit or prejudice the Lender's rights and remedies under the Loan Documents or any of the Obligors' obligations under the Loan Documents (including, without limitation, the Lender's right to receive full payment of principal and interest as well as all late charges, default rate interest, delinquent interest, attorneys' fees and expenses, the Lender's protective advances and other charges to the extent provided in the Loan Documents), nor (b) affect the priority of the Lender's security interests in and liens on the property of any of the Obligors (including, without limitations, the Lender's first priority mortgage lien on the Mortgaged Premises pursuant to the Mortgage and the other Loan Documents and the Lender's first priority security interest and lien on all of the equity interests in the Borrower pursuant to the Pledge Agreement and the other Loan Documents). Nothing contained in this Stipulation shall operate to prohibit, restrict or otherwise inhibit the Lender from exercising any right or remedy the Lender may have under the Loan Documents (except to the extent that the Lender agrees to forbear as specifically provided in Section 2 above) or constitute a cure of the Stated Default or any other existing default or serve to extend any applicable grace or cure period and, without limitation, shall not extend any applicable reinstatement or redemption period.

        11.     Release of Claims and Waivers.

        11.1    Release of Claims. Each of the Obligor Related Parties, for itself and on behalf of its agents, employees, representatives, affiliates, predecessors-in-interest, successors, and assigns (such persons and entities other than the Obligor Related Parties being collectively referred to herein as the **"Other Releasors"**), does hereby release, discharge and acquit the Lender, and the Lender's past, present and future officers, directors, shareholders, agents, employees, professionals,

12

predecessors, successors, assigns and affiliates, and their respective successors, heirs and assigns (collectively, the "**Released Parties**"), of and from any and all rights, claims, causes of action, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, causes of action, promises, damages, costs, losses and expenses of every kind, nature, description or character whatsoever, and irrespective of how, why, or by reason of any facts, which could or may be claimed to exist, whether known or unknown, matured or contingent, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, fraud, breach of any duty, breach of any federal, state or local laws of any kind or nature whatsoever, or any other legal or equitable theory whatsoever, each as though fully set forth herein at length, from the beginning of the world to the date of execution of this Stipulation by the Obligor Related Parties (collectively, the "**Claims**"), which in any way arise out of, are connected with or relate to any or all of the following: (a) the Loan or the administration of any or all of the Loan or any or all of the Loan Documents, as well as any action or inaction of the Released Parties or any of them with respect to the Loan or the administration thereof or any or all of the Loan Documents or the enforcement thereof; (b) any or all of the transactions which are the subject of or contemplated by any or all of the Loan Documents; (c) the Mortgaged Premises and/or any other collateral granted under any of the Loan Documents; or (d) any fact, matter or transaction existing or occurring as of or prior to the execution of this Stipulation by the Parties, which in any way, directly or indirectly, relates to the Loan, any of the Loan Documents, or the Mortgaged Premises.

       11.2   Waiver. Each of the Obligor Related Parties hereby: (i) waives any and all defenses to the Lender's exercise of any or all of its rights under the Loan Documents, including, without limitation, the defenses of payment, waiver, estoppel, laches, unclean hands, unconscionability, the election of remedies defense, or any claim that the Obligors are not in default under the Loan Documents, or any claim that any notice was not given by the Lender, or that the Note fully matured; (ii) acknowledges and re-affirms its due execution and delivery of the Loan Documents (as applicable); (iii) agrees that it shall not file an answer, counterclaim, motion, order to show cause or appeal as to any judicial or non-judicial actions that may be taken by the Lender after the earlier of the Forbearance Date (as defined in the Forbearance Agreement) or the date that any Termination Event (as defined in the Forbearance Agreement) occurs; (iv) admits and acknowledges that, the Note matured by its terms on the Maturity Date (i.e. December 1, 2020) 2020 and that as of December 31, 2020 the Payoff Amount is due and owing to the Lender; (v) expressly waives the appointment of a referee in any action to foreclose the Mortgage to compute the sums due and owing to the Lender; (vi) waives any claim or defense regarding the Loan, the Loan Documents or this Stipulation, including, without limitation, as to the Lender's standing or that the Loan is usurious or requires the Obligors to pay "hidden" or "disguised" interest, fees or charges; (vii) waives any claim or defense that the Lender is prohibited from commencing a proceeding to recover under the Loan Documents by reason of New York State's issuance of any Executive Order, including, without limitation, Executive Order 202.28, 202.48, 202.75, 201.81 and any subsequent modifications and/or extension of said Executive Orders, and/or New York's Chief Administrative Judge's issuance of Administrative Order of the Chief Administrative Judge of the Courts; and (viii) agrees that in the event that any conference is scheduled in the Foreclosure Action it shall agree that the Foreclosure Action may immediately proceed and shall not request an adjournment of the Foreclosure Action for any reason.

13

11.3    Indemnity. Each of the Obligor Related Parties hereby agrees to defend, indemnify, and hold the Lender and each of the other Released Parties harmless from and against any losses, damages, costs (including, without limitation, attorneys' fees, court costs, and costs of appeal), expenses, judgments, liens, decrees, fines, penalties, liabilities, claims, actions, suits, and causes of action (collectively, the "**Indemnified Claims**") arising, directly or indirectly, from (to the extent not inconsistent with the terms of this Stipulation): (a) any material breach by any of the Obligor Related Parties of any warranty or representation contained in this Stipulation or in the documents executed and delivered by any of the Obligor Related Parties pursuant to this Stipulation (collectively referred to as the "**Obligors Documents**"); (b) and after any material breach, default, or violation by any of the Obligor Related Parties of any covenant, agreement, or provision of any of the Obligors Documents or the Loan Documents; (c) any claims by or liabilities to third parties pertaining to injury to persons or damage to the Mortgaged Premises; and (d) any claims and/ or defenses of any past, present, or future tenants at the Mortgaged Premises, including, without limitation, SPI, AGI, the Guarantor, EO, Theater 80, Foxface, Kushnir, Lahat and Ikeda.

11.4    Waivers of Unknown Claims. As to all matters being released by the Obligor Related Parties pursuant to the provisions hereof, each of the Obligor Related Parties for itself and on behalf of the Other Releasors, expressly acknowledges that the release of Claims set forth in Section 15.1 hereof applies to all Claims whether or not known to, or suspected by the Obligor Related Parties to exist. Each of the Obligor Related Parties, for itself and on behalf of all Other Releasors, acknowledges and agrees that the facts with respect to which the release of Claims contained in Section 15.1 is executed may hereafter be found to be different from the facts now believed by the Obligor Related Parties to be true, and each of the Obligor Related Parties, for itself and on behalf of all Other Releasors, expressly accepts and assumes the risk of all such possible differences, and agrees that the release of Claims contained in this Section shall be and remain effective notwithstanding any such difference in facts.

11.5    No Admission of Liability. Nothing contained in this Stipulation, including, without limitation, the terms of this Section 11, constitutes or shall be construed as an admission by the Lender of any liability whatsoever.

11.6    No Assignment. Each of the Obligor Related Parties, for itself and on behalf of all Other Releasors, warrants and represents to the Lender that none of the Obligor Related Parties and none of the Other Releasors have sold, assigned, transferred, conveyed or otherwise disposed of any Claims or Indemnified Claims which are the subject of this Section 11.

12.    No Waiver by the Lender. The agreement by the Lender to forbear from exercising its rights and remedies under the Loan Documents shall not constitute a waiver of, consent to, or condoning of the Stated Default or any other default by any of the Obligor Related Parties. The Obligor Related Parties agree that Lender may immediately exercise all rights and remedies available to the Lender under the Loan Documents by reason of the Stated Default or any other default immediately upon the earlier of (i) the Forbearance Date (as defined in the Forbearance Agreement), (ii) the occurrence of any Termination Event (as defined in the Forbearance

14

Agreement); or (iii) the expiration or termination of this Stipulation for any reason, without the Lender being required to provide any additional notice of default or of acceleration and without any grace or cure periods therefor.

      13.   Miscellaneous.

      13.1   Costs and Expenses. Nothing in this Stipulation shall (i) diminish or otherwise limit any obligation that any of the Obligors has under the Loan Documents with respect to payment of the costs and expenses (including, without limitation, attorneys' fees and expenses) of the Lender, or (ii) prevent the Lender from requiring each of the Obligors to pay all such costs and expenses in accordance with the terms of the Loan Documents.

      13.2   Further Instruments. The Obligor Related Parties shall, whenever and as often as they shall be requested to do so by the Lender, cause to be executed, acknowledged and/or delivered to the Lender any and all such further instruments and documents as may be necessary or desirable, in the sole discretion of the Lender, in order to carry out the intent and purpose of this Stipulation. Without limiting of the foregoing, each of the Obligor Related Parties hereby irrevocably appoints Lender as its and his attorney-in-fact, coupled with an interest, to execute any such documents as provided above and to fill in any blank in the Judgment, or any modification thereof, in accordance with the terms of this Stipulation.

      13.3   Written Waiver Only. No waiver by the Lender of any of its rights or remedies in connection with the Loan or any Loan Documents shall be effective unless such waiver is in writing and signed and delivered by the Lender. Without limiting the generality of the preceding sentence, nothing contained in this Stipulation nor any delay or omission by the Lender in exercising or enforcing any of its rights and remedies in connection with the Loan Documents constitutes or shall be construed as a waiver by the Lender of: (i) the Stated Default or any other breach or default by any of the Obligors under any of the Loan Documents; or (ii) any of the Lender's rights or remedies in connection with the Loan or any of the provisions of any of the Loan Documents.

      13.4   Governing Law. This Stipulation shall be governed by and construed and enforced in accordance with the internal laws of the State of New York, without regard to the law on conflicts of law.

      13.5   Third Party Beneficiaries. Nothing in this Stipulation is intended to or shall confer any rights or remedies upon any person, other than the Parties hereto and the Released Parties and, subject to any restrictions on assignment contained in this Stipulation and the other Loan Documents, their respective successors and assigns.

      13.6   No Offsets. No indebtedness evidenced by the Note or any other Loan Documents shall be offset by all or part of any claim, cause of action, or cross-claim of any kind, whether liquidated or unliquidated, which any of the Obligor Related Parties now has or may hereafter acquire or allege to have acquired against the Lender.

15

       13.7   <u>Relationship of Parties</u>. Nothing contained in this Stipulation or the other Loan Documents constitutes or shall be construed as the formation of a partnership, joint venture, tenancy-in-common, or any other form of co-ownership, or the creation of any confidential or fiduciary relationship of any kind between the Lender, on the one hand, and the Obligor Related Parties and/or any other person or entity on the other hand. The Obligor Related Parties acknowledge and agree that the Lender has at all times acted and shall at all times continue to be acting only as a lender to the Obligors within the normal and usual scope of activities of a lender.

       13.8   <u>Attorneys' Fees</u>. Upon demand therefor by the Lender, the Obligors shall pay all costs and expenses, including, without limitation, reasonable attorneys' fees and costs, now or hereafter incurred by the Lender (i) in negotiating and preparing this Stipulation; and (ii) in administering, enforcing or effectuating any of the terms of this Stipulation and the other Loan Documents, whether or not any legal proceedings are instituted by the Lender. Without limiting the generality of the immediately preceding sentence, such costs and expenses shall include all attorneys' fees and costs now or hereafter incurred by the Lender in connection with any federal or state bankruptcy, insolvency, reorganization, foreclosure, or other similar proceeding or action by or against any of the Obligor Related Parties which in any way relates to or affects the Lender's exercise of its rights and remedies under any or all of the Loan Documents. The amount of any attorneys' fees, costs and expenses of the Lender that are not paid by the Obligors shall be added to the Payoff Amount, shall constitute secured obligations of the Obligors under the Loan Documents and shall bear interest at the default rate under the Loan Documents.

       13.9   <u>Descriptive Headings; Interpretation</u>. The headings to sections of this Stipulation are for convenient reference only, do not in any way limit or amplify the terms of this Stipulation, and shall not be used in interpreting this Stipulation. For purposes of this Stipulation: (i) the term "including" shall be deemed to mean "including, without limitation,"; (ii) the term "Loan Documents" shall be deemed to include, without limitation, this Stipulation; (iii) the term "person" means any natural person or any entity, including any corporation, partnership, joint venture, trust, limited liability Borrower, unincorporated organization or association, or trustee; and (iv) whenever the context of this Stipulation reasonably requires, all words used in the singular shall be deemed to have been used in the plural, and the neuter gender shall be deemed to include the masculine and feminine gender, and vice versa. This Stipulation has been prepared and drafted through a joint effort of the Parties and, therefore, shall not be construed against any of the Parties as the person who prepared or drafted this Stipulation.

       13.10   <u>Entire Agreement</u>. This Stipulation and the other Loan Documents contain the entire agreement and understanding between the Parties concerning the matters covered by this Stipulation and the other Loan Documents, and supersede all prior and contemporaneous agreements, statements, understandings, terms, conditions, negotiations, representations and warranties, whether written or oral, made by the Lender or any of the Obligor Related Parties concerning the matters covered by this Stipulation and the other Loan Documents.

       13.11   <u>Payoff Amount</u>. Each of the Obligor Related Parties hereby acknowledges and agrees that the Payoff Amount as of December 31, 2020 is $6,245,653.65 (exclusive of attorneys' fees and expenses and protective advances incurred after December 18, 2020, which

amounts have accrued and continue to accrue and shall be added to the Payoff Amount), that interest is continuing to accrue thereon at the default rate of 24% per annum from and after December 2, 2020, and that the Obligors are jointly and severally liable for the Payoff Amount.

13.12  Severability. If any term or provision of this Stipulation or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Stipulation, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each such term and provision of this Stipulation shall be valid and shall be enforced to the fullest extent permitted by law.

13.13  Notices. All notices and other communications provided for in this Stipulation shall be in writing and shall be given by Federal Express or hand delivery:

If to the Lender, at:

St. Mark's Mixed Use LLC
100 Park Avenue, Suite 2305
New York, New York 10012
Attn: Jason S. Leibowitz, Esq.

with a copy to:

Katsky Korins LLP
605 Third Avenue, 17th Floor
New York, New York 10158
Attn.: Steven H. Newman, Esq.
Email: snewman@katskykorins.com

If to the Borrower, at:

78-80 St. Marks Place, LLC
78-80 St. Marks Place
New York, New York 10003
Attn: Lawrence v. Otway

With a copy to:

Scott Markowitz, Esq.
Tarter Krinsky & Drogin LLP
1350 Broadway
New York, New York 10018
Email: smarkowitz@tarterkrinsky.com

If to the Guarantor, at:

17

Mr. Lawrence v. Otway
78-80 St. Marks Place, Apt. No. 1
New York, New York 10003

With a copy to:

Scott Markowitz, Esq.
Tarter Krinsky & Drogin LLP
1350 Broadway
New York, New York 10018
Email: smarkowitz@tarterkrinsky.com

If to EO, SPI, AGI or Theater 80, to such person or entity at:

78-80 St. Marks Place
New York, New York 10003
Attn: Lawrence v. Otway

With a copy to:

Scott Markowitz, Esq.
Tarter Krinsky & Drogin LLP
1350 Broadway
New York, New York 10018
Email: smarkowitz@tarterkrinsky.com

Notices shall be deemed given (i) if sent by hand, the date sent; and (ii) if sent by Federal Express, one (1) business day after delivery to an authorized agent or authorized depository box of Federal Express.

13.14  Counterparts, Etc. This Stipulation may be executed in any number of counterparts so long as each signatory hereto executes at least one such counterpart. Each such counterpart shall constitute one original, but all such counterparts taken together shall constitute one and the same instrument. This Stipulation may be executed by electronic signatures, including without limitation, by PDF, and all electronic signatures shall have the same force and effect as an original signature.

13.15  Conflicts With Loan Documents. Notwithstanding anything in this Stipulation to the contrary, in the event of an actual conflict or inconsistency between this Stipulation and any of the Loan Documents (which is not resolved by the terms of this Stipulation itself), the provisions which shall enlarge the rights of the Lender shall govern to the extent of such conflict.

18

13.16 **REVIEW WITH COUNSEL.** THE OBLIGOR RELATED PARTIES HEREBY ACKNOWLEDGE AND AGREE THAT: (A) THE OBLIGOR RELATED PARTIES HAVE CAREFULLY READ AND UNDERSTAND ALL OF THE TERMS OF THIS STIPULATION; (B) THE OBLIGOR RELATED PARTIES HAVE EXECUTED THIS STIPULATION FREELY AND VOLUNTARILY AND WITHOUT ANY DURESS, AFTER HAVING CONSULTED WITH THE OBLIGOR RELATED PARTIES' INDEPENDENT LEGAL COUNSEL AND AFTER HAVING ALL OF THE TERMS OF THIS STIPULATION EXPLAINED TO EACH OF THEM BY THEIR INDEPENDENT LEGAL COUNSEL; (C) THE WAIVERS AND RELEASES CONTAINED IN THIS STIPULATION ARE REASONABLE, NOT CONTRARY TO PUBLIC POLICY OR LAW, AND HAVE BEEN INTENTIONALLY, INTELLIGENTLY, KNOWINGLY AND VOLUNTARILY AGREED TO BY EACH OF THE OBLIGOR RELATED PARTIES; (D) THE WAIVERS AND RELEASES CONTAINED IN THIS STIPULATION HAVE BEEN AGREED TO BY THE OBLIGOR RELATED PARTIES WITH FULL KNOWLEDGE OF THEIR SIGNIFICANCE AND CONSEQUENCES, INCLUDING FULL KNOWLEDGE OF THE SPECIFIC NATURE OF ANY RIGHTS OR DEFENSES WHICH THE OBLIGOR RELATED PARTIES HAVE AGREED TO WAIVE OR RELEASE PURSUANT TO THIS STIPULATION; (E) THE OBLIGOR RELATED PARTIES HAVE HAD A FULL AND ADEQUATE OPPORTUNITY TO NEGOTIATE THE TERMS CONTAINED IN THIS STIPULATION; (F) THE OBLIGOR RELATED PARTIES ARE EXPERIENCED IN AND FAMILIAR WITH LOAN TRANSACTIONS OF THE TYPE EVIDENCED BY THIS STIPULATION; (G) THE OBLIGOR RELATED PARTIES EXECUTION AND DELIVERY OF THIS STIPULATION IS NOT BASED UPON RELIANCE UPON ANY REPRESENTATION, UNDERSTANDING OR AGREEMENT NOT EXPRESSLYSET FORTH IN THIS STIPULATION AND NEITHER THE LENDER NOR ANY AFFILIATE THEREOF HAS MADE ANY REPRSENTATION WHATSOVER TO ANY THE OBLIGOR RELATED PARTIES NOT EXPRESSLY SET FORTH HEREIN; (H) THE WAIVERS AND RELEASES CONTAINED IN THIS STIPULATION ARE MATERIAL INDUCEMENTS TO THE LENDER'S EXECUTION OF THIS STIPULATION, AND THE LENDER HAS RELIED ON SUCH WAIVERS AND RELEASES IN ENTERING INTO THIS STIPULATION AND WILL CONTINUE TO RELY ON SUCH WAIVERS AND RELEASES IN ANY RELATED FUTURE DEALINGS WITH THE OBLIGOR RELATED PARTIES.

13.17 Agreement May Be Used Against Obligor Related Parties. This Stipulation may be used as evidence against any or all of the Obligor Related Parties in any litigation now or hereafter existing, including, without limitation, in this Action.

572939-1

Executed as of the date set forth above:

**78-80 ST. MARKS PLACE, LLC**

By: _____
    Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
    Title: Manager and Sole Member


_____

**LAWRENCE V. OTWAY**, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway,
Individually


_____

**EUGENIE OTWAY**,
Individually


**SCHIEB'S PLACE, INC.**

By: _____
    Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
    Title: President and sole shareholder

**EXHIBITION OF THE AMERICAN GANGSTER, INC.**

By: _____
    Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
    Title: President and sole shareholder


**THEATER 80 LLC**

By: _____
    Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
    Title: Manager and Sole Member


**ST. MARK'S MIXED USE LLC**

By: _____
    Name:
    Title:

Katsky Korins LLP,

By: _____
        Steven H. Newman, Esq.
605 Third Avenue
New York, New York 10158
(212) 716-3235
Attorneys for the Plaintiff

Tarter Krinsky & Drogin LLP,

By: _____
        Scott Markowitz, Esq.
1350 Broadway
New York, New York 10018
(212) 216-8005
Attorneys for Defendants 78-80 St. Marks
Place, LLC, Lawrence V. Otway a/k/a
Lawrence Lorcan Otway a/k/a Lorcan Otway,
Eugenie Otway, Scheib's Place, Inc., Exhibition
of the American Gangster, Inc., and Theater 80
LLC

"SO-ORDERED" this ___ day of ____, 2021

HON. _____

21

# **EXHIBIT B**

---------------------------------------------------------------X

78-80 ST. MARKS PLACE, LLC, LAWRENCE
OTWAY a/k/a LORCAN OTWAY, EUGENIE OTWAY,
SCHEIB'S PLACE, INC, EXHIBITION OF THE
AMERICAN GANGSTER, INC., and THEATRE 80
LLC,

                      Plaintiffs,

      v.

ST. MARK'S MIXED USE LLC,

                      Defendant.

---------------------------------------------------------------X

Index No. 656446/2021

**~~[PROPOSED]~~ SO-ORDERED
STIPULATION OF
SETTLEMENT AND
DISMISSAL OF ACTION**

        This Stipulation of Settlement and Dismissal of Action (this "**Stipulation**") is entered into as of November 29, 2021, by and among (i) (a) 78-80 St. Marks Place, LLC, a New York limited liability company (the "**Borrower**"), and (b) Lawrence V. Otway, a/k/a Lawrence Lorcan Otway, a/k/a Lorcan Otway, individually, whose principal residence is located at 78-80 St. Marks Place, Apartment No. 1, New York, New York 10003 ("**Guarantor**"; and together with Borrower are collectively referred to herein as the "**Obligors**"), (ii) Eugenie Otway, individually, whose principal residence is located at 78-80 St. Marks Place, Apartment No. 1, New York, New York 10003 ("**EO**"), (iii) Scheib's Place, Inc., a New York corporation ("**SPI**"), (iv) Exhibition of the American Gangster, Inc., a New York corporation ("**AGI**"), (v) Theatre 80 LLC, a New York limited liability company ("**Theatre 80**"), and (vi) St. Mark's Mixed Use LLC (the "**Lender**"). Each of the Obligors, EO, SPI, AGI, Theatre 80 and the Lender are sometimes referred to herein individually as a "**Party**", and the Obligors, EO, SPI, AGI, Theatre 80 and the Lender are sometimes collectively referred to herein as the "**Parties**". Each of the Obligors, EO, SPI, AGI, and Theatre 80 are sometimes referred to herein individually as an "**Obligor Related Party**", and the Obligors, EO, SPI, AGI, and Theatre 80 are sometimes collectively referred to herein as the "**Obligor Related Parties**".

        **WHEREAS**, Borrower is a New York limited liability company and is the fee owner of the premises known as 78-80 St. Marks Place, New York, New York 10003 (Block: 449, Lot: 28) (the "**Mortgaged Premises**");

        **WHEREAS**, SPI is a New York corporation;

        **WHEREAS**, AGI is a New York corporation;

        **WHEREAS**, Theatre 80 is a New York limited liability company;

        **WHEREAS**, on or about November 12, 2019, the Borrower borrowed the principal sum of six million one hundred thousand and 00/100 dollars ($6,100,000.00) from 80 St. Marks Place

596657-1
596657-1

Funding LLC ("**Funding LLC**"), which loan is evidenced by a Promissory Note, dated as of November 12, 2019 (the "**Note**"), which Note was duly executed by Borrower and delivered by Borrower to Funding LLC;

**WHEREAS**, in order to secure its obligations under the Note, the Borrower, as mortgagor, duly executed, acknowledged and delivered to Funding LLC, as mortgagee, a Mortgage and Security Agreement, dated as of November 12, 2019 (the "**Mortgage**"), which Mortgage encumbers the Mortgaged Premises. The Mortgage was duly recorded in the Office of City Register of the City of New York, New York County (the "**Register's Office**") on November 22, 2019 at CRFN 2019000383130. Any applicable recording tax was duly paid at the time the Mortgage was recorded. The Mortgage constitutes a valid first priority mortgage and lien on the Mortgaged Premises;

**WHEREAS**, in order to further secure its obligations under the Note and Mortgage, the Borrower duly executed, acknowledged and delivered to Funding LLC an Assignment of Leases and Rents, dated as of November 12, 2019 (the "**ALR**"), which ALR was duly recorded with the Register's Office on December 4, 2019 at CRFN: 2019000395326;

**WHEREAS**, in order to induce Funding LLC to make the Loan to the Borrower, Guarantor duly executed and delivered to Funding LLC a certain Guaranty, dated as of November 12, 2019 (the "**Guaranty**"). Pursuant to the Guaranty, the Guarantor absolutely, unconditionally and irrevocably guaranteed to Funding LLC the payment to the Lender of all amounts and obligations under the Note, the Mortgage and other Loan Documents (as defined below) when same become when due and payable, and the due and prompt performance of all obligations, terms, agreements and covenants under all of the Loan Documents;

**WHEREAS**, the Guarantor is the sole member of the Borrower and the Guarantor owns 100% of the limited liability company membership interests in the Borrower, and in order to further secure, among other things, the Borrower's obligations under the Note and the other Loan Documents, the Guarantor pledged to Funding LLC, among other things, all of his right, title and interest in, to and under his 100% of the membership interests in the Borrower and the other "Collateral", as that term is defined in that certain Pledge and Security Agreement dated as of November 12, 2019 (the "**Pledge Agreement**")(the "Collateral" as defined in the Pledge Agreement is referred to herein as the "**Pledged Collateral**");

**WHEREAS**, Funding LLC perfected its security interest against the Pledged Collateral by, among other things, taking possession of the certificate of membership interests (the "**Certificated Interest**") in the Borrower pledged under the Pledge Agreement and also by duly filing a UCC-1 financing statement (the "**UCC-1**"), which adequately described the Pledged Collateral, with the New York State Department of State ("**NYSOS**") on December 18, 2019, designated as File No. 201912180587574. The Certificated Interest and the UCC-1 constitute a valid and perfected first priority lien on the Pledged Collateral;

**WHEREAS**, on December 1, 2020, the Note was duly assigned by Funding LLC to the Lender pursuant to, among other things, an Allonge to Promissory Note, dated December 1, 2020 (the "**Allonge**");

2

**WHEREAS**, in addition, on December 1, 2020, Funding LLC assigned, among other things, the Mortgage to the Lender, as evidenced by an Assignment of Mortgage, dated as of December 1, 2020 (the "**Mortgage Assignment**"). The Mortgage Assignment was duly recorded in the Register's Office on January 14, 2021 at CRFN 2021000015556;

**WHEREAS**, in addition, on December 1, 2020, Funding LLC assigned, among other things, the ALR to Plaintiff, as evidenced by an Assignment of Assignment of Leases and Rents, dated as of December 1, 2020 (the "**ALR Assignment**"). The ALR Assignment was duly duly recorded in the Register's Office on January 14, 2021 at CRFN 2021000015557;

**WHEREAS**, in addition, Funding LLC assigned, among other things, the UCC-1 to Plaintiff, as evidenced by a UCC Financing Statement Amendment (the "**UCC-3**"). The UCC-3 was duly filed with the NYSOS on June 8, 2021;

**WHEREAS**, in addition, pursuant to an Omnibus Assignment of Loan Documents dated as of December 1, 2020 (the "**Omnibus Assignment**"), the Note, the Mortgage, the Guaranty, the Pledge Agreement, the ALR, the Certificated Interest, the UCC-1 and all of the other Loan Documents were each duly assigned by Funding LLC to the Lender. The Note, the Mortgage, the ALR, the Guaranty, the Pledge Agreement, the Allonge, the Mortgage Assignment, the ALR Assignment, the Certificated Interest, the UCC-1, the UCC-3, the Omnibus Assignment and all other documents evidencing, securing, or guaranteeing the Loan and/or the assignment thereof to the Lender are collectively referred to herein as the "**Loan Documents**";

**WHEREAS**, pursuant to the Allonge, the Mortgage Assignment, the ALR Assignment, the UCC-3 and the Omnibus Assignment, the Lender is the current holder and owner of the Loan and all of the Loan Documents, and the Lender has standing to enforce the Note, the Pledge Agreement, and other Loan Documents;

**WHEREAS**, pursuant to the Note the Borrower is obligated to pay to the holder of the Note, among other things, installments of interest, and the balance of the principal, interest, and all other sums due under the Loan Documents on December 1, 2020 (the "**Maturity Date**");

**WHEREAS**, the Mortgage provides that the Borrower shall pay all of the indebtedness evidenced by the Note at the time and in the manner as provided for in the Note;

**WHEREAS**, the Borrower breached and defaulted on its obligations under the Note, the Mortgage and the other Loan Documents by, among other things, and without limitation, failing and omitting to pay in full all obligations under the Loan Documents on or before the Maturity Date (*i.e.*, December 1, 2020);

**WHEREAS**, the Borrower's failure to pay the entire indebtedness within five (5) days of when it became due, constitutes an "Event of Default" as defined in the Note and the Mortgage;

**WHEREAS**, the Lender duly sent to the Borrower and the Guarantor a letter dated December 7, 2020, which letter duly notified the Borrower and the Guarantor, among other things, (i) that on December 1, 2020, the Loan matured by its terms and the entirety of the indebtedness became immediately due and payable pursuant to the Note and the Mortgage, (ii)

3

that the Borrower failed to pay the entire indebtedness within five (5) days of when it became due, constituting an Event of Default under both the Note and the Mortgage, and (iii) interest on the indebtedness began to accrue at the "Default Rate" as defined in the Note and Mortgage from and after December 2, 2020;

**WHEREAS**, as a result of, among other things, the Borrower's failure to pay all amounts due under the Loan Documents on the Maturity Date, the Loan is now immediately due and payable in full and the Lender is entitled to, among other things, (i) foreclose the Mortgage and the personalty located at the Mortgaged Premises, (ii) foreclose on all collateral granted by the Guarantor to the Lender under the Pledge Agreement, including, without limitation, all of the Guarantor's limited liability company membership interests in the Borrower, and (iii) exercise all of the Lender's rights and remedies under all of the Loan Documents;

**WHEREAS**, without limiting in any manner any other existing defaults, the Obligors are now in default under the Loan Documents based upon the Borrower's failure to pay to the Lender all amounts due under the Loan Documents on the Maturity Date (the "**Maturity Default Default**") and the Obligors failure to pay the property taxes due on July 1, 2021 with respect to the Mortgaged Premises (the "**Tax Default**");

**WHEREAS**, on or about January 14, 2021, the Parties entered into that certain Forbearance Agreement dated as of January 14, 2021 (the "**Existing Forbearance Agreement**") pursuant to the terms contained therein;

**WHEREAS**, without limiting in any manner any other existing defaults, the Obligors are now in default under the Existing Forbearance Agreement based upon the Borrower's failure to, among other things (i) to pay Lender the Payoff Amount by 10:00 a.m. on April 15, 2020 and (ii) they failed to cause Lee & Associates Licensing & Administration Co., L.P. (the "**Broker**") to (a) reduce the asking price for the sale of the Mortgaged Premises to $11,000,000 by May 15, 2021; and (b) reduce the asking price of the Mortgaged Premises to $10,000,000 by June 15, 2021 (the "**Existing Forbearance Agreement Defaults**"; and together with Maturity Default and the Tx Default, collectively the "**Stated Defaults**"). Each of the forgoing failures described in clauses (i) and (ii) in the immediately preceding sentence constitutes a separate and independent breach of the Existing Forbearance Agreement and a Termination Event (as defined in the Existing Forbearance Agreement) thereunder. As a result of each of such Termination Events, the agreement of Lender to forbear under the Existing Forbearance Agreement automatically terminated, and Lender was automatically entitled to schedule enforce al of its remedies, including conducting a foreclosure sale of all of its collateral;

**WHEREAS**, by a Notice of Disposition of Collateral dated September 3, 2021, Lender properly and timely noticed the November 18, 2021 sale ("**11/18/21 Scheduled UCC Sale**") at public auction of all of Guarantor's right, title and interest in and to the Pledged Collateral pursuant to the New York UCC;

**WHEREAS**, on November 11, 2021, the Obligor Related Parties brought the above-captioned action in the Supreme Court Supreme Court of the State of New York for New York County (this "**Court**") styled *78-80 St. Marks Place, LLC et al. v. St. Mark's Mixed Use LLC* (Index No. 656446/2021) (this "**Obligor Action**") by summons and complaint and

4

596657-1

FILED: NEW YORK COUNTY CLERK 11/29/2021 12:41 PM INDEX NO. 656446/2021
NYSCEF DOC. NO. 35 22-01153, ranging Doc. 29-4 filed 06/13/22 Entered 06/13/22 26:35:57 Exhibit Pg RECEIVED NYSCEF: 11/29/2021
Statement of Material Facts Pursuant to Rule 7056-1(b) of the Pg 295 of 351

contemporaneously filed a motion by Order to Show Cause seeking to preliminarily enjoin the 11/18/21 Scheduled UCC Sale (NYSCEF Dkt. No. 6 through 18) [Motion Seq. No. 1] (the "**Stay Motion**");

**WHEREAS**, by Order to Show Cause dated November 17, 2021 and entered in this Obligor Action on November 19, 2021, the Hon. Barry R. Ostrager, J.S.C. ordered that "pending the hearing of the [Stay Motion] brought on by this Order to Show Cause, Defendant shall not go forward with the UCC sale anticipated to take place on November 18, 2021" and scheduled the Stay Motion for a hearing on December 3, 2021 (NYSCEF Dkt. No. 25) (the "**11/17/21 OSC**");

**WHEREAS**, any and all notice provisions contained in all of the Loan Documents and the Existing Forbearance Agreement have been complied with by the Lender and any applicable grace periods, if any, pertaining to Obligor Related Parties' defaults occurring prior to the date of this Stipulation have expired or have been forever waived by the Obligors;

**WHEREAS**, the sale of the Pledged Collateral pursuant to the New York UCC has been duly adjourned from November 18, 2021 to December 7, 2021 at 2:00 p.m.;

**WHEREAS**, as of November 30, 2021 there is due and owing to the Lender under the Note, the Mortgage, the Guaranty, the Pledge Agreement, and the other Loan Documents and the Existing Forbearance Agreement, the following amounts:

| Payoff | |
|---|---|
| Principal Balance | $6,100,000.00 |
| Interest | $1,484,333.33 |
| Protective Advances (through 11/21/21) | $202,121.59 |
| Legal Fees (through 11/21/21) | $194,400.73 |
| **Total Due** | **$7,980,855.65** |

Total Due: $7,980,855.65[1] as of November 30, 2021;

**WHEREAS**, the Lender is currently entitled to exercise any and all of its rights and remedies under the Note, the Mortgage, the Guaranty, the Pledge Agreement, and each of the other Loan Documents and the Existing Forbearance Agreement;

WHEREAS, the Parties have reached a settlement with respect to this matter; and

---

[1] Legal fees and protective advances are reflected herein only as of November 21, 2021. Additional legal fees and expenses and protective advances have accrued and continue to accrue after November 21, 2021 and such additional amounts are owed under the Loan Documents and shall be added to the Payoff Amount (as defined herein below).

5

596657-1

WHEREAS, in connection with the aforesaid settlement, among other things, (i) Borrower has agreed, among other things, to (a) dismiss this Obligor Action, with prejudice, and (b) withdraw its Stay Motion, with prejudice, and (ii) Lender has agreed to adjourn its sale of the Pledged Collateral, all on the terms set forth hereinbelow;

**NOW, THEREFORE**, in consideration of the sum of $10.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

1.      Recitals Incorporated Herein. The Parties acknowledge, represent and agree that each of the facts set forth in the recitals above are true and correct in all respects and are incorporated herein as if fully set forth in the body of this Stipulation.

2.      Dismissal of this Obligor Action and Stay Motion; Forbearance; Consent to Sale of the Pledged Collateral.

(a)     The Stay Motion is hereby withdrawn, with prejudice.

(b)     The 11/17/21 OSC is hereby vacated.

(c)     This action (ie. this Obligor Action) be and hereby is dismissed, with prejudice.

(d)     Subject to (1) the continued validity of the representations and warranties of the Obligor Related Parties set forth in this Stipulation (2) the termination provisions set forth in Section 7 below, the Lender shall temporarily forbear from further enforcing any of its remedies under the Pledge Agreement during the period from the date hereof to and including December 30, 2021 (the "**Forbearance Date**"); notwithstanding the foregoing however, the foregoing provisions shall not apply to the Lender taking any of the actions described in Sections 2(e) through (g) below or otherwise set forth elsewhere in this Stipulation.

(e)     The Obligors shall not enter into any lease, contract or other agreement for the sale, lease or use of the Mortgaged Premises, or any part thereof, unless (i) the contract is for the sale of all of the Mortgaged Premises and contains a 10% non-refundable deposit to be held in escrow by Borrower's counsel pending a closing, (ii) the sale price of the Mortgaged Premises is equal to or more than the 100% of the Payoff Amount, (iii) the closing of the sale must be set for a date that is not later than December 30, 2021, time being of the essence as to the closing date, and (iv) the obligation of the buyer to close is not subject to any contingencies whatsoever, including, without limitation, as to financing, zoning, development or any other matter of any kind.

(f)     If no Termination Event (as defined below) occurs, then the Lender will forbear, until and including 10:00 a.m. on December 30, 2021, from holding a foreclosure sale of the Pledged Collateral pursuant to the New York UCC. On and after 10:00 a.m. December 30, 2021 (or on any earlier date on which a Termination Event hereunder has occurred) the Lender may enforce all of its rights under the Loan Documents, including without limitation, taking any and all steps whatsoever to conduct a foreclosure sale of the Pledged Collateral, and may thereafter continue to enforce any and all of its rights under the Loan Documents, applicable law, equity and otherwise,

6

including, without limitation, its rights to any deficiency judgment. An announcement of the adjournment of the sale of the Pledged Collateral from December 7, 2021 to a date and time on and after 10:00 a.m. on December 30, 2021, on the record of the auction sale (currently scheduled to be held on December 7, 2021) shall be sufficient notice of the adjournment of the sale of the Pledged Collateral. The Obligor Related Parties hereby irrevocably (i) agree that the auction sale of the Pledged Collateral pursuant to the New York UCC to be conducted on or after 10:00 a.m. on December 30, 2021 based on the publication and marketing of the sale that has been done to date is commercially reasonable in all respects, (ii) waive any further notice of the adjournment of the sale of the Pledged Collateral and requirement, if any, to give further notice or advertisement of the sale of the Pledged Collateral, all of which is hereby dispensed with, and (iii) agree that they shall not in any way file, or collude with any person or entity to file, any motion or proceeding to stay or vacate the sale of the Pledged Collateral. For the avoidance of doubt, nothing herein shall restrict Lender from taking any acts to adjourn the sale or market the Pledged Collateral, it being the intent that only the occurrence of the sale itself shall not occur prior to December 30, 2021 at 10:00 a.m.

(g)    The Obligor Related Parties and their counsel shall use best efforts to timely and fully cooperate with the Lender in connection with all matters related to the sale of the Pledged Collateral, including, without limitation, (i) providing information about the Mortgaged Premises, (ii) providing access, on 48 hours notice, at all times and from time to time, to the Mortgaged Premises to any brokers, the Lender, any prospective purchaser of the Pledged Collateral and all agents and representatives of all of the foregoing.

3.    <u>Interest Rate; Financial Statements</u>. (a) <u>Interest Rate; Payoff Amount; Financial Statements</u>.

(a)    Interest shall continue to accrue at the default rate of 24% per annum provided in the Note from December 2, 2020 until the date that the Obligors have indefeasibly paid and satisfied all of their obligations (including, without limitation, principal, interest, default rate interest, late fees, service fees, legal fees and expenses, protective advances, and all other fees and charges) under each of the Loan Documents and this Stipulation (collectively, the "**Payoff Amount**").

(b)    The Obligors shall promptly deliver to the Lender any and all financial information that the Lender may reasonably request, including, without limitation, (i) a current rent roll for Mortgaged Premises; (ii) the operating agreement and other organizational documents of the Borrower; (iii) copies of all leases for the Mortgaged Premises; and (iv) proof of insurance of the Mortgaged Premises and Obligors.

4.    <u>Payments to the Lender By Wire Transfer</u>. All payments to the Lender shall be made by wire transfer pursuant to such wire transfer instructions as the Lender shall provide to the Obligors' counsel upon request therefore.

5.    <u>No Reinstatement of any Loan</u>. The Lender's acceptance of any payment (other than total indefeasible payment in cash of the Payoff Amount) made by any of the Obligor Related Parties on or after the date hereof, nor the Lender's application of any of such payments to amounts owing under the Loan Documents, shall constitute or be construed as: (a) a waiver by the Lender of (i) the Stated Defaults or any other breach or default by any of the Obligor Related Parties under any or all

7

of the Loan Documents or this Stipulation, (ii) any of the Lender's rights or remedies in connection with the Loan, any of the Loan Documents, the Existing Forbearance Agreement, or this Stipulation, or (iii) any of the provisions of the Loan Documents, the Existing Forbearance Agreement, or this Stipulation; or (b) a cure of any of the Stated Defaults or any other breach or default by any of the Obligor Related Parties under the Loan Documents, the Existing Forbearance Agreement, or this Stipulation.

6.     Application of Payments. Any payments made by any of the Obligor Related Parties to the Lender on or after the date hereof may be accepted by the Lender and applied against the obligations owed under the Loan Documents in such manner as the Lender may hereafter determine from time to time, all in the Lender's sole and absolute discretion.

7.     Termination. The agreement by the Lender to forbear under the terms of this Stipulation shall automatically terminate, without any notice, any further act or otherwise, upon the earliest to occur of any of the following events:

7.1     The Forbearance Date; or

7.2     A Termination Event (as such term is defined in Section 9 below); or

7.3     The Lender hereafter becomes aware of any fact or circumstance that the Lender believes in good faith is reasonably likely to impair any of the Lender's collateral under the Loan Documents, including, without limitation, its first priority liens on all of the Mortgaged Premises (other than the failure to pay real estate taxes on the Mortgaged Premises), and all collateral under the Pledge Agreement.

8.     Representations and Warranties. In order to induce the Lender to enter into this Stipulation, each of the Obligor Related Parties hereby represents, warrants and covenants to the Lender as follows, all of which representations, warranties and covenants shall survive the execution of this Stipulation:

8.1     Binding Obligations. The Note, the Mortgage, the ALR, the Guaranty, the Pledge Agreement, all of the other Loan Documents, the Existing Forbearance Agreement and this Stipulation, have been duly executed and delivered by the Obligor Related Parties (as applicable) and constitute legal, valid and binding obligations of the Obligor Related Parties (as applicable), enforceable in accordance with their respective terms.

8.2     No Defenses or Claims. (a)     The Obligor Related Parties expressly represent, warrant and acknowledge that: (i) the Lender (or its predecessors as applicable) has provided any notice of default required under the Loan Documents and/or the Existing Forbearance Agreement, and is now fully entitled to foreclose on any and/or all of its collateral and otherwise exercise all of its rights and remedies on account of the Stated Defaults, but for the effect of this Stipulation; (ii) all amounts owed to the Lender under the Note, the Mortgage, the ALR, the Guaranty, the Pledge Agreement, the other Loan Documents, and the Existing Forbearance Agreement are now due and payable; (iii) the Lender has elected to grant the forbearance hereunder in its sole discretion, and that absent such election there exists no impediment whatsoever to the commencement of the exercise of any and/or all remedies under

8

the Loan Documents or the Existing Forbearance Agreement; (iv) there are no defenses, offsets or counterclaims of any nature whatsoever to any of the Loan Documents, the Existing Forbearance Agreement, or to the Lender's ownership thereof or the Lender's status as the due holder of the Note, the Mortgage, the ALR, the Guaranty, the Pledge Agreement, and the other Loan Documents or the Lender's standing to enforce all of the foregoing; (v) the Loan Documents and the Existing Forbearance Agreement are hereby reaffirmed by the Obligors in their entirety; (vi) the Loan Documents and the Existing Forbearance Agreement are in full force and effect and the Lender shall not be deemed to waived or modified any of its rights thereunder, at law or in equity by virtue of this Stipulation, except to the extent specifically provided in Section 2 above; and (vii) none of the Obligor Related Parties is the subject of a bankruptcy proceeding as of the date of this Stipulation.

(b)    None of the Obligor Related Parties has any defense, affirmative defense, setoff, claim, counterclaim, action, or cause of action of any kind or nature whatsoever against the Lender or any of its past, present, or future directors, officers, employees, agents, attorneys, legal representatives, predecessors, affiliates, successors, or assigns, directly or indirectly, arising out of; based upon, or in any manner connected with any act, transaction, event, circumstance, action, failure to act, or occurrence of any sort or type, whether known or unknown, which occurred, existed, was taken, permitted, or begun prior to the execution of this Stipulation or which occurred, existed, was taken, permitted, or begun in accordance with, pursuant to, or relating to, or by virtue of the Loan or any of the terms of any of the Loan Documents, or which directly or indirectly relates to or arises out of, or in any manner is connected with, the Loan or any or all of the Loan Documents (including, without limitation, the enforcement by the Lender or its predecessor of any of its rights and remedies under any or all of the Loan Documents or the Existing Forbearance Agreement); and if any such defense, affirmative defense, setoff, claim, counterclaim, action or cause of action exists without the knowledge of any of the Obligor Related Parties, the same is hereby unconditionally forever waived with prejudice as against the Lender, or any of its past, present or future directors, officers, employees, agents, attorneys, legal representatives, predecessors, affiliates, successors, or assigns.

8.3    <u>Maturity of the Note and Stated Defaults</u>.  Pursuant to the express terms of the Note the entire principal balance together with all other amounts payable under the Note, the Mortgage, the Guaranty, the Pledge Agreement and the other Loan Documents were immediately due and payable on December 1, 2020, and the Obligors have failed to pay such obligations as of the date hereof. Obligors are in default under the Loan Documents and the Existing Forbearance Agreement on account of the Stated Defaults.

8.4    <u>Representations in Loan Documents</u>.  All of the representations and warranties made by each of the Obligors in each of the Loan Documents are true and correct in all material respects as if made on the date hereof, except for those made with respect to financial statements bearing a particular date, which representations and warranties are hereby restated to be effective as of the date of the last such financial statements provided to the Lender by the Obligors in question.

8.5    <u>Insurance Policies</u>. Insurance policies complying with the terms of the Loan Documents are in full force and effect.

9

FILED: NEW YORK COUNTY CLERK 11/29/2021 12:41 PM INDEX NO. 656446/2021

NYSCEF DOC. NO. 32 Changing Door 29-2 filed 00/30/23/22 Entered 00/30/22 26:35:57 Exhibit Pg RECEIVED NYSCEF: 11/29/2021

Statement of Material Facts Pursuant to Rule 7056-1(b) of the    Pg 300 of 351

8.6    <u>Leases</u>. (a) There are no leases or licenses to use any part of the Mortgaged Premises other than the following leases (the "**Stated Leases**"):

(i)    That certain Commercial Lease dated as of November 12, 2019 between the Borrower, as landlord, and SPI, as tenant (the "**2019 Scheib's Lease**"), which lease expired and terminated by its terms on November 12, 2020 and is no longer in effect;

(ii)    That certain Commercial Lease dated as of November 12, 2019 between the Borrower, as landlord, and AGI, as tenant (the "**2019 Museum Lease**"), which lease expired and terminated by its terms on November 12, 2020 and is no longer in effect;

(iii)    That certain Commercial Lease dated as of November 12, 2019 between the Borrower, as landlord, and the Guarantor, as tenant (the "**2019 Otway Lease**"), which lease expired and terminated by its terms on November 12, 2020 and is no longer in effect;

(iv)    That certain Commercial Lease dated as of November 12, 2019 between the Borrower, as landlord, and Theatre 80 LLC ("**2019 Theatre 80 Lease**"), as tenant, which lease expired and terminated by its terms on November 12, 2020 and is no longer in effect;

(v)    That certain Standard Form of Loft Lease, dated as of September 1, 2019, between the Borrower (as successor-in-interest to Lawrence Otway), as landlord, and Mr. Ori Kushnir ("**Kushnir**") and Ms. Sivan Lahat ("**Lahat**"), jointly as tenants (the "**Kushnir/Lahat Lease**"), for the 3rd floor (aka Unit 3) of a portion of the Mortgaged Premises located at 78 St. Marks Place, New York, New York. The Kushnir/Lahat Lease expires on August 31, 2022 and has not been modified, amended or extended in any way whatsoever;

(vi)    That certain Lease Agreement, dated as of August 1, 2019 between the Borrower (as successor-in-interest to Lawrence Otway), as landlord, and Mr. Aya Ikeda, as tenant ("**Ikeda**"), for the Unit 4 of a portion of the Mortgaged Premises located at 78 St. Marks Place, New York, New York (the "**Ikeda Lease**"). The Ikeda Lease expired on July 31, 2021 and has not been modified, amended or extended in any way whatsoever;

(vii)    That certain oral sublease (the "**Oral Sublease**") between Theatre 80, as sub-landlord, and SPI, as sub-tenant, for a portion of the ground floor of the Mortgaged Premises for the operation of a tavern/bar;

(viii)    That certain oral agreement (the "**Oral Sub-Sublease**") between SPI, as sub-sub-landlord, and Kushnir and Lahat d/b/a Foxface Sandwich Shop ("**Foxface**") for a portion of the ground floor of the Mortgaged Premises consisting of 200 square feet with a concession window opening to St. Marks Place. Foxface is an unincorporated business, is not a legal entity, and is a business owned and operated solely by Kushnir and Lahat under the trade name Foxface Sandwich Shop;

10

596657-1

(ix)     That certain Commercial Lease dated as of November 12, 2020 between the Borrower, as landlord, and SPI, as tenant, for 4,875 square feet of the ground floor of 80 St. Marks Place, New York, New York (the "**2020 Scheib's Lease**");

(x)     That certain Commercial Lease dated as of November 12, 2020 between the Borrower, as landlord, and AGI, as tenant, for 750 square feet of the Gallery Museum at 80 St. Marks Place, New York, New York (the "**2020 Museum Lease**");

(xi)     That certain Lease Agreement dated as of November 12, 2020 between the Borrower, as landlord, and the Guarantor and Mrs. Eugenie Otway, as tenants, for the portion of the Mortgaged Premises known quadplex, a/k/a Unit 1 (the "**2020 Otway Lease**");

(xii)     That certain Commercial Sublease Agreement dated as of November 12, 2020 between Scheibs Place LLC, as sublessor, and Theatre 80, as subtenant, for the auditorium, cellar and backstage at 80 St Marks Place, New York, New York (the "**2020 Theatre Sublease**"). Scheibs Place LLC is not a legal entity. The reference to "Scheibs Place LLC" in the 2020 Theatre Sublease was a typographical error and the correct name of the sublessor under the 2020 Theatre Sublease is "Scheib's Place, Inc."; and

(xiii) That certain Sub-Commercial Sublease Agreement dated as of November 12, 2020 between Theatre 80, as sublessor, and Meeting Space, as subtenant, for the 2nd floor of the Mortgaged Premises (the "**2020 Meeting Space Sub-Sublease**"). Meeting Space is an unincorporated business, is not a legal entity, and is a business owned and operated solely by the Guarantor under the trade name Meeting Space.

(b)     The Guarantor is (i) the sole shareholder and president of both SPI and AGI; and (ii) the sole member and sole manager of Theatre 80. The Guarantor solely owns and controls SPI, AGI, and Theatre 80, and each of such entities is an affiliate of the Guarantor.

(c)     The 2019 Scheib's Lease, the 2019 Museum Lease, the 2019 Otway Lease, and the 2019 Theatre 80 Lease each expired and terminated by its terms on November 12, 2020 and has not been modified, amended or extended in any way whatsoever, and is no longer in effect.

(d)     The 2020 Museum Lease, the 2020 Otway Lease, the 2020 Theatre Sublease and 2020 Meeting Space Sub-Sublease, (i) were each entered into in violation of the Borrower's obligations under the Loan Documents and without the consent of the Lender (or its predecessor-in-interest); and (ii) are each hereby forever terminated and without effect as of the date hereof.

(e)     The 2020 Scheib's Lease (i) was entered into in violation of the Borrower's obligations under the Loan Documents and without the consent of the Lender (or its predecessor-in-interest); and (ii) is hereby automatically forever terminated and without effect as of June 1, 2021. For the avoidance of doubt, no notice or act shall be required to effectuate the

11

termination of the 2020 Scheib's Lease as of June 1, 2021 and SPI shall vacate and surrender the premises under such lease by December 30, 2021.

(d) AGI, Guarantor, Theatre 80, Foxface and Meeting Space have no legal right to use any part of the Mortgaged Premises as of the date hereof. SPI has no legal right to use any part of the Mortgaged Premises as of June 1, 2021.

(e) The Oral Sublease and the Oral Sub-Sublease are void and of no effect whatsoever, as among other things, they were entered into without the Lender's (or its predecessor-in-interest's) consent and they are oral only and in violation of the statute of frauds.

(f) In all events, the Oral Sublease is hereby forever terminated and of no effect whatsoever. As a result of the termination of the Oral Sublease, the Oral Sub-Sublease is terminated as a matter of law due to the termination of the Oral Sublease (i.e. its master lease).

(g) In all events, the Oral Sub-Sublease is hereby forever terminated and of no effect whatsoever.

8.7 Compliance with Laws. The Obligor Related Parties are, to the best of their knowledge, in compliance with all material laws, ordinances, rules and regulations of all governmental entities (and all agencies, bodies and subdivisions thereof) affecting the ownership, use, or operation of the Mortgaged Premises, and none of the Obligor Related Parties has received any notice of noncompliance from any such governmental entity with respect to the Mortgaged Premises or that appropriate corrective action is being taken to promptly cure any non-compliance issues(s).

8.8 No Breach of Other Agreements. To the best of the knowledge of the Obligor Related Parties, neither the execution or delivery of this Stipulation, nor the consummation of this transactions contemplated by this Stipulation, nor the compliance with the terms and provisions hereof: (i) will constitute or result in a breach of any of any the Obligor Related Party's respective articles of incorporation or operating agreement, or will constitute or result in a violation of any law, order, writ, injunction, or decree of any court or governmental department, commission, board, bureau, agency, or instrumentality applicable to any of the Obligor Related Parties; (ii) will conflict or will be inconsistent with, or will result in any breach of, any of the terms, covenants, conditions, or provisions thereof; or (iii) will constitute a default under any indenture, mortgage, instrument, documents, agreement, or contract of any kind to which any of the Obligor Related Parties may be bound or subject.

8.9 The Obligor Related Parties Benefitted. The Obligor Related Parties have each derived direct and substantial benefits from this Stipulation and the transactions contemplated by this Stipulation.

8.10 Other Documents. (a) All documents, reports, certificates, financial statements, and other statements of any kind furnished to the Lender by or on behalf of each of the Obligor Related Parties in connection with the transactions contemplated by this Stipulation: (i) are true, correct, and complete in all material respects; (ii) do not contain any untrue statement

12

of material fact; and (iii) do not omit any fact necessary to make the information contained therein not misleading.

(b)    The continued validity in all respects of all representations and warranties made by the Obligor Related Parties in the Loan Documents, this Stipulation and any other documents delivered by the Obligor Related Parties in connection with this Stipulation constitutes a condition precedent to the Lender's agreements under this Stipulation.

8.11    <u>Stipulation Is Duly Executed and Enforceable</u>.  Each of the signatories, on behalf of the Obligor Related Parties, to this Stipulation has full and complete authorization and power to execute and deliver this Stipulation in the capacity herein stated. This Stipulation is a valid, binding and enforceable obligation of each of the Obligor Related Parties and does not violate any law, rule or regulation, or any contract or agreement to which any of the Obligor Related Parties is a party.  None of the Obligor Related Parties has conveyed, transferred, assigned, pledged or otherwise encumbered any claim or causes of action covered by the releases set forth in this Stipulation.

8.12    <u>Benefitted From This Stipulation</u>. The Borrower, the Guarantor and the other Obligor Related Parties have each derived direct and substantial benefits from this Stipulation.

9.    <u>Termination Events.</u> The occurrence of any one or more of the following shall constitute a "**Termination Event**" under this Stipulation:

9.1    <u>Failure to Perform Obligations.</u> The failure of the Obligor Related Parties to observe or perform any of its respective obligations under this Stipulation when due; or

9.2    <u>Other Loan Defaults.</u> The occurrence of any of the following: (i) any "Event of Default" (as defined in the Note) under the Note (other than the timely payment of real estate taxes on the Mortgaged Premises); (ii) any "Event of Default" (as defined in the Mortgage) under the Mortgage (other than the timely payment of real estate taxes on the Mortgaged Premises); or (iii) any default or event of default under any of the other Loan Documents (other than the Stated Defaults), and the applicable Obligors' time, if any, to cure the same has expired under the applicable Loan Document(s); or

9.3    <u>Misrepresentation.</u> If any representation or warranty made herein, or in any report, certificate, financial statement or other instrument or document furnished in connection with this Stipulation or contemplated hereby, shall prove to have been knowingly and materially false or misleading on the date as of which it was made; or

9.4    <u>Judgment.</u> Entry of a judgment or filing of a lien after the date hereof against any of the Obligor Related Parties, the Mortgaged Premises, or any other property of any of the Obligor Related Parties;

9.5    <u>Failure to Maintain Insurance.</u> If at any time (i) the Borrower fails to maintain insurance on the Mortgaged Premises in accordance with the Mortgage or (ii) such

13

insurance fails to include the Lender as an additional insured or fails to provide that the Lender is the sole loss payee. The Borrower shall provide a copy of its insurance policy and proof of insurance within 48 hours of any request by the Lender.

        9.6    <u>Bankruptcy.</u> If any of the Obligor Related Parties shall: (i) make a general assignment for the benefit of creditors; (ii) file a voluntary petition or a petition or answer seeking reorganization or an arrangement with creditors or take advantage of any bankruptcy, reorganization, insolvency, readjustment of debt, dissolution, or liquidation statute or law, or make or file an answer admitting material allegations of a petition filed against it in any proceeding under any such law; (iii) have any bankruptcy proceedings commenced against it by any person or entity; or (iv) have entered against it an order, judgment or decree of any court of competent jurisdiction approving a petition seeking reorganization of assets or appointing a receiver, trustee, or liquidator for any assets.

        10.    <u>Covenants Regarding the Mortgaged Premises</u>.

        (a)    The Obligor Related Parties shall not in any way whatsoever modify, amend, extend or renew any of the Stated Leases without the Lender's express prior written consent, and any modification, amendment, extension or renewal of any of the Stated Leases without the Lender's express prior written consent shall be void *ab initio* and of no effect whatsoever. Neither of the Obligor Related Parties shall enter into any agreement of any kind or nature concerning the lease, license, use or sale of the Mortgaged Premises, or any part thereof, without the Lender's express prior written consent, and any such agreement entered into by any Obligor Related Party without the Lender's express prior written consent shall be void *ab initio* and of no effect whatsoever.

        (b)    The Borrower, SPI, AGI, the Guarantor, EO, Theatre 80 and Meeting Space, and all relatives of the Guarantor and all persons and entities directly or indirectly controlled by either of the Obligors shall completely vacate, and shall cause Foxface, Kushnir, Lahat, and Ikeda to completely vacate, the Mortgaged Premises (other than Kushnir and Lahat with respect to the portion of the Mortgaged Premises demised under the Kushnir/Lahat Lease) no later than December 30, 2021, time being of the essence. In the event that any of the Borrower, SPI, AGI, the Guarantor, EO, Theatre 80, Foxface, Kushnir, Lahat, or Ikeda fails to completely vacate the Mortgaged Premises by December 30, 2021 (other than Kushnir and Lahat with respect to the portion of the Mortgaged Premises demised under the Kushnir/Lahat Lease), time being of the essence, then the Obligor Related Parties shall be jointly and severally liable to the Lender in the sum of $200,000 as liquidated damages for the failure of the Obligor Related Parties to timely cause each of the Borrower, SPI, AGI, the Guarantor, EO, Theatre 80, Foxface, Kushnir, Lahat, and Ikeda to timely vacate the Mortgaged Premises as required by this Section 10 (b), time being of the essence.

        11.    <u>Remedies</u>. Without limiting the rights and remedies of the Lender under any of the other Loan Documents, under this Stipulation, or under applicable law or in equity, immediately upon the occurrence of any Termination Event hereunder (without any notice or any opportunity to cure), the obligations and agreements of the Lender under this Stipulation shall immediately

14

terminate, and the Lender shall have the right to immediately exercise any and all rights and remedies available to it hereunder, under any and all of the other Loan Documents, the Existing Forbearance Agreement, and under applicable law, without regard to any notice or cure period contained therein or otherwise available. All rights and remedies available to the Lender under this Stipulation, any of the Loan Documents, the Existing Forbearance Agreement and applicable law may be asserted concurrently, cumulatively, or successively, from time to time, as long as any indebtedness or obligations under the Loan Documents shall remain unpaid or outstanding. By entering into this Stipulation, or accepting any payments hereunder, the Lender shall in no way be considered to have waived or be estopped from exercising any or all of its rights and remedies under any of the Loan Documents and/or the Existing Forbearance Agreement. Nothing contained herein shall be considered a forgiveness of any obligation under the Loan Documents (except the full, timely payment of the Payoff Amount) and the accommodations made by the Lender herein do not constitute a "course of dealing" or a "course of conduct" in contravention of the terms of the Loan Documents.

12.  _Amendments_. This Stipulation may be amended only by a written amendment, fully executed and delivered by each of the Parties.

13.  _Loan Documents Still in Force_. Notwithstanding anything to the contrary in this Stipulation, the Note, the Mortgage, the ALR, the Guaranty, the Pledge Agreement, and all of the other Loan Documents and Existing Forbearance Agreement are in full force and effect in accordance with their respective terms, remain valid and binding obligations of the Obligors and have not been modified or amended, and are hereby reaffirmed and ratified by the Obligors in all respects. The liens, security interests and pledges created by the Mortgage and Pledge Agreement, and the other Loan Documents are and continue to be valid, effective, properly perfected, enforceable and are hereby ratified and confirmed in all respects.

14.  _No Waiver of Rights Under Loan Documents_. Neither the failure nor the delay by the Lender to exercise its remedies, nor the acceptance by the Lender of partial payments or any other partial performance (whether any of the foregoing is before or after the date of this Stipulation), nor any provision of this Stipulation, shall (a) amend, modify, supplement, extend, delay, renew, terminate, waive, release or otherwise limit or prejudice the Lender's rights and remedies under the Loan Documents and Existing Forbearance Agreement or any of the Obligors' obligations under the Loan Documents (including, without limitation, the Lender's right to receive full payment of principal and interest as well as all late charges, default rate interest, delinquent interest, attorneys' fees and expenses, the Lender's protective advances and other charges to the extent provided in the Loan Documents), nor (b) affect the priority of the Lender's security interests in and liens on the property of any of the Obligors (including, without limitations, the Lender's first priority mortgage lien on the Mortgaged Premises pursuant to the Mortgage and the other Loan Documents and the Lender's first priority security interest and lien on all of the equity interests in the Borrower pursuant to the Pledge Agreement and the other Loan Documents). Nothing contained in this Stipulation shall operate to prohibit, restrict or otherwise inhibit the Lender from exercising any right or remedy the Lender may have under the Loan Documents and Existing Forbearance Agreement (except to the extent that the Lender agrees to forbear as specifically provided in Section 2 above) or constitute a cure of the Stated Defaults or any other existing default or serve to extend any applicable grace or cure period and, without limitation, shall not extend any applicable reinstatement or redemption period.

15

596657-1

### 15.    Release of Claims and Waivers.

15.1    Release of Claims. Each of the Obligor Related Parties, for itself and on behalf of its agents, employees, representatives, affiliates, predecessors-in-interest, successors, and assigns (such persons and entities other than the Obligor Related Parties being collectively referred to herein as the "**Other Releasors**"), does hereby release, discharge and acquit the Lender, and the Lender's past, present and future officers, directors, shareholders, agents, employees, professionals, predecessors, successors, assigns and affiliates, and their respective successors, heirs and assigns (collectively, the "**Released Parties**"), of and from any and all rights, claims, causes of action, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, causes of action, promises, damages, costs, losses and expenses of every kind, nature, description or character whatsoever, and irrespective of how, why, or by reason of any facts, which could or may be claimed to exist, whether known or unknown, matured or contingent, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, fraud, breach of any duty, breach of any federal, state or local laws of any kind or nature whatsoever, or any other legal or equitable theory whatsoever, each as though fully set forth herein at length, from the beginning of the world to the date of execution of this Stipulation by the Obligor Related Parties (collectively, the "**Claims**"), which in any way arise out of, are connected with or relate to any or all of the following: (a) the Loan or the administration of any or all of the Loan or any or all of the Loan Documents, as well as any action or inaction of the Released Parties or any of them with respect to the Loan or the administration thereof or any or all of the Loan Documents or the enforcement thereof; (b) any or all of the transactions which are the subject of or contemplated by any or all of the Loan Documents and/or the Existing Forbearance Agreement; (c) the Mortgaged Premises and/or any other collateral granted under any of the Loan Documents; (d) any fact, matter or transaction existing or occurring as of or prior to the execution of this Stipulation by the Parties, which in any way, directly or indirectly, relates to the Loan, any of the Loan Documents, the Existing Forbearance Agreement, or the Mortgaged Premises; or (e) any and all claims that could or have been set forth in this Obligor Action.

15.2    Waiver. Each of the Obligor Related Parties hereby: (i) waives any and all defenses to the Lender's exercise of any or all of its rights under the Loan Documents, including, without limitation, the defenses of payment, waiver, estoppel, laches, unclean hands, unconscionability, the election of remedies defense, or any claim that the Obligors are not in default under the Loan Documents, or any claim that any notice was not given by the Lender, or that the Note fully matured; (ii) acknowledges and re-affirms its due execution and delivery of the Loan Documents (as applicable) and the Existing Forbearance Agreement; (iii) agrees that it shall not file an answer, counterclaim, motion, order to show cause or appeal as to any judicial or non-judicial actions that may be taken by the Lender after the earlier of the Forbearance Date or the date that any Termination Event occurs; (iv) admits and acknowledges that, the Note matured by its terms on the Maturity Date (i.e. December 1, 2020) and that the Payoff Amount is due and owing to the Lender; (v) expressly waives the appointment of a referee in any action to foreclose the Mortgage to compute the sums due and owing to the Lender; (vi) waives any claim or defense regarding the Loan, the Loan Documents or this Stipulation, including, without limitation, as to the Lender's standing or that the Loan is usurious or requires the Obligors to pay "hidden" or "disguised" interest, fees or charges; (vii) waives any claim or defense that the Lender is prohibited from commencing a proceeding to recover under the Loan Documents by reason of

16

596657-1

any statute, law or executive order, or otherwise, including without limitation (a) New York State's issuance of any Executive Order, including, without limitation, Executive Order 202.28, 202.48, 202.75, 201.81, or (b) any statute in New York State, including without limitation, NY LEGIS 417 (2021), 2021 Sess. Law News of N.Y. Ch. 417 (S. 50001) (McKINNEY'S), and any subsequent modifications and/or extension of said executive orders or laws, and/or (c) New York's Chief Administrative Judge's issuance of Administrative Order of the Chief Administrative Judge of the Courts; and (viii) agrees that in the event that any conference is scheduled in any action to foreclose the Mortgaged Premises it shall agree that the action may immediately proceed and shall not request an adjournment or stay of any foreclosure action for any reason.

       15.3   <u>Indemnity</u>. Each of the Obligor Related Parties hereby agrees to defend, indemnify, and hold the Lender and each of the other Released Parties harmless from and against any losses, damages, costs (including, without limitation, attorneys' fees, court costs, and costs of appeal), expenses, judgments, liens, decrees, fines, penalties, liabilities, claims, actions, suits, and causes of action (collectively, the **"Indemnified Claims"**) arising, directly or indirectly, from (to the extent not inconsistent with the terms of this Stipulation): (a) any material breach by any of the Obligor Related Parties of any warranty or representation contained in this Stipulation or in the documents executed and delivered by any of the Obligor Related Parties pursuant to this Stipulation (collectively referred to as the **"Obligors Documents"**); (b) and after any material breach, default, or violation by any of the Obligor Related Parties of any covenant, agreement, or provision of any of the Obligors Documents or the Loan Documents; (c) any claims by or liabilities to third parties pertaining to injury to persons or damage to the Mortgaged Premises; and (d) any claims and/ or defenses of any past, present, or future tenants at the Mortgaged Premises, including, without limitation, SPI, AGI, the Guarantor, EO, Theatre 80, Foxface, Kushnir, Lahat and Ikeda.

       15.4   <u>Waivers of Unknown Claims</u>. As to all matters being released by the Obligor Related Parties pursuant to the provisions hereof, each of the Obligor Related Parties for itself and on behalf of the Other Releasors, expressly acknowledges that the release of Claims set forth in Section 15.1 hereof applies to all Claims whether or not known to, or suspected by the Obligor Related Parties to exist. Each of the Obligor Related Parties, for itself and on behalf of all Other Releasors, acknowledges and agrees that the facts with respect to which the release of Claims contained in Section 15.1 is executed may hereafter be found to be different from the facts now believed by the Obligor Related Parties to be true, and each of the Obligor Related Parties, for itself and on behalf of all Other Releasors, expressly accepts and assumes the risk of all such possible differences, and agrees that the release of Claims contained in this Section shall be and remain effective notwithstanding any such difference in facts.

       15.5   <u>No Admission of Liability</u>. Nothing contained in this Stipulation, including, without limitation, the terms of this Section 15, constitutes or shall be construed as an admission by the Lender of any liability whatsoever.

       15.6   <u>No Assignment</u>. Each of the Obligor Related Parties, for itself and on behalf of all Other Releasors, warrants and represents to the Lender that none of the Obligor Related Parties and none of the Other Releasors have sold, assigned, transferred, conveyed or

17

596657-1

otherwise disposed of any Claims or Indemnified Claims which are the subject of this Section 15.

16.    No Waiver by the Lender. The agreement by the Lender to forbear from exercising its rights and remedies under the Loan Documents shall not constitute a waiver of, consent to, or condoning of the Stated Defaults or any other default by any of the Obligor Related Parties. The Obligor Related Parties agree that Lender may immediately exercise all rights and remedies available to the Lender under the Loan Documents by reason of the Stated Defaults or any other default immediately upon the earlier of (i) the Forbearance Date, or (ii) the occurrence of any Termination Event for any reason, without the Lender being required to provide any additional notice of default or of acceleration and without any grace or cure periods therefor.

17.    Bankruptcy.

17.1    Statement of Intent. Each of the Obligor Related Parties warrants and represents to the Lender that it has no present intent (i) to file any voluntary petition in bankruptcy under any chapter of the United States Bankruptcy Code (the "**Bankruptcy Code**"), or directly or indirectly to cause any Obligor Related Party, or any other person or entity that may hereafter own any interest in, or claim any beneficial interest in, the Mortgaged Premises, to file any voluntary petition in bankruptcy under any chapter of the Bankruptcy Code or to have any involuntary petition in bankruptcy filed against it under any chapter of the Bankruptcy Code, or (ii) in any manner, directly or indirectly, to cause the any of the Obligor Related Parties, or any other person or entity that may hereafter own any interest in, or claim any beneficial interest in, the Mortgaged Premises, to seek relief, protection, reorganization, liquidation, dissolution, or similar relief for debtors under any federal, state, or local law, or in equity, or (iii) in any manner, directly or indirectly, to cause the Mortgaged Premises to be the subject of any bankruptcy or insolvency proceedings or the property of any bankruptcy or insolvency estate.

18.    Miscellaneous.

18.1    Costs and Expenses. Nothing in this Stipulation shall (i) diminish or otherwise limit any obligation that any of the Obligors has under the Loan Documents with respect to payment of the costs and expenses (including, without limitation, attorneys' fees and expenses) of the Lender, or (ii) prevent the Lender from requiring each of the Obligors to pay all such costs and expenses in accordance with the terms of the Loan Documents and the Existing Forbearance Agreement.

18.2    Further Instruments. The Obligor Related Parties shall, whenever and as often as they shall be requested to do so by the Lender, cause to be executed, acknowledged and/or delivered to the Lender any and all such further instruments and documents as may be necessary or desirable, in the sole discretion of the Lender, in order to carry out the intent and purpose of this Stipulation. Without limiting of the foregoing, each of the Obligor Related Parties hereby irrevocably appoints Lender as its and his attorney-in-fact, coupled with an interest, to execute any such documents as provided above.

18

18.3 <u>Written Waiver Only</u>. No waiver by the Lender of any of its rights or remedies in connection with the Loan or any Loan Documents shall be effective unless such waiver is in writing and signed and delivered by the Lender. Without limiting the generality of the preceding sentence, nothing contained in this Stipulation nor any delay or omission by the Lender in exercising or enforcing any of its rights and remedies in connection with the Loan Documents constitutes or shall be construed as a waiver by the Lender of: (i) the Stated Defaults or any other breach or default by any of the Obligors under any of the Loan Documents; or (ii) any of the Lender's rights or remedies in connection with the Loan or any of the provisions of any of the Loan Documents or the Existing Forbearance Agreement.

18.4 <u>Governing Law</u>. This Stipulation shall be governed by and construed and enforced in accordance with the internal laws of the State of New York, without regard to the law on conflicts of law.

18.5 <u>Third Party Beneficiaries</u>. Nothing in this Stipulation is intended to or shall confer any rights or remedies upon any person, other than the Parties hereto and the Released Parties and, subject to any restrictions on assignment contained in this Stipulation and the other Loan Documents, their respective successors and assigns.

18.6 <u>No Offsets</u>. No indebtedness evidenced by the Note or any other Loan Documents shall be offset by all or part of any claim, cause of action, or cross-claim of any kind, whether liquidated or unliquidated, which any of the Obligor Related Parties now has or may hereafter acquire or allege to have acquired against the Lender.

18.7 <u>Relationship of Parties</u>. Nothing contained in this Stipulation or the other Loan Documents constitutes or shall be construed as the formation of a partnership, joint venture, tenancy-in-common, or any other form of co-ownership, or the creation of any confidential or fiduciary relationship of any kind between the Lender, on the one hand, and the Obligor Related Parties and/or any other person or entity on the other hand. The Obligor Related Parties acknowledge and agree that the Lender has at all times acted and shall at all times continue to be acting only as a lender to the Obligors within the normal and usual scope of activities of a lender.

18.8 <u>Attorneys' Fees</u>. Upon demand therefor by the Lender, the Obligors shall pay all costs and expenses, including, without limitation, reasonable attorneys' fees and costs, now or hereafter incurred by the Lender (i) in negotiating and preparing this Stipulation; and (ii) in administering, enforcing or effectuating any of the terms of this Stipulation and the other Loan Documents and the Existing Forbearance Agreement, whether or not any legal proceedings are instituted by the Lender. Without limiting the generality of the immediately preceding sentence, such costs and expenses shall include all attorneys' fees and costs now or hereafter incurred by the Lender in connection with any federal or state bankruptcy, insolvency, reorganization, foreclosure, or other similar proceeding or action by or against any of the Obligor Related Parties which in any way relates to or affects the Lender's exercise of its rights and remedies under any or all of the Loan Documents or the Existing Forbearance Agreement. The amount of any attorneys' fees, costs and expenses of the Lender that are not paid by the Obligors shall be added to the Payoff Amount, shall

19

constitute secured obligations of the Obligors under the Loan Documents and shall bear interest at the default rate under the Loan Documents.

18.9    Descriptive Headings; Interpretation. The headings to sections of this Stipulation are for convenient reference only, do not in any way limit or amplify the terms of this Stipulation, and shall not be used in interpreting this Stipulation. For purposes of this Stipulation: (i) the term "including" shall be deemed to mean "including, without limitation,"; (ii) the term "Loan Documents" shall be deemed to include, without limitation, the Existing Forbearance Agreement and this Stipulation; (iii) the term "person" means any natural person or any entity, including any corporation, partnership, joint venture, trust, limited liability Borrower, unincorporated organization or association, or trustee; and (iv) whenever the context of this Stipulation reasonably requires, all words used in the singular shall be deemed to have been used in the plural, and the neuter gender shall be deemed to include the masculine and feminine gender, and vice versa. This Stipulation has been prepared and drafted through a joint effort of the Parties and, therefore, shall not be construed against any of the Parties as the person who prepared or drafted this Stipulation.

18.10    Entire Agreement. This Stipulation and the other Loan Documents contain the entire agreement and understanding between the Parties concerning the matters covered by this Stipulation and the other Loan Documents, and supersede all prior and contemporaneous agreements, statements, understandings, terms, conditions, negotiations, representations and warranties, whether written or oral, made by the Lender or any of the Obligor Related Parties concerning the matters covered by this Stipulation and the other Loan Documents.

18.11    Payoff Amount. Each of the Obligor Related Parties hereby acknowledges and agrees that the Payoff Amount as of November 30, 2021 is $7,980,855.65 (exclusive of attorneys' fees and expenses and protective advances incurred after November 21, 2021, which amounts have accrued and continue to accrue and shall be added to the Payoff Amount), that interest is continuing to accrue thereon at the default rate of 24% per annum from and after December 2, 2021, and that the Obligors are jointly and severally liable for the Payoff Amount.

**18.12    TIME OF THE ESSENCE. NOTWITHSTANDING ANYTHING TO THE CONTRARY, TIME IS OF THE ESSENCE WITH RESPECT TO EACH OF THE OBLIGOR RELATED PARTIES' OBLIGATIONS HEREUNDER.**

18.13    Severability. If any term or provision of this Stipulation or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Stipulation, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each such term and provision of this Stipulation shall be valid and shall be enforced to the fullest extent permitted by law.

18.14    Notices. All notices and other communications provided for in this Stipulation shall be in writing and shall be given by Federal Express or hand delivery:

20

If to the Lender, at:

St. Mark's Mixed Use LLC
100 Park Avenue, Suite 2305
New York, New York 10012
Attn: Jason Leibowitz

with a copy to:

Katsky Korins LLP
605 Third Avenue, 17th Floor
New York, New York 10158
Attn.: Steven H. Newman, Esq.


If to the Borrower, at:

78-80 St. Marks Place, LLC
78-80 St. Marks Place
New York, New York 10003
Attn: Lawrence v. Otway

With a copy to:

The Roth Law Firm, PLLC
295 Madison Avenue, 22nd Floor
New York, New York 10017
Attn: Richard Roth, Esq.


If to the Guarantor, at:

Mr. Lawrence v. Otway
78-80 St. Marks Place, Apt. 1
New York, New York 10003

With a copy to:

The Roth Law Firm, PLLC
295 Madison Avenue, 22nd Floor
New York, New York 10017

If to EO, SPI, AGI or Theatre 80, to such person or entity at:

78-80 St. Marks Place
New York, New York 10003

21

Attn: Lawrence v. Otway

With a copy to:

The Roth Law Firm, PLLC
295 Madison Avenue, 22nd Floor
New York, New York 10017

Notices shall be deemed given (i) if sent by hand, the date sent; and (ii) if sent by Federal Express, one (1) business day after delivery to an authorized agent or authorized depository box of Federal Express.

18.15    Counterparts, Etc. This Stipulation may be executed in any number of counterparts so long as each signatory hereto executes at least one such counterpart. Each such counterpart shall constitute one original, but all such counterparts taken together shall constitute one and the same instrument. This Stipulation may be executed by electronic signatures, including without limitation, by PDF, and all electronic signatures shall have the same force and effect as an original signature.

18.16    Service of Process. The Obligor Related Parties hereby irrevocably agrees that service of process of any action or proceeding by the Lender against the Guarantor and/or any other Obligor Related Parties may be served upon the Guarantor or such Obligor Related Party by first class mail addressed to "Mr. Lawrence V. Otway, 78-80 St. Marks Place, Apt. 1, New York, New York 10003" and the Obligor Related Parties hereby irrevocably waive any objection or defense whatsoever that any service of process so effectuated is invalid or improper in any manner. The foregoing is without prejudice to the Lender's rights to effectuate service of process by any other means allowed by applicable law.

18.17    **WAIVER OF JURY TRIAL. THE OBLIGOR RELATED PARTIES AND THE LENDER IRREVOCABLY WAIVE ALL RIGHTS TO A JURY TRIAL IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM OF ANY KIND ARISING OUT OF OR IN ANY WAY RELATING TO THE LOAN, THE NOTE, THE MORTGAGE, THE GUARANTY, THE PLEDGE AGREEMENT, THIS STIPULATION, ANY OF THE OTHER LOAN DOCUMENTS, THE MORTGAGED PREMISES, ANY OR ALL OF THE REAL AND PERSONAL PROPERTY COLLATERAL SECURING THE LOAN OR ANY OF THE TRANSACTIONS WHICH ARE CONTEMPLATED BY THE LOAN DOCUMENTS. THE JURY TRIAL WAIVER CONTAINED IN THIS SECTION IS INTENDED TO APPLY, TO THE FULLEST EXTENT PERMITTED BY LAW, TO ANY AND ALL DISPUTES AND CONTROVERSIES THAT ARISE OUT OF OR IN ANY WAY RELATE TO ANY OR ALL OF THE MATTERS DESCRIBED IN THE PRECEDING SENTENCE, INCLUDING WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS OF ANY KIND WHATSOVER. THE WAIVER CONTAINED IN THIS SECTION SHALL APPLY TO ALL SUBSEQUENT EXTENSIONS, RENEWALS, MODIFICATIONS AND REPLACEMENTS OF ANY OR ALL OF THE LOAN DOCUMENTS. THIS**

22

596657-1

FILED: NEW YORK COUNTY CLERK 11/29/2021 12:41 PM INDEX NO. 656446/2021
NYSEF DOC. NO. 147 RECEIVED NYSCEF: 11/29/2021

STIPULATION MAY BE FILED WITH ANY COURT OF COMPETENT JURISDICTION AS EACH PARTY'S WRITTEN CONSENT TO WAIVER OF A JURY TRIAL.

18.18 <u>Conflicts With Loan Documents</u>. Notwithstanding anything in this Stipulation to the contrary, in the event of an actual conflict or inconsistency between this Stipulation and any of the Loan Documents (which is not resolved by the terms of this Stipulation itself), the provisions which shall enlarge the rights of the Lender shall govern to the extent of such conflict.

18.19 **<u>REVIEW WITH COUNSEL</u>. THE OBLIGOR RELATED PARTIES HEREBY ACKNOWLEDGE AND AGREE THAT: (A) THE OBLIGOR RELATED PARTIES HAVE CAREFULLY READ AND UNDERSTAND ALL OF THE TERMS OF THIS STIPULATION; (B) THE OBLIGOR RELATED PARTIES HAVE EXECUTED THIS STIPULATION FREELY AND VOLUNTARILY AND WITHOUT ANY DURESS, AFTER HAVING CONSULTED WITH THE OBLIGOR RELATED PARTIES' INDEPENDENT LEGAL COUNSEL AND AFTER HAVING ALL OF THE TERMS OF THIS STIPULATION EXPLAINED TO EACH OF THEM BY THEIR INDEPENDENT LEGAL COUNSEL; (C) THE WAIVERS AND RELEASES CONTAINED IN THIS STIPULATION ARE REASONABLE, NOT CONTRARY TO PUBLIC POLICY OR LAW, AND HAVE BEEN INTENTIONALLY, INTELLIGENTLY, KNOWINGLY AND VOLUNTARILY AGREED TO BY EACH OF THE OBLIGOR RELATED PARTIES; (D) THE WAIVERS AND RELEASES CONTAINED IN THIS STIPULATION HAVE BEEN AGREED TO BY THE OBLIGOR RELATED PARTIES WITH FULL KNOWLEDGE OF THEIR SIGNIFICANCE AND CONSEQUENCES, INCLUDING FULL KNOWLEDGE OF THE SPECIFIC NATURE OF ANY RIGHTS OR DEFENSES WHICH THE OBLIGOR RELATED PARTIES HAVE AGREED TO WAIVE OR RELEASE PURSUANT TO THIS STIPULATION; (E) THE OBLIGOR RELATED PARTIES HAVE HAD A FULL AND ADEQUATE OPPORTUNITY TO NEGOTIATE THE TERMS CONTAINED IN THIS STIPULATION; (F) THE OBLIGOR RELATED PARTIES ARE EXPERIENCED IN AND FAMILIAR WITH LOAN TRANSACTIONS OF THE TYPE EVIDENCED BY THIS STIPULATION; (G) THE OBLIGOR RELATED PARTIES EXECUTION AND DELIVERY OF THIS STIPULATION IS NOT BASED UPON RELIANCE UPON ANY REPRESENTATION, UNDERSTANDING OR AGREEMENT NOT EXPRESSLYSET FORTH IN THIS STIPULATION AND NEITHER THE LENDER NOR ANY AFFILIATE THEREOF HAS MADE ANY REPRSENTATION WHATSOVER TO ANY THE OBLIGOR RELATED PARTIES NOT EXPRESSLY SET FORTH HEREIN; (H) THE WAIVERS AND RELEASES CONTAINED IN THIS STIPULATION ARE MATERIAL INDUCEMENTS TO THE LENDER'S EXECUTION OF THIS STIPULATION, AND THE LENDER HAS RELIED ON SUCH WAIVERS AND RELEASES IN ENTERING INTO THIS STIPULATION AND WILL CONTINUE TO RELY ON SUCH WAIVERS AND RELEASES IN ANY RELATED FUTURE DEALINGS WITH THE OBLIGOR RELATED PARTIES.**

23

596657-1

Statement of Material Facts Pursuant to Rule 7056-1(b) of the Plaintiff's Exhibit 9

18.20  <u>Conditions Precedent</u>. This Stipulation shall not be effective and binding on the Parties unless and until it is executed and delivered by each of the Obligor Related Parties and by the Lender.

18.21  <u>Agreement May Be Used Against Obligor Related Parties</u>. This Stipulation may be used as evidence against any or all of the Obligor Related Parties in any litigation now or hereafter existing.

18.21  <u>Release Upon Payment in Full of the Payoff Amount</u>. If the Payoff Amount has been irrevocably paid (and without protest) in full to Lender, Lender will issue a general release of all its claims against the Obligor Related Parties under the Loan Documents.

24

596657-1

Executed as of the date set forth above:

**78-80 ST. MARKS PLACE, LLC**

By: _____
    Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
    Title: Manager and Sole Member

_____
**LAWRENCE V. OTWAY,** a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway,
Individually

_____
**EUGENIE OTWAY,**
Individually

**SCHIEB'S PLACE, INC.**

By: _____
    Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
    Title: President and sole shareholder

**EXHIBITION OF THE AMERICAN GANGSTER, INC.**

By: _____
    Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
    Title: President and sole shareholder

**THEATRE 80 LLC**

By: _____
    Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway
    Title: Manager and Sole Member

**ST. MARK'S MIXED USE LLC**

By: _____
    Name:
    Title:

596657-1

Executed as of the date set forth above:

**78-80 ST. MARKS PLACE, LLC**

By: _____

      Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway

      Title: Manager and Sole Member


_____

**LAWRENCE V. OTWAY**, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway,
Individually


_____

**EUGENIE OTWAY**,
Individually


**SCHIEB'S PLACE, INC.**

By: _____

      Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway

      Title: President and sole shareholder

**EXHIBITION OF THE AMERICAN GANGSTER, INC.**

By: _____

      Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway

      Title: President and sole shareholder


**THEATRE 80 LLC**

By: _____

      Name: Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway

      Title: Manager and Sole Member


**ST. MARK'S MIXED USE LLC**

By: _____

      Name: Thomas Hooker

      Title:  Manager


596657-1

State of New York     )
                      )ss.:
County of New York    )

On the 23rd day of _____ in the year 2021, before me, the undersigned, a notary public in and for said state, personally appeared Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, as Manager and sole member of 78-80 St. Marks Place, LLC, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

NOTARY PUBLIC

RICHARD ROTH
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02RO5075155
Qualified in Westchester County
Commission Expires March 31, 2023

State of New York     )
                      )ss.:
County of New York    )

On the 23rd day of _____ in the year 2021, before me, the undersigned, a notary public in and for said state, personally appeared Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his individual capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

NOTARY PUBLIC

RICHARD ROTH
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02RO5075155
Qualified in Westchester County
Commission Expires March 31, 2023

State of New York     )
                      )ss.:
County of New York    )

On the 23rd day of _____ in the year 2021, before me, the undersigned, a notary public in and for said state, personally appeared Eugenie Otway, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her individual capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

NOTARY PUBLIC

RICHARD ROTH
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02RO5075155
Qualified in Westchester County
Commission Expires March 31, 2023

26

State of New York     )
                      )ss.:
County of New York    )

On the 23rd day of November in the year 2021, before me, the undersigned, a notary public in and for said state, personally appeared Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, as president of Scheib's Place, Inc., and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

NOTARY PUBLIC

RICHARD ROTH
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02RO5075155
Qualified in Westchester County
Commission Expires March 31, 2023

State of New York     )
                      )ss.:
County of New York    )

On the 23rd day of November in the year 2021, before me, the undersigned, a notary public in and for said state, personally appeared Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, as president of Exhibition of the American Gangster, Inc., and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

NOTARY PUBLIC

RICHARD ROTH
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02RO5075155
Qualified in Westchester County
Commission Expires March 31, 2023

State of New York     )
                      )ss.:
County of New York    )

On the 23rd day of November in the year 2021, before me, the undersigned, a notary public in and for said state, personally appeared Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, as Manager and sole member of Theatre 80 LLC, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

27

596657-1

Statement of Material Facts Pursuant to Rule 7056-1(b) of the       Pg 319 of 351

NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02RO5075155
Qualified in Westchester County
Commission Expires March 31, 202_

NOTARY PUBLIC

KATSKY KORINS LLP,                           THE ROTH LAW FIRM

By: _____                        By: _____
    Steven H. Newman, Esq.                       Richard Roth, Esq.
605 Third Avenue                             295 Madison Avenue
New York, New York 10158                     New York, New York 10017
Attorneys for the Defendant                  Attorneys for Plaintiffs


                              November
**"SO-ORDERED"** this 29th day of _____, 2021


HON. _____
            BARRY R. OSTRAGER, J.S.C.


                              28

KATSKY KORINS LLP,

By: _____
Steven H. Newman, Esq.
605 Third Avenue
New York, New York 10158
Attorneys for the Defendant

NOTARY PUBLIC
THE ROTH LAW FIRM

By: _____
Richard Roth, Esq.
295 Madison Avenue
New York, New York 10017
Attorneys for Plaintiffs

"**SO-ORDERED**" this 29th day of November, 2021

HON. _____
BARRY R. OSTRAGER, J.S.C.

28

# **EXHIBIT N**

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x          AMENDED ANSWER

In re: Chapter 11 78-80 ST. MARKS PLACE, LLC,                          AND

                                                                       COUNTERCLAIMS

Case No.: 21-12139 (MG)

                                    Debtor.

-----------------------------------------------------------x

MARIANNE T. O'TOOLE, ESQ., solely in her capacity as the Chapter 7 Trustee of the estate of
78-80 St. Marks Place, LLC, Plaintiff, Adv. Pro. No.: 22-_____ (MG)

-against-

LAWRENCE V. OTWAY, a/k/a LAWRENCE LORCAN OTWAY, a/k/a LORCAN OTWAY,
EUGENIE OTWAY a/k/a EUGENIE GILMORE-OTWAY a/k/a EUGENIE GILMORE,
SCHEIB'S PLACE, INC. D/B/A WILLIAM BARNACLE TAVERN, EXHIBITION OF THE
AMERICAN GANGSTER, INC., THEATRE 80, LLC, and JOHN DOE CORPORATIONS "1"
THROUGH "100", OTHER JOHN DOE ENTITIES "1" THROUGH "100", Defendants.

-----------------------------------------------------------x

1. By this adversary proceeding the Trustee seeks entry of: (a) an order and judgment
   directing the turnover of possession of the Debtor's real property known as and located at
   78-80 St. Marks Place, New York, New York 10003 ("Property") to the Trustee by the
   Defendants and any Unnamed Defendants; and (b) money judgments against certain of
   the Defendants in amounts to be determined at trial for their respective use and
   occupancy of property of the Debtor's estate for the period of not later than May 24, 2022
   through the date of turnover of possession of the property to the Trustee.

   Answer        Paragraph 1 of the Complaint does not contain any allegations of fact and

   therefore no response is required.

2. This adversary proceeding arises under the Debtor's pending Chapter 7 bankruptcy case.

1

Answer          Paragraph 2 of the Complaint does not contain any allegations of fact and

therefore no response is required.

 3. The United States Bankruptcy Court for the Southern District of New York ("Court") has
jurisdiction under 28 U.S.C. §§ 157 and 1334 and Rules 6009 and 7001 of the Federal Rules of
Bankruptcy Procedure ("Bankruptcy Rules").

Answer          Paragraph 3 of the Complaint contains a legal conclusion to which no response is

required. To the extent a response is required, Defendant denies the allegations set forth in

Paragraph 3, and specifically denies that Plaintiffs are entitled to relief based on the facts stated

in the Complaint or any other set of facts.

4. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§157 (b)(1), 157(b)(2)
(A), (B), (E), (F) and (O).

Answer          Paragraph 4 of the Complaint contains a legal conclusion to which no response is

required. To the extent a response is required, Defendant denies the allegations set forth in

Paragraph 4, and specifically denies that Plaintiffs are entitled to relief based on the facts stated

in the Complaint or any other set of facts.

5. Venue in this Court is proper pursuant to 28 U.S.C. §§1408 and 1409.2 3

Answer          Paragraph 5 of the Complaint contains a legal conclusion to which no response is

required. To the extent a response is required, Defendant denies the allegations set forth in

Paragraph 5, and specifically denies that Plaintiffs are entitled to relief based on the facts stated

in the Complaint or any other set of facts.

6. The predicates for the relief sought herein include sections 105, 541 and 542 of title 11 of the
United States Code ("Bankruptcy Code"), Bankruptcy Rules 6009 and 7001, and applicable laws
of the State of New York.

Answer          Paragraph 6 of the Complaint does not contain any allegations of fact and

therefore no response is required.

2

7. Plaintiff consents to the entry of final Orders and judgments by this Court if it is determined that this Court, absent the consent of the parties, cannot enter final Orders or judgments consistent with Article III of the United States Constitution.

Answer          Paragraph 7 of the Complaint does not contain any allegations of fact and

therefore no response is required.

8. Defendant Lawrence V. Otway, a/k/a Lawrence Lorcan Otway, a/k/a Lorcan Otway ("Lorcan Otway") is an individual who currently resides at the Property.

Answer          Admit

9. Lorcan Otway is the sole member of the Debtor.

Answer          Admit

10. Lorcan executed the voluntary petition commencing the Debtor's Chapter 11 case.

Answer          Admit

11. Lorcan Otway is currently a debtor-in-possession in a Chapter 11 case pending in this Court under case no. 21-12140-mg. Pursuant to a Memorandum Opinion and Order dated September 30, 2022, the Court granted Plaintiff's motion for relief from the automatic stay in Lorcan Otway's Chapter 11 case to permit the commencement of this adversary proceeding.

Answer          Admit

12. Defendant Eugenie Otway a/k/a Eugenie Gilmore-Otway, a/k/a Eugenie Gilmore ("Eugenie Otway") is an individual who currently resides at the Property with Lorcan Otway.

Answer          Admit

13. Upon information and belief, Eugenie Otway and Lorcan Otway are married and educated as lawyers.

Answer          Admit, except to the extent that Paragraph 13 implies that either Lorcan or

Eugenie Otway, are currently practicing lawyers and/or have, or ever had, any specialty in

Bankruptcy or insolvency law.

3

14. Eugenie Otway is an attorney licensed to practice law in the State of New York.

Answer    Admit


15. Defendant Scheib's Place, Inc. d/b/a William Barnacle Tavern ("Scheib's") is a corporation existing and organized under the laws of the State of New York with a principal place of business at the Property.

Answer    Admit


16. Lorcan Otway is the president and sole shareholder of Scheib's.

Answer    Admit


17. Defendant Exhibition Of The American Gangster, Inc. ("Museum") is a corporation existing and organized under the laws of the State of New York with a principal place of business at the Property.

Answer    Admit


18. Lorcan Otway is the president and sole shareholder of the Museum.

Answer    Admit


19. Defendant Theatre 80, LLC ("Theatre 80") is a limited liability company existing and organized under the laws of the State of New York with a principal place of business at the Property.

Answer    Admit


20. Lorcan Otway is the manager and sole member of Theatre 80.

Answer    Admit


21. The Unnamed Defendants are those entities that are owned and/or controlled by Lorcan Otway and/or Eugenie Otway and are in possession of any portion of the Property (if any).


4

Answer        _Deny – There are no other entities that are owned and/or controlled by Lorcan

Otway and/or Eugenie Otway and are in possession of any portion of the Property

22. Plaintiff was appointed as interim Chapter 7 Trustee of the Debtor's estate and is currently acting in that capacity.

Answer        Admit


23. Plaintiff is authorized to assert her claims under section 323 of the Bankruptcy Code and Bankruptcy Rule 6009.

Answer        Paragraph [23__] of the Complaint contains a legal conclusion to which no

response is required. To the extent a response is required, Defendants deny the allegations set

forth in Paragraph [_23_], and specifically deny that Plaintiffs are entitled to relief based on the

facts stated in the Complaint or any other set of facts.

24. The Debtor is a limited liability company organized and existing under the laws of the State of New York with a principal place of business at the Property.

Answer        Admit


25. The Debtor is the fee owner of the Property.

Answer        In response to Paragraph [_25_] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [_25__] that is inconsistent with

the record of the Court.

26. The Property is a mixed-use property that includes three residential units, storage space, and commercial space including a theater, bar and kitchen.

Answer        In response to Paragraph [__26] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [_26__] that is inconsistent with

the record of the Court.

27. The Debtor does not operate any business other than the ownership of the Property.

5

Answer         In response to Paragraph [_27_] Defendants state that the record of the Court speaks for itself, and deny any allegation set forth in Paragraph [_27__] that is inconsistent with the record of the Court.

28. The Debtor, Lorcan Otway, Eugenie Otway, Scheib's, the Museum, Theatre 80, and St. Mark's Mixed Use LLC ("Lender") executed a Forbearance Agreement dated as of January 14, 2021 ("Forbearance Agreement"), a copy of which is annexed as Exhibit A.

Answer         In response to Paragraph [_28_] Defendants state that the record of the Court speaks for itself, and deny any allegation set forth in Paragraph [__28_] that is inconsistent with the record of the Court.

29. The Forbearance Agreement provides that, among other things, the certain Commercial Lease dated as of November 12, 2019 between the Debtor, as landlord, and Scheib's, as tenant, expired and terminated by its terms on November 12, 2020 and is no longer in effect.

Answer         In response to Paragraph [_29_] Defendants state that the record of the Court speaks for itself, and deny any allegation set forth in Paragraph [29___] that is inconsistent with the record of the Court.

30. The Forbearance Agreement provides that, among other things, the certain Commercial Lease dated as of November 12, 2019 between the Debtor, as landlord, and the Museum, as tenant, expired and terminated by its terms on November 12, 2020 and is no longer in effect.

Answer         In response to Paragraph [30__] Defendants state that the record of the Court speaks for itself, and deny any allegation set forth in Paragraph [_30__] that is inconsistent with the record of the Court.

31. The Forbearance Agreement provides that, among other things, the certain Commercial Lease dated as of November 12, 2019 between the Debtor, as landlord, and Lorcan Otway, as tenant, expired and terminated by its terms on November 12, 2020 and is no longer in effect.

Answer         In response to Paragraph [31__] Defendants state that the record of the Court speaks for itself, and deny any allegation set forth in Paragraph [__31_] that is inconsistent with the record of the Court.

6

32. The Forbearance Agreement provides that, among other things, the certain Commercial Lease dated as of November 12, 2019 between the Debtor, as landlord, and Theatre 80, as tenant, expired and terminated by its terms on November 12, 2020 and is no longer in effect.

Answer        In response to Paragraph [_32_] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [_32__] that is inconsistent with

the record of the Court.

34. The Forbearance Agreement provides that Scheib's shall vacate and surrender the premises under such lease by June 1, 2021.

Answer        In response to Paragraph [___34] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [___34_] that is inconsistent with

the record of the Court.

35. The Forbearance Agreement provides that, among other things, the certain Commercial Lease dated as of November 12, 2020 between the Debtor, as landlord, and the Museum, as tenant: (a) was entered into in violation of the Debtor's obligations under certain loan documents and without the consent of the Lender (or its predecessor-in-interest); and (b) is hereby forever terminated and without effect as of the date hereof.

Answer        In response to Paragraph [35__] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [_35__] that is inconsistent with

the record of the Court.

36. The Forbearance Agreement provides that, among other things, the certain Lease Agreement dated as of November 12, 2020 between the Debtor, as landlord, and Lorcan Otway and Eugenie Otway, as tenants: (a) was entered into in violation of the Debtor's obligations under certain loan documents and without the consent of the Lender (or its predecessor-in-interest); and (b) is hereby forever terminated and without effect as of the date hereof.

Answer        In response to Paragraph [_36_] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [_36__] that is inconsistent with

the record of the Court.

37. The Forbearance Agreement provides that, among other things, the certain Commercial Sublease Agreement dated as of November 12, 2020 between Scheibs Place LLC, as sublessor,

7

and Theatre 80, as subtenant: (a) was entered into in violation of the Debtor's obligations under certain loan documents and without the consent of the Lender (or its predecessor-in-interest); and (b) is hereby forever terminated and without effect as of the date hereof.

Answer        In response to Paragraph [_37_] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [___37] that is inconsistent with

the record of the Court.

38. The Forbearance Agreement provides that Scheibs Place LLC is not a legal entity; that the reference to "Scheibs Place LLC" was a typographical error and the correct name of the sublessor is Scheib's.

Answer        In response to Paragraph [_38_] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [_38__] that is inconsistent with

the record of the Court.

39. Under the Forbearance Agreement, among other things, if the Debtor failed to pay the Lender, the Debtor was required to list the Property for sale at $11,000,000 with the price decreasing each month through July 15, 2021, to a final listing price of $8,500,000.

Answer        In response to Paragraph [39___] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [_39___] that is inconsistent with

the record of the Court.

40. Under the Forbearance Agreement, if the Property was not sold by August 15, 2021, the Lender had the right to foreclose without opposition.

Answer        In response to Paragraph [_40_] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [___40_] that is inconsistent with

the record of the Court.

41. The Property was not sold in accordance with the Forbearance Agreement.

Answer          In response to Paragraph [41___] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [__41___] that is inconsistent with

the record of the Court.

42. On September 3, 2021, the Lender issued a Notice of Disposition of Collateral providing for a public auction on November 18, 2021.

Answer          In response to Paragraph [__42__] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [__42___] that is inconsistent with

the record of the Court.

43. On November 11, 2021, the Debtor, Lorcan Otway, Eugenie Otway, Scheib's, the Museum and Theatre 80 commenced an action in the Supreme Court of the State of New York, New York County ("State Court"), under Index No. 656446/2021("State Court Action") and contemporaneously filed a motion seeking to preliminarily enjoin the Lender's auction sale.

Answer          In response to Paragraph [__43__] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [___43__] that is inconsistent with

the record of the Court.

44. On November 29, 2021 the State Court "So-Ordered" a Stipulation of Settlement and Dismissal of Action signed by the Debtor, Lorcan Otway, Eugenie Otway, Scheib's, the Museum, Theatre 80, and the Lender fully resolving the State Court Action, which was entered by the State Court on November 29, 2021 ("Consent Order"). A copy of the Consent Order is annexed as Exhibit B.

Answer          In response to Paragraph [44___] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [__44___] that is inconsistent with

the record of the Court.

45. The Consent Order agreed and acknowledged that, among other things, the Debtor's 2019 leases with Lorcan Otway and Eugenie Otway, the Museum, Scheib's, and Theatre 80 expired and terminated on November 12, 2020 and are no longer in effect.

9

Answer          In response to Paragraph [45___] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [___45__] that is inconsistent with

the record of the Court.


46. The Consent Order agreed and acknowledged that, among other things, the Debtor's 2020
leases with Lorcan Otway and Eugenie Otway, the Museum, and Scheib's were wrongfully
created and were terminated.

Answer          In response to Paragraph [__46__] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [46____] that is inconsistent with

the record of the Court.


47. The Consent Order agreed and acknowledged that, among other things, the 2020 sublease
between Scheib's and Theatre 80 was wrongfully created and was terminated.

Answer          In response to Paragraph [__47__] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [__47___] that is inconsistent with

the record of the Court.


48. The Consent Order agreed and acknowledged that, among others, Scheib's, the Museum,
Theatre 80, Lorcan Otway, Eugenie Otway and all relatives of Lorcan Otway shall completely
vacate the Property no later than December 30, 2021.

Answer          In response to Paragraph [__48__] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [48____] that is inconsistent with

the record of the Court.


49. The Consent Order is final and non-appealable.

Answer          Paragraph 49 of the Complaint contains a legal conclusion to which no response

is required. To the extent response is required, Defendant denies the allegations set forth in

Paragraph 49 , and specifically denies that Plaintiffs are entitled to relief based on the facts stated

in the Complaint or any other set of facts.


10

50. The Debtor failed to sell or refinance the Property in accordance with the Consent Order.

Answer        In response to Paragraph 50_ Defendants state that the record of the Court speaks
for itself, and deny any allegation set forth in Paragraph [_50___] that is inconsistent with the
record of the Court.

51. The Defendants failed to vacate the Property by December 30, 2021.

Answer        In response to Paragraph [_51_] Defendants state that the record of the Court
speaks for itself, and deny any allegation set forth in Paragraph [_51___] that is inconsistent with
the record of the Court.

52. The Defendants remain in possession of the Property.

Answer        In response to Paragraph [_52_] Defendants state that the record of the Court
speaks for itself, and deny any allegation set forth in Paragraph [___52_] that is inconsistent with
the record of the Court.

53. On December 29, 2021 ("Filing Date"), the Debtor filed a voluntary petition for relief under
Chapter 11 of the Bankruptcy Code in the Court.

Answer        In response to Paragraph [53 Defendants state that the record of the Court speaks
for itself, and deny any allegation set forth in Paragraph [_53_] that is inconsistent with the
record of the Court.

54. By motion dated April 4, 2022, the Lender sought entry of an Order converting the Debtor's
case to one under Chapter 7 of the Bankruptcy Code or, alternatively, appointing a Chapter 11
Trustee pursuant to sections 1104(a)(1) and 1104(a)(2) of the Bankruptcy Code ("Lender's
Motion").

Answer        In response to Paragraph [_54_] Defendants state that the record of the Court
speaks for itself, and deny any allegation set forth in Paragraph [_54___] that is inconsistent with
the record of the Court.

55. The Debtor opposed the Lender's Motion.

11

Answer        In response to Paragraph [_55_] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [_55__] that is inconsistent with

the record of the Court.

56. On April 27, 2022, the Court held a hearing on the Lender's Motion.

Answer        In response to Paragraph [_56_] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [_56__] that is inconsistent with

the record of the Court.

57. By Order dated May 17, 2022, the Court directed the appointment of a Chapter 11 Trustee
for the Debtor.

Answer        In response to Paragraph [___57] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [_57__] that is inconsistent with

the record of the Court.

58. Marianne T. O'Toole, Esq. was appointed as Chapter 11 Trustee for the Debtor.

Answer        In response to Paragraph [_58_] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [___58_] that is inconsistent with

the record of the Court.

59. By Order dated May 24, 2022, the Court approved the appointment of Marianne T. O'Toole,
Esq. as Chapter 11 Trustee for the Debtor ("Chapter 11 Trustee").

Answer        In response to Paragraph [_59_] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [_59__] that is inconsistent with

the record of the Court.

60. By motion dated June 17, 2022, the Chapter 11 Trustee sought entry of an Order converting
the Debtor's case to one under Chapter 7 of the Bankruptcy Code ("Chapter 11 Trustee's
Motion").

12

Answer        In response to Paragraph [_60_] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [60____] that is inconsistent with

the record of the Court.

61. The Debtor filed a limited objection to the Chapter 11 Trustee's Motion.

Answer        In response to Paragraph [_61_] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [_61__] that is inconsistent with

the record of the Court.

62. On July 21, 2022, the Court held a hearing on the Chapter 11 Trustee's Motion.

Answer        In response to Paragraph [___62] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [__62_] that is inconsistent with

the record of the Court.

63. By Order dated July 25, 2022, the Court converted the Debtor's case to a case under Chapter
7 of the Bankruptcy Code.

Answer        In response to Paragraph [_63_] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [_63__] that is inconsistent with

the record of the Court.

64. During the period of May 24, 2022 to July 25, 2022, the Defendants did not pay the Chapter
11 Trustee for their use, occupancy or possession of the Property.

Answer        In response to Paragraph [_64_] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [_64__] that is inconsistent with

the record of the Court.

65. Since July 25, 2022, the Defendants have not paid any use or occupancy for their possession
of the Property to the Trustee.

13

Answer          In response to Paragraph [_65_] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [_65__] that is inconsistent with

the record of the Court.

66. Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "65" as if
set forth fully herein.

Answer: Defendants repeat and reallege the allegations set forth in paragraphs "1" through "65"

as if set forth fully herein.

67. The Debtor is the sole owner of the Property.

Answer          In response to Paragraph [67___] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [___67_] that is inconsistent with

the record of the Court.

68. The Property is property of the Debtor's estate.

Answer Paragraph 68 of the Complaint contains a legal conclusion to which no response is

required. To the extent a response is required, Defendant denies the allegations set forth in

Paragraph 68, and specifically denies that Plaintiffs are entitled to relief based on the facts stated

in the Complaint or any other set of facts.

69. Prior to the Filing Date, each of the Defendants agreed in the Forbearance Agreement that
their 2019 leases relating to the Property expired and/or terminated on their own terms.

Answer          In response to Paragraph [___69] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [___69_] that is inconsistent with

the record of the Court.

70. Prior to the Filing Date, each of the Defendants agreed in the Forbearance Agreement that
their 2020 leases relating to the Property were forever terminated.

14

Answer        In response to Paragraph 70  Defendants state that the record of the Court speaks for itself, and deny any allegation set forth in Paragraph [_70__] that is inconsistent with the record of the Court.

71. Prior to the Filing Date, each of the Defendants agreed in the Consent Order that their 2019 leases relating to the Property terminated and were no longer in effect.

Answer        In response to Paragraph [__71] Defendants state that the record of the Court speaks for itself, and deny any allegation set forth in Paragraph [_71__] that is inconsistent with the record of the Court.

72. Prior to the Filing Date, Defendants Lorcan Otway and Eugenie Otway, the Museum, and Scheib's each agreed in the Consent Order that their 2020 leases relating to the Property were wrongfully created and were terminated.

Answer        In response to Paragraph [_72_] Defendants state that the record of the Court speaks for itself, and deny any allegation set forth in Paragraph [__72_] that is inconsistent with the record of the Court.

73. Prior to the Filing Date, Defendant Theatre 80 agreed in the Consent Order that its 2020 sublease relating to the Property was wrongfully created and was terminated.

Answer        In response to Paragraph [_73_] Defendants state that the record of the Court speaks for itself, and deny any allegation set forth in Paragraph [__73_] that is inconsistent with the record of the Court.

74. The Consent Order agreed and acknowledged that, among other things, the 2020 sublease between Scheib's and Theatre 80 was wrongfully created and was terminated.

Answer        In response to Paragraph [74__] Defendants state that the record of the Court speaks for itself, and deny any allegation set forth in Paragraph [__74_] that is inconsistent with the record of the Court.

15

75. Prior to the Filing Date, each of the Defendants agreed in the Consent Order to vacate the Property by December 31, 2021.

Answer          In response to Paragraph [_75_] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [_75___] that is inconsistent with

the record of the Court.

76. Notwithstanding the Forbearance Agreement and Consent Order, by their respective occupancies, the Defendants remain in possession of the Property.

Answer          In response to Paragraph [_76_] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [___76_] that is inconsistent with

the record of the Court.

77. By their respective occupancies, each of the Defendants are wrongfully in possession of property of the Debtor's estate.

Answer          Paragraph 77 of the Complaint contains a legal conclusion to which no response

is required. To the extent a response is required, Defendant denies the allegations set forth in

Paragraph 77, and specifically denies that Plaintiffs are entitled to relief based on the facts stated

in the Complaint or any other set of facts.

78. None of the Defendants are "custodians" as that term is defined in section 101(11) of the Bankruptcy Code.

Answer          Paragraph 78 of the Complaint contains a legal conclusion to which no response

is required. To the extent a response is required, Defendant denies the allegations set forth in

Paragraph 78, and specifically denies that Plaintiffs are entitled to relief based on the facts stated

in the Complaint or any other set of facts.

79. There are no valid and existent lease agreements between or among the Debtor and any of the Defendants for their possession of the Property.

16

Answer          Paragraph 79 of the Complaint contains a legal conclusion to which no response

is required. To the extent a response is required, Defendant denies the allegations set forth in

Paragraph 79, and specifically denies that Plaintiffs are entitled to relief based on the facts stated

in the Complaint or any other set of facts.

80. Any and all leases between or among the Debtor and any of the Defendants for their
possession of the Property terminated prior to the Filing Date.

Answer          In response to Paragraph 80[__] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [__80__] that is inconsistent with

the record of the Court.

81. Each of the Defendants must vacate the Property.

Answer          Paragraph 81 of the Complaint contains a legal conclusion to which no response

is required. To the extent a response is required, Defendant denies the allegations set forth in

Paragraph 81, and specifically denies that Plaintiffs are entitled to relief based on the facts stated

in the Complaint or any other set of facts.

82. Each of the Defendants must deliver possession of the Property and keys to the Property to
the Trustee.

Answer          Paragraph 82 of the Complaint contains a legal conclusion to which no response

is required. To the extent a response is required, Defendant denies the allegations set forth in

Paragraph 82, and specifically denies that Plaintiffs are entitled to relief based on the facts stated

in the Complaint or any other set of facts.

83. To the extent any Unnamed Defendants are in possession of property of the Debtor's estate,
such Unnamed Defendants must vacate the Property and must deliver possession of the Property
and keys to the Property to the Trustee.

17

Answer        Paragraph 83 of the Complaint contains a legal conclusion to which no response

is required. To the extent a response is required, Defendant denies the allegations set forth in

Paragraph 83, and specifically denies that Plaintiffs are entitled to relief based on the facts stated

in the Complaint or any other set of facts.

84. By reason of the foregoing, and in accordance with sections 105(a) and 542(a) of the
Bankruptcy Code, the Plaintiff is entitled to the entry of an order and judgment compelling the
immediate turnover of possession and the keys to the Property to the Trustee by each of the
Defendants and the Unnamed Defendants, failing which the U.S. Marshals Service shall forcibly
remove the Defendants and the Unnamed Defendants.

Answer        Paragraph 84 of the Complaint contains a legal conclusion to which no response

is required. To the extent a response is required, Defendant denies the allegations set forth in

Paragraph 84, and specifically denies that Plaintiffs are entitled to relief based on the facts stated

in the Complaint or any other set of facts.

85. Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "84" as if
set forth fully herein.

Defendants repeats and realleges all responses set forth in paragraph "1 through"84 as if set forth

herein.

86. Each of the Defendants is occupying the Property.

Answer        In response to Paragraph [___86 ] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [_86__] that is inconsistent with

the record of the Court.

87. Each of the Defendants has been occupying the Property since at least May 24, 2022 (the
date of the appointment of the Chapter 11 Trustee).

Answer        In response to Paragraph [_87_] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph 87 that is inconsistent with the

record of the Court.

18

88. By their respective occupancies, each of the Defendants are wrongfully in possession of property of the Debtor's estate.

Answer        Paragraph 88 of the Complaint contains a legal conclusion to which no response

is required. To the extent a response is required, Defendant denies the allegations set forth in

Paragraph 88, and specifically denies that Plaintiffs are entitled to relief based on the facts stated

in the Complaint or any other set of facts.

89. None of the Defendants paid use or occupancy to the Chapter 11 Trustee.

Answer         In response to Paragraph [_89_] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [_89__] that is inconsistent with

the record of the Court.

90. None of the Defendants have paid use or occupancy to the Trustee.

Answer        In response to Paragraph [_90_] Defendants state that the record of the Court

speaks for itself, and deny any allegation set forth in Paragraph [_90__] that is inconsistent with

the record of the Court.

91. Each of the Defendants has benefited from their continued use and occupancy of the Property.

Answer        Denies knowledges or information sufficient to form a belief about the trust of the

allegation.

92. Permitting the Defendants to enjoy use and occupancy of the Property without compensation to the Debtor's estate unjustly enriches each of the Defendants to the detriment of the Debtor and its creditors.

Answer        Paragraph 92 of the Complaint contains a legal conclusion to which no response

is required. To the extent a response is required, Defendant denies the allegations set forth in

Paragraph 92, and specifically denies that Plaintiffs are entitled to relief based on the facts stated

in the Complaint or any other set of facts.

19

Denies knowledges or information sufficient to form a belief about the trust of the allegation.


93. As a consequence of Defendants' use and occupancy of the Property without compensating the Debtor's estate for said use and possession, each of the Defendants has been unjustly enriched.

Answer        Paragraph 93 of the Complaint contains a legal conclusion to which no response

is required. To the extent a response is required, Defendant denies the allegations set forth in

Paragraph 93, and specifically denies that Plaintiffs are entitled to relief based on the facts stated

in the Complaint or any other set of facts.


Denies knowledges or information sufficient to form a belief about the trust of the allegation.


94. Equity and good conscience require that Defendants Eugenie Otway, Scheib's, the Museum and Theatre 80 make restitution to the Debtor's estate for the period of not later than May 24, 2022 through the date of turnover of possession of the Property to the Trustee.

 Answer        Paragraph 84 of the Complaint contains a legal conclusion to which no response

is required. To the extent a response is required, Defendant denies the allegations set forth in

Paragraph 84, and specifically denies that Plaintiffs are entitled to relief based on the facts stated

in the Complaint or any other set of facts.      Denies knowledges or information sufficient to

form a belief about the trust of the allegation.

95. Equity and good conscience require that any Unnamed Defendants using and occupying the Property make restitution to the Debtor's estate for the period of not later than May 24, 2022 through the date of turnover of possession of the Property to the Trustee.

Answer        Paragraph 95 of the Complaint contains a legal conclusion to which no response

is required. To the extent a response is required, Defendant denies the allegations set forth in

Paragraph 95, and specifically denies that Plaintiffs are entitled to relief based on the facts stated

in the Complaint or any other set of facts.


Denies knowledges or information sufficient to form a belief about the trust of the allegation.

20

96. By reason of the foregoing, the Plaintiff is entitled to money judgments against Defendants Eugenie Otway, Scheib's, the Museum and Theatre 80 and any Unnamed Defendants in amounts to be determined at trial for their respective use and occupancy of the Property for the period of not later than May 24, 2022 through the date of turnover of possession of the Property to the Trustee.

Answer        Paragraph 96 of the Complaint contains a legal conclusion to which no response

is required. To the extent a response is required, Defendant denies the allegations set forth in

Paragraph 96, and specifically denies that Plaintiffs are entitled to relief based on the facts stated

in the Complaint or any other set of facts.

## **AFFIRMATIVE DEFENSES**

The Property is, and always has been, owned by Lorcan Otway during the time Hirschmark

Properties Inc. and the St. Marks Mixed Use Inc, owned the note, irrespective of the form that

ownership took. The leases in question have always been part of a legal fiction designed to make

foreclosure an easier process for a short-term, high interest lender.  It has always been the case

that payment of rent to 78-80 St Mark's Place LLC by the other Defendants was an exercise of

taking cash out of one pocket and putting into another. It was never real. The idea of paying rent

to oneself as a means of "revenue" to pay back a loan is ludicrous, which is exactly why the

Initial Lender did not require it.

Equity demands that this elderly couple not be thrown out in the street based on this

fiction. This entire episode is the result of bad faith behavior which began when a short-term

loan Lorcan and Eugenie Otway took out to settle a frivolous action brought by Mr. Otway's

brother matured and was bought by a predatory lender. This predatory lender knew the Otways'

livelihood was decimated by a completely unforeseeable event (the COVID 19 Pandemic) and

sought to take advantage in chasing profit. Apparently, getting a building worth no less than

21

$9,000,000 (by its own admission) for less than $6,000,000 was too tempting to pass up,

regardless of the Faustian deal required to get it.

97. Lawrence Lorcan Otway and Eugenie Gilmore Otway  have a lease.

98. Mixed Use St Marks wrongfully declared the lease void.

99. Mixed Use was not in authority to void a lease.

100. Mixed Use was and is not a landlord of 78-80 St Marks Place NY NY.

101.  Mixed Use was and is not an owner of the building of 78-80 St Marks Place NY NY.

102.   Scheib's Place Inc. has a lease.

103. Mixed Use wrongfully declared the lease void.

104. Mixed Use was not in authority to void the lease.

105. Mixed Use was and is not a landlord of 78-80 St Marks Place NY NY.

106.  Mixed Use was and is not an owner of the building of 78-80 St Marks Place NY NY.

107. Theatre 80 LLC has a lease.

108. Mixed Use wrongfully declared the lease void.

109. Mixed Use was not in authority to void a lease.

110. Mixed Use was and is not a landlord of 78-80 St Marks Place NY NY.

22

111.  Mixed Use was and is not an owner of the building of 78-80 St Marks Place NY NY.

112.  Exhibition of the American Gangster Inc. has a lease.

113. Mixed Use wrongfully declared it void.

114. Mixed Use was not in authority to void a lease.

115.  Mixed Use was and is not a landlord of 78-80 St Marks Place NY NY

116.  Mixed Use was and is not an owner of the building of 78-80 St Marks Place NY NY.

117. 78-80 St. Marks Place Inc. has equity in the building located at 78-80 St. Marks Place NY NY.

118. Lawrence Lorcan Otway owns the equity in the building located at 78-80 St. Marks Place NY NY 10003.


Defendants hereby assert their Affirmative Defenses to the Complaint as set forth below.

By asserting these Affirmative Defenses, Defendants do not suggest that it undertakes the burden

of proof on these defenses. Defendants' Affirmative Defenses are as follows:

### AFFIRMATIVE DEFENSES

### As and For Defendants' First Affirmative Defense

120. Plaintiff has failed to state a claim upon which relief may be granted.

### As and For Defendants' Second Affirmative Defense

`121. Plaintiff lacks standing to assert the claims in the Complaint.

### As and For Defendants' Third Affirmative Defense

122.     Plaintiffs' claims are time barred or otherwise precluded by estoppel waiver or latches.

23

### As and For Defendants' Fourth Affirmative Defense

123. Plaintiff's claims should fail as a matter of equity because they are based on a legal fiction

without any real practical import.

### As and For Defendants' Fifth Affirmative Defense

124. The court lacks subject jurisdiction.

## FIRST COUNTERCLAIM  THEATRE 80 LLC'S COUNTERCLAIM AGAINT MARIANNE O'TOOLE, TRUSTEE FOR WRONGFUL INTERFERENCE WITH 3RD PARTY'S BUSINESS

125. Theatre 80 LLC is a defendant in this instant adversary case.

126. Theatre 80 LLC ("Theatre 80") is a limited liability company existing and organized under the laws of the State of New York with a principal place of business at 80 St. Marks Place, New York, NY 10003.

127. Theatre 80 LLC did not file for bankruptcy in this case or any other.

128. On May 11, 2022, a location manager approached Theatre 80 LLC, on behalf of a film production company (Production company) to determine if the company would wish to film its feature film in the theater.  The film would be a Screen Actors Guild / American Federation of Television and Radio Artists production,

129. There were discussions concerning the dates, terms and usage of the theater.

130. The Production Company came to an agreement on the dates, terms and usage of the theater.

131. In late June, 2022, The Trustee and her counsel requested a draft of the contract be sent to counsel's office when available.

132. When a draft of the contract was received, it was forwarded to counsel to the Trustee on June 28, 2022.

133. The Counsel of the Trustee wrote that the draft location agreement was unauthorized in that the language describing where the film work would be done stated the work would be done at the property located at 80 St. Marks Place.

24

134.    Theatre 80 acknowledged the language concerning the location of the filming was an error and Theatre 80 agreed that the Production company would correct it.

135.    Theatre 80 advised the production company of the error that the agreement should not state that work would be allowed at 80 St Marks in general but specify where in the building the work would be done.

136.    The Production company revised the Agreement to state that the work would be limited to Theater 80.

137.    The revision was sent to Counsel and the Trustee.

138.    Counsel and Trustee had further concerns about the film shoot. Andrew Gottesman, attorney of debtor, 78-80 St Marks Place LLC attempted at length to find out what the concerns were in order to resolve this matter.

139.    Counsel to Trustee did eventually inform Mr. Gottesman of the concerns.

140.    All these concerns were told to the Location Manager who provided answers and solutions to these concerns.

141.    All of the concerns were met, providing indemnification and advising that the Production company would be working with generators so it would not adversely impact on the Theater's electricity. The Trustee already had been provided the proof of insurance.

142.    Counsel and trustee were informed and fully aware that filming work was to be done at Theatre 80 from Tuesday, July 12, 2022 to Friday, July 15, 2022 and on Monday, July 18, 2022.

143.    After the Production company informed the Counsel and Trustee that they are meeting all of the Counsel and Trustee's stated concerns, the Production company wanted confirmation that they could commence filming at Theatre 80.

144.    The Trustee and Counsel did not respond to the Production company's legal counsel.

145.    Andrew Gottesman reminded Counsel that the film shoot was scheduled to begin and needed an answer.

146.    Although not responding to the Production company, the Counsel wrote and advised that Theatre 80 was not authorized to allow the filming.

147.    Counsel and Trustee told Theatre 80, all contracts for all such productions had to be presented to them in the future.

25

148. Delays in the filming of large budget feature films are costly to production companies and when a theatrical location capriciously causes delay, it is a lasting damage to the reputation of the directors of that theatrical institution personally as well as an institution.

149.    On July 11, 2022, the Location Manager advised that they could not wait any longer to hear from Trustee's counsel and would have to find another location to film.

150.    The minimum amount that was to have been received for this work at Theatre 80 was $42,000. 00

151.    Separate from the $42,000.00 minimum rent, the Production company was to put a $5,000.00 security deposit against damage or loss.

152.    The Location manager informed Theatre 80, it was the Production company's intention to donate the $5,000.00 to the theater and any and all damages were to be paid separately and fully.

153.    It is an unusual circumstance, when a film shoot does not run overtime, paying the location for the extra hours in filming.

154.    The Trustee through her counsel interfered with Theatre 80 entering into a contract for filming in the theater which is the normal course of business for Theatre 80.

155.  In the course of a year, Theatre 80 hosts film and television film shoots such as the film, "Late Night" with Emma Thompson and John Lithgow, HBO's "The Deuce", the Travel Channel's "Mysteries at the Museum" and numerous independent and small film productions.

156.    The benefits from film shoots at Theatre 80 are location tourism and new patrons at all the businesses at 80 St. Marks Place from patrons who wish to visit the establishment seen in the production.

157.    The benefits from a film shoot in one of the businesses at 80 St. Marks, benefits all the businesses due to the thematic symbiosis mentioned above.

158.    Theatre 80 has since been approached by location scouts from The Marvelous Mrs. Maisel and independent film shoots which would provide Theatre 80 with similar benefits to the benefits described above.

159.    Theatre 80 has had to inform potential film shoot productions that should have been opportunities for Theatre 80 that Theatre 80 can not guarantee reliable agreements for film work.

160.    The Production company agreed to meet all the Trustee and Counsel's expressed concerns.

26

161.    There were no exigencies or danger.

162.    Trustee was a Chapter 11 Trustee.

163.    Andrew Gottesman informed the trustee through her counsel that the Trustee was acting outside her scope of duties.

164.    The trustee through her counsel intentionally deprived Theatre 80 of opportunity and income.

165.    The Trustee acted outside the scope of her duties by interference with a 3rd party's business and depriving them of income.

166.    Counsel for the Trustee and the Trustee were fully aware that they had acted outside their duties and in violation of their fiduciary relationship with the parties as witnessed by the fact that on or about July 21, 2022, Trustee and her Counsel requested the power to control the business affairs of the commercial tenants of 80 St. Marks Place owned by Lawrence Lorcan Otway after the fact, alleging that it was because the tenants were losing money.

167.    Upon and information, the Trustee did not ask to control the business of LIK Hospitality d/b/a Foxface , a corporation, not owned by Otway which is doing business at 80 St. Marks Place.

168.    The trustee or her Counsel did not inform this Court, that they in fact were the sole source of a major and intentional financial loss to Theatre 80 for which they were requesting managerial authority.

169.    The trustee intentionally through her counsel deprived Theatre 80 of income that would have benefited the estate through being able to pay rent as well as caused intentional damage to the reputation of the owners and managers of Theater 80.

170. There is a harm beyond to Theatre 80 and its director, but also to the owner's industry and city and New York City being deprived of more and more of the locations which had insured New York City's role as a film capital are being destroyed. It has been reported in the press that New York State Comptroller Thomas DiNapoli's report on the financial effects of Covid on New York's theater industry has resulted in at least a 55 percent loss of jobs and resources due to Covid. The actions listed above have caused further harm to Mr. Otway's industry creating a lasting harm which will likely outlive the debtor.

27

## SECOND COUNTERCLAIM THEATRE 80 LLC'S COUNTERCLAIM AGAINST MARIANNE O'TOOLE, TRUSTEE FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

171    Theatre 80 repeats and realleges and incorporates each and every allegation contained in paragraphs 1 through 170.

172.    Plaintiff knowingly and wantonly interfered with Theatre 80's business and income.

173.    Plaintiff used improper means in taking advantage by intentionally failing to respond in a timely manner and with full knowledge of the financial harm this would do to the Production, the Theatre , Theatre staff and the reputational harm to theatre management staff and owners.

174.    The Trustee and Counsel were aware there was a drafted contract.

175.     The Trustee and Counsel were aware that Theatre 80 had the opportunity to realize income from this business opportunity.

176.     Theatre 80 is not a debtor in this or any other bankruptcy.

177.     The Trustee acted outside of her authority and official duties.

178.    The Trustee and Counsel were aware of the Production company's stated schedule and the hardship they would face if they continued to wait for the Trustee and Counsel to inform the Production Company they could commence filming and work at the theater.

179.    The Trustee was aware that delay in responding to the Production Company would mean they could not proceed on their schedule.

28

180.   The Trustee would know this would cause harm to the income and reputation of the Theatre and its owner.

**THIRD COUNTERCLAIM AS AND FOR A THIRD COUNTERCLAIM FOR LAWRENCE OTWAY AND EUGENIE GILMORE OTWAY AGAINST MARIANNE O'TOOLE, TRUSTEE FOR ATTEMPTED ILLEGAL EVICTION**

181.   Defendants repeat and realleges and incorporates all allegations in paragraphs 1 to 180.

182.   On the morning of August 17, 2022, Eugenie Gilmore Otway and Lawrence Lorcan Otway found the electricity for their Apartment had been shut off.

183. The Otways became aware of this when Mr. Otway attempted to put on the air conditioner when he had difficulty breathing.

184.  Lawrence Lorcan Otway is a senior citizen with a history of asthma.

185.   Mrs. Otway called ConEdison, the electricity provider, and was informed that ConEdison had been informed by the owners of the building that there was no tenant in this unit of the building.

186. Upon information and belief, the Trustee or through her counsel had communicated this incorrect information.

187. The Trustee and her Counsel knew the the Otways were residing in the apartment.

188. Mrs. Otway informed ConEdison that this was a unit occupied by a senior citizen couple with health concerns.

189.   The issue was referred to higher and higher management at ConEdison . The initial response was as there was no tenant, the electricity could not be restored.

29

190.    Eventually, a supervisor made the decision that the electricity could be restored as a new account.

191.    In New York City, turning off the utilities on anyone is deemed to be an attempt at illegal eviction and is punishable by jail time and or fines.

THEREFORE, the Defendants request judgment as follows: a. Judgment dismissing the Complaint, with prejudice; b. Judgment on the First and Second and Third Counterclaims in favor of the Defendants.

Yours etc.,

*Eugenie Gilmore Otway , Esq.*

Eugenie Gilmore Otway , Esq.
Attorney for Defendants
78-80 St. Marks Place
New York, New York 10003
646-217-8816
Eugeniegilmore@aol.com

TO: LAMONICA HERBST & MANISCALCO, LLP
Counsel to Plaintiff Marianne T. O'Toole, Esq.,
as Chapter 7 Trustee
3305 Jerusalem Avenue,
Suite 201
Wantagh, New York 11793
Telephone:
(516) 826-6500 Salvatore LaMonica, Esq.
Holly R. Holecek, Esq

30